```
K2C7RAYC                                                        1
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          20 Cr. 110 (LJL)

LAWRENCE RAY,

                Defendant.

------------------------------x
                                      New York, N.Y.
                                      February 12, 2020
                                      4:00 p.m.

Before:

                    HON. LEWIS J. LIMAN

                                        District Judge


                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  DANIELLE SASSOON
     Assistant United States Attorney

MARNE LENOX
PEGGY CROSS-GOLDENBERG
     Attorneys for Defendant

ALSO PRESENT:  Kelly MaGuire, F.B.I.
```

1          (In open court)

2          (Case called)

3          MS. SASSOON:  Good afternoon, your Honor.  Danielle
4    Sassoon for the United States, and I am joined by F.B.I.
5    special agent Kelly MaGuire.

6          THE COURT:  Good afternoon, counsel.

7          MS. LENOX:  Good afternoon, your Honor.  For Mr. Ray,
8    Federal Defenders by Marne Lenox, and I am joined at counsel
9    table by my colleague Peggy Cross-Goldenberg.

10         THE COURT:  Good afternoon.  I understand that we are
11   here today for an arraignment and an initial conference.  Is
12   that correct?

13         MS. SASSOON:  That's correct, your Honor.

14         THE COURT:  Mr. Ray, would you please stand.

15         Mr. Ray, you have been indicted in an indictment that
16   contains nine counts.  It charges you with extortion
17   conspiracy, extortion, sex trafficking, forced labor, forced
18   labor racketeering, forced labor conspiracy, use of interstate
19   commerce to promote unlawful activity, and money laundering.

20         Have you seen a copy of the indictment?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And have you had an opportunity to discuss
23   it with your lawyer?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  And have you discussed it with your

1 lawyer, with your counsel?

2 THE DEFENDANT: Yes.

3 THE COURT: OK. You have a right for me to read the
4 indictment out loud to you. Would you like me to do so?

5 THE DEFENDANT: No.

6 THE COURT: So do you waive the public reading of the
7 indictment? You have to speak out loud, sir.

8 THE DEFENDANT: Yes.

9 THE COURT: How do you plead, sir, to the indictment?

10 THE DEFENDANT: Not guilty.

11 THE COURT: You may be seated. Thank you.

12 Counsel, I'd like to discuss briefly the question of
13 discovery and a next conference in this case. Would the
14 government please describe to me what the status is of
15 discovery and how long you need to make discovery in this case.

16 MS. SASSOON: Yes, your Honor. The discovery is going
17 to be fairly extensive, and I think it would help to describe
18 different categories of discovery and a proposed time line, and
19 the fact that for some discovery it's difficult to put timing
20 on it, and I can explain why.

21 So, first, we anticipate pushing out a first wave of
22 discovery in the next week or so that will include all of the
23 warrants and warrant applications in this case. There are
24 numerous warrants, including a cell site warrant, an iCloud
25 search warrant for seven iCloud accounts, another iCloud search

1    warrant for two accounts used by Ray's associates, phone search
2    warrants, a GPS warrant, a premises search warrant, and a
3    search warrant executed yesterday for a storage unit used by
4    Mr. Ray.  Again, we expect to get all of those warrants and
5    applications out within the next week.
6              THE COURT:  Is there any reason why you couldn't
7    complete discovery of that in the next week, by a week from
8    today?
9              MS. SASSOON:  No, your Honor.
10             In addition, as part of that initial wave of discovery
11   we anticipate producing the defendant's criminal history, his
12   post-arrest statement made yesterday, returns from the Internal
13   Revenue Service, cell site records and some subpoena returns.
14             In the category of subpoena returns, we have issued
15   more than 100 subpoenas in this case, and some of those
16   subpoena returns, like financial records, can be produced
17   relatively quickly, but there is a category of discovery in
18   this case that includes very sensitive material for which we
19   will be consulting with defense counsel for a protective order
20   to govern the disclosure of that material, and that's going to
21   include some of the subpoena returns as well as some of the
22   e-mail and iCloud evidence.  And I think I failed to mention
23   that there is also an e-mail search warrant for seven accounts
24   including four used by Ray.  But as part of this investigation
25   we have obtained e-mail and iCloud accounts belonging to other

