K4TQrayC

1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4            v.                 20 CR 110 (LJL)
                                 REMOTE VIDEO and
5                                  TELECONFERENCE

   LAWRENCE RAY,

6

7             Defendant.

   ------------------------------x

8

                               New York, N.Y.
9                             April 29, 2020
                              10:40 a.m.

10

11    Before:

12                  HON. LEWIS J. LIMAN,

13                            District Judge

14
                      APPEARANCES
15

   GEOFFREY BERMAN
16        United States Attorney for the
        Southern District of New York
17    DANIELLE R. SASSOON (via video)
   LINDSEY KEENAN (via telephone)
18        Assistant United States Attorneys

19    FEDERAL DEFENDERS OF NEW YORK INC.
       Attorneys for Defendant Ray
20    MARNE L. LENOX (via video)
   PEGGY CROSS-GOLDENBERG (via telephone)

21

22

23

24

25

K4TQrayC

1          (The Court and all counsel appearing via

2    videoconference or teleconference)

3          THE COURT:  Good morning, everybody.  This is Judge

4    Liman.  Can counsel hear me?

5          (Pause)

6          THE COURT:  I apologize for the technological

7    problems.  What I wanted to do is take appearances from

8    counsel, first for the government and then for the defendants.

9          MS. SASSOON:  Yes.  Good morning, your Honor.  This is

10   Danielle Sassoon for the United States by video, and my

11   colleague, Lindsey Keenan, is joining by telephone, and we

12   represent the United States.

13         THE COURT:  Good morning.

14         MS. LENOX:  Good morning, your Honor.  For Lawrence

15   Ray, this is Marne Lenox.  I am joining by video with my

16   colleague, Peggy Cross-Goldberg, on the phone.

17         THE COURT:  Good morning.  It is good to see the faces

18   of all of you, and you also, Mr. Ray.  And I hope that soon we

19   will be able to see one another in person.

20         As a preliminary matter, I just wanted to be sure I

21   have a sense of defense counsel to proceed today by way of

22   video conference.

23         Ms. Lenox, do you consent on behalf of your client?

24         MS. LENOX:  I'm sorry.  I don't quite understand; that

25   if the video conference does not continue to work, that we will

1    proceed by telephone?

2         THE COURT:  Correct, and that you are OK proceeding

3    today by way of video.

4         MS. LENOX:  Oh, yes.  Yes, of course.

5         THE COURT:  And I should say that while we can see one

6    another, there is also a feed to the other counsel for the

7    government and to counsel for the defendant, and I believe also

8    to members of the public.

9         So, what I would like to do first is just get a report

10   from the government with respect to the status of discovery in

11   this case, Ms. Sassoon.

12        MS. SASSOON:  Yes, your Honor.  I'm happy to report

13   that despite the current circumstances, we have been able to

14   make substantial progress with discovery.  We have made five

15   productions to date, and those productions have included all of

16   the evidence in this case that was gathered before the

17   defendant's arrest, and that includes the email accounts and

18   all of the iCloud accounts.  It also includes some of the

19   electronic discovery seized in the premises search at the time

20   of his (no audio).  In addition to that, we are in the process

21   of making another substantial production to defense counsel.

22        We recently requested hard drives amounting to 12

23   terabytes of data that were dropped off by defense counsel

24   yesterday, and now that we have those drives, we will be able

25   to load about 12 terabytes of data that has been successfully

1    extracted by the FBI despite some of the limitations in their

2    capacity during these times, and that will account for nearly

3    all of the electronic evidence seized in the search warrant.

4    It will take about a week to load, but we will be able to

5    provide that to defense counsel roughly on the date of the

6    discovery deadline originally set here, which was May 6.

7           In addition to that, we have successfully scanned

8    hundreds of pages of paper documents that were seized in the

9    premises search.  That scanning was completed several days ago,

10   and so those papers will be included in the next production.

11          And the only items that are still being extracted by

12   the FBI are approximately 19 phones and one Apple tablet.  I'm

13   hopeful that that will be extracted soon and produced to

14   defense counsel promptly.  The one unknown factor there is that

15   if they are not easily able to bypass the pass code and the

16   security features of the phone, the ability to unlock those

17   phones can take a little bit more time, and I just don't have a

18   status report on that yet.

