K94drayc
                        Teleconference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                             20 Cr. 0110(LJL)

5    LAWRENCE RAY,

6              Defendant.

7    ------------------------------x

8
                                             September 4, 2020
9                                            12:00 p.m.

10
     Before:
11
                        HON. LEWIS J. LIMAN,
12
                                             District Judge
13

14                    APPEARANCES (via telephone)

15   AUDREY STRAUSS
          Acting United States Attorney for the
16        Southern District of New York
     BY:  DANIELLE RENEE SASSOON
17        LINDSEY KEENAN
          MARY ELIZABETH BRACEWELL
18            Assistant United States Attorneys

19   FEDERAL DEFENDERS OF NEW YORK INC.
          Attorneys for Defendant
20   BY:  MARNE LYNN LENOX
          PEGGY CROSS-GOLDENBERG
21        NEIL PETER KELLY

22

23

24

25

K94drayc
                              Teleconference

 1              (Teleconference established)

 2              THE COURT:  Good afternoon.  This is Judge Liman.

 3              Who do we have on for the government?

 4              MS. SASSOON:  Good afternoon, your Honor.  This is

 5     Danielle Sassoon for the United States.  I'm also joined by

 6     Molly Bracewell and Lindsey Keenan, also for the United States,

 7     and we're joined by FBI Special Agent Kelly Maguire as well.

 8              THE COURT:  Good afternoon, Ms. Sassoon, and good

 9     afternoon to others.

10              For the defense, who is on?

11              (Pause)

12              Hello.  Do we have Ms. Lenox on?

13              MS. SASSOON:  She was on.  Maybe we lost her.  This is

14     Peggy Cross-Goldenberg from the Federal Defenders.

15              THE COURT:  Good afternoon, Ms. Cross-Goldenberg.  Why

16     don't we take just a moment for Ms. Lenox.

17              MS. CROSS-GOLDENBERG:  She is on but she says that the

18     court had muted her and she can't unmute.

19              THE COURT:  OK.  All right.

20              THE CLERK:  I'm sorry, Judge.

21              Do you know the last four digits of her number?  I'm

22     sorry.  She may have been muted.

23              MS. CROSS-GOLDENBERG:  Sure.  I'm sure she'll -- I

24     just want to make sure which number she called from.

25              9963.

K94drayc
                        Teleconference

1               THE CLERK:  Give me one moment and I'll unmute her.

2               MS. CROSS-GOLDENBERG:  And we also have Neil Kelly

3       from the Federal Defenders on the line.

4               MR. KELLY:  Good afternoon.

5               THE CLERK:  Ms. Lenox, can you hear us?

6               MS. LENOX:  I can hear perfectly well and I believe

7       now --

8               THE COURT:  Sorry.  Is Ms. Lenox on for Mr. Ray?

9               MS. LENOX:  Yes.  This is Marne Lenox.

10              Can you hear me?

11              THE COURT:  We can hear you.  Good afternoon, Ms.

12      Lenox.

13              MS. LENOX:  Good afternoon, your Honor.

14              THE COURT:  Do we have Mr. Ray on?

15              THE DEFENDANT:  Yes, your Honor.  Good afternoon, your

16      Honor.

17              THE COURT:  Good afternoon, Mr. Ray.

18              THE DEFENDANT:  Thank you.

19              THE COURT:  All right.  Very well.

20              So I want to make sure first, before we proceed

21      further, that I've got the consent of all parties to proceed

22      with this conference telephonically and with me outside of the

23      district.

24              Ms. Sassoon, do you consent for the government?

25              MS. SASSOON:  Yes, your Honor.

K94drayc
                        Teleconference

1             THE COURT:  And, Ms. Lenox, do you consent?

2             MS. LENOX:  Yes, your Honor.

3             THE COURT:  And, Mr. Ray, do you consent?

4             THE DEFENDANT:  Yes, your Honor.

5             THE COURT:  Thank you.

6             Ms. Sassoon, anything else I should ask on that topic

7   before we go to substance?

8             MS. SASSOON:  No, your Honor.

9             THE COURT:  OK.  Thank you very much.

10            So, I have the defendant's motion for release and for

11  raising a variety of discovery issues and issues with respect

12  to the protective order.  Let me lay out a couple of things at

13  the beginning before I first -- I ask to hear from the defense

14  and then from the government.

15            First of all, I noted that there is a request to

16  adjourn the date for motions, and I am prepared to adjourn the

17  date for motions.  Ms. Lenox, I'm going to be interested in

18  your proposal with respect to an adjourned date, but I'm

19  contemplating moving all of those dates by about four weeks.

20            Second, I note that, in connection with the pandemic

21  and the issues of the defense having access to Mr. Ray, that

22  it's going to become very difficult to try this case, as I had

23  hoped to try it, on January 19.  So, I am prepared also to

24  adjourn the trial date to make sure that there's ample time for

25  the defense to prepare a defense and to consult with Mr. Ray.

K94drayc
                         Teleconference

1          The third thing that I would like to raise touches in

2     part on the order in which I'd like to hear the matters

3     addressed today.  There is a request for release on bail.  One

4     of the bases for release on bail, under 3142(i), is the

5     authority to release a defendant when such release is necessary

6     for the preparation of a defense.  To me, from the review of

7     the papers, that's the principal grounds upon which the defense

8     is asking for Mr. Ray's as release, and it is a ground that

9     gives me some concern.  That is, I think the defense has raised

10    some serious issues, some serious concerns about the ability of

11    the defense to, have access to Mr. Ray and Mr. Ray to have

12    access to discovery in order for him to prepare a defense.

13         So, for that reason, and because a number of the other

14    issues touch upon making sure that Mr. Ray has the information

15    for him to be able to prepare a defense and that counsel has

16    access to Mr. Ray, I'm going to defer ruling on the motion for

17    Mr. Ray's release until after I've heard and perhaps decided

18    issues with respect to the protective order, early disclosure,

19    Brady, the 12(b) motion, and the like.

20         And, Ms. Sassoon, more to you, I'm going to be very

21    interested in everything that the government is preparing to do

22    to make early disclosure of things like witness lists, exhibit

23    lists and the like in order to facilitate the preparation of a

24    defense in this case.  I'm considering very seriously the

25    motion for bail, but I'm not going to rule on that today, and

K94drayc
                          Teleconference

 1    I'm not going to rule on that until after I've heard and

 2    perhaps decided the discovery issues.

 3            So, with that as the preface, why don't I hear from

 4    you, Ms. Lenox, or from anybody from the Federal Defenders on

 5    behalf of Mr. Ray, the issues that you would like to raise with

 6    me, and then I'll hear from the government.

 7            MS. LENOX:  Thank you, your Honor.  This is Marne

 8    Lenox, for the record.

 9            So most of the issues have already been discussed at

10    length in our motion and in our reply, so I don't want to beat

11    a dead horse, but there are a few additional things that I

12    would like to point out.

13            With respect to the protective order and the sensitive

14    materials that the government provided as exhibits, the sealed

15    exhibits for the Court, I just want to make clear that our

16    request with respect to the protective order and the sensitive

17    materials is not a very broad one.  We're not asking the Court

18    to engage in a piece-by-piece determination of every single

19    piece of discovery that has been marked sensitive.  In fact,

20    we're talking about a very small, narrow portion of the

21    discovery that would be in dispute and that we would anticipate

22    having to raise with the Court.

