UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_11/25/2020_
```

------------------------------------------------------------------X
                                               :

UNITED STATES OF AMERICA,               :
                                               :

                                             :

                                           :          20-cr-110 (LJL)

          -v-                       :

                                           :        OPINION & ORDER

LAWRENCE RAY,                      :

                           Defendant.         :

                                           :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Pending before the Court is a motion by the Government to quash subpoenas issued ex

parte at the request of the defense for the production of medical records of putative victims of the

crimes charged in the Indictment.  Dkt. No. 77.  The Government argues that the subpoenas were

issued without the appropriate notice, do not satisfy the standards of *United States v. Nixon*, 418

U.S. 683 (1974) for the pretrial issuance of subpoenas for documents and information, and

should be quashed because they are overly broad and call for privileged information.  The

motion is joined by two of the putative victims.  The first, Jane Doe 1, was informed by a

subpoena recipient of the subpoenas and moved to quash.  Dkt. No. 78.  The second, Jane Doe 2,

was informed of the subpoenas by the Government, Dkt. No. 72, and has since been appointed

counsel, who also moves to quash.  Dkt. Nos. 100, 102.  The Government also seeks to assert the

rights of any other putative victims whose records the defense might be seeking through ex parte

subpoenas issued pursuant to Federal Rule of Criminal Procedure 17(c).

      On November 20, 2020, the Court heard argument on the motions from the Government,

counsel for Jane Does 1 and 2, and Defendant.  The Court resolves the pending motions through

two separate opinions.  This opinion will address the background of the subpoenas, confined to

the information that is in the public record, and the issues with respect to putative victims other

than the two complaining victims.  The Court has reserved judgment with respect to the motion

to quash the subpoenas seeking the records of Jane Does 1 and 2, pending briefing on the

Government's anticipated motion in limine directed to its use of evidence related to the putative

victims' medical and psychiatric treatment.  For reasons that will become apparent, this opinion

does not address whether any subpoenas that have issued with respect to victims who have (as

yet) not complained should be quashed.

## BACKGROUND

A. The Indictment

On February 6, 2020, a Grand Jury sitting in this District returned Indictment 20 Cr. 110

(the "Indictment").  Dkt. No. 2.  The Indictment charged Defendant Lawrence Ray with nine

counts: Extortion Conspiracy in violation of 18 U.S.C. § 1951 (Count One), Extortion in

violation of 18 U.S.C. §§ 1951, 1952 (Count Two), Sex Trafficking in violation of 18 U.S.C. §§

1591, 1592 (Count Three), Forced Labor in violation of 18 U.S.C. § 1589, 1582 (Count Four),

Forced Labor Trafficking in violation of 18 U.S.C. §§ 1590, 1592 (Count Five), Forced Labor

Conspiracy in violation of 18 U.S.C. § 1594 (Count Six), Use of Interstate Commerce to

Promote Unlawful Activity in violation of 18 U.S.C. § 1952(a)(3) (Counts Seven and Eight), and

Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Count Nine).

The allegations paint a horrific picture.  Ray is accused of targeting a group of college

students and others for indoctrination and criminal exploitation, including extortion, forced labor,

and prostitution.  "Over the course of nearly a decade, between in or about 2010 through the

present, RAY subjected the Victims to sexual and psychological manipulation and physical

2

abuse." Dkt. No. 2 at 1. He is accused of extracting false confessions from at least seven victims that they had caused harm and damage to Ray and to his family members and associations. *Id*. He then leveraged the victims' false confessions to extort money from the victims, to force some of the victims to perform unpaid manual labor, and to cause one of the female victims to engage in commercial sex acts for Ray's financial benefit. *Id.* at 1-2. The Indictment includes examples of Ray's physical threats to certain of the victims, his use of the false confessions to force the victims to pay him hundreds of thousands of dollars, his use of verbal and physical threats to force the victims to perform work on a project owned by a Ray family member, and his inducement of one victim to act as a prostitute. *Id*. at 2-9. He is also alleged to have laundered the proceeds of his criminal activity. *Id*. at 9-10.

B. The Subpoenas

As part of discovery in this case, the Government produced all hospital records in its possession, including hospitalization records for several victims. Dkt. No. 77 at 1. On July 2, 2020, defense counsel requested that the Government furnish additional records, consisting principally of records for mental health treatment. *Id*. The defense claimed that the requested records "bear directly on the credibility of the Government's primary witnesses" and that the mental health histories of the victims were relevant to the Government's claim that Defendant targeted vulnerable individuals whose "medical records . . . corroborate Ray's cycle of abuse of these young victims." Dkt. No. 77, Ex. A. The Government agreed to produce certain requested hospital records for medical treatment, but stated that it had not collected and "did not intend to collect therapy records like the ones" defense counsel requested because it would "subject the victims to an undue invasion of their privacy and the possibility of unfair harassment on cross examination," and because "it would appear that such records are covered by the

3

psychotherapist-patient privilege under Rule 501." *Id*.

