UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                 :
UNITED STATES OF AMERICA           :    **AFFIDAVIT OF SPECIAL**
                 :    **AGENT KELLY MAGUIRE**
       - v. –                          :
                 :
LAWRENCE RAY,                    :    20 Cr. 110 (LJL)
                 :
            Defendant.              :
                 :
------------------------------------------------------------ X

STATE OF NEW YORK    )
                             ) ss.
COUNTY OF NEW YORK )

       KELLY MAGUIRE, Special Agent, Federal Bureau of Investigation, deposes and states under penalty of perjury that the following is true and correct:

       1.      I have been a Special Agent with the FBI for approximately three years. Previously I was with the Charleston Police Department in Charleston, South Carolina for approximately nine years. I am currently assigned to the Child Exploitation and Human Trafficking Joint Task Force of the FBI and the New York Police Department ("NYPD"), a squad that is responsible for investigating sex trafficking and related crimes involving the sexual exploitation of minors. Because this Affidavit is being submitted for a limited purpose, namely in response to a motion filed by the defendant seeking to suppress any statements that the defendant made after he was arrested in the instant case, it does not include all the facts concerning the defendant's arrest.

       2.      I am the primary case agent on the investigation into Lawrence Ray, the defendant. The defendant was arrested at his home at approximately 6:00 a.m. on February 11, 2020 at his

residence in Piscataway, New Jersey. Together with NYPD Detective Walter Harkins, I conducted a post-arrest interview of the defendant, also on February 11, 2020, at his New Jersey residence.

3. Because a search of the defendant's residence was being conducted at the same time, the defendant was taken into his bedroom to allow the search team to undertake a search of the common areas while the interview occurred.

4. Before the interview began, I provided the defendant with a form advising him of his *Miranda* rights, which is attached here as Exhibit A. I read the defendant his rights from this form. I then observed the defendant read this form to himself. He then signed the form. The form memorializes the place, date, and time that the defendant was advised of his rights, and the time that the defendant signed the form. Det. Harkins witnessed the form, and I provided a second witness signature. The defendant indicated that he wished to answer questions. We then began the interview.

5. Throughout the interview, the defendant was alert, responsive and coherent. The tone of the interview was cordial. The defendant was uncuffed for the duration of the interview. The defendant was seated on the bed, approximately 3 to 4 feet from me, and approximately 6 to 10 feet from Det. Harkins. His feet were on the floor, and he did not fall back onto the bed or otherwise lose balance during the interview.

6. At the outset of the interview, I advised that Ray should let me and Det. Harkins know if he needed to use the bathroom or needed water. A few minutes into the interview, the defendant asked for, and received, water.

7. The defendant also asked to use the restroom on two occasions during the interview. On those occasions, I accompanied the defendant as far as the living room and did not observe him

stumble or lose balance in any visible way while walking to the bathroom. On both occasions, the defendant returned and indicated that he wanted to continue questioning.

8. I conducted the interview, but recall that Det. Harkins asked at least one clarifying question near the conclusion of the interview. At one point, approximately halfway into the interview, the defendant began to provide lengthy, non-responsive answers to my questions. I then advised the defendant that he could provide direct responses to my questions or terminate the interview and proceed with the arrest processing. He indicated he wanted to continue the interview, and then proceeded to answer additional questions. Neither I nor Det. Harkins made any promises or threats before or during the interview to induce the defendant's cooperation, nor did we suggest his participation in the interview would result in his release on bail. I estimate that the interview lasted approximately 1.5 hours, including the defendant's bathroom breaks.

9. At the time, I believed that Det. Harkins was recording the interview based on our prior conversations. I learned the next day, February 12, 2020, that the interview had not been recorded. I took notes of the interview, which are attached here as Exhibit B.

Dated: January 7, 2021
New York, New York

Kelly Maguire
Special Agent, FBI

NOTARY:
New York County
EXPIRES 4-24-2021
Nestor Pujols
/s/ Nestor Pujols
January 7, 2021

[Notary seal: NESTOR PUJOLS, NOTARY, NO. 01PU6357633, QUALIFIED IN NEW YORK COUNTY, COMM. EXP. 04-24-2021, STATE OF NEW YORK PUBLIC]

3

# Exhibit A

# FEDERAL BUREAU OF INVESTIGATION
## ADVICE OF RIGHTS

### LOCATION

Place: [redacted]    Date: 2/11/20    Time: 0618

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during the questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: [signature]

### WITNESS

Witness: DET. WALTER HARKINS

Witness: [signature] Matt E. Hall

Time: 0619

[signature] Kelly Maguire    SA KELLY MAGUIRE FBI

US_014955

# Exhibit B

REDACTED