UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                   :

UNITED STATES OF AMERICA,                 :

                                             :

                    -v-                 :           20-cr-110 (LJL)

                                             :

LAWRENCE RAY,                      :       OPINION AND ORDER

                  Defendant.          :

                                           :

------------------------------------------------------------------------ :
                                                  X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/27/2021__

LEWIS J. LIMAN, United States District Judge:

    Defendant Lawrence Ray ("Ray") moves for a bill of particulars.  Dkt. No. 177.  The motion is granted in part and denied in part.

## BACKGROUND

    Ray was first indicted in this case on February 6, 2020, Dkt. No. 1, and his indictment was unsealed on February 11, 2020 when a warrant was issued for his arrest.  Dkt. Nos. 3, 4.  He was arrested that day and arraigned the following day.

    On January 29, 2021, the Grand Jury returned a superseding indictment against Ray and his co-defendant Isabella Pollok ("Pollok"). S1 20 Cr. 110.  Dkt. No. 127.  The 27-page indictment is in 16 counts.  Count One charges Ray and Pollok with racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  Ray and Pollok are charged with being members of a criminal organization, or a racketeering "Enterprise," whose members engaged in, among other things, extortion, sex trafficking, forced labor, money laundering, and obstruction of justice.  Ray is charged with being the founder and leader of the Enterprise.  It is alleged that he recruited Pollok and others to join the criminal scheme and to work on behalf of the Enterprise.  *Id.* ¶¶ 1, 4. Count One charges that from at least in or around 2010, up to and including in or around 2020,

Ray and Pollok agreed to conduct and to participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity "consisting of multiple acts (a) indictable under Title 18, United States Code, Sections 1951 and 2 (relating to extortion); (b) involving extortion chargeable under . . . provisions of . . . New York Penal Law . . .; (c) indictable under Title 18, United States Code, Section 1591 and 2 (sex trafficking by force, fraud, or coercion); (d) indictable under Title 18, United Sates Code, Sections 1589 and 2 (forced labor); (e) indictable under Title 18, United States Code, Sections 1590 and 2 (forced labor trafficking); (f) indictable under Title 18, United States Code, Section 1952 and 2 (use of interstate commerce to promote unlawful activity); (g) indictable under Title 18, United States Code, Sections 1956 and 2 (relating to the laundering of monetary instruments); (h) indictable under Title 18, United States Code, Sections 1512 and 2 (relating to tampering with a witness, victim, or an informant); and (i) indictable under Title 18, United States Code, Sections 1503 and 2 (relating to obstruction of justice)." *Id.* ¶ 8. The superseding indictment charges that during the relevant time period, Ray and Pollok lived with some of their victims, first in on-campus housing at a college in Westchester County, New York, and later at locations in Manhattan, New York; Pinehurst, North Carolina; Piscataway, New Jersey; and elsewhere; and that Ray, with Pollok's assistance, "subjected the Victims to sexual and psychological manipulation and physical abuse in order, among other things, to extract false confessions from the Victims" and that they used those "false confessions to extort money from the Victims, to force some of the Victims to perform unpaid manual labor, and to cause one of the female Victims ('Female Victim-1') to engage in commercial sex acts for the Enterprise's financial benefit." *Id.* ¶ 5.

Count Two of the superseding indictment charges Ray and Pollok with extortion conspiracy in violation of Title 18, United States Code, Section 1951. It charges that "[f]rom in

or about 2011 up to and including at least in or about 2019, [the two agreed] to commit extortion . . . by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and would and did thereby obstruct, delay, and affect commerce, and the movement of articles in commerce, . . . to wit, RAY and POLLOK agreed to extort money from the Victims to repay supposed wrongdoing against RAY and others." *Id.* ¶ 11.

Count Three charges Ray with a substantive count of extortion in violation of Title 18, United States Code, Sections 1951 and 2, during the same time period as charged in Count Two, by "extort[ing] money from Female Victim-1 to repay supposed wrongdoing against Ray and others." *Id.* ¶ 1.

Count Four charges Ray with sex trafficking in violation of 18 U.S.C. §§ 1591 and 2, and Count Five charges Ray (along with Pollok) with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594. *Id.* ¶¶ 13, 14. Count Four charges that from in or about 2011 to at least in or about 2019, Ray engaged in the sex trafficking of Female Victim-1. *Id.* ¶ 13. Count Five charges that Ray and Pollok agreed to engage in the sex trafficking of Female Victim-1. *Id.* ¶ 14.

Counts Six, Seven, and Eight charge Ray with, respectively, forced labor, in violation of 18 U.S.C. §§ 1589 and 2, forced labor trafficking in violation of 18 U.S.C. §§ 1590 and 2, and forced labor conspiracy in violation of 18 U.S.C. § 1594. *Id.* ¶¶ 15-17. They each charge, in substance, that from in or about May 2013 up to and including at least in or about December 2013, "RAY caused several female Victims to perform physical labor on a property in Pinehurst, North Carolina by among other things, physically harming, threatening, and intimidating the Victims, threatening legal action against them, and convincing those Victims that if they did not

3

perform the labor, those Victims would suffer serious harm." *Id.* ¶ 15; *see also id.* ¶ 16 (Count Seven: "RAY convinced and caused several female Victims to travel from Manhattan, New York to Pinehurst, North Carolina in order to obtain their physical labor"); *id.* ¶ 17 (Count Eight: "RAY agreed with others to obtain the physical labor of several female Victims on a property in Pinehurst, North Carolina").