1  individuals including victims of Ray, and we have to discuss
2  how that information is going to be shared with defense counsel
3  while also protecting that information.
4              THE COURT:  So with the exception of the subpoena
5  returns -- some of which you will not be able to do in a
6  week -- the bulk of the other stuff in that category two you
7  will be able to produce by a week from today.
8              MS. SASSOON:  That's correct.
9              The next category is going to be Ray's own iCloud and
10 e-mail accounts, and that will take a little bit more time to
11 process, and also to get a hard drive from defense counsel
12 large enough to include the data, which is over a terabyte of
13 data.
14             For Ray's accounts we can produce those in their
15 entirety, and that's going to include both e-mails and
16 multimedia like photographs and videos.
17             But, as I mentioned, there is a category of iCloud and
18 e-mail evidence belonging to victims, including sensitive
19 material and sexually explicit material, and culling out the
20 responsive material from those accounts is going to take time.
21 We have to do a responsiveness review to be able to produce
22 only part of those accounts and not the private, nonpertinent
23 parts of those victims' accounts, and so that's underway.
24             THE COURT:  Explain that last category to me again.
25             MS. SASSOON:  Yes.  So we have, for example, an iCloud

account belonging to one of the victims.  In that account, for example, there are videos that are relevant evidence for this investigation, for example, videos of Ray berating the victim, sexually explicit conduct that relates to the extortion.  But because these accounts don't belong to Ray, it would be inappropriate to produce the entire account, including nonresponsive material, to Ray, and so we have to complete our review of the account for responsive material that is evidence of the subject offenses, and that's been underway but will take a little bit of time.

THE COURT:  But when you say a little bit of time, can you be a little bit more specific?

MS. SASSOON:  About a month, your Honor.

THE COURT:  I'm acknowledging that you've said that; I'm not agreeing that that should be the deadline.

MS. SASSOON:  And then so that will take some time. And then what is likely to take the most time is processing the material seized yesterday in search of the house, and that is because in the course of that search somewhere between 20 and 40 electronic devices were seized, and our understanding of those electronic devices is that it includes both devices used by Ray, devices used by his associates, and also devices seized over the course of this criminal conduct.

In the course of the investigation, we learned from more than one witness that Ray would seize their electronic

devices in order to extort them with sensitive material that was contained on those devices. For example, a victim of Ray's sex trafficking described that he would have her use her phone to take sexually explicit videos and then seize her electronic devices to use that material against her. The search corroborates that information, and we believe some of those devices are contained within the devices seized, in part because one person on the scene of the search identified some of the devices as belonging to that female victim.

In addition to these electronics, a lot of paper records were seized, including journals. In the course of the criminal conduct the defendant directed his victims to write sensitive and incriminating things in journals, that he would then seize and use against them. We now have some of those journals, and so we have to process these journals, figure out a way to either scan them or make them accessible to defense counsel, and then we need to image all of the electronic devices, and that can take time and is not entirely within our hands; it depends a little bit on the F.B.I.

So, I think if we have a conference sometime in the next few weeks, I will be better equipped to provide an update on the processing time of those devices.

THE COURT: With respect to the victims' devices that were seized, are there issues of consent with respect to those? Or is it sufficient that they were seized from the defendant?

8
K2C7RAYC

1      MS. SASSOON:  So, it's our position that our warrant
2  would encompass these materials; it wasn't limited to
3  electronic devices belonging to Ray, although they were in his
4  possession at the time.  In our view it was expansive enough to
5  include electronic devices that would have evidence of the
6  subject offenses, and this would fall in that category.
7      THE COURT:  And do you have any rough estimate as to
8  how long it will take you for the discovery of the items in
9  this category?
10      MS. SASSOON:  My understanding is that defense counsel
11  is likely to request a conference sometime in the near term,
12  and I would request that I provide an update at that
13  conference, because F.B.I. is still coming up with an estimate
14  on timing for these devices, and we don't yet know the quantity
15  of data contained on these devices, which will affect how long
16  it takes to unlock them and to image them.  Once they are
17  unlocked and imaged, it will then take time to process what we
18  have to produce and what should not be produced.
19      THE COURT:  Are there other categories of discovery,
20  or are we now complete?
21      MS. SASSOON:  There are other categories of sensitive
22  discovery, for example, BackPage prostitution ads, which we
23  will produce under an anticipated protective order, but I have
24  largely covered the categories of evidence.
25      THE COURT:  I will hear from defense counsel in a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  moment. But, counsel, one or two more questions for you before
2  I hear from defense counsel.
3  　　　　The first question is, to the extent that you are
4  prepared to do so, it would be helpful to the Court if you
5  could describe the law enforcement techniques that were used in
6  this case. I hear that there were search warrants, but in
7  thinking about potential motion practice it would be useful to
8  know what other types of law enforcement activity there was,
9  again to the extent that you're prepared to discuss it.
10 　　　　MS. SASSOON: Yes, your Honor. So there were numerous
11 witness interviews conducted in this case. Approximately 17
12 different witnesses were interviewed in connection with this
13 investigation. There were numerous warrants executed which I
14 have described. There was extensive financial analysis
15 conducted in connection with this case that underpins the
16 extortion and money laundering counts, and also that
17 corroborated evidence about the sex trafficking in this case.
18 There were steps taken by the IRS, including the maintaining of
19 IRS records which show that the defendant did not file any tax
20 returns or report any income throughout the period of his
21 criminal conduct.
22 　　　　THE COURT: I take it there were no wiretaps or
23 line-ups.
24 　　　　MS. SASSOON: No, your Honor.
25 　　　　THE COURT: One last question, counsel. I take it