19          But that's the state of discovery.  By approximately

20   May 6, I expect that we will mostly have completed the

21   discovery with the few outstanding items that I mentioned.

22          THE COURT:  So, do you have, Ms. Sassoon, an estimate

23   as to when you will be done with the few items that will not be

24   done by May 6?

25          MS. SASSOON:  I am waiting for a progress report from

1    the FBI on whether they have been able to unlock those

2    remaining phones, and I can provide the Court with an update by

3    letter once I get that report.  But, again, it's going to

4    depend on whether the phones are readily unlocked or not.  If

5    they are easily unlocked, that discovery should be completed in

6    the next couple weeks as long as we get hard drives from the

7    defense counsel.

8              THE COURT:  Ms. Lenox, do you agree with what

9    Ms. Sassoon has said with respect to the status of discovery?

10             MS. LENOX:  Yes.  I just want to make clear there have

11   been the five productions that have been made to date.  They

12   total about 2.6 terabytes worth of information, and the

13   outstanding discovery, based on the government's request for

14   drives, amount to 12 terabytes.  There is still a substantial

15   amount of discovery outstanding.  It seems as though there is

16   at least 80 percent of the discovery that we have not yet

17   received.  I understand the government intends to produce most

18   of that within the next couple of weeks, but I just want to

19   make clear that the five productions that have been made so far

20   are dwarfed by what remain in the outstanding discovery.

21             THE COURT:  Ms. Lenox, do you have a sense today of

22   what motions you will have to make, if any?

23             MS. LENOX:  We do, and we do intend to file motions.

24   As your Honor is aware, the government has represented there

25   was a post arrest statement from Mr. Ray that we will likely

1   seek to suppress.  The search warrant evidence we will likely

2   seek to suppress.  We may seek to suppress the cell site

3   evidence as well.  We may also file a motion to dismiss one or

4   more of the charges based on a failure to allege an offense.

5           And the government also last week on April 21 made us

6   aware of a post indictment restraining order that they are

7   intending to enter that was signed more than a month ago on

8   March 19, and that would restrict Mr. Ray from accessing his

9   domain accounts under GoDaddy.  So, we may lodge a challenge to

10  that order as well.

11          THE COURT:  I would like to today set a trial date for

12  the case.  I'd like to set a date right before the end of the

13  year.  With that in mind, Ms. Lenox, when will you be able to

14  make motions?

15          MS. LENOX:  Your Honor, I am not in a position right

16  now to speculate about how long it will take to prepare and

17  file our motions.  The reality is that Mr. Ray remains

18  incarcerated.  We've asked the government, and they've agreed,

19  to produce all of the non-sensitive materials that have been

20  provided so far to Mr. Ray.  That amounts to nearly 2 terabytes

21  worth of data, about 1.6 terabytes, I believe, of non-sensitive

22  disclosure.

23          Mr. Ray, also pursuant to the protective order, needs

24  to review in person with counsel the sensitive discovery in

25  this case.  And that largely requires, not only us to be

K4TQrayC

1    present, it requires a computer.  The non-sensitive discovery

2    that he needs to review also will require a computer.  Much of

3    that discovery cannot actually be printed out.  As the

4    government referenced, there are a number of devices and

5    information abstracted from devices, email accounts, and iFile

6    accounts, all of which needs to be reviewed on a computer.

7         Our understanding right now is that as they are at the

8    MDC, no one is available to review any discovery on a drive.

9    So, while the government is working to provide a drive or

10   multiple drives for Mr. Ray to review while incarcerated, that

11   is (1) just on sensitive discovery, and (2) that is information

12   that he very likely will not be able to review given the

13   conditions at the facility right now.

14        So, given all of that, and the extraordinary amount of

15   discovery in this case, which constitutes literally millions

16   and millions of pages, hundreds of videos and audio files, I

17   think we are too early in the process for us to be able to

18   provide a date by which we will be able to review the discovery

19   discussed with Mr. Ray, the contents of the discovery and to

20   file motions.