23            And what we are proposing is merely a mechanism by

24    which the Court can dedesignate, remove the sensitive

25    designation from materials to allow Mr. Ray to review these

K94drayc
Teleconference

1    materials if he were to remain incarcerated.

2              Yes, absolutely, there is discovery that will stay

3    under the sensitive designation.  We have not moved for all of

4    the sensitive discovery to become not sensitive for Mr. Ray's

5    review.  Certainly, there are things that the government

6    provided in its exhibits to the Court under seal that we did

7    not request the government provide directly to Mr. Ray in our

8    specific list of materials that we asked be dedesignated.  We

9    understand that videos that display nudity or photographs of

10   individuals who are nude should be marked sensitive.  And for

11   that reason we would not move the Court, if the Court were to

12   impose the relief that we request, which is a mechanism to

13   dedesignate certain sensitive discovery to allow for Mr. Ray's

14   review, we would not move the Court, and we have not moved the

15   government, to dedesignate that type of material.  I just want

16   to be very clear on that.

17             The types of materials that we would contemplate

18   moving the Court, after consultation with the government, are

19   things like written transcript or handwritten confessions.

20   These things are exculpatory.  This is evidence in black and

21   white.  It does not expose the same sensitivity concerns that

22   other types of materials do.

23             And, again --

24             THE COURT:  Ms. Lenox, let me ask you a couple of

25   follow-up questions.

K94drayc
                          Teleconference

1          MS. LENOX:  Yes.  Sure.

2          THE COURT:  First of all, can you be precise with me,

3    I know it is in your letter, but exactly the modification that

4    you would have me make to the protective order?

5          MS. LENOX:  Yes.  Absolutely.  And just so that I can

6    be as precise as possible, I'm going to pull up our actual

7    motion --

8          THE COURT:  OK.

9          MS. LENOX:  -- so that I can find the language.

10          But essentially, without -- before I have a chance to

11   pull up the order and find the language, essentially the

12   request is that the Court modify the order to add language that

13   would allow the parties to avail themselves of Court

14   intervention if there is a dispute between the parties about

15   material that has been marked sensitive, and that is so that

16   Mr. Ray has the ability to review that material.

17          THE COURT:  OK.  So let me, while you are looking --

18   we can find the language later -- let me ask you --

19          MS. LENOX:  I have it.  If your Honor would like the

20   specific language, I have it.  The language is:  "If the

21   government wishes to retain the sensitive designation for

22   disclosure material, the government shall move the Court within

23   seven days of the defense's request for dedesignation and make

24   a particularized showing of why the disclosure material,

25   subject to defense counsel's request, merits restriction.  If

K94drayc
                              Teleconference

1     the government fails to establish good cause for the

2     designation, the disclosure material at issue shall lose its

3     sensitive designation under the order, and that would allow

4     Mr. Ray to review that material without counsel present."

5              THE COURT:  OK.  A second question that I have for you

6     is that I understand that the government has asked for a change

7     to the protective order that in my view, and maybe I'm getting

8     it wrong, but that in my view would permit there to be

9     disclosure to Mr. Ray of sensitive material but would restrict

10    the defense from publishing that material on the Internet or

11    disseminating it to third a third party, which is one of the

12    purposes for a protective order, as I recall Judge Karas'

13    opinion, which is one of the lengthier and more better thought

14    through opinions on this.  It arises in the context of public

15    disclosure.

16             Can you explain to me your objection to the government

17    proposal?

18             MS. LENOX:  Sure.  So it's twofold.  The first is a

19    more broad policy objection, which is that the burden should

20    not be on the defense in the first instance.  The burden should

21    be on the government to show why the sensitive designation is

22    necessary.

23             I would also argue, your Honor, that Mr. Ray has had

24    access to a number of the materials that the government has

25    marked sensitive in some parts of its discovery production

K94drayc
Teleconference

1  based solely on where the government found the materials.  So

2  while the government has produced to Mr. Ray his emails and

3  certain email attachments which are all marked not sensitive so

4  that Mr. Ray may review them while he is incarcerated, some of

5  those very same materials, because they appear in alleged

6  victims' or witnesses' devices, are marked sensitive.  And so

7  for that reason, we do not believe that the government has

8  engaged in a good faith, narrow tailoring of what it has chosen

9  to designate sensitive and what it has chosen not to designate

10  sensitive.

11        But what that also means is that Mr. Ray has had

12  access for the last few months to at least some of the material

13  that the government deems sensitive.  And over that period of

14  time, there has been absolutely no indication that anyone from

15  the defense has -- or anyone in general has disseminated that

16  information publicly.  Certainly, there are no allegations that

17  Mr. Ray has done so or has attempted to do so, nor that any

18  other individuals related to the case have done so.

19        And so for those reasons the defense does not believe

20  that the government's proposal is necessary.  The --

21        THE COURT:  Let me ask you a follow-up question, which

22  is there other -- does that exhaust your objections to the

23  government's proposal?

24        MS. LENOX:  It does, yes.

25        THE COURT:  So let me ask you a follow-up with respect

K94drayc
Teleconference

1    to that.  As I understand it, you're asking for additional

2    documents to be dedesignated from those that Mr. Ray already

3    has; is that correct?  That's the --

4              MS. LENOX:  That's correct.

5              THE COURT:  -- whole reason we're ' discussing this.

6              MS. LENOX:  Correct.

7              THE COURT:  And I am sympathetic, as I indicated

8    before, to your client's interest in being able to review

9    additional discovery material that otherwise might be

10   considered to be sensitive.

11             What would your objection be, if you have one, to the

12   creation of essentially a third category of protected material,

13   that is, material that would be -- that could be shared with

14   Mr. Ray and that he could review outside of the presence of

15   counsel but that neither counsel nor Mr. Ray could publicize to

16   third parties or put on the Internet?

17             MS. LENOX:  That is an interesting proposal, your

18   Honor, and it is one that we have not fully discussed or

19   fleshed out.  It's something that I would want to talk to

20   Mr. Ray about, quite frankly, before entering an order to that

21   regard or before giving the Court the defense's opinion on

22   creating such a third category, but it is something that the

23   defense is willing to contemplate if that is something your

24   Honor is considering.

25             THE COURT:  OK.  I'm going to turn to Ms. Sassoon in a

K94drayc
Teleconference

moment on that, but it seems to me that that might be one

sensible way to address the protective order issue.

         The last question I've got for you on the protective

order is whether today you're asking me to dedesignate any of

the materials that have been submitted to me or whether those

were just exemplars?

         MS. LENOX:  Those were intended as exemplars.  To the

extent that the Court is willing to engage in the process of

ordering those materials and consider dedesignating them, I

would happily invite the Court to do so, but our intent today

was not to ask the Court explicitly to dedesignate the

material, and that was not our intent when we filed the motions

originally.  The intent was only to ask the Court for

permission to come to the Court when such disputes arise.  And

to the extent that we provided the Court with the materials

under seal, it was only done so in response to the government's

request to do so so that the Court had a fair and accurate

representation of exactly what it was that the defense was

requesting.