On September 18, 2020, the defense submitted to the Court ex parte subpoenas to various medical institutions requesting pretrial production of certain medical and other records of persons whom the Government had identified as victims of the crimes charged in the Indictment. On the same day, the Court held an ex parte conference with counsel for Defendant with respect to the subpoenas. The contents of that conference are under seal. The Court did inquire as to the defense's justification for proceeding ex parte and without notice to the Government. It was satisfied with the answers provided by the defense. It also inquired as to the relevance of the requested information and whether it satisfied the *Nixon* standards, and the Court was satisfied with the answers provided. Finally, the Court inquired with respect to the issue of notice. The original draft subpoenas provided to the Court did not require notice to be provided to the subjects of the subpoenas (the putative victims) by anyone. After hearing defense counsel's responses, the Court directed that language be added to the subpoenas directing the third-party to produce the documents only "upon making reasonable efforts to notify the patient of the subpoena." Dkt. No. 78-1. After the language was added to the subpoenas, the Court authorized their issuance and service. The Court orders provided as follows:[1]

> Upon the application of the defendant Lawrence Ray, the annexed affirmation of MARNE L. LENOX, Esq., and finding good cause therefore, it is hereby ORDERED that pursuant to 17(b) and (c) of the Federal Rules of Criminal Procedure, the annexed subpoena shall be issue to the following . . . Directing the following *upon making reasonable efforts to notify the patient* . . . ORDERED that pursuant to Rule 17(b) of the Federal Rules of Criminal Procedure, the costs incurred by the process and fees of responding to this subpoena shall be paid in the same manner as evidence subpoenaed by the government, and it is further ORDERED that the subpoena be complied with no later than October 7, 2020.

---

[1] The Court's description of the subpoenas is modelled after those addressed to the complaining victims that have been disclosed to the Government. The Court intends no inference to be drawn—one way or the other—whether subpoenas have been authorized or will be authorized for the records of other putative victims who have not complained.

*Id.* (emphasis added).

The body of the subpoena commanded the production of documents "upon making reasonable efforts to notify the patients of the subpoena."  *Id*.

The Court, on its own and mistakenly in hindsight, borrowed the "reasonable efforts" language from the HIPAA regulations.  *See* 45 C.F.R. § 164.512(e)(1)(ii)(A) ("A covered entity may disclose protected health information in the course of any judicial proceeding . . . [i]n response to a subpoena, discovery request, or other lawful process . . . if [t]he covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request.").

### C. The Motion to Quash

On October 5, 2020, the Court received a letter from the Government requesting court intervention in what the Government claimed was a potential violation of Fed. R. Crim. P. 17(c)(3) and Fed. R. of E. 501.  Dkt. No. 64.  Specifically, the Government informed the Court that afternoon that counsel for a victim had contacted the Government to inform it that the victim had received a call from a mental health provider that it had received a subpoena for the victim's treatment records.  *Id.*  The Government expressed concern that the victim had not been provided notice and requested that the subpoena for the records of the victim and any subpoenas directed to the personal or confidential records of any other victim be quashed for failure to comply with Rule 17(c)(3)'s notice requirements.[2]  The defense responded the same day, noting that the subpoenas had been issued with Court authorization, that they had required the provider to make

---

[2] The Government also requested that the subpoenas be quashed pursuant to Federal Rule of Evidence 501.

"reasonable efforts to notify the patient," and that Rule 17 did not entitle the Government to receive notice of the subpoenas.  Dkt. No. 65.  The defense also responded that the assertion that the victim had not received notice of the subpoena was belied by the admitted fact that, before producing records, the provider had called the victim, which prompted the victim's counsel to contact the Government.  *Id*.  The Government replied, reiterating its argument that Rule 17 requires notice before a subpoena is authorized and requesting that all subpoenas for confidential or personal records be quashed pursuant to Rule 17 and Rule 501.  Dkt. No. 66.