Counts Nine and Ten charge Ray with the use of interstate commerce to promote unlawful activity in violation of the Travel Act, 18 U.S.C. §§ 1952(a)(3)(B) and 2. *Id.* ¶¶ 18-19. Count Nine charges that from at least in or about 2014, up to and including at least in or about 2019, Ray violated the Travel Act by "us[ing] a cellular phone and the Internet, and travel[ing] in interstate commerce, to promote, manage, and carry on a criminal business engaged in sex trafficking and prostitution, and promoting prostitution, in violation of New York Penal Law …" *Id.* ¶ 18.  Count Ten charges that from at least in or about 2011, up to and including at least in or about 2019, Ray violated the travel act by "us[ing] a cellular phone and the Internet, and trave[ing] in interstate commerce, to promote, manage, and carry on extortion, in violation of New York Penal Law . . ." *Id.* ¶ 19.

Count Eleven charges Ray with laundering the proceeds of his extortion and sex trafficking crimes in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (ii), and 2.  The charged time period is from at least in or about 2011 until at least in or about 2019.  *Id.* ¶ 20.

Counts Twelve through Sixteen charge Ray with tax evasion in violation of 18 U.S.C. § 7201, for each of the tax years 2015, 2016, 2017, 2018, and 2019, by evading the payment of taxes on the proceeds of the offences charged in Counts One through Five of the superseding indictment.   The alleged acts of evasion are identical for each of the five counts.  Ray "(a) caus[ed] nominees to deposit a substantial part of RAY's unreported income into bank accounts

in the nominees' names, including at bank branches and ATMs in the Southern District of New York, and subsequently to transfer the income to RAY through cash and electronic transfers; and (b) us[ed] unreported income deposited into bank accounts in the nominees' names to pay for personal expenses, including to purchase numerous domain names for which RAY was the registrant." *Id.* ¶¶ 21-25.

The venue for each of the crimes charged in Counts One through Sixteen is the Southern District of New York.

## LEGAL STANDARD

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to "direct the government to file a bill of particulars." Fed. R. Cr. P. 7(f). The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charges pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (same). However, "'[a] bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'" *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)). The district court has broad discretion in determining whether to grant a motion for a bill of particulars. "Courts are only required to grant a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)). These general factors help frame the analysis; they do not determine the outcome. "The line that distinguishes one defendant's

request to be apprised of necessary specifics about the charges against him from another's request for evidentiary detail is one that is quite difficult to draw." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).  The essential question is whether the defense has been provided sufficient particulars "to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges." *Id.* at 235; *see United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (directing particulars where they "will help a defendant focus his investigation and prepare for trial").  "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574.  In determining whether the Government should be required to provide a bill of particulars, the Court considers the language of the indictment but also "the totality of the information available to the defendant" including through pretrial discovery.  *Bin Laden*, 92 F. Supp. at 233.

Ray first made this motion on May 14, 2021, seeking particulars with respect to each of the 16 counts of the Indictment.  Dkt. No. 177.  The motion was not accompanied by the affidavit required by Local Criminal Rule 16.1 that "counsel has conferred with counsel for the opposing party in an effort in good faith to resolved by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement."[1]  Following the service of the motion, the defense did confer with the government regarding the request for

---

[1] Local Criminal Rule 16.1 provides in full:
No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement.  If some of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues remaining unresolved.
If the defendant has not complied with the Rule, the motion may be denied for that reason alone. *See United States v. Ming*, 2002 WL 1949227, at *1 (S.D.N.Y. Aug. 22, 2002).

particulars.  As a result, the defense's request has been narrowed somewhat.

The Court considers each request applying the settled standards in this Circuit.

## DISCUSSION

### A.      Counts One and Two

Ray's request for particulars with respect to Count One is exhaustive.  He seeks to have

the Government identify: (1) the "victims" (described as "college students and others"); (2) the

"Enterprise's ideology"; (3) the "false confessions"; (4) the acts of intimidation and violence and

threats of retaliation and against whom they were made; (5) the crimes committed by members

and associates and the individuals who allegedly witnessed them; (6) the "Victims" who were

"force[d] . . . to perform unpaid manual labor"; (7) the "various bank accounts"; (8) the

targets/"victims" of extortion, grand larceny by extortion, sex trafficking, and forced labor; (9)

the witness/victim/information related to witness tampering in violation of 18 U.S.C. § 1512 and

obstruction of justice in violation of 18 U.S.C. § 1503; and (10) "[r]egarding the special

sentencing factor, . . . the conspirator who engaged in this conduct."  Dkt. No. 177 at 6-7.

Ray seeks the following information with respect to Count Two: (1) the identity of the

co-conspirators; (2) the identity of "the Victims"; and (3) the "supposed wrongdoing."   Dkt. No.

177 at 7.