1   that there are alleged victims in connection with this case,
2   and I want to make sure that the appropriate procedures are
3   being followed with respect to notification of alleged victims.
4           MS. SASSOON:  Yes, your Honor, they are.
5           THE COURT:  Thank you.  I will now hear from defense
6   counsel.
7           MS. LENOX:  Thank you, your Honor.  The Federal
8   Defenders were appointed to represent Mr. Ray -- I'm sorry.
9           The Federal Defenders represented Mr. Ray at his
10  presentment yesterday for a presentment only.  We did not fill
11  out a financial affidavit at that time.  That still needs to be
12  filled out or Mr. Ray has to retain counsel.
13          So, I would ask for a brief adjournment of roughly two
14  weeks, both so that we can sort out the representation issue
15  and also so that on that date there may be a possible bail
16  hearing for Mr. Ray.
17          THE COURT:  So I take it on behalf of Mr. Ray today
18  you are requesting an adjournment of two weeks and a further
19  conference in approximately two weeks to discuss those items.
20          MS. LENOX:  That's correct, your Honor.
21          THE COURT:  And I take it from the government there is
22  no objection.  That's consistent with your request as well.
23          MS. SASSOON:  Yes, your Honor.  And I would just note
24  that to the extent that his representation is in flux, that
25  will delay the ability to enter a protective order and obtain

11
K2C7RAYC

1  hard drives from defense counsel.  So, while we can get the
2  first wave of discovery out, that may delay the production of
3  the other categories.
4         THE COURT:  Although it sounds like you've got plenty
5  of work to do with respect to the remainder of the productions
6  and that you can get it ready so when there is counsel.
7         MS. SASSOON:  Absolutely.
8         THE COURT:  Let's discuss the Speedy Trial Act for a
9  moment.  I take it the defendant was arrested yesterday so it's
10 one day that's run on the speedy trial clock?  Is that right?
11        MS. SASSOON:  He is being arraigned today, so I think
12 that it would start to run from the time of arraignment.
13        THE COURT:  So there is no time that's run.
14        MS. SASSOON:  That's my understanding.
15        THE COURT:  Is there an application with respect to
16 the speedy trial clock?
17        MS. SASSOON:  Yes, your Honor.  The government would
18 move to exclude time between today and the date of the next
19 conference, once it's determined, in the interests of justice,
20 so the government can prepare and produce discovery, defense
21 counsel can begin reviewing discovery, and the defendant can
22 sort out his representation in this case.
23        THE COURT:  Give me a second just with respect to the
24 next conference.  February 26 at 3 p.m.?
25        MS. SASSOON:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    MS. LENOX:  That's fine, your Honor.  Thank you.
2    THE COURT:  OK.  Does the defense have any objection
3    with respect to the exclusion of time under the Speedy Trial
4    Act?
5    MS. LENOX:  No objection, your Honor.
6    THE COURT:  So, I will then exclude time under the
7    Speedy Trial Act from today until February 26 pursuant to 18
8    U.S.C. 3161(h)(7)(A).  I find that the ends of justice served
9    by excluding such time outweigh the interests of the public and
10   the defendant in the speedy trial for a number of reasons,
11   including the need for the defendant to have time to retain
12   counsel or have counsel appointed, for there to be time for the
13   government to produce discovery to the defendant, and to have
14   discussions about a protective order and the nature of the
15   discovery to be produced, and also for the defendant to have
16   time to review any discovery that is made available.
17   Is that sufficient from the government's perspective?
18   MS. SASSOON:  Yes.  Thank you.
19   THE COURT:  Is there anything else from the
20   government's perspective that we should do today?
21   MS. SASSOON:  No.  Thank you, your Honor.
22   THE COURT:  From the defense's perspective?
23   MS. LENOX:  No.  Thank you, your Honor.
24   THE COURT:  Thank you all for coming in today.
25   (Adjourned)