21        THE COURT:  Ms. Lenox, I am sensitive, obviously, to

22   the COVID situation, but also to your client's right to have a

23   speedy trial.  Let me ask you if you have a suggestion with

24   respect to how we should proceed, and then I'll turn to

25   Ms. Sassoon.

K4TQrayC

1          MS. LENOX:  This is Marne Lenox for Mr. Ray.

2          I would suggest setting another conference date in

3   another month or two, both to see where we are with discovery

4   and ensure that it is actually complete by then, and also to

5   get a sense of where things are at the MCC with respect to

6   Mr. Ray's ability to review the discovery in this case.

7          THE COURT:  Ms. Sassoon, two questions for you.

8   First, do you have anything that you can report with respect to

9   when the defendant and defense counsel will be able to review

10  the materials at the MCC.  And then second, I'm interested in

11  your views with respect to how we should proceed.

12         MS. SASSOON:  Yes, your Honor.  With respect to

13  reviewing of discovery at the prison, I did tell defense

14  counsel recently at their request that I would provide paper

15  copies of some of the non-sensitive discovery, including all of

16  the warrants, for purposes of Mr. Ray's review.  That way he

17  won't be dependent on a hard drive or the law library to be

18  able to review some of the materials.

19         With respect to his ability to meet in person with

20  defense counsel to review sensitive discovery materials, that I

21  don't at this point have an answer to.  I think that's going to

22  depend on how things evolve both out of the prison and within

23  the prison in terms of this pandemic, and I don't yet have an

24  answer to that.

25         In light of these unusual circumstances, I have no

1   objection to defense's request to come back in a month's time

2   given, in particular, their difficulties in consulting with

3   their client.  I don't think it will ultimately be necessary to

4   review the entirety of discovery to make a decision about

5   motions.  I think they largely have the information that they

6   need and have clearly already assessed any current motions they

7   intend to bring; but given limitations even on meetings with

8   their client and consulting on strategy, I'm comfortable with a

9   conference in a month's time.

10              THE COURT:  Ms. Lenox, let me now turn to you.

11              I expect that once jury trials begin, there is going

12  to be a backlog of trials, and this is the case that everybody

13  has represented it takes several weeks to try.  With that in

14  mind, I would like to set a trial date for this case.  I

15  anticipate somewhat out into the future.  We may find a date

16  that would be longer than what I would otherwise schedule in

17  the absence of the COVID crisis.  And then what I would propose

18  is that we try to work out motions so that they are filed

19  within that time period, so that they can be decided within

20  that time period.

21              The dates that I have in mind was November 30, with an

22  exclusion of time from today until November 30 in order for you

23  to review discovery, to prepare for trial, to make motions, and

24  to have conversations with your client.

25              Is that acceptable to the defense, or is that too

1    soon?

2            MS. LENOX:  Your Honor, respectfully, I would ask for

3    far more time than that.  I think that that number of months

4    between now and November 30 to review discovery, to have

5    conversations with Mr. Ray, for Mr. Ray to review discovery, to

6    file motions, and prepare for trial, I think that is highly,

7    highly unlikely to happen.

8            It seems virtually impossible to me from where I sit

9    today, given that we are at the end of April and this crisis is

10   still ongoing.  I think that it makes more sense to come back

11   in a month or two and reevaluate the time frame then when we at

12   least have more information about how this pandemic is

13   evolving.

14           THE COURT:  Give me one moment to think about your

15   suggestion.

16           MS. SASSOON:  Your Honor, this is Danielle Sassoon for

17   the government.

18           Given the amount of time that you're proposing between

19   now and the trial, which is about seven months, and what you

20   said about a backlog, there is some merit to a placeholder

21   trial date with the possibility of a future adjournment, even

22   if the trial date is not November 30.

23           THE COURT:  Ms. Sassoon, that's what I'm thinking, and

24   I'm thinking also of a placeholder date for motions.  We can,

25   ostensibly, set that for June depending on what happens with

1    the crisis.  But I do hear defense counsel with respect to

2    November 30 and the volume of the discovery.  So let me look at

3    the calendar for a moment.