         So, while I certainly was not intending for the Court

to review those materials and make a determination based on

what we've provided, I certainly would not discourage the Court

from doing so, if your Honor is so inclined.

         THE COURT:  I actually do have one other question for

you which I would invite an answer, if you feel comfortable.

K94drayc
                              Teleconference

1            It was clear to me, from reviewing the materials that

2    were submitted to me, that are aspects of this case that I

3    don't completely understand, including the victim,

4    quote-unquote, confessions.  It seems to me that the parties

5    have a very different view as to the significance of those

6    confessions.  You're not obligated to give me a defense

7    perspective on the, quote-unquote, confessions, but if you are

8    comfortable, it would be helpful to me.

9            MS. LENOX:  The defense's perspective is that those

10   confessions, which we provided in part of sampling for the

11   Court, that those confessions are exemplars of the individuals,

12   the alleged victims in this case, confessing to harming,

13   poisoning Mr. Ray, to causing him physical harm, to causing

14   damage to his property.  There are numerous confessions of this

15   type where these individuals have said that they have been

16   plotting against Mr. Ray with other individuals for a number of

17   years and laying out exactly how they have done so in great

18   detail.  And so, to our mind, as far as the defense is

19   concerned, these confessions are exculpatory Brady material.

20           THE COURT:  All right.  Let me turn to Ms. Sassoon,

21   and then, Ms. Lenox, I'll turn back to you on the other

22   subjects.

23           Ms. Sassoon, can you hear me?

24           MS. SASSOON:  Yes, your Honor.  I have --

25           THE COURT:  I'll hear from you on anything you want to

K94drayc
                                Teleconference

1    say with respect to the protective order, but what is your --

2    two questions:  First, what is your objection to the

3    defendant's proposed language?  And then, second, would you

4    object to the creation of a third category that would permit

5    you to share more material with Mr. Ray for him to review in

6    his privacy without it being disseminated more broadly?

7              MS. SASSOON:  Your Honor, with respect to your latter

8    question, the government considers that basically in line with

9    what we are proposing, and we would welcome it.  As I'll

10   discuss, we are making an effort on a number of fronts to

11   provide access to discovery.  We would like to dedesignate

12   certain material, and I can discuss that in more detail, but we

13   are unable and unwilling to do that without the assurance that

14   this will not be posted and disseminated and without an

15   agreement that everyone is on that same page.  And that was the

16   spirit of our proposal to defense counsel.  And to the extent

17   that we categorize that as a third category of discovery, I

18   think that achieves the same purpose and we would welcome that.

19             THE COURT:  OK.  What about the first question I

20   asked, the defendant's language?

21             MS. SASSOON:  Yes.  With respect to that question, I

22   would like to take a step back.  There are a few things I want

23   to raise with respect to the context here.  One is a

24   significant development in terms of what is going on at the MCC

25   with respect to COVID-19.  We received information this morning

K94drayc
Teleconference

1    that legal in-person visits are scheduled to resume at the MCC

2    beginning on September 21st, and if that in fact happens, that

3    obviously changes the landscape here.  It's our position that

4    all of the defense requests should be denied for the reasons in

5    our letter, but all the more so if there are now in-person

6    legal visits that allow for the review of sensitive discovery

7    and in-person visits with the defendant.  It also has

8    implications for the bail application, for the exhibit

9    requests, for the protective order modification.  And so, at

10    the very least, the government would urge the Court to defer on

11    making drastic expansions of some of the government's existing

12    obligation in light of the fact that we are hopefully on track

13    to resuming the types of visits and discovery review that

14    existed before the pandemic.

15         THE COURT:  OK.  Let me interrupt you for a second,

16    Ms. Sassoon.

17         Just so that you don't get your expectations up, you

18    know my views, because I've written them, about whether it is

19    sufficient to address the defense's concerns with respect to

20    the review of materials to say the defendant can review the

21    materials in the presence of counsel.  I don't believe that

22    that is a sufficient answer, and so --

23         MS. SASSOON:  So I --

24         THE COURT:  That should be clear.  That doesn't mean

25    that I'm going to order a drastic change, in your words, but

K94drayc
                              Teleconference

1    just so that the defense doesn't have to argue that point.

2    I've written on that and those are my views.

3              MS. SASSOON:  Yes, your Honor.  I'm aware of those

4    views, and the government is certainly not suggesting that that

5    alone is sufficient and we are otherwise throwing up our hands

6    and not doing -- not taking significant steps to increase

7    access to discovery in other ways, and so I'll turn to that

8    now.

9              With respect to the protective order, as it exists

10   right now, there is a mechanism for dedesignating discovery and

11   that's in paragraph 8, which says:  "At defense counsel's

12   request, the government shall undertake a good faith review of

13   any sensitive disclosure material designations and shall advise

14   counsel for the undersigned defendant as to whether any such

15   documents may be released from the protective order."

16             And that is what the government has been doing, and

17   I'd like to walk through that a little bit so that the Court

18   can understand why the mechanism defense counsel is suggesting

19   is not warranted at this time.

20             THE COURT:  But I also would like to hear from you as

21   to what the objection is to their mechanism, because as a

22   general matter, protective orders should be as least

23   restrictive as need be to accomplish their objectives.

24             MS. SASSOON:  Yes, your Honor.

25             For one, as defense counsel sets out in their letter,

K94drayc
Teleconference

1    the burden is on them at this point to set out a compelling

2    justification.  And what they're asking for here is a regime

3    where if the government -- and I'm quoting from their letter --

4    "If the government wishes to retain the sensitive designation

5    for disclosure material, the government shall move the Court

6    within seven days of the request for dedesignation and make a

7    particularized showing of why the disclosure material merits

8    restriction."

9            And defense counsel has said orally today, you know,

10   we don't intend to abuse this, we don't intend to make such

11   sweeping requests.  But nothing about their proposal limits

12   them from subjecting the government to a writing exercise with

13   respect to every single piece of sensitive discovery which, it

14   is the government's position, they have yet to demonstrate an

15   improper designation and where we are poised to institute a new

16   potential provision of the protective order that would enable

17   the government to dedesignate large amounts of sensitive

18   discovery, which we are prepared to do, without having to go

19   through this written exercise for every piece of sensitive

20   discovery.

21           And I'd like to set out what we are prepared to do in

22   the event that the Court creates this third category of

23   disclosure material.  Now --

24           THE COURT:  Ms. Sassoon, let me interrupt you before

25   you answer that question.

K94drayc
Teleconference

1      Under the protective order as it's currently drafted,

2   do you have a view as to whether if the defense disagrees with

3   the government designation of sensitive material, they could in

4   any event bring that to my attention and ask for me to make a

5   determination as to whether it should be treated as

6   confidential?