On October 6, 2020, the Court issued an order in response to the Government letter.  Dkt. No. 67.  The Court stated that it had "previously permitted the defense to serve subpoenas on medical providers by court order under Rule 17" and had done so "only after determining that there was good cause both for the subpoenas and for the defense proceeding ex parte."  *Id*.  The Court also stated that it had "required the providers to make reasonable efforts to notify the victims before responding to the subpoenas—precisely so that they could move to quash if that was appropriate."  *Id*.  The Court construed the letter as a motion to quash and established a briefing schedule.  Recognizing that the Government indicated in its letter that it had been in touch with counsel for a victim who had heard from a medical provider but did not disclose the names of either the victim or the provider, the Court also directed the Government to inform the medical provider at issue that it was not to produce the subpoenaed documents to the defense pending a Court order on the motion.  In addition, the Court ordered the defense to "suspend any efforts to serve or enforce any similar subpoenas for mental health records pending the Court's decision on the motion to quash."  *Id.*

Later that day, counsel for the victim in question wrote the Court requesting that the Court vacate and quash any subpoenas that had been served requiring production of any of the

victim's personal or confidential information or, in the alternative, stay its orders, direct the defense to provide copies of the subpoenas to counsel, and set a briefing schedule for a motion to quash. Dkt. No. 70. Counsel also requested reasonable notice of and an opportunity to object to any future requests by the parties seeking such orders. *Id*. That same day, in response, the Court issued an endorsement: "The Court grants counsel leave to file this letter on the record and to intervene for the limited purpose of making the motion to quash. The defense is directed to provide a copy of the subpoena at issue to the intervenor and to the Government. The medical provider shall suspend compliance pending a decision on the motion to quash." *Id.*

The Government responded to the Court order by noting that it did not unilaterally have the authority to dictate to the provider that it need not comply with the subpoena and that the Court would have to do so by identifying the provider by name (which would have proven challenging because no party had yet informed the Court of the name of the provider at issue). It asked that the Court enter an order directing the defense to contact the recipients of all such subpoenas with a directive to temporarily suspend production of the subpoenaed materials. Dkt. No. 68. The defense responded shortly thereafter with a letter informing the court that it had conferred with the Government, learned the name of the patient and medical provider at issue, had contacted the provider and informed it not to produce the subpoenaed documents pending a Court order on the motion, and suspended all efforts to serve or enforce any similar subpoenas for mental health records. It opposed the Government's request that it contact the recipients of all such subpoenas affirmatively and direct them temporarily to suspend production of the subpoenaed materials in light of the Court's prior determination that there was good cause for the defense to subpoena such records. Dkt. No. 69.

On October 6, 2020, the Court issued the following order:

The Court is not in possession of the name of the alleged victim. The Government is directed to inform the defense of the name of the alleged victim. The defense is directed to inform all medical providers who received subpoenas for the records of such victim that they need not and should not produce the documents to the defense pending a decision on the forthcoming motion to quash. The defense is also to inform the Government of all medical providers who received a subpoena with respect to such victim. As to subpoenas directed to the records of other alleged victims, the Court does not assume that such persons will object to the subpoenas. If they do, the Court will set a motion schedule and suspend any requirements of the providers to produce documents pending the filing of a motion to quash. The defense is directed to reiterate to the medical providers that they are not to produce any documents until after the medical providers have provided notice to the victims and given them an opportunity to decide whether to move to quash.

Dkt. No. 71. The Government also wrote the Court about Jane Doe 2, who was then not represented by counsel and who objected to the subpoenas, and asked that the Court direct defense counsel to inform any medical providers who received subpoenas for records of that victim that they should not produce the requested documents pending a decision on the forthcoming motion to quash. The Court "so-ordered" that request. Dkt. No. 73.

On October 7, 2020, the Government wrote the Court about all subpoenas directed to medical records of any victims. In light of what it argued was a violation of Rule 17(c)(3)'s notice provisions, it requested that the Court direct defense counsel to turn over to the Court any records it had received in response to the ex parte subpoenas and to destroy copies of such records in its possession. Dkt. No. 74. Defense counsel responded the following day, that any request that it turn over documents to the Court and that it destroy copies of documents was premature in light of the fact that the Court had not received briefing on, much less made a decision with respect to, the motion to quash. It stated that "[t]o the extent that the Government is concerned with the defense's ability to review complainants' medical records pending a forthcoming motion to quash, the defense is committed to walling itself off from review of any records received pertaining to Victim-1 and the alleged victim at issue in the government's

October 6, 2020 letter to the Court until receiving the Court's decision on the motion to quash."
Dkt. No. 76.

The Government formally moved to quash the ex parte subpoenas on October 9, 2020,
raising three arguments in opposition to their issuance: (1) that the Court failed to comply with
the procedural requirements of Rule 17(c)(3); (2) that, barring procedural deficiencies, the
subpoenas should nevertheless be quashed for failure to meet the admissibility standards of
*Nixon*; and (3) if the Court were to deny the Government's motion to quash, the subpoenaed
records should be produced directly to the Court rather than to the defense.  In response, on
October 14, 2020, the defense filed a letter brief opposing the Government's motion to quash,
arguing that (1) the Government lacked standing to challenge the subpoenas on behalf of the
objecting victims; (2) the subpoenas were properly issued under Rule 17(c)(3) and were also
properly served; and (3) the subpoenas were valid under both the *Nixon* standard and the more
lenient *United States v. Tucker* standard.  Counsel for the victim also filed a motion to quash,
arguing that the subpoenas failed the *Nixon* standard and that the subpoenas sought information
protected by the psychotherapist-patient privilege.  Dkt. No. 78.

On October 13, 2020, the Court ordered that compliance with the subpoenas be stayed, in
order to preserve the status quo pending its resolution of the motions to quash.  Dkt. No. 80.  The
Court further ordered defense counsel to inform the recipients of the subpoenas that compliance
with the Court's orders had been stayed.  *Id.*  On October 29, 2020, the Court directed the
defense to submit to the Court ex parte and under seal for the Court's in camera review:
(1) copies of any materials it had obtained in response to any of the subpoenas in question with
respect to the counseled victim and the victim who had informed the Court through the
Government that she objected to the subpoenas; and (2) a letter informing the Court of the status

of notice and production with respect to the subpoenas for the two victims and any similar subpoenas with respect to other putative victims.  Dkt. No. 90.  On the same day, the Court directed the Government to provide to the Court any records received with respect to the two witnesses from the institutions subpoenaed by the defense along with an affidavit or declaration setting forth the circumstances under which it obtained such documents.  Dkt. No. 92.