Following the service of Ray's motion, the government identified for the defense (a) six

individuals who are alleged victims and one additional individual who is a potential victim; (b)

two individuals who are alleged co-conspirators; and (c) two individuals who are potential

witnesses but the government does not characterize as victims or co-conspirators.  The

government also has stated that it "is not prepared to discuss how [it] would characterize" four

additional individuals about whom the defense requested information although it stated that

"they are not viewed as victims" and that "there may be additional victims referenced in the

discovery materials that will be part of [the government's] proof at trial", that it was "not representing [that it had provided] the exhaustive list of conspiracy participants, and may reference other co-conspirators at trial," and that it was "not prepared to identify other victims to the defense beyond that which is apparent from a review of the discovery."  Dkt. No. 195 ¶ 4. The government also identified the particular female victims who were forced to perform unpaid manual labor and were the subject of the forced labor counts.  Dkt. No. 185 at 6.

Ray argues that the government's disclosures are insufficient and that he needs particulars because of the breadth of the conduct covered by the Indictment "both in terms of time and actors—the voluminous discovery produced, the lack of clear division between the people who the government believes are victims and those the government believes are co-conspirators, and the unique challenges posed by the COVID-19 pandemic."  Dkt. No. 177 at 1. He notes that the number of co-conspirators is "untold," as is the number and identity of the victims, by which the Court understands Ray to be complaining simply that the government has not told him the number and identity of all of the victims—but has left the door open to identify others as victims that it has not already identified to the defense.  He notes that the information provided to him does not permit him to "know what people the government believes fall into the categories of co-conspirators, associates, leaders, and nominees, and whether some people fall into numerous of these categories."  *Id.* at 2.

The superseding indictment itself provides Ray extensive information with respect to the identity of the victims of the offense and his co-conspirators.  "Victims" is a defined term in the superseding indictment—it refers to "a group of college students and others" who "Ray . . . targeted for indoctrination and criminal exploitation by the Enterprise."  Dkt. No. 127 ¶ 4.  It does not include persons who were targeted by others but not by Ray.  Thus, "[t]he nature

8

of the crime is such that the defendant can be expected to have met, and thus already know the identities of" the Victims. *United States v. Guerrero*, 669 F. Supp. 2d 417, 428 (S.D.N.Y. 2009); *cf. United States. v. Akhavan*, 2020 WL 2555333, at *2 (S.D.N.Y. May 24, 2020) (ordering particulars where "the indictment suggests that the co-conspirators represented several distinct organizations")  Indeed, the superseding indictment specifies that Ray "lived with some of the Victims, first in on-campus housing at a college in Westchester County, New York and thereafter at locations in Manhattan, New York; Pinehurst, North Carolina; Piscataway, New Jersey; and elsewhere."  Dkt. No. 127 ¶ 5.  They were not strangers to Ray.  The very nature of the crime with which he is charged, "psychologically manipulating and controlling [the Victims] for the success and furtherance of the Enterprise's ideology and the financial gain of its members," *id.* at ¶ 5, dictates that he would have had to establish a relationship with them.

The nature of the conspiracy is also such that the co-conspirators would have been drawn from a limited group of people and Ray would be expected to know the identities of the persons whom, if they were not Victims, would be considered to be co-conspirators.  This is not a case where "a defendant is . . . likely to be surprised by the identity of . . . co-conspirators, whom he may never have met." *Nachamie*, 91 F. Supp. 2d at 572.  The charged means and methods of the conspiracy are all ones in which Ray would have been directly involved: "(a) [n]urturing the Victims' loyalty to the members and associates of the enterprise and alienating them from their families; (b) [s]ubjecting the Victims to sexual and psychological manipulation; (c) [p]hysically abusing the Victims, including through acts of violence, threats of violence, food deprivation, and sleep deprivation; (d) [e]xtracting false confessions from the Victims that they had caused harm and damage to members and associates of the Enterprise, such as Ray and Pollok, including by false confessions that the Victims had poisoned Ray, Pollok, and others; (e)

"[d]ocumenting and retaining Victims' false confessions, including through video and journals kept by Victims at Ray's direction; (f) [l]everaging the Victims' false confessions to extort money from the Victims, to force some of the Victims to perform unpaid manual labor, and to cause one of the female Victims ('Female Victim-1') to engage in commercial sex acts for the Enterprise's financial benefit in New York City and elsewhere; (g) [c]ollecting sensitive, humiliating, and incriminating material against the Victims to further the purposes of the Enterprise . . .; (h) [t]hreatening to turn the victims in to law enforcement in light of their false confessions . . .; (i) [p]ressuring Female Victim-1, through force, fraud, and coercion, to engage in frequent prostitution . . . ; and (j) [l]aundering the proceeds of the Enterprise's criminal activity through various bank accounts and Ray's online domain business."  Dkt. No. 127 ¶ 7. Significantly, it is Ray who is alleged to have "led the Enterprise" and

"recruited . . . POLLOK  . . . and others . . . to join the criminal scheme and to work on behalf of the Enterprise."  *Id.* ¶ 4.

Moreover, the original indictment identifies the victims of Ray's crimes by number, the government has identified each of those persons for the defense, and the government has confirmed that the victims identified in the original indictment remain the "Victims" in the superseding Indictment.  Dkt. No. 185 at 6.