4              MS. LENOX:  Your Honor, before you take a look at the

5    calendar, I just want to say one more thing with respect to the

6    volume of discovery.  I asked our IT department to give me a

7    sense of exactly how much discovery we're talking about because

8    when we're talking in terms of terabytes, it's a large amount

9    of discovery, and it's hard to wrap your mind around exactly

10   what that means.

11             The five productions that have been provided so far

12   totals 2.6 terabytes.  It consists of 36,800 documents in one

13   set and a page count of over one million for another set.  It

14   also includes four iPhones with a report of 230 gigabytes of

15   data, 8 iFile accounts with 500 gigabytes of data, 423 audio

16   files, and 341 video files which are not part of the material

17   that is included on the devices.  This is just the 2.6

18   terabytes of discovery that the government has produced to

19   date.  They have asked us for drives of 12 more terabytes of

20   discovery and have also indicated on the phone today that in

21   addition to that, there are still 19 more phones outstanding

22   that need to be inspected and to be sourced out.

23             So, all of that said, I just want to make clear just

24   how much discovery we are talking about in this case and how

25   many hours it will take for the defense and for Mr. Ray to

K4TQrayC

1    review the discovery notwithstanding Coronavirus, and now on

2    top of that add the protective order and add the pandemic that

3    we're currently in, and the fact that we have not had a chance

4    to have a sit-down conversation with Mr. Ray in well over six

5    weeks.

6         I just want to be very clear about the time frame.

7    While I understand that we're talking about setting placeholder

8    dates, I do believe that it is still early to even be setting

9    placeholder dates considering all of the circumstances in this

10   case.

11        THE COURT:  Ms. Sassoon, I'm going to direct you, as I

12   think have before, to identify for the defense, to the extent

13   you are able, the most significant part of that discovery, both

14   what you would anticipate presenting at trial and any material

15   that you believe would be exculpatory.  So, I'm going to direct

16   you to assist the defense with respect to that.  Is that

17   understood?

18        MS. SASSOON:  Yes, your Honor.  I mean, there are two

19   phases to how we are doing that.  We produced the entirety of

20   the defendant's accounts, his email accounts, his iFile

21   account; but with respect to other victims, we've produced only

22   information that was responsive.  So, for example, with the

23   iCloud account, one of the victims, as an example, we did not

24   turn over the entirety of the iCloud search warrant return.  We

25   already did a responsive review and only did produce those

K4TQrayC

videos, messages, audios that we deemed responsive.  The same

thing for any email accounts that didn't belong to the

defendant.

And we're in the process of doing similar

responsiveness review for the defendant's account now that

discovery is nearly complete and will be producing to defense

counsel versions of his account that only include the

responsive material.

But to be clear, the responsive material is still a

large amount of data.  The amount of emails, for example, in

his account that are responsive are going to be very large

because any email that he sent to co-conspirators or victims is

going to be responsive.

Subsequent to that, we will be doing a more refined

review for purposes of our preparation for trial in terms of

what exhibits we would want introduced or what pieces of

evidence we deem the most salient, but we are not far enough

along in our review to be able to say that we are on the verge

of producing something like that to defense counsel.

With respect, for example, to the 12 terabytes of data

that has just been extracted, we're producing that data

wholesale to defense counsel, having just completed the

extraction, but we have yet to review that material except to

identify whether it's a responsive phone or drive or not.

So, in terms of what we're producing present from the

K4TQrayC

1  premises search, we've already eliminated a lot of electronic

2  evidence that is just entirely unresponsive, and we're not

3  producing that.  But within the items we are producing, we

4  still have to do a responsiveness review, which will take time.

5        THE COURT:  Ms. Sassoon, do you have any sense as to

6  when you will complete your review as to the materials that, in

7  your words, are the most salient?

8        MS. SASSOON:  I think the responsiveness review of

9  Mr. Ray's account is going to be complete within the next two

10 months; and with respect to the extracted data, you know, it's

11 difficult for me to say when I myself don't have a copy of the

12 data yet.

13       THE COURT:  So, here is what I am going do:  I hear

14 Ms. Lenox's point about it being premature to set a trial date

15 today, I think particularly because the government is not able

16 even to give a timetable as to when it will be able to identify

17 the most salient pieces of evidence, and I think we will all

18 have more information in a month's time.