7           MS. SASSOON:  So that is --

8           THE COURT:  That it is sensitive?

9           MS. SASSOON:  That is certainly something that is

10  available to them.  I don't think that we will necessarily get

11  to that point, given the steps I would like to describe to the

12  Court about what the government is in the process of doing.

13  But in any event, that's not what they're asking for here.

14  They're saying --

15          THE COURT:  No.  I understand that's not what they're

16  asking for here.  I'm just asking for your view on the form of

17  protective order and whether under the protective order the

18  government would have any objection to the defense making a

19  motion to me and submitting the material and saying the

20  following material should not be designated as sensitive, the

21  government hasn't justified its treatment, and then putting the

22  burden on you in a response to justify what material should be

23  treated as sensitive.

24          MS. SASSOON:  Yes.  Of course, the government does not

25  have the final word and there would always be recourse to the

K94drayc
                              Teleconference

1    Court.  But, again, I don't think there is anything established

2    at this point to demonstrate that the government and the

3    defense in the first instance cannot resolve these

4    disagreements.  And if -- the government is very clear that

5    with respect to the limited requests that have been made so

6    far, we are entertaining those requests and being very

7    reasonable in our response.  For example, with respect to some

8    of these written confessions and these transcripts, the

9    government indicated that it is prepared to dedesignate some of

10   those materials as long as there is some protection afforded

11   with respect to dissemination.  Now, to be sure, those

12   materials are not pornographic content, but they are

13   nonetheless sensitive and would be extremely damaging if

14   disseminated.

15         So, the government recognizes that there are different

16   tiers of material; that there is the most highly sensitive

17   category of sensitive material that would include sexually

18   graphic --

19         THE COURT:  Yes.  I mean, listen, we don't need to

20   disclose what's in the highly sensitive category.  I don't need

21   the government's perspective on what is highly sensitive in a

22   way that would put the defense in an awkward position.

23         MS. SASSOON:  Your Honor, I would like to point out,

24   the defense, in just speaking, said that they may request the

25   government to dedesignate material and that they did not ask us

K94drayc
Teleconference

1   to dedesignate material that included nudity, and that's simply

2   untrue.  For example, the request included a request to

3   dedesignate Larry Ray's phones in their entirety.  Those phones

4   include sensitive materials, including nudity.  And so when the

5   government responded and said we will do a more tailored

6   responsiveness review for those phones, the materials that they

7   submitted to the Court from his phones, we are perfectly

8   prepared to dedesignate those as sensitive and to provide those

9   to Mr. Ray.

10          So there is really no ripe conflict here about what is

11  marked sensitive.  The government, again, with respect to the

12  request that has already been made, has taken the sensible

13  position that the defense is not disputing at this point,

14  especially because the government has both agreed to review the

15  phones and agreed to produce certain transcripts as long as

16  there is a third category of material recognized by the

17  protective order.

18          With respect to the exhibits that the defense

19  submitted, apart from Mr. Ray's phones, none of those requests

20  have yet been submitted to the government.  And we are

21  perfectly prepared to assess those requests and have a

22  discussion with defense counsel about which of those materials

23  can be dedesignated.  Some of them, although they're not

24  videos, still contain very sensitive information about mental

25  health problems, about therapies, about sexual activity.  And

K94drayc
Teleconference

1   while the defense has talked a lot about these, quote-unquote,

2   confessions, and the government is prepared to dedesignate

3   those with this third category of protected material in the

4   protective order, those documents are clearly sensitive on some

5   level and can't just be disseminated without a modification to

6   the protective order.

7          And so the reason why I'm getting into such detail is

8   simply to illustrate to the Court that the government is

9   prepared to dedesignate material, that there is no actual ripe

10  dispute about an improper sensitive designation that would

11  justify this modification to the protective order that has the

12  potential to be extremely -- to create this new obligation is

13  simply uncalled for at this point in the case, where the

14  government is already entertaining these requests,

15  dedesignating things, prepared to dedesignate additional things

16  with that modification to the protective order.  There is no

17  basis at this point, whenever there is a dispute, to require

18  the government to put in a written submission given the volume

19  of data in this case.  That's not tenable and it is not

20  warranted.

21         THE COURT:  Ms. Sassoon, let me ask you a follow-up

22  question about some of the material the defense submitted to

23  me -- actually, about two categories.  One is the material that

24  you indicated that has psychiatric, medical, or sexual history

25  information in it, does the government have any objection to

K94drayc
                        Teleconference

providing that material to Mr. Ray to review in the privacy of

his cell as long as it is not disseminated publicly?  And it

seems to me that's very important defense information.

          MS. SASSOON:  Yes.  It's hard for me to make, you

know, a sweeping statement about all the material, and each

document is distinct.  With respect to the, quote-unquote,

confession, that is a category that in general the government

is prepared to -- is prepared to produce dedesignated with a

protection against dissemination.  With respect to some of the

other documents that talk about mental health and personal

details related to someone's sexual life, that's something a

little different that I would have to discuss with the team and

my supervisor before committing to a position on that, but it's

certainly something we would consider.

          THE COURT:  OK.  There's also videos of the

confessions.  Is there any basis for withholding those from

Mr. Ray, as long as it is not going to be publicly

disseminated?

          MS. SASSOON:  Videos that don't show sexual activity,

physical abuse, or extreme verbal abuse leading to emotional

breakdown I think can be provided.

          THE COURT:  That last category you could drive a truck

through in terms of people having different views as to what

constitutes -- what would fall within that category.

          MS. SASSOON:  Being very familiar with the evidence,

K94drayc
                          Teleconference

1    there are plenty of videos that constitute confessions that we

2    would be willing to produce.  There are some that depict

3    victims in particularly vulnerable, humiliating states that I

4    think would potentially still be sensitive and --

5              THE COURT:  Aren't these all confessions that are

6    videos that were taken, you know, either by Mr. Ray or in

7    Mr. Ray's presence?

8              MS. SASSOON:  Yes, your Honor.

9              THE COURT:  So what interest would be compromised by

10   permitting Mr. Ray to, and Mr. Ray alone, to look at them in

11   the privacy of his cell as long as they are not disseminated?

12             MS. SASSOON:  Your Honor, the defendant was also

13   present and took the videos of the sexually graphic content.

14   That alone is not a basis for saying that he is entitled to

15   copies of materials that are demeaning of the victims and from

16   which he takes pleasure.  And while there will be a

17   modification to protect dissemination, it is not foolproof and

18   it is still highly sensitive.  So I don't think the fact that

19   he was present or possessed these things at one point in time

20   is dispositive.

21             THE COURT:  All right.  Well, there may not be a ripe

22   issue right now, but it looks like there may be an issue coming

23   down the pike and that it may become ripe for my resolution.

24             Is there more on the protective order, Ms. Sassoon?

25   Then I am going to turn back to Ms. Lenox on the protective

K94drayc
                          Teleconference

1    order and we can march through these other issues.

2                MS. SASSOON:  No.  I would just emphasize it is the

3    government's position that there is no need for Court

4    intervention at this time if we do all agree on that third

5    category modification, which would open the door for the

6    government to make substantial dedesignations, and I'm

7    committing to the Court that that is what we are prepared to

8    do, even if I'm not saying wholesale that every video is going

9    to be produced.

10               THE COURT:  Ms. Lenox, why isn't it sufficient for you

11   to bring to my attention the documents in discovery that you

12   think should be dedesignated?  You could perhaps even bring

13   exemplars to my attention, rather than putting the burden on

14   the government, within seven days to arrange a request by you

15   to make a particularized showing.  Aren't you in a better

16   position to raise them with the Court?