Following the Court's October 29, 2020 orders, the parties alerted the Court that the Government had obtained records from institutions other than those on whom the defense served its subpoenas.  Dkt. No. 97 at 7.  The Court therefore ordered the Government to submit to the Court copies of the medical records it obtained by subpoena from institutions other than those subject to the defense's subpoenas for the Court's in camera review.  Dkt. No. 99.

On November 18, 2020, the Court received a letter from newly appointed counsel for Jane Doe 2, who had previously expressed her objections to the subpoenas to the Government. Dkt. No. 100.  Counsel requested leave to intervene in the case in order to join the motion to quash and to file a short letter making the Court "aware of certain factual issues unique" to Jane Doe 2.  *Id*.  The Court granted leave.  Dkt. No. 101.  Counsel filed a letter on November 19, 2020, arguing that the subpoenas should be quashed, that they called for privileged information, and that producing the records would create a risk that Defendant would abuse the information "to threaten, harass, or otherwise harm Jane Doe-2."  Dkt. No. 102.  The letter noted that the Indictment charged that "Ray has a history of exerting control over and manipulating his victims—including Jane Doe-2—by attempting to impede on the doctor-patient relationship, including the psycho-therapist relationship" and that Ray had participated in Jane Doe 2's therapy sessions and "forc[ed] her to make statements to doctors, therapists, and psychologists alike."  *Id.* at 2.

<u>DISCUSSION</u>

The Court concludes that the Government has no standing to oppose or move to quash subpoenas for which the Court has not received a specific objection from a victim and that there was no error in authorizing the issuance of the subpoenas ex parte. However, the Court did err in permitting the service of the subpoenas without providing for advance notice to the putative victims, and in requiring only that the third parties make reasonable efforts to notify the victims. The Court discusses these issues in turn.

A. Government Standing

The first issue is whether the Government has standing to challenge Rule 17 ex parte subpoenas to which no victim has objected. Federal Rule of Criminal Procedure 17(c)(3) states in relevant part:

> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c)(3). The Rule itself thus provides no requirement that the non-moving party be notified, and no right for the Government to oppose or move to quash ex parte subpoenas.

The Government argues that it nonetheless has standing to challenge Rule 17 subpoenas, pursuant to the Crime Victims' Rights Act ("CVRA"). The CVRA states that crime victims have a "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). The CVRA also includes a provision authorizing the Government to assert that right. *Id.* § 3771(d)(1) ("The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a)."). Thus,

although the CVRA does not expressly authorize the Government to challenge Rule 17 subpoenas, the Government claims that it has that authority under its mandate to protect the victim's dignity and privacy.  The Government points to two out-of-district opinions where courts have held that the Government has standing under the CVRA to challenge Rule 17(c) subpoenas.  *See United States v. Crutchfield*, 2014 WL 2569058, at *1 (N.D. Cal. June 6, 2014) (holding that, because the CVRA prompted the adoption of Rule 17(c)(3), "although the protections afforded by Rule 17(c)(3) are not specifically bestowed by the Crime Victims' Rights Act, . . . the standing bestowed by the statute extends to derivative rules created to ensure its application"); *United States v. Levine*, 2019 WL 2097912, at *2 (W.D.N.Y. May 14, 2019) ("Under the Victims' Rights Act, . . . the government has standing to challenge a subpoena on behalf of a victim.").

Defendant argues that the Government has no standing to challenge any subpoenas relating to alleged victims who have not expressed an objection.  Dkt. No. 81 at 2.  According to Defendant, the Government's "elastic interpretation of the Crime Victims' Rights Act would enable the Government to act as legal counsel to alleged victims."  *Id.* at 3.  Defendant argues that the CVRA does not allow the Government to act as attorney for victims.  Thus, the Defendant reasons that the Court should deny the Government's request to intervene on behalf of anyone who has not objected.  *Id*.

Neither the language of Rule 17(c) nor the language of the CVRA support the Government's contention that it has standing to object to subpoenas for records of victims who do not object.  The Rule dictates that notice be provided to the "victim so that the *victim* can move to quash or modify the subpoena."  Fed. R. Crim. P. 17(c)(3) (emphasis added).  This language does not accord the Government the right to move to quash or modify on behalf of the

victim, particularly when the victim has not also sought to quash or modify the subpoena.  Only the victim is entitled to notice of the issuance of a subpoena for personal and confidential information and to make a motion to quash.