Ray also is not entitled to any further particulars with respect to the persons alleged to have participated in the extortion conspiracy charged in Count Two.  In addition to the information set forth in the indictment, the superseding indictment, the government's filings, and formal and informal discovery, Count Two contains a "to wit" clause that specifies that "RAY and POLLOK agreed to extort money from the Victims to repay supposed wrongdoing against RAY and others."  Dkt. No. 127 ¶ 11.  Although the clause is "illustrative" and not exclusive and

admits of the possibility that there are others who conspired, *United States v. Agrawal*, 726 F.3d 235, 261-62 (2d Cir. 2013), the language—particularly when combined with all the other information provided to the defense—provides sufficient information to Ray to permit him to defend against the charges and to interpose a plea of jeopardy against a second prosecution.

Ray does not argue that he is unaware of the population of persons who are either victims or co-conspirators, that that population is particularly large,[2] or that he does not know the nature of the crimes with which he is being charged.  The thrust of his argument is that "[w]ithout more particulars, the defense cannot know what people the government believes fall into the categories of co-conspirators, associates, leaders, and nominees, and whether some people fall into numerous of these categories."  Dkt. No. 177 at 2.  In other words, Ray seeks the government's views as to whom from that limited group it will present as victim and whom it views as a co-conspirator.  Ray notes that his co-defendant Isabella Pollok, as well as other people the government believes are "potential" co-conspirators, including his daughter, would seemingly also fall into the category of the "group of college students" who are also Victims.  *Id.* at 1, 5.

That argument appears to have been effectively addressed by the government.  The government has identified who it believes to be a victim and who it believes to be a co-conspirator.  In any event, Ray is not entitled to have the government commit beforehand to whom it will present at trial as a victim and whom as a co-conspirator.  Indictments frequently present co-conspirators as including those "known and unknown to the Grand Jury" and the law has long been clear that the Government is not required to specify those "known and unknown" by a bill of particulars.  A criminal defendant is "not entitled to a bill of particulars setting forth

---

[2] Ray asserts that he has identified "about 175 potential witnesses," but the defense has not disputed that such figure simply represents the number of persons who are on an email that has been turned over by the government.  Dkt. No. 166 at 41.

the 'whens,' 'wheres,' and 'with whoms' regarding [a] conspiracy." *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); *see United States v. Rose*, 2021 WL 2117119, at *14 (S.D.N.Y. May 24, 2021) (request for wheres, whens, and with whoms "beyond the scope of a bill of particulars") (quoting *United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011)); *United States v. Helbrans*, 2021 WL 2873800, at *15 (S.D.N.Y. July 8, 2021) ("[d]emands for information 'with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied'") (quoting *Guerrero*, 669 F. Supp. 2d at 426); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (same and citing cases).  It follows that if, as here, the defendant has been informed of the limited population from whom the group of co-conspirators is drawn and what conduct would make someone a co-conspirator and also has been informed that the group of victims is drawn from that same population, the defendant need not be informed in advance of whom among that group the Government will present as a victim and who as a co-conspirator.  After all, on the superseding indictment's allegations, the difference here between a co-conspirator and a victim may lie in the intent of the individual—whether he or she has joined in an agreement intending to accomplish an unlawful end or whether instead he or she has been duped by the Defendant and his co-conspirators to make false confessions and to engage in forced labor or commercial sex acts and therefore did not form the necessary intent to be a co-conspirator.  The defendant, or more precisely his counsel, enjoys the ability to investigate each of the Roommates and Victims and to determine for itself whether he or she might be a defense witness, is someone who joined in the conspiracy, or know views himself or herself as a victim and thus may "conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges."

12

*Bin Laden*, 92 F. Supp. 2d at 235.  No more is required.[3]

Most of the remainder of the requests seek evidentiary details about the charged conspiracy some of which already have been provided and most of which Ray is not entitled to through a bill of particulars.  Ray complains that "the indictment references 'supposed wrongdoing' and 'false confessions' without description, explanation, or criteria for differentiating actual wrongdoing and true confessions," Dkt. No. 177 at 2, and that without particulars "[t]he defense would be left to explain the contents of mountains of video and audio recordings, not knowing which ones the government deems 'false.'"  *Id.* at 5.  Ray also complains that the superseding indictment "lists extortion of different types and degrees without specifying whether it involved threats of physical harm or damage to property; lists obstruction of justice without specifying who, when, or how justice was obstructed and in relation to what proceeding; and lists tampering with a witness, victim, or an informant without specifying which one and in relation to what official proceeding."  *Id.* at 2.

Ray already has most of the information he seeks.  Ray is not entitled to particulars with respect to the false confessions or the supposed wrongdoing referred to in the superseding Indictment.  The superseding indictment describes the "false confessions" as being about "caus[ing] harm and damage to members and associates of the Enterprise, including by poisoning RAY, POLLOK, and others."  Dkt. No. 127 ¶¶ 5, 7(d).  The superseding indictment also provides particulars with respect to the types and means of methods of extortion.  It charges that they were "leveraged . . . to extort money from the Victims, to force some of the Victims to

---

[3] The defense request is tantamount to a request for a witness list far in advance of trial, which is routinely denied in these cases.  Dkt. No. 166 at 41-42 (denying request for witness list); *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975) ("A defendant who seeks a witness list, must make a specific showing is that disclosures both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case.").

perform unpaid manual labor, and to cause [Female Victim-1] to engage in commercial sex acts for the Enterprise's financial benefit" (¶¶ 5, 7(f)). The superseding indictment further charges that RAY and POLLOK "[d]ocument[ed] and retain[ed] Victims' false confessions, including through video and journals kept by Victims at Ray's direction," and "[t]hreaten[ed] to turn the Victims in to law enforcement in light of their false confessions." *Id.* ¶¶ 7(e), 7(h). It thus gives Ray notice regarding what will be considered to be false confessions—if they are about something other than causing harm and damage to members and associates of the Enterprise, they are not among the false confessions. The same point can be made about the reference to the "supposed wrongdoing" in Count Two that Ray and Pollok extorted money from the Victims to repay. The superseding indictment makes clear that the wrongdoing was the acts of supposed harm to members of the Enterprise, including the false confessions to poisoning Ray, Pollok and others.