19       So I think there is merit to the notion of moving on

20 before setting a trial date.  I'm doing that maybe against my

21 better instincts because I fear that counsel's calendars will

22 become filled in the winter and early next year, but I'm going

23 to go ahead and do it anyway.

24       I would hope to set a trial date at our next

25 conference, and in light of what Ms. Lenox has said, I would

K4TQrayC

1   think about doing that sometime in January, so that the trial

2   date would be in January.

3         I do want to set motions, and I recognize that there

4   would be an application from defense counsel to extend the date

5   for motions; and depending on the facts, I very well may grant

6   that, but I think it would be useful to have a control date for

7   motions, and to exclude the time from the date for the motions.

8   So, I'm going to look at my calendar now with respect to that.

9         Ms. Lenox, recognizing that we are now in April, I

10  understand all of the (inaudible) work that you have with

11  respect to reviewing materials, but I would like to set a

12  (inaudible) for applications for the warrant for sometime, I'd

13  like to set a motions date of September 14.  Is that acceptable

14  to the defense, recognizing that depending on how things go,

15  you may need to make an application to extend that date?

16        MS. LENOX:  September 14?

17        THE COURT:  Yes.

18        MS. LENOX:  OK.

19        THE COURT:  And then the government would have until

20  September -- I'm trying to work with my technology to try and

21  figure out dates.  The government would have until the 28th to

22  respond; reply on October 5; and we would keep October 8 as

23  date for any hearing.

24        MS. SASSOON:  Two weeks is plenty of time to respond

25  to motions, but I would respectfully request three weeks under

K4TQrayC

1   these circumstances.  Ms. Lenox identified a number of

2   potential substantial motions, both as to the indictments and

3   as to several search warrants in this case and is now getting

4   numerous months to work on these motions that she has already

5   identified, so we would respectfully ask to have three weeks to

6   respond.

7           THE COURT:  That is acceptable.  So, October 5 for the

8   reply; opposition October 13 for a reply; and let me ask my

9   deputy if we can schedule a hearing, if necessary, for the

10  afternoon of October 15.

11          MS. LENOX:  Your Honor, given the government's

12  representation with respect to how long the response will take

13  to the motions, I would ask for an additional week to reply to

14  the government's response.

15          THE COURT:  You can have until the 16th, and then

16  we'll schedule a hearing, it's far enough out, for October 19.

17          Matt, give counsel a time for the afternoon of

18  October 19.

19          LAW CLERK:  Yes, 3:00.

20          THE COURT:  3:00 on October 19.

21          And then as to that, I would ask if there's consent to

22  exclude time from today until October 19 under the Speedy Trial

23  Act.  Ms Lenox?

24          MS. LENOX:  Yes.  The defense consents.

25          THE COURT:  Ms. Sassoon, is that acceptable to the

1  government to exclude time?

2        MS. SASSOON:  Yes.  Thank you, your Honor.

3        THE COURT:  OK.  So before I set the next conference

4  date, let me enter an Order right now excluding time from today

5  until October 29 under the Speedy Trial Act.  I find under 18

6  U.S.C. 3161(h)(7)(A) that the interests of justice outweigh the

7  interest of the public and the defendant in a speedy trial

8  given the huge amount of discovery in this case, the

9  circumstances prevented by the COVID crisis, the need for

10  defense to have time to review that discovery, and to review it

11  with the defendant, and the time necessary to prepare what

12  sounds like a complicated and voluminous set of motions.

13        Is that finding acceptable to the government?  Is

14  there anything else I should have said to make the exclusion of

15  time effective, Ms. Sassoon?

16        MS. SASSOON:  That was perfect.  Thank you, your

17  Honor.

18        THE COURT:  Matt, can you give us the time four weeks

19  from today for status conference where we will set a trial

20  date.

21        LAW CLERK:  May 29 at 3:00.

22        THE COURT:  Is that acceptable to counsel?

23        MS. SASSOON:  I just want to clarify.  This Danielle

24  Sassoon for the government.  If we are going to proceed by

25  video conference, it was my understanding that the conferences

1    should be in the morning.  Perhaps that is no longer the case,

2    but if it is, then perhaps we should have a time in the

3    morning.