17               MS. LENOX:  Yes.  So my response to that is it is the

18   government's burden generally to show good cause for all of its

19   sensitive designations at the outset.  Now, in this case we

20   have entered into a protective order, which I understand shifts

21   the burden in terms of modification of the order.  But it

22   should not shift the burden in terms of who has to establish

23   good cause for the sensitive designation.

24               So, if there is a dispute about the materials, the

25   burden should remain on the government to show why their

K94drayc
Teleconference

1   sensitive designation should remain as such.  This is

2   especially true in a case, like this one, where the government

3   has designated more than 95 percent of its entire discovery

4   production as sensitive.  Given that, the burden should be on

5   the government.

6          Now, that said, the defense -- the reading of the

7   protective order does not allow for on its face Court

8   intervention.  As Ms. Sassoon read from paragraph 8, the way to

9   resolve the dispute would be for the defense to ask for

10  dedesignation from the government, which the defense has done

11  on a number of occasions.  The result of that has been, despite

12  numerous conversations, the most recent one being on July 24th,

13  that while the government has said we will take this under

14  advisement, they have dedesignated and redacted -- so they have

15  dedesignated and redacted 30 draft transcripts of phone calls

16  between an alleged victim and a bank.  That is what has come of

17  the paragraph 8 that the government relies on to say that there

18  is already a mechanism for resolving the disputes.

19         Now, if the government is of the opinion that, based

20  on the order, the defense may move the Court for dedesignation

21  but the burden ultimately remains on the government to show

22  good cause in the event that the defense does move for

23  dedesignation, I would be fine with that.  The face of the

24  order as it stands does not appear to allow for that mechanism.

25         So if your Honor --

K94drayc
                          Teleconference

1              THE COURT:  OK.  Let me interrupt you, Ms. Lenox,

2     because I'm prepared to rule on this and then I want to move on

3     to the other issues.

4              With respect to the issue of the protective order, my

5     understanding of the protective order has always been that

6     regardless of whether it is written in there, that the defense

7     could approach the Court and move the Court for dedesignation

8     of sensitive materials on the grounds that the government had

9     improperly designated them.  Then the burden would be on the

10    government to support the designation of the materials as

11    sensitive.

12             If that's not clear, it should be made clear.  So with

13    respect to that, I'm going to order that the parties meet and

14    confer to draft language to make it clear that the defense can

15    move the Court if it believes that the government has

16    improperly designated materials, that the burden will always,

17    of course, be on the government to support its designation of

18    the materials.  Then that the government should respond to a

19    request with respect to dedesignation within seven days of the

20    request being made, absent further Court order.

21             So if, for example, Ms. Sassoon, Ms. Lenox was to, you

22    know, dump a huge number of documents on the Court and you need

23    more than seven days to answer, you'll just tell me that you

24    need more than seven days to answer, and you'll support the

25    reason why you need more than seven days and you'll make that

K94drayc
                        Teleconference

1    application to me.

2           My hope is that, Ms. Lenox, you will not give me every

3    piece of paper; that this can be done in a way where, if you

4    are not able to reach agreement, you give me exemplars and then

5    I make a ruling.  So that's with respect to the request on

6    dedesignation.

7           I'm also going to ask the parties to meet and confer

8    with respect to the creation of a third category, and that's

9    merely in the interest of the defense, because I'm not going to

10   be able to distinguish between documents for Mr. Ray to review

11   in the privacy of his cell and documents that he reviews in the

12   privacy of his cell can also be disseminated more generally,

13   that may inure unfavorably to the defense.  So that's where I

14   remember come out with respect to the protective order.

15          Why don't we move to the next issue, which I think is

16   maybe the 12(b)(4) argument with respect to the motions.

17          Do you want to address that, Ms. Lenox?

18          MS. LENOX:  Your Honor, I don't have much to say about

19   that beyond what's already written in the papers.  I would just

20   note that in order for us to make fulsome arguments in our

21   motion, and in order for us to present motions in the most

22   strategic way possible and provide effective assistance of

23   counsel for Mr. Ray with respect to the motions, we need to be

24   able to review discovery with Mr. Ray.  And the mere fact that

25   Mr. Ray was sent search warrant applications months ago,

K94drayc
                    Teleconference

1    without the benefit of actually being able to sit down with

2    counsel and review those in conjunction with the vast amount of

3    discovery that is related to those and that has come of the

4    execution of those warrants, it is quite difficult if not

5    impossible to effectively represent Mr. Ray with respect to

6    motion practice, and so that is why we are making the request

7    that we are.

8              THE COURT:  All right.  Well, I've got a couple of

9    questions for you, and then I'll have some questions for

10   Ms. Sassoon.

11             But to you, I understand that the government has told

12   you that it is planning to offer evidence that was obtained

13   pursuant to each and every one of the warrants that it obtained

14   in connection with this case.  What more information

15   specifically do you need to be able to make a motion with

16   respect to each of those warrants on each of those searches?

17             MS. LENOX:  Your Honor, it's not about a need for more

18   information.  It's about a need to be able to keep

19   (unintelligible) with Mr. Ray and have him review the materials

20   that were gathered as a result of the execution of those

21   warrants.  So, for instance, one way to challenge a search

22   warrant is through a <u>Franks</u> motion.  And in a <u>Franks</u> motion,

23   the way to challenge the search warrant would be to say that

24   there is evidence that the agents knew about in advance of the

25   execution of the warrant that they should have included in

K94drayc
Teleconference

1    their application of the warrant because it could change the

2    magistrate's view of the probable cause analysis.

3         Now, in order to be able to make that argument

4    compellingly, we need to be able to review the discovery with

5    Mr. Ray and have the benefit of him being able to point us to

6    certain documents or videos or audio files in the discovery

7    that the government may have known about, or have had reason to

8    know about, at the time that they made their warrant

9    application.  So without his help and his ability to review

10   that information in conjunction with the warrants and in

11   consultation with us, it's hard for us to determine a good

12   strategy for motion practice here.

13        THE COURT:  OK.  You gave me that as one example.  Are

14   there other examples of reasons why you need the actual

15   evidence that the government is planning to offer in order to

16   make a motion to suppress evidence?

17        MS. LENOX:  I think it's largely that, your Honor.  It

18   is the notion that we need to be able to review the language --

19   or, I'm sorry, we need to be able to review the materials with

20   Mr. Ray.  And the plain language of the rule allows for it and

21   requires that we receive notice of what they intend to use as

22   evidence in their case in chief.  So, based on that, we believe

23   that the government should provide us with their proposed

24   exhibit list or a better sense of more narrowly tailored

25   discovery that they intend to introduce at trial.

K94drayc
                              Teleconference

1          THE COURT:  OK.  Let me turn to you, Ms. Sassoon.

2          First, with respect to the <u>Franks</u> type argument, I

3    know that that does not read exactly on the rule, but what's

4    your answer to that?

5          MS. SASSOON:  My understanding of that argument, your

6    Honor, it's really an argument for more time rather than for

7    the material they're requesting under Rule 12, particularly

8    because if there are certain documents that would be relevant

9    to a <u>Franks</u> hearing, that has little to do with the exhibits

10   the government intends to use at trial.  In fact, those

11   probably would be the exhibits the government intends to use at

12   trial.