The statutory language of the CVRA does not give the Government the independent right to assert that information be maintained confidential on the victim's behalf when the victim does not ask for it to be kept confidential.  "The right to be treated with fairness and with respect for the victim's dignity and privacy," as required by the statute, is satisfied when the Court recognizes her individual dignity and autonomy including her right to make her own personal choices whether to ask that her personal information be kept confidential or be publicized.  *See, e.g., Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 851 (1992) (recognizing that the ability of a person to make "intimate and personal choices" is "central to personal dignity and autonomy" and "central to the liberty protected by the Fourteenth Amendment.").  It thus compels the Court to give the victim notice and an opportunity to move to suppress or quash.  The language cannot be read to require, and the statutory objective may not even be advanced by, giving the Government the authority to opt in the victim's stead and on the victim's behalf for one of those two alternatives when the victim herself has not decided which she prefers.  *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014) ("[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020) (holding that non-profit group assisting applicants for naturalization could not bring suit under the Immigration and Naturalization Act because it did not fall within the zone of interests of that act).

That conclusion is reinforced by the implications of the Government's argument.  The

definition of victim under the CVRA is expansive.  It is not limited to those, such as Jane Doe-1

and Jane Doe-2 who allegedly were victims of physical abuse.  It includes any "person directly

and proximately harmed as a result of the commission of a Federal offense," whether physically,

financially, psychologically, or otherwise.  18 U.S.C.. § 3771(e)((2)(A).  Few federal criminal

cases are victimless.  The persons directly and proximately harmed also are among the most

important witnesses in a case, sometimes for the Government but sometimes also for the defense.

Their evidence can mean the difference between liberty and long years of incarceration for the

criminal defendant.  In some cases, witnesses may wish to have no involvement whatsoever.

Ordinarily, and as laid out below, the question whether the defendant should be permitted

to subpoena records relating to a victim pretrial is entrusted to the court.  The Government

neither is entitled to know of the subpoena nor hear the defense's justification for why the

documents are relevant and should be produced.  Were the Government's argument to be

accepted, it would work a radical change in federal criminal practice.  The Government would be

entitled to move to quash, even when the victim herself has no interest in quashing the subpoena,

even when no interest of the Government is implicated, and even where the Court independently

has determined that the defense has a right to the documents.  There is no reason here, as

elsewhere, to assume that Congress "hide[s] elephants in mouseholes."  *Whitman v. American

Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Courts have acknowledged that the Government has standing to challenge Rule 17(c)

subpoenas directed to a non-party when the non-party "authorizes the Government to assert his

or her right by request [or] by indicating its joinder in a motion to quash."  *United States v.

Martoma*, 962 F. Supp. 2d 602, 605 n.4 (S.D.N.Y. 2013).  That conclusion makes sense of the

statutory language in the CVRA.  The Government has the right to assert the victim's right to

privacy, provided that the victim herself wants the Government to assert it.   As for non-parties, however, courts in this District have generally come to the conclusion that the Government can move to quash subpoenas issued for the records of non-parties only on the basis of the Government's own legitimate interests and not on the basis of the victim's interests.  *See United States v. Bergstein*, 2017 WL 6887596, at *2 (S.D.N.Y. Nov. 28, 2017).  In *United States v. Giampa*, for instance, the court found that the Government had standing to move to quash Rule 17(c) subpoenas to a non-party witness based on the Government's "interest in preventing any undue lengthening of the trial, any undue harassment of [the witness] and his family, and any prejudicial over-emphasis on [the witness's] credibility."  1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992).  But in *United States v. Nachamie*,  the court held that the Government had no standing where it could not assert that it had a legitimate independent interest in quashing Rule 17(c) subpoenas.  91 F. Supp. 2d 552, 559-60 (S.D.N.Y. 2000).

The issue is somewhat semantic.  As the court noted in *United States v. Weissman*, it can resolve the propriety of a Rule 17(c) subpoena on the Government's motion even if the Government lacks standing "because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)."  2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002); *see also United States v. Nix*, 251 F. Supp. 3d 555, 562 (W.D.N.Y. 2017); *United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009).

Following the majority rule in this District, the Government may move to quash the subpoenas only if the alleged victim has asked it to, or if the Government can assert legitimate interests of its own in quashing the subpoenas.  The Government has advanced no such legitimate interest of its own here, relying instead upon its standing under the CVRA to vindicate the victim's right to dignity and privacy.

For these reasons, the Court concludes while the Government can and should inform the Court of actions that it believes violate the CVRA and may assert the rights of the two objecting putative victims, the Government has no standing to move to quash subpoenas issued for the records of victims who have not themselves objected to the subpoenas.

For similar reasons, the Court concludes that the Government is not entitled to be informed of the complete universe of subpoenas requested by the defense that may relate to other victims, now or going forward.  In its letters and at argument, the Government urged that it had an independent obligation to protect the rights of victims and that it was best situated to inform the Court of the relevance or lack of relevance of any subpoena related to victim records.  That obligation to protect the rights of victims, however, also is shared by the Court, and the Court is fully capable of directing the Government be informed of a subpoena and requesting the appropriate information in an appropriate case and regardless whether the victim objects.