The government has represented that the allegations of the original indictment "continue to reflect the Government's theory of the case." Dkt. No. 185 at 10. The original indictment provides further information about the false confessions. It charges that "[d]uring the interrogations [Ray conducted of the Victims], RAY made false accusations against the Victims, including that the Victims had deliberately: (1) damaged the Apartment and RAY's property, and stolen RAY's property; (2) harmed and sabotaged RAY and his family members and other associates; (3) lied about their intentions and actions; and (4) poisoned RAY and his family members and other associates." Dkt. No. 2 ¶ 6. It details that Ray "falsely accused a male Victim ('Male Victim-1') of damaging RAY's property, and brandished a knife and threatened to dismember Male Victim-1 with it, leading Male Victim-1 to falsely confess wrongdoing," *id.* ¶ 8, and that "RAY retained a list emailed to him by Male Victim-3 that listed each item of

RAY's property that Male Victim-3 had supposedly damaged, such as furniture and kitchen appliances, as well as that property's monetary value, allegedly totaling tens of thousands of dollars." *Id.* ¶ 9.

The language of the indictment and superseding indictment, moreover, cannot be viewed in isolation. The "totality of the information available" to Ray is enough to give the defendant notice of the nature of the charge against him, to enable him to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution of the same offense. *Bin Laden*, 92 F. Supp. 2d at 233.

The totality of the information includes the lengthy facts proffered by the government during its bail argument on March 2, 2020, Dkt. No. 17-1 at 18-23, as well as its written submissions in opposition to the defendant's pretrial motions, *see* Dkt. Nos. 38, 116-118. In those submissions, the government detailed not only the criminal activity engaged in by Ray but the evidence that established and defined that criminal activity.

The government also set forth extensive detail in the four search warrant affidavits setting forth the probable cause that Ray engaged in racketeering, forced labor conspiracy and violations, and sex trafficking, among other crimes. Dkt. No. 112-1. The affidavits contain the allegations (1) that on or about September 2010, following his release from prison, Ray moved in with his daughter Talia Ray and her roommates at Sarah Lawrence College (the "Roommates"); (2) that "[o]ver time, [he] began to control aspects of the lives of some of the Roommates;" (3) that he gave "counseling sessions" to Female Victim-1 and "sexual education" to some Roommates; (4) that he brought FV-1 and others to his stepfather's house in Pinehurst, North Carolina to install a drainage system in the yard; (5) that Ray has created a website that documented purported confessions from FV-1 including that she had tried to poison Ray; (6) that

in 2014, Female Victim-1 had begun working as an escort and would give her profits to Ray in order to pay for the damage she was led to believe she had done to Ray's property; (7) that Ray took the money Female Victim-1 had earned from escorting; and (8) that Ray had strapped Female Victim-1 to a chair and put a plastic bag over her head.  Dkt. No. 112-1 at 10-14.

The affidavit also included corroborating information obtained by Special Agent Maguire of the FBI through interviews she conducted with Female Victim-1 beginning in June 2019, including (1) that Ray had moved in with Female Victim-1, and others (three of whom were identified by name), while they were students at Sarah Lawrence College; (2) that Ray had provided some of the Roommates with "sex education" and had provided Female Victim-1 with "counseling sessions;" (3) that Ray had repeatedly asked Female Victim-1 "why she was poisoning him and others;" (4) that Female Victim-1 had "started to believe that she had in fact poisoned Ray and others and had 'confessed' to it at Ray's urging," including by recording on Ray's iPhone a confession which was later posted on YouTube; and (5) that Female Victim-1 "no longer believe[d] she poisoned Ray or anyone else."  *Id.* at 12.  One of the search warrant affidavits set forth information that Female Victim-1 had travelled to Pinehurst, North Carolina for about six weeks around Father's Day 2013 to do work in the backyard of Ray's stepfather's house and that, while she was doing physical labor in the backyard, Ray controlled her access to food and sleep and on one occasion shoved her down and berated her for intentionally doing bad work in the yard and, on another occasion, Ray had left her to sleep outside and denied her food for more than a day.  *Id.* at 12-13.  The warrant affidavits included information that Ray had created a website that contained negative information about Female Victim-1 (which he told Female Victim-1 he had created because she had behaved poorly), including the statement that she had poisoned him and that he "routinely threatened" to turn her into the police for poisoning

him.  *Id*. at 13.