4            MS. LENOX:  This is Marne Lenox.  I have a conference

5    scheduled the morning of the 29th as it is, just so the Court

6    is aware.

7            THE COURT:  Let me ask, Ms. Lenox, are you requesting

8    a video conference with your client present or can we simply

9    just establish a conference and would you be willing to waive

10   the presence of your client and to proceed by audio conference?

11           MS. LENOX:  I'm not in a position to waive Mr. Ray's

12   appearance at the next status conference.  Is there a way for

13   us to meet telephonically and for Mr. Ray to be present on the

14   telephone without having the video component?

15           THE COURT:  Let me ask my deputy if he knows the

16   answer to that.

17           DEPUTY CLERK:  Was the question all of us having the

18   telephone conference or was it just us on video and Mr. Ray on

19   telephone?

20           MS. LENOX:  I would be happy to suspend with the video

21   portion of the conference.  I just want to make sure that that

22   wouldn't mean that Mr. Ray was not available to participate by

23   phone.

24           DEPUTY CLERK:  No, he would be able to participate by

25   phone as well.

K4TQrayC

1          THE COURT:  And so, Matt, can we do that in the

2     afternoon then if we're not doing video?

3          DEPUTY CLERK:  Yes.  From our end, yes, we can.  We

4     can do it at any time because we can use our normal

5     teleconference line for that.

6          THE COURT:  So, May 29 at 3:00 p.m.  Acceptable to

7     everybody?

8          MS. SASSOON:  Yes.

9          MS. LENOX:  That's fine, your Honor.  I will just

10    follow up with the MCC to make sure that they can accommodate

11    that, and I will let the parties and chambers know if they

12    cannot accommodate that request for some reason.

13         THE COURT:  That would be very helpful.  Thank you.

14         DEPUTY CLERK:  If it needs to be through the Court

15    Call, and it needs to stick to the times in the morning that

16    were given by the court, we can also do 12:00 noon on that same

17    day.  That's the last time to be able to use the Court Call

18    April.

19         MS. LENOX:  That would be fine.  I think that's

20    preferable because the afternoon is specifically reserved for

21    counsel calls, and the mornings have been reserved for court

22    appearances.  So, I wouldn't want Mr. Ray to take up a place

23    for someone who can otherwise have a call with counsel in the

24    afternoon.

25         THE COURT:  Ms. Sassoon, is that acceptable to the

1    government, May 29 at noon by Court Call?

2            MS. SASSOON:  Yes, your Honor.

3            THE COURT:  One final matter I have before I ask

4    counsel whether there's anything else I should address.  It is

5    incumbent on me to do so, which is to ask counsel for both

6    parties to consider whether under the circumstances they would

7    be prepared to dispense with the jury trial and have this case

8    tried to the Court.  I'm loath to even make the suggestion

9    because the defendant has an absolute right to a jury trial,

10   and my suggestion should not be read in any way to put a thumb

11   on the scale with respect to that.  If the defense and

12   government want a jury trial, that is what we will have.  But

13   as we sit here today, I think everybody is aware that there is

14   uncertainty what will happen with jury trials and how soon or

15   what the circumstances will be like in the winter.  And I'm not

16   going to ask anybody to say anything with respect to this now

17   if they don't want to, but I would ask you both to consider the

18   question of a bench trial versus a jury trial.

19           I also would say -- this is directed to Ms. Lenox --

20   that I expect that at the next conference I will be setting a

21   trial date either at the very end of this year or for early

22   next year, so you should keep that in mind.

23           Ms. Sassoon, is there anything from the government's

24   perspective that I should address today?

25           MS. SASSOON:  No.  Thank you, your Honor.

K4TQrayC

1          THE COURT:  Ms. Lenox?

2          MS. LENOX:  No, nothing further.  Thank you.

3          THE COURT:  All right.  Well, thank you all.  Stay

4   safe and healthy everybody, including Mr. Ray, and we will

5   speak in a month's time.  Thank you very much.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25