13          THE COURT:  Right.

14          MS. SASSOON:  So that arguments seems entirely

15   divorced from the Rule 12 request and instead be a request for

16   an adjournment that has nothing to do with Rule 12.

17          In terms of the ability to review discovery, or to

18   comply with Rule 12, we provided notice about the fact that we

19   intend to use evidence from each of the search warrants, and

20   our responsiveness reports give an idea what might be

21   potentially be exhibits at trial, although we obviously have

22   not narrowed it down to a specific exhibit list.  It is going

23   to be confined to that universe of material, which is about one

24   percent of the overall extracted data.  So, for those reasons

25   and those in our letter, we believe we've complied with Rule

K94drayc
                         Teleconference

12.

              THE COURT:  Ms. Sassoon, help me.  Were the warrants
executed at different times such that there might be
information that would have been obtained through the execution
of one warrant that would inform the government's knowledge at
the time that it swore out an affidavit for another warrant?

              MS. SASSOON:  Yes, your Honor.  The premises search
warrant was executed on the day of Mr. Ray's arrest, and it was
sworn out shortly before that.  There were other warrants that
were sworn out during the covert investigation, including his
emails and iCloud accounts.

              THE COURT:  OK.  The other question that I've got for
you is -- my notes say that there are 43 devices but there are
a lot of numbers that have been bandied about in terms of
devices, phones, and the like.  This is not quite a 12(b)
issue, but it is an issue that I think I've got authority over
in terms of my trial management.

              Are you able to confine at this point the evidence
that the government is intending to offer to particular of
those 43 devices?  Are you really going to offer evidence from
every single device that you've had access to, every phone of a
particular person that you've had access to?  And can't you
limit it in some way so that it would facilitate the
preparation of the defense in this case?

              MS. SASSOON:  Your Honor, the government's processes

K94drayc
                              Teleconference

1   proceeded in stages.  So after the arrest, we had 230 devices.

2   Over the past few months, we narrowed it down to 54, and

3   subsequent to that we narrowed it down to about 40 that were

4   actually extracted.  And then among those, there are some for

5   which we produced no responsiveness reports, some that we

6   indicated are only potentially probative because of who they

7   belong to.  So perhaps as we shift from discovery production to

8   trial preparation, we'll be narrowing it down even further.

9              But, for example, some of these devices for which

10   we've produced responsiveness reports to the defense, the

11   entire responsiveness report is about one megabyte of data.

12   That's very little data.  You know, others it's several

13   gigabytes, but there are several that are in the megabyte.  So

14   while we haven't necessarily said these are the only devices

15   we're going to introduce, we've narrowed very substantially the

16   amount of evidence we might use from each particular device and

17   also identified about nine devices that would only be used for

18   the purpose of establishing that it was taken from a particular

19   person.

20              So we have incrementally narrowed this substantially,

21   and I imagine that will happen more over time, but I think,

22   standing here today, for each month of this case we've made

23   strides towards narrowing.

24              THE COURT:  OK.  Let me turn back to you, Ms. Lenox,

25   and tell you what I'm thinking and then ask for your reaction

K94drayc
                          Teleconference

to it.

          I don't think on the law your motion under 12(b)(4) is
well founded.  Under the case law that I've reviewed and that
has been provided to me, I find the cases convincing that say
that the government's obligation is satisfied when the
government indicates to you sufficient information for you to
be able to make your motions.  And I think that with respect to
the 12(b)(4) issue, that is sufficiently addressed through two
things.  One is to give you an adjournment for the date to file
motions.  And, second, if it turns out that there is a motion
that you were not able to make because of information that was
turned over late or was a needle in a haystack, you can always
apply for relief from the effect of the scheduling order for
good cause.  So that's with respect to motions.

          The way in which I understood your argument is more
towards trial preparation.  And I do think that there is a
serious issue in terms of a trial of this complexity with this
many documents about how early you get the government's exhibit
list.  And so one of the things that I'm contemplating as a
supplement is an earlier order of an exhibit list.  Ms. Sassoon
has indicated that the government is considering providing the
exhibit list more than 33 days -- I'm sorry, more than three
weeks in advance of trial, and I may invite some briefing with
respect to making that quite a bit earlier, something closer to
what's been done in other cases, which is two months before

K94drayc
Teleconference

1   trial.

2          Wouldn't your objectives be satisfied by early

3   disclosure of the exhibit list and by what I've indicated with

4   respect to motions?

5          MS. LENOX:  Yes.  The only thing I would add is that

6   our review of discovery with Mr. Ray has been hampered

7   obviously by COVID and the restrictions imposed by COVID.  And

8   I also, you know -- I just want to make clear that while the

9   government has substantially narrowed the universe of evidence

10  that is relevant for trial and while we have all of the

11  discovery that they have, I'm assuming, in their possession to

12  date, we are still -- we are still somewhat restrained with

13  respect to motion practice.

14         That said, I do think that extending the motions'

15  deadline and providing an exhibit list well in advance of the

16  three weeks that the government had initially suggested could

17  be adequate relief here.  If your Honor is considering two

18  months before the trial date, I would say that's -- that's

19  perhaps -- it would be nice to get it a little bit earlier than

20  two months before the trial date, but certainly two months

21  before the trial date is far more reasonable than the three

22  weeks requested by the government.

23         THE COURT:  Ms. Sassoon, I'm going to ask for briefing

24  with respect to that.  I realize that that had not been raised

25  before, and you will want to consult, the defense will want to

K94drayc
                         Teleconference

1    think about it, so that you don't need to respond to that, but

2    I'm going to ask for briefing with respect to that.

3              And with respect to --

4              MS. SASSOON:  Your Honor, let me just say --

5              THE COURT:  Go ahead.

6              MS. SASSOON:  We will brief this.  But if the motion

7    schedule is getting adjourned and if the trial date is getting

8    adjourned, respectfully, even briefing this issue seems

9    premature given that we don't know what the state of the world

10   will be three months before trial, four months before trial if

11   we're looking at a trial date that's in the spring or summer.

12   And while the defense came up with one case where there were

13   exhibits produced two months before trial because of case

14   issues, as far as I know -- and this is obviously something

15   we'll look into more before briefing, but even in very complex

16   security cases, two months for exhibits is an extremely,

17   extremely aggressive deadline for the government.  And as to

18   COVID, there would be no brick spaces for it, and we just don't

19   know what the state of the world will be when we have this

20   trial date.  So, of course, if your Honor is interested in

21   briefing, we will brief the issue, but given that we are

22   several months from the existing trial date and even farther

23   from a potentially adjourned trial date, this seems premature.

24             THE COURT:  OK.  With respect to the early

25   identification of Brady, that's something that I will consider

K94drayc
                        Teleconference

1    in connection with thinking about the question of an early

2    identification of a witness list unless there is something --

3    anything further that, Ms. Lenox or Ms. Sassoon, you want to

4    add with respect to that issue.