### B. Ex Parte Nature of Authorization

The Court further concludes that there was no intrinsic issue with the ex parte process by which Defendant requested the subpoenas under Rule 17.  Courts in this District have long followed the practice of permitting both the defense and the Government to submit ex parte applications for Rule 17(c) subpoenas.  With respect to the text of the Rule, the Court cannot improve upon Judge Larimer's explanation:

> The language of Rule 17(c) suggests this result [that a defendant may apply for a Rule 17(c) subpoena ex parte].  In pertinent part, the first sentence of that section reads as follows: "A subpoena may <u>also</u> command the person to whom it is directed to produce the books, papers, documents. . . ." (emphasis added). The word "also" suggests that the subpoena described above, that is in Rule 17(a) and Rule 17(b), in addition to requiring the person to attend, may also require that person to produce books, records, and documents. Therefore, Rule 17(c) should be interpreted in accordance with the provisions of Rule 17(a) and (b).

*United States v. Florack*, 838 F. Supp. 77, 79 (W.D.N.Y. 1993).

In *United States v. Reyes*, a court in this District set forth the rationale for permitting such subpoenas ex parte:

> There are strong policy reasons in favor of an *ex parte* procedure.  If a source of evidence were to be identified before the issuance of a subpoena, the source or the integrity of the evidence might be imperiled.  In addition, a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards of specificity, relevance, and admissibility. If a full adversary hearing was required to obtain a subpoena *duces tecum,* a party would be forced to reveal this information to the opposing side, a result which would occur even if a court declined to issue the subpoena.  In this vein, the Court is mindful that it is often **defendants** who seek a subpoena *duces tecum* on an *ex parte* basis in order to avoid disclosing their trial strategy to the Government.

*United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

Here, the Court held an ex parte hearing after determining "that there was good cause both for the subpoenas and for the defense proceeding ex parte."  Dkt. No. 67.  The Court does not credit the Government's argument that ex parte applications for Rule 17 subpoenas are unjustified because the defense previously asked for similar records from the Government.  Dkt. No. 77 at 2.  As Defendant argues, a good faith effort to seek records from the Government does "not foreclose the defense from making an *ex parte* application to the Court for Rule 17 subpoenas seeking similar records."  Dkt. No. 81 at 4.  Under the typical procedures of courts in this District, Defendant's request for a Rule 17 subpoena was appropriate and the Government's arguments to the contrary are unavailing.

C. Motions to Quash

The Government raises three concerns regarding the Court's prior orders: first, that the Court did not require that notice be given to the victim before issuing the subpoena; second, that the Court's order required only that "reasonable efforts" be made to notify the victim; and third,

that the Court placed the obligation to provide notice on the subpoena recipient and not on the

party seeking the subpoena, here, Defendant.  In the Government's view, the plain language of

Rule 17(c)(3) requires actual notice be given to the victim, and that such notice be provided by a

defendant before the court issues the subpoena.

      The defense argues that the notice was adequate.  The defense reads the language of

17(c)(3) differently.  It argues that 17(c)(3) mandates only that the Court "require giving notice"

before it enters the order.  Thus, according to the defense, it is not necessary for the Court to

require that victims be notified before it enters the order; instead, the Court must merely require

that notice be given once the subpoena is authorized, and the subpoena recipient, rather than the

defendant, can provide notice.  Dkt. No. 81 at 5.

      This issue has not been given detailed consideration in the case law.  In this District, the

notice provisions received their most extensive treatment in *United States v. Hoey*, 2014 WL

12911265 (S.D.N.Y. June 27, 2014).  In *Hoey*, the Government prosecuted members of a cocaine

distribution conspiracy.  *Id*. at *1.  Relying upon Rule 17(c)(3), the defendant sought records of

the city medical examiner relating to the death of an individual who allegedly died from

overdosing on cocaine distributed by the defendant.  *Id*.  The court employed the following

procedure: First, it determined that the request satisfied the *Nixon* factors.  *Id.*  Looking to the

notice requirements, it then directed the personal representative of the victim's estate to show

cause in writing why the subpoena ought not be issued.  *Id*.  The court directed the government

to serve the personal representative of the estate with a copy of the order.  *Id*. at *2.[3]

      The Court agrees with much of the *Hoey* process, but, with all due respect to the

---

[3] That opinion does not reflect how the government knew of the subpoena and whether the court
directed that the government be informed.

considered view of its colleague, not in all of its details.  It also therefore concludes that this

Court erred in permitting service of the subpoenas without the victim previously having been

given notice and a reasonable opportunity to move to quash or modify.  However, the Court's

reading of the Rule differs in some respects from that of the Government.

Under the Rule's plain language, the Court is required to engage in a two-step process.