The government also has made 22 productions of discovery material to the defense, including tax records from the Internal Revenue Service, subpoena returns, bank records, evidence found during the execution of searches including ledgers and journal entries, and electronically stored information from multiple devices including audio and video recordings, photographs, and documents, as well as draft transcripts of various records.  The defense complains that this is a "mountain of information" but it is not entitled to a key to the evidence that the Government intends to use. However, that the requested particulars will help "the defendant . . . to conduct discovery . . . is not the purpose of a bill of particulars."  *United States v. Kelly*, 2020 WL 473613, at *2 (E.D.N.Y. Jan. 29, 2020).  "Nor are defendants entitled to . . . 'information regarding how the Government alleges the defendant performed acts in furtherance of the conspiracy,'" *Helbrans*, 2021 WL 2873800, at *15 (citing *United States v. Minaya*, 395 F. Supp. 2d 28, 36 (S.D.N.Y. 2005); *see also United States v. Sindone*, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("The defendant may not "use a bill of particulars to preview the government's evidence or trial strategy, or to require the government to specify the minutiae of how it will prove the charges.") (quoting *United States v. Wilson*, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983) (Weinfeld, J.)).  Indeed, as a general matter, in our adversarial system, it is incumbent on the defense to review the discovery for itself to determine its significance; it is not the role of the government to tell the defense everything that is important and why.  *Cf. United States v. Ohle*, 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011).  In any event, at the Court's strong encouragement, the government has steered defense counsel to the information that it views as most salient to the case and has produced to the defense every email that it had tagged in its email review database as either "potential

*Brady/Giglio*" or as a "confession."  Dkt. No. 185 at 3.

This information provides Ray sufficient (and ample) notice of the acts of intimidation and violence and threats of retaliation and against whom they were made, the crimes committed by members and associates, the "Victims" who were "force[d] to perform unpaid manual labor" and the "targets/'victims'" of extortion, grand larceny by extortion, sex trafficking, and forced labor.  Dkt. No. 177 at 7.  Ray is not entitled to particulars with respect to the "Enterprise's ideology."  *Id.* at 6.  That is not an element of the offense, he does not need the information in order to defend himself or to assert a plea of jeopardy, and the superseding indictment and remaining information provide extensive information about the Enterprise.

Except as specified below, Ray is not entitled to more with respect to "the specific dates on which the alleged illegal conduct occurred."  *See Raniere*, 384 F. Supp. 3d at 322-23 (holding that defendant is not entitled to the "whens" of a conspiracy including "specifics regarding the nature of the alleged commercial sex acts, who performed them and when and where they did so, or what value was exchanged on their account," where the government has disclosed "substantial discovery, including email communications, audio and video recordings, and summaries of interviews with various witnesses" and "outlined its theory and the facts upon which it is based in numerous filings with the court").

The government has turned over to the defense the documents it has marked as confessions as well as the information it has coded as potential *Brady* information.  The Court has given the defense extensive time to prepare and has ensured that measures be taken that address the challenges presented by the large volume of information and the circumstances created by the COVID-19 pandemic, including modifying the protective order and ensuring that Ray has the ability to review the material while detained.  It also has ordered the government to

produce three weeks in advance of trial a list of all exhibits it anticipates offering at trial as well

as to provide *Giglio* material two weeks in advance of trial.  The defense is entitled to no more.[4]

There are only a few requests Ray has made under Counts One and Two for which the

Government should provide particulars.  Ray seeks particulars with respect to the superseding

indictment's allegations that he obstructed justice and tampered with witnesses.  The superseding

indictment provides insufficient facts to identify for Ray what it is alleged he has done.  A

pretrial submission by the Government, made in connection with his request for bail, details

information the Government had obtained regarding Ray's communications with two young

women who were residing with him at the time of his arrest and are alleged to have been

witnesses and accuses Ray of attempting to tamper with these witnesses and preventing them

---

[4] The defense relies upon *United States v. Valle*, 12 Cr. 847 (PCG), Dkt. No. 40 (Jan. 9, 2013).
There, Judge Gardephe granted in part and denied in part a motion for a bill of particulars,
directing the government to provide particulars, fewer than two weeks before the start of the
trial, regarding the identities of the victims and co-conspirators but not regarding the alleged
overt acts.  In directing the provision of particulars, the court recognized that the circumstances
of the case were "highly unusual."  The indictment was not detailed and it was "entirely unclear
whether the Government [would] contend that there were conspiratorial agreements to kidnap
each of . . . 84 women, or whether there was a conspiracy to kidnap only a small subset of these
84 women." *Bortnovsky*, 820 F.2d 572, is also inapposite.  There, in a case where defendants
were charged with submitting false and inflated insurance claims for burglary losses the
defendants themselves caused, the Government "provid[ed] mountains of documents to defense
counsel who were left unguided as to which documents would be proven falsified or which of
some fifteen burglaries would be demonstrated to be staged." *Id.* at 575.  As a result, at trial, the
burden of proof was effectively transferred, and defendants were forced to "establish their
innocence by providing that eight of the burglaries put before the jury, which even the
Government was uncertain were fake, actually occurred." *Id.* at 574.  The Government's sole
response was that it was explicit in the indictment (which contained only generalities and had
provided "over 4,000 documents to defense counsel during discovery."  In this case, by contrast,
the indictment and superseding indictment are specific, the Government has provided additional
particulars through its pretrial submissions, the nature of the charges (although spanning a
lengthy period of time) are such that the defendant is unlikely to be surprised by the name of an
alleged co-conspirator or victim (though he might not know exactly what category they fall
within) and the Government has provided to the defense the documents it has coded confessions
and those it has coded *Brady*.