5              Ms. Lenox?

6              MS. LENOX:  Nothing further.  Thank you.

7              THE COURT:  Ms. Sassoon?

8              MS. SASSOON:  Your Honor, when you say -- yes, I'm

9    sorry.  This is Danielle Sassoon speaking.

10             When you say "early identification of Brady," do you

11   mean Giglio, or am I misunderstanding your Honor?

12             THE COURT:  Yeah.  I think the question was both with

13   respect to Brady and with respect to Giglio.  I understand that

14   there is no constitutional right that the cases have

15   interpreted toward for the government to identify Brady, or

16   highlight the Brady.  I also understand that the result might

17   be different if there was bad faith on the part of the

18   government or hiding a needle in a haystack.  On the other

19   hand, one of the things I need to consider, as I mentioned at

20   the very beginning, is making sure that in an environment as

21   uncertain as the COVID environment and with the volume of

22   materials here, that there is adequate time to prepare a

23   defense.  And so in connection with that, I'm thinking about

24   the Brady issue.  There obviously also is the Giglio issue, and

25   I have not thought through that.

K94drayc
                              Teleconference

1          (Pause)

2          I may ask for more briefing -- actually, in fact, I

3    probably will ask for briefing with respect to early

4    identification of Giglio and Brady as well as early

5    identification of an exhibit list at the same time.

6          I think that's just leaves --

7          MS. SASSOON:  Your Honor.

8          THE COURT:  Go ahead, Ms. Sassoon.

9          MS. SASSOON:  Yes.  This is Danielle Sassoon speaking.

10          I just want to clarify, because it's the government's

11    position that we have identified Brady by producing the

12    discovery, and there would be no subsequent Brady deadline in

13    advance of trial.  There is no -- typically in a trial, there

14    is a Giglio deadline, there is a 3500 material deadline, there

15    is an exhibits deadline, but there is no independent Brady

16    deadline on the understanding that the government has its

17    obligations and it's fulfilling them on a continuing basis.

18    And so I'm not sure if what your Honor is suggesting is that

19    there is an implied additional obligation to identify Brady

20    within the discovery, as the defense is asking for and which we

21    oppose, or if your Honor has yet to reach that issue?

22          THE COURT:  Yes.  I'm going to ask for further

23    briefing with respect to that issue.  There is no obligation on

24    the part of the government as things currently stand to point

25    out the Brady material within the discovery, but I understand

K94drayc
Teleconference

1    that's something that the defense is asking for.  And I believe

2    that I've got the authority to order that even if the -- even

3    if it would not violate the Constitution for me to fail to

4    order that.  And I understand quite well the practice in most

5    cases in this district, but that doesn't prevent me based upon

6    the particular facts of this case in terms of coming to a

7    different conclusion.

8            I think the issue with respect to the laptop is

9    premature unless there is anything further to raise with

10   respect to that.

11           MS. LENOX:  This is Marne Lenox.

12           That's fine.  Thank you.

13           THE COURT:  OK.  Ms. Sassoon, anything further to

14   raise with respect to that?

15           MS. SASSOON:  No, your Honor.

16           THE COURT:  OK.  So, Ms. Lenox, how much more time do

17   you need for motions?

18           MS. LENOX:  I would ask for 45 days from the date that

19   was originally set, which I believe was September 14th.  So

20   that would bring us to, I believe, October 29th.

21           THE COURT:  Ms. Sassoon, do you have a view on that?

22           MS. SASSOON:  No, your Honor.  But the government does

23   have the view that to the extent there is going to be briefing

24   about exhibits and Brady and the like, it should be at the very

25   least after motions are decided, given that we'll have a sense

K94drayc
                              Teleconference

1    of the admissible evidence and the trial date.

2            THE COURT:  Hold on for a second.

3            (Pause)

4            I am just looking at the -- Ms. Lenox, do you have the

5    dates that I previously set for motions?

6            MS. LENOX:  Yes.  I can pull those up in just a

7    moment, your Honor.  I don't know if Ms. Sassoon has easier or

8    faster access.

9            I believe Mr. Ray's motions were due September 14th.

10   I have the -- the government's response I believe was due

11   October 5th, and Mr. Ray's reply was due on October 16th.

12           Is that correct, Ms. Sassoon?

13           (Pause)

14           THE COURT:  That's good enough.

15           Ms. Sassoon, how much time do you need, do you want

16   for (inaudible)  And I would want, in connection with the

17   motions on the 29th, you will brief the discovery issues in

18   terms of early discovery, disclosure of a witness list,

19   including the discovery issues with respect to early disclosure

20   of the witness list and early disclosure of Brady or Giglio.

21           I hear your point, Ms. Sassoon, but I'm going to --

22   it's more efficient for me to get all of the briefing at once.

23           So if that's going to be in the defense briefing on

24   October 29th, how much time do you want for a response?

25           MS. SASSOON:  So we initially had three weeks to

K94drayc
                    Teleconference

1    respond, but given that there will be this whole other category

2    of briefing to respond to, we'd ask for a month.

3              THE COURT:  That's reasonable.

4              That puts us -- I have October 29th as a Thursday.

5    Why don't we make it on the Friday, which is October 30th, for

6    the defense motions.

7              And then I don't want to make the government response

8    due the day after Thanksgiving, so why don't we make it

9    November 30th for the government response?  Does that work for

10   you, Ms. Sassoon?

11             MS. SASSOON:  Thank you, your Honor.

12             THE COURT:  OK.  And then how about two weeks after

13   that for any reply?

14             MS. LENOX:  I would ask for three weeks, just given

15   the expansion of the briefing issues.

16             Your Honor, our deadline is effectively three weeks,

17   given that it is over the Thanksgiving holiday that we are

18   going to be responding to the briefing.

19             THE COURT:  Yes.  Why don't we say the reply is due

20   December 14, and I'll have a hearing on December 18th.

21             Does that work for the parties?

22             MS. LENOX:  Yes, your Honor.

23             MS. SASSOON:  Yes, your Honor.

24             THE COURT:  OK.  That leaves the question of trial

25   date, and I'm going to adjourn the trial.

K94drayc
                      Teleconference

1           Here's my issue, and I'll ask each side for their

2      suggestions.  I would like to set a firm trial date for this

3      either in March or April or perhaps as late as May.  In order

4      to make sure that I've got a jury, I need to have a firm trial

5      date.  I can set one now for March, if the parties are prepared

6      for March.  Otherwise, I can set a tentative trial date for

7      April, and we can revisit that depending on what the conditions

8      are at the MCC and whether it opens up and the like.

9           What's the -- Ms. Lenox, what's your preference?

10          MS. LENOX:  I have a strong preference for the latter,

11     your Honor.  I think given the current circumstances and the

12     unknowns right now, setting a tentative trial date in April

13     makes sense.

14          THE COURT:  Ms. Sassoon, do you have a view?

15          MS. SASSOON:  Yes, your Honor.  The government would

16     suggest a trial date in May.  Right now our briefing won't be

17     done until December.  The Court may not rule on the motions

18     until January.  If we're putting together early exhibits and we

19     had a March trial date, our exhibits would be due in January,

20     which seems ambitious.

21          THE COURT:  Yes.  All of that is sensible.

22          MS. SASSOON:  Taking all of that into consideration.

23          THE COURT:  How about May 10 as a trial date?  Does

24     that work for the defense?