First, it considers whether, under Rule 17(c)(1) and *Nixon*, a subpoena should be issued for the

production of documents pre-trial; if the subpoena does satisfy the *Nixon* standard, the Court

issues the subpoena.[4]  As laid out below, this analysis can be performed based upon an ex parte

application by the party seeking the subpoena and need not require that notice be provided to the

victim.  Second, if the subpoena calls for personal or confidential information of a victim, the

Court must require that the party requesting to serve the subpoena have given notice to the

victim—and in ample time for the victim to move to quash or modify—before the subpoena is

served.  It is not sufficient to place the responsibility on the receiving party or just to demand

reasonable efforts to provide notice.

That interpretation follows from the plain language of Rule 17.  The Rule draws a

distinction between the issuance of a subpoena and directions in it, on the one hand, and its

---

[4] The defense argues that the Court should instead apply the standard set forth in *United States v. Tucker*, which would require them to show "the request is (1) reasonable, construed as 'material to the defense' and (2) not unduly oppressive for the producing party to respond."  249 F.R.D. 58, 66 (S.D.N.Y. 2008).  The Second Circuit has routinely applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, *see United States v. Bergstein*, 788 Fed. App'x 742, 746 (2d Cir. 2019) (citing cases), and *Tucker* has not generally been followed in this Circuit.  *See United States v. Pedraza*, 2018 WL 6697992, at *2 (D. Conn. Dec. 20, 2018) (holding that *Tucker* is an aberration); *United States v. Yudong Zhu*, 2014 WL 5366107, at *4 (S.D.N.Y. Oct. 14, 2014) ("However, until the Supreme Court or the Second Circuit accepts the Court's analysis in [*Tucker*], this Court will apply *Nixon* . . ."); *United States v. Barnes*, 2008 WL 9359654, at *3 (S.D.N.Y. April 2, 2008) ("[A]l]ll district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense.").

service, on the other.  Under Rules 17(a) and (b), a subpoena issues from the clerk of court or, in

the instance of a "defendant unable to pay," from the court itself.  Rule 17(b), in particular,

provides that "the court must order that a subpoena be issued for a named witness" upon the

requisite showing and Rule 17(c)(1) provides that it is the court that "may direct the witness to

produce the designated items in court before trial."  Fed. R. Crim. P. 17(b).  It is those rules that

require the *Nixon* test to be satisfied.  *See Nixon*, 418 U.S. at 697-702.

Rule 17(d) and Rule 17(c)(2), by contrast, address service.  "A marshal, deputy marshal,

or any party who is at least 18 years old may serve a subpoena," Fed. R. Crim. P. 17(d), but a

subpoena for personal or confidential information about a victim "may be served on a third party

only by court order."  Fed. R. Crim. P. 17(c)(2).

It follows that this Court should proceed in two steps.  First, the Court determines that

Rule 17(c)(1) is satisfied.  No notice is needed.  Then, after it has determined that Rule 17(c)(1)

is satisfied and it has "issued" the subpoena, if the Court determines that the subpoena calls for

personal or confidential information about a victim, it requires the requesting party have given

notice to the victim before it permits the service of the subpoena.  If the victim objects, the Court

will then determine whether to modify or quash the subpoena, including on grounds that *Nixon*

was not satisfied.  If the victim does not object, the moving party then may request an order

permitting service and the Court will grant such motion.

It also follows that, other than in exceptional circumstances, the requesting party must

demonstrate that notice was given before a court will permit the service of the subpoena.  That

conclusion is now clear to the Court from the language of the rule.  Notice is not an idle gesture.

It is required "so that the victim can move to quash or modify the subpoena or otherwise object."

Fed. R. Crim. P. 17(c)(3).  That language is telling.  Just as a subpoena cannot be quashed until it

has issued (supporting the Court's view that it must proceed in two-steps), *see, e.g.*, *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) ("[A] motion to quash is not available if the subpoena has not been issued."); *cf.* Fed. R. Civ. P. 45(d)(2)(B) (stating that an objection to a subpoena must be made before "the earlier of the time specified for compliance or 14 days after the subpoena is served"), so too it may not be able to be quashed *after* it has been served.  At that point, the recipient is confronted with a court order to produce documents.  Assuming it will comply, the cat is out of the bag.

A comparison to Rule 45 of the Federal Rules of Civil Procedure is illustrative.  *See Black v. United States*, 561 U.S. 465, 472 (2010).  While under Rule 45, "[t]he clerk must issue a [civil] subpoena, signed but otherwise in blank, to a party who requests it," Fed. R. Civ. P. 45(a)(3), a subpoena calling for the production of documents before trial may not be served on the person to whom it is directed *before* notice is provided to each party.  The purpose is evident. Under the Federal Rules of Civil Procedure, a party affected by a subpoena has the right under certain circumstances to object to a third-party subpoena for documents, *see, e.g.*, *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 2020 WL 6375562, at *5 (D. Conn. Oct. 30, 2020) ("Under Rule 45, [a c]ourt may . . . find that a party has standing to challenge a third-party subpoena if it 'requires disclosure of privileged or other protected matter and no exception or waiver applies.'") (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)), and for that right to be effective, the notice must be provided in advance of the service of the subpoena and not after.  Likewise in the case of the Federal Rules of Criminal Procedure, where the rule makers intended to protect a similar right to move to modify or quash, but this time by the victim, notice also must be provided in advance of the service of the subpoena in order for the victim's rights to be most adequately protected.