from cooperating with the Government's investigation.  Dkt. No. 38 at 2-3.  It is not clear whether these facts are those that form the basis of the Government's charge of witness tampering and obstruction of justice.  The Government should provide particulars to the defense of the proceedings it claims Ray obstructed or attempted or conspired to obstruct, how and when he obstructed those proceedings or attempted or conspired to do so, and what witnesses, victims, or informants he tampered with or attempted or conspired to tamper with and in relation to what official proceeding.  *See United States v. Simon*, 30 F.R.D. 53, 55 (S.D.N.Y. 1962) (Weinfeld, J.) (ordering particulars with respect to conspiracy to commit bribery).  *Cf. Bin Laden*, 92 F. Supp. 2d at 233 (declining to order particulars where government already provided particulars with respect to statements that the government claimed to be false).

Ray also seeks an identification of the "conspirator" who engaged in the conduct specified in the special sentencing factor.  There is law to the effect that the court has "authority under Fed. R. Crim. P. 7(f) to order bills of particulars in connection with aggravating factors the government intends to prove at the sentence phase." *United States v. Wilson*, 493 F. Supp. 2d 364, 375-76 (E.D.N.Y. 2006) (finding authority to order a bill of particulars under either Rule 7(f) or "inherent authority").  *See also United States v. Basciano*, 763 F. Supp. 2d 303, 358-59 (E.D.N.Y. 2011), *aff'd*, 634 F. App'x 832 (2d Cir. 2015) (noting court's authority to grant bill of particulars with respect to non-statutory aggravating factors, but denying request in the instant case); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 296, 304 (S.D.N.Y. 2001), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.,* 552 F.3d 93 (2d Cir. 2008) (noting that aggravating factors "are not elements" of the offenses, but nonetheless granting request for bill of particulars because necessary for preparation for "the penalty phase of trial").  The government does not dispute that the Court has that authority here.  It also has not responded to

the defense's request for the identification of that conspirator.  The government is ordered to do so.

Finally, and as explained below, the government should identify the "bank accounts" referred to in Count One.

### B.      Count Three

With respect to the extortion crime charged in Count Three, Ray seeks to have the government identify the money he is alleged to have extorted from Female Victim-1 and the "supposed wrongdoing" that he extorted her to "repay."  Dkt. No. 177 at 7.

This request is identical to the request for the "false confessions."  The superseding indictment specifies the confessions that Ray used to extort money.  They are confessions that Female Victim-1 "caused harm and damage to members and associates of the Enterprise, including by poisoning RAY, POLLOK, and others."  Dkt. No. 127 ¶ 5.  Ray also has been provided in discovery ledgers and journal entries which reflect the money that he extorted.

Ray has sufficient information to know what he is charged with, to interpose a defense, and to assert a claim of jeopardy.  He is entitled to no more.

### C.      Counts Four and Five

With respect to Counts Four and Five, Ray seeks to have the government identify the conduct it alleges constitutes sex trafficking and the dates of such conduct.  Dkt. No. 177 at 7.

The superseding indictment is not ambiguous about the conduct it alleges to be sex trafficking.  It alleges that "RAY engaged in the sex trafficking of Female Victim-1."  Dkt. No. 127 ¶¶ 13, 14.  The identity of Female Victim-1 is known to Ray.  Elsewhere, the superseding indictment alleges that Ray and Pollock "leverage[ed] the Victims' false confessions . . .  to cause [Female Victim-1] to engage in commercial sex acts for the Enterprise's financial benefit" in New York City and elsewhere, *id.* at ¶ 7(f); *see also id.* ¶ 5, and that he and Pollok

"pressur[ed] Female Victim-1 . . . to engage in frequent prostitution." *Id.* at ¶ 7(i).  "Unlike

'sexual activity,' prostitution is a specific act. . . .  Therefore, the indictment 'give[s] a sufficient

description of the activities forming the basis for' that portion of the charge." *United States v.*

*Thompson*, 141 F. Supp. 3d 188, 195-98 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018).

      The defense, however, is entitled to more particulars with respect to when the alleged sex

trafficking occurred.  The superseding indictment gives a very broad time range of 2011 to "in or

about 2019" but does not allege whether the alleged sex trafficking took place continuously and

uninterrupted during that time period or whether it took place only over certain time ranges in

that period and not over others.  The defense is not entitled to specific dates of the alleged sex

trafficking.  *See United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (allowing a date range of

several months); *see also United States v. Hashmi*, 2009 WL 4042841, at *4 (S.D.N.Y. Nov. 18,

2009) (allowing a date range of two and a half years).  The specific dates on which Ray and/or

his co-conspirator trafficked Female Victim-1 or Female Victim-1 engaged in the acts of sex

trafficking are not elements of the offense and need not be proven by the government.  *See*

*Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017)

(finding that § 1594(b) had no overt act requirement); *see also United States v. Pascacio–*

*Rodriguez*, 749 F.3d 353, 362 n. 42 (5th Cir. 2014) (naming § 1594(b) as not requiring overt

acts); *United States v. Wilson*, 2010 WL 2991561, at *5 (S.D. Fla. July 27, 2010), *report and*

*recommendation adopted*, 2010 WL 3239211 (S.D. Fla. Aug. 16, 2010) ("Unlike 18 U.S.C.