25          MS. LENOX:  I believe so, your Honor.

K94drayc
                        Teleconference

1              THE COURT:  For the government?

2              MS. SASSOON:  Yes, your Honor.

3              THE COURT:  OK.  All right.  So we'll adjourn the

4    trial date to May 10th.

5              So I think the last thing to do is exclusion of time

6    under the Speedy Trial Act.

7              Does the government have the application?

8              MS. SASSOON:  Yes, your Honor.

9              The government would move to exclude time between now

10   and the scheduled trial date in the interest of justice so that

11   the parties can brief motions, the Court can decide them, the

12   parties can prepare for trial and continue to review discovery.

13             THE COURT:  What is the defense's position.

14             MS. LENOX:  No objection from the defense.

15             THE COURT:  OK.  So the Court will exclude trial --

16   will exclude -- let me start again.

17             The Court will exclude time under the Speedy Trial

18   Act, 18 U.S.C. 3161(h)(1)(A), from today until the date of

19   trial, May 10th.  I make the finding that the interests of

20   justice exceed the interests of the public and the defense in a

21   speedy trial in that the time from today until the time for

22   trial can be used to complete the process of discovery, to make

23   motions, for the parties to have discussions among themselves,

24   and for the parties to prepare for trial.

25             Ms. Sassoon, is there anything further I should say on

K94drayc
                        Teleconference

1    that front?

2              MS. SASSOON:  No.  Thank you, your Honor.

3              THE COURT:  OK.  Anything further, Ms. Sassoon, from

4    you?

5              MS. SASSOON:  No.  Thank you, your Honor.

6              THE COURT:  From the defense?

7              MS. LENOX:  Yes, your Honor.  I understand that your

8    Honor is reserving ruling on the bail argument.  I just wanted

9    to take a moment to address the government's position with

10   respect to the MCC being set to reopen on September 21st.

11             THE COURT:  OK.

12             MS. LENOX:  OK.  So I understand that that -- the

13   government has represented that, but until the MCC actually

14   opens for counsel visits, that date is merely speculative.  And

15   even when the MCC opens for counsel visits, based on our

16   understanding of what's happening at the MCC right now, the

17   visits are going to be extraordinarily cabined.  They are going

18   to have to be planned in advance, and we will not have the

19   ability, as we did in the past, to visit our clients, visit

20   Mr. Ray in particular, for as long as we need in order to

21   review discovery and discuss the case.  We also won't be able

22   to visit him every day, even if we had time for that.

23             In addition, we've already lost more than five months

24   of review of the materials with Mr. Ray and five months where

25   he has not had access whatsoever to 95 percent of his

K94drayc
                              Teleconference

1    discovery.

2            I would also note that Mr. Ray's unit is still on

3    lockdown.  So even if MCC is contemplating reopening on or

4    about September 21st, as of today, his unit remains on lockdown

5    and as it has been for the past several weeks, basically all of

6    August.  And that's a report not just from Mr. Ray directly but

7    was also indicated in the government's papers and is also

8    something that I've heard from clients that I have in the same

9    unit as Mr. Ray.

10           And, finally, your Honor, I just want to note that the

11   Eastern District of New York, the courthouse actually last

12   night sent out notice that the courthouse was shutting down

13   until at least September 8th for cleaning because of a COVID

14   outbreak, a spike of cases in COVID.  They are shutting down

15   for cleaning and for contact tracing.

16           Given that, the cases -- the COVID cases have spiked

17   500 percent at the MCC since your Honor's last ruling.  And

18   given all of the uncertainty surrounding the coronavirus and

19   the pandemic, I certainly don't think that we can hang our hats

20   on the promise that the MCC may reopen for limited counsel

21   visits on September 21st.

22           THE COURT:  That's all very helpful, and it leads me

23   to the following conclusion.  I think I should set two other

24   deadlines.  First, with respect to the modifications of the

25   protective order that I've laid out, or any open disputes about

K94drayc
                              Teleconference

1    the protective order, I think I should get letters from the

2    parties by a week from today, September 11th, either with an

3    agreed modification of the protective order along the lines

4    that I've laid out or with any remaining disputes with respect

5    to the protective order.

6              Second, I would like to have a brief by -- I am

7    looking at the calendar.  I would like to have a status letter

8    by three weeks from today, September 25th, from each side that

9    would address what progress has been made in terms of

10   dedesignating documents for them to be made available to

11   Mr. Ray, what progress has been made with respect to the

12   ability of Mr. Ray to review materials and the defense to be

13   able to visit Mr. Ray, and the bearing that that information

14   has on the 3161(h) -- 3161(i) inquiry with respect to bail.

15             MS. LENOX:  Thank you, your Honor.  This is Marne

16   Lenox.

17             The only last thing that I would note is that Mr. Ray

18   has been receiving discovery from the government largely on a

19   hard drive and then a series of CDs.  I understand from

20   speaking with the government that it is nearly impossible to

21   print out the entire discovery production, and certainly much

22   of the discovery cannot be printed on video and audio files.

23   But I would ask the Court to urge the government, to the extent

24   possible, to print materials for Mr. Ray's review as opposed to

25   sending them on CDs or on drives, given that during periods of

K94drayc
                              Teleconference

1   lockdown Mr. Ray has effectively no access to a computer on

2   which to review discovery.

3           THE COURT:  I'm not going to be prescriptive like

4   that, Ms. Lenox, but my observation throughout these

5   proceedings has been that Ms. Sassoon has made offers in order

6   to try to facilitate things for the defense.  I don't know

7   whether those are sufficient or not; I'm not going to make a

8   finding with respect to that.

9           But, Ms. Sassoon, just directing myself to you, I

10  think you've hopefully heard me loud and clear that the more

11  you can do to facilitate the preparation of the defense, the

12  stronger your opposition to bail will be.  And so when you

13  submit the letter on the 25th, if there are other measures that

14  you've taken in order to make it easier for the defense to

15  prepare, you'll lay those out.  I've noted that in some of the

16  cases that have been cited to me, the government has put

17  together books of hot documents, they've highlighted the most

18  significant documents, and courts put weight on some of those

19  kinds of things.  And you can read those cases as well as I

20  can.  The more you can do to facilitate the preparation of the

21  defense and to alleviate some of the problems created by COVID,

22  the better from my perspective.

23          Anything else from you, Ms. Sassoon?

24          MS. SASSOON:  No.  And understood, your Honor, and

25  we've already agreed to print out some materials and send them

K94drayc
                          Teleconference

 1    to the prison.  I tried to confirm with the paralegal before

 2    the conference that they've been sent, but we'll certainly

 3    provide that information in our September 25th letter.

 4              THE COURT:  Terrific.

 5              OK.  Thank you both.  Thank you, Mr. Ray.

 6              Everybody, you know, enjoy your weekend and stay safe

 7    and stay healthy.  Thank you.

 8              THE DEFENDANT:  Thank you, your Honor.

 9              THE COURT:  We are adjourned.

10              THE DEFENDANT:  Thank you.

11              MS. SASSOON:  Thank you, your Honor.

12              MS. LENOX:  Thank you.

13              (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25