The party requesting authorization for the subpoena to be served also is responsible for

ensuring that notice has been provided.  That is the process under the Federal Rules of Civil

Procedure, where the party serving the subpoena must provide notice.  It also places

responsibility where that responsibility must logically rest and with the person most interested in

discharging that responsibility.  The contrary rule (the one previously adopted by the Court),

which would place responsibility on the person receiving the subpoena, would permit the

subpoena recipient to defeat the objectives of the Rule by simply disregarding or inadequately

discharging the requirement to give notice and then producing the documents.  The victim would

receive no notice.  It also would permit the subpoena recipient to frustrate the requesting party's

interests by ignoring or making inadequate efforts to discharge the requirement to give notice

and then resisting the subpoena or delaying production pursuant to it on grounds that it had given

notice.  The recipient could say it was still in the process of attempting to provide notice.  The

defendant's rights would be undermined.

Moreover, where the requesting party does not have contact information or sufficient

means to give notice to the victim, there are always escape hatches.  The requesting party may

request from the Court a further Rule 17(c) subpoena simply for contact information for the

victim and, if it is able to demonstrate "exceptional circumstances," including that it needs the

requested information and it has not been able to provide notice despite efforts to do so, it may

request permission to serve the subpoena without notice.  Fed. R. Civ. P. 17(c)(3) advisory

committee note to 2008 amendment ("The Committee leaves to the judgment of the court a

determination as to whether the judge will permit the question whether such exceptional

circumstances exist to be decided ex parte and authorize service of a third-party subpoena

without notice to anyone.").[5]


## CONCLUSION

For the reasons stated, the Court reaches the following conclusions.

To the extent that any subpoenas have been served for the personal or confidential records of victims other than the two complaining victims, those subpoenas are QUASHED without prejudice to the subpoenas being reissued and leave being given for them to be served upon the filing with the Court under seal of a certificate of service indicating that notice has been provided to the victim.  Such certificate shall indicate the date and manner of service and the names of the persons served.  *See* Fed. R. Civ. P. 45(b)(4).

Based on the arguments made by the parties with respect to *Nixon* about the subpoenas to

---

[5] The Court, however, rejects the Government's argument that where the requesting party is the defendant, the victim must be provided with information other than notice of and a copy of the subpoena and, in particular, that it give the victim notice of the victim's rights under the CVRA. That requirement is nowhere in the Rule or the CVRA, nor would it serve the interests of either the victim or the defendant.  The CVRA does explicitly require the Government to inform the victim of the victim's rights. 18 U.S.C. § 3771(c)(1).  But where the defendant is the requesting party, the defendant and the victim are often adverse.  It is not up to the defendant to advise the victim of her rights when the exercise of those rights would impede the defense.  And even if the Court were to draft the requisite language, that might have the effect of putting the court's thumb on the scale of whether the victim asserts her rights or not and the court may get it wrong or incomplete.  If a victim receives notice of a subpoena and wants advice as to what to do about it, the victim may always consult the Government which has the obligation to inform the victim of her rights and the ability to advocate for those rights.  That will be sufficient in most circumstances. In any event, under the Rule, no more is required.  Finally, the Advisory Committee Notes to the 2008 Amendments which the Government cites for the proposition that the Court is required to go further and provide a statement of the victim's rights sets forth no such requirement.  The notes discuss the "protective mechanism [for the victim] when the defense subpoenas a third party to provide personal or confidential information about a victim", but it is clear from the notes and their context that the protective mechanism is judicial approval of the subpoena and notice of the subpoena itself.  The protective mechanism does not include gratuitous advice about the victim's rights or suggestions as to whether or not she should assert them.

the complaining victims, the Court will hear from the defense as to whether *Nixon* is satisfied

with respect to any other victims.  The Court will follow the same process with respect to any

future subpoenas for personal or confidential records of victims sought by either party.

Sufficient notice will have to be given to the victims for them to have the opportunity to move to

quash or modify before service will be permitted.  The victims will have the rights, if they

choose to exercise them, to consult with the Government about how to respond to the subpoenas

and the Government will have the obligation to inform the victims of their rights and—if

asked—to advocate for the victim's rights.

　　　　To the extent that any victim wishes to address the Court directly with respect to the

subpoenas either pro se or through counsel, he or she shall have those rights.  Finally, to the

extent that a victim chooses not to object to a subpoena on the grounds that it calls for

information as to which the victim enjoys a privilege or calls for personal or confidential

information of the victim, the Court will not entertain an application from the Government

seeking to deprive the defense of subpoenaed documents or information on those grounds.


　　　　SO ORDERED.

Dated: November 25, 2020
　　　　New York, New York　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　LEWIS J. LIMAN
　　　　　　　　　　　　　　　　　　　　　United States District Judge