§ 371, the language of which requires proof of an overt act in furtherance of the object of the

conspiracy (' . . . and one or more of such persons do any act to effect the object of the

conspiracy . . . '), Section 1594(c) contains no such element.").  However, the time period set

forth in the superseding indictment is so long that the defense is entitled to a more specific time

range if the government is able to provide it so as to "mount an independent pretrial investigation." *United States v. Sierra*, 2012 WL 2866417, at *3 (S.D.N.Y. July 11, 2012). "If, in good faith, the Government determines that it cannot provide [more precise date ranges], it may so indicate in its bill of particulars and provide as much detail as it can." *Bin Laden*, 92 F. Supp. 2d at 237.

### D.   Counts Six, Seven, and Eight

Ray seeks to have the government identify the "several female victims" with respect to Counts Six, Seven, and Eight.  Dkt. No. 177 at 7.  Those counts allege that "RAY caused several female Victims to perform physical labor on a property in Pinehurst, North Carolina," from May 2013 to December 2013.  In response to Ray's motion, the Government identified for Ray three alleged victims.  Dkt. No. 195 ¶ 6.  Ray complains that he needs particulars because the government has stated that "there may be additional victims referenced in the discovery materials that will be part of our proof at trial."  *Id.*

The Search Warrant Affidavits provide even more information to Ray than is available by the use of the capitalized V to refer to victims.  The affidavits stated that the persons who were caused by Ray to perform physical labor at his property were Female Victim-1 and some of the Roommates.  All of their identities are known to Ray and, given the small size of the group, there is no risk of surprise.  The request is denied.

### E.   Counts Nine and Ten

Ray seeks to have the government identify the acts of prostitution and extortion, charged in the Travel Act counts, Counts Nine and Ten respectively, and the use of the cellphone and Internet.  Dkt. No. 177 at 7.

"[U]nder the Travel Act, the indictment must simply allege a predicate act which would violate state law." *United States v. Giampa*, 1992 WL 322028, at *5 (S.D.N.Y. Oct. 29, 1992).  If

the basic outlines (such as "when and to whom" a bribe was allegedly offered) of the alleged

underlying criminal act are already available, and the defendant "failed to state any reason why

the failure to order disclosure will cause him unfair surprise at trial," a bill of particulars is not

necessary under the Travel Act.  *United States v. Varbaro*, 597 F. Supp. 1173, 1181 (S.D.N.Y.

1984).

 The defense has information regarding the "false confessions" and the claims of extortion

to repay "supposed wrongdoing" through the original indictment, the superseding indictment,

and other material. Additionally, the Court is ordering further particulars with respect to sex

trafficking which will apply to these claims.  It also has the ledgers and other information.  The

defense has made no showing why that information is insufficient to permit it to prepare for trial.

 **F.**  **Count Eleven**

 With respect to Count Eleven, Ray seeks the identity of the "certain financial

transactions" that involve the proceeds of extortion or sex trafficking, including the date and

financial institution.  Dkt. No. 177 at 7.  The government represents, however, that it has

"produced financial records from which the defendant can track the financial deposits and

spending of criminal proceeds."  Dkt. No. 185 at 11.  In addition, the government has

represented that in the discovery there are ledgers and text messages that link up with the bank

records and connect the financial transactions with the alleged criminal activity.  Dkt. No. 17-1,

at 22-23.  Rule 7(f) does not entitle the defendant to have the government do its work for it or to

have the government preview for the defense which of the financial transactions it contends

involve the proceeds of extortion or sex trafficking and which do not.

 This is not a case like *Bortnovsky*.in which the government "provid[ed] mountains of

documents to defense counsel who were left unguided as to which documents would be proven

falsified or which of some fifteen burglaries would be demonstrated to be staged" and where

"[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial." 820 F.2d at 575.  The government has indicated to the defense what the key events were and has provided a guide where to look in discovery for the relevant evidence.  The defense has not offered any evidence, or argued, that it will be unable to link the ledger and text records with the bank records.  Accordingly, the request for particulars is denied.

The ledger and tax records effectively "isolat[ed]," *United States v. Upton,* 856 F. Supp. 727, 746–47 (E.D.N.Y. 1994), and "designate[d]," *Nachamie,* 91 F. Supp. 2d at 568, the relevant documents, thereby fulfilling the government's obligations.  *See also United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (denying request for particulars where "block orders related to the trades" were included in discovery).

### G.     Counts Twelve Through Sixteen

On the tax evasion counts, Ray originally sought an identification of the "nominees," the bank accounts, and the deposits that the government contends were "Ray's unreported income." Dkt. No. 177 at 7.  In response, the Government provided Ray the names of two "nominees."  In addition, the Government has represented that the defendant did not report any of his income. Dkt. No. 17-1 at 20.  The government should provide the defense the identity of the bank accounts.  With the identity of the bank accounts and the identity of the nominees, the defense will be able to tell the deposits.  The government will not be required to separately provide details or particulars of the deposits.

### CONCLUSION

For the foregoing reasons, the motion for a bill or particulars is granted in part and denied in part.  The government shall provide the particulars required by this Order within three weeks of the date of this Order.

The Clerk of Court is respectfully directed to close Dkt. No. 177.

SO ORDERED.

Dated: July 27, 2021
     New York, New York

_____
LEWIS J. LIMAN
United States District Judge