**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

October 22, 2021

**VIA ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Lawrence Ray**
       **20 Cr. 110 (LJL)**

Dear Judge Liman:

On July 21, 2021, the government received a warrant to search a residence and seize a silver 17-inch Macbook Pro used by Lawrence Ray. Warrant and Application attached as Ex. A ("premises warrant"). After seizing the computer from the premises, it received a second warrant on July 23, 2021, to search the entirety of the computer. Warrant and Application attached as Ex. B ("computer warrant"). We now move to suppress the evidence seized from the computer because there was an insufficient nexus between the seized computer and the probable cause asserted in the premises warrant and the computer warrant was overly broad and non-particular. The challenges to the computer warrant are similar to those identified in our previous motion to suppress evidence seized pursuant to earlier search warrants. *See* Dkts. 112, 137. We recognize that the Court has already rejected these arguments. Dkt. 184. Therefore, we are writing only briefly to preserve our arguments related to the July 2021 search warrants.

Factual background of the two warrants to seize and search Lawrence Ray's computer

The premises warrant allowed a search of Mr. Ray's father's house for a silver 17-inch Macbook pro belonging to Mr. Ray. Ex. A. In support, in addition to referencing the indictment, the premises warrant application stated that on May 21, 2021, ▇▇▇▇ ▇▇▇▇ identified as "Female Victim-2," told agents that Isabella Pollock found Mr. Ray's personal laptop "wedged between" Mr. Ray's bed and bedside table after the search warrant was executed on Mr. Ray's home on February 11, 2020. Ex. A at 8. ▇▇▇▇ said that she had seen Mr. Ray use the laptop "all the time" and that she "believe[d]" Mr. Ray "maintained separate files for the victims of the Subject Offenses on the laptop." Ex. A at 7; Ex. B at 7. ▇▇▇▇ further said that she saw Mr. Ray "work on these files" for the "victims" and "their "corresponding folders," and that Mr. Ray had given ▇▇▇▇ "instruction" "on best practices for digital folder structuring." Ex. A at 7; Ex. B at 7.

Hon. Lewis J. Liman

█████ said that, a "few days after" Mr. Ray's arrest in February 2020, █████ and Pollock went to Mr. Ray's father's house and "left" this computer with his father. Ex. A at 8. Approximately ten months later, on December 20, 2020, █████ was back "at the Subject Premises" and "saw the Subject Device in a black laptop bag in the living room of the Subject Premises." *Id*. The warrant application did not mention anything distinctive about this "black laptop bag," note that █████ had previously seen the computer in the same bag, or explain why it was reasonable to believe that the bag contained the specific computer described in the warrant application.

The warrant was signed on July 21, 2021, seven months after █████ said she last saw the black computer bag in December 2020, and almost a year and a half after she said she saw the computer at the premises in February 2020.

The warrant application also pointed to recorded jail calls between Mr. Ray and his father, discussing a need to "index" and "categorize" the "evidence" in June 2020, as indicating that the computer "has not [been] destroyed or transferred…to someone else." Ex. A at 8, 10. Additionally, the warrant application relied on evidence found from iCloud, email, and cell phone accounts of Mr. Ray and others uncovered pursuant to the previously-challenged warrants to generally support that Mr. Ray "maintained electronic evidence of the Subject Offenses." Ex. A at 6.

The premises warrant application authorized a "complete review of all the ESI …if necessary to evaluate its contents and to locate all data responsive to the warrant." Ex. A, attachment B.

The computer warrant application included the same information as the premises warrant application. Ex. B. Additionally, the computer warrant application stated that █████ provided one additional detail to agents during the same May 21, 2021 conversation: Mr. Ray "kept" the computer "in a white rubber case." Ex. B at 7. The computer warrant application also stated that agents went to the premises, asked Mr. Ray's father if he had the laptop computer provided by Pollok, and that Mr. Ray's father pointed to the black computer bag. Ex. B at 10. Agents seized the computer, which was in the bag, inside a white rubber case, wrapped in tinfoil. Ex. B at 10. The warrant application does not state that they confirmed with █████ before opening the computer whether or not it was the same computer she had seen Mr. Ray using. When turned on, the home screen of the computer showed the name "Lawrence Ray." Ex. B at 11.

The computer warrant authorized a "complete review of all the ESI …if necessary to evaluate its contents and to locate all data responsive to the warrant." Ex. B, attachment A.

<u>The probable cause asserted in the premises warrant was insufficient to connect the computer inside a black computer bag to Mr. Ray.</u>

The nexus between the probable cause in the warrant application related to the indicted crimes and the computer in the black bag at the premises was insufficient to support the seizure of that computer and bag. The only information indicating that the computer in the black bag

Hon. Lewis J. Liman

was Mr. Ray's computer was that ▇▇▇ saw Mr. Ray's computer at the premises in February 2020 – 1 ½ years before the search – and, later, saw a black computer bag at the premises in December 2020, seven months before the search. Ex. A at 8. The warrant application provided no detail suggesting that the black computer bag was distinctive or that ▇▇▇ had ever seen Mr. Ray use a black computer bag for his device.[1] On the contrary, according to the later-executed computer warrant application, ▇▇▇ had seen Mr. Ray store the computer in a "white rubber" case. Ex. B at 7.

That ▇▇▇ said she saw Mr. Ray's computer at the premises a year and a half before the search, and saw a seemingly generic black computer bag at the premises seven months before the search did not provide probable cause to seize the computer inside the black bag. It was simply not reasonable to conclude that the computer described by ▇▇▇ was the one in the black bag.[2] *See United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (the requirement of a "nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'"). The Court should, therefore, find that information supporting the nexus between the probable cause and seized computer was insufficient.

<u>The warrant allowing a "complete review of all ESI" on the computer was overbroad and not particular.</u>

After seizing the computer from the premises, the government sought a second warrant to search it.[3] This warrant authorized law enforcement to "conduct a complete review of all the ESI

---

[1] While the later-executed computer warrant application notes that, while executing the premises warrant, agents asked Mr. Ray's father if he had the laptop computer provided by Pollok, and that Mr. Ray's father pointed to the black computer bag, information provided in a subsequent warrant cannot retroactively cure the lack of nexus in the premises warrant.

[2] Instead, because of the age of the information from ▇▇▇ even the nexus to the premises was stale. *See* Dkt. 112, p. 48-49, citing, *inter alia, United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) ("While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past.").

While the warrant also points to recorded jail calls between Mr. Ray and his father, discussing a need to "index" and "categorize" the "evidence" in June 2020, as indicating that the computer "has not [been] destroyed or transferred…to someone else," Ex A at 8, 10, these calls make no reference to his computer or his father having his computer. By June 2020, the government had already seized a massive quantity of evidence from Mr. Ray's home, which Mr. Ray knew. It also had already provided approximately 10 separate discovery productions to the defense. It was not a fair inference, therefore, that these June calls related to evidence on the specific computer that was the subject of the warrant rather than the voluminous evidence that had already been provided to the defense about the case. In any event, the calls were 11 months before the warrant was issued.

[3] Although the premises warrant itself also purported to authorize the review of all the information on seized electronic devices, in seeking a second warrant for the seized computer, the government apparently recognized that the premises warrant did not provide sufficient information connecting the seized device to the probable cause asserted.

Hon. Lewis J. Liman

from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant." Ex. B, attachment A. As with the earlier search warrants, a warrant allowing a review of <u>everything</u> on the computer was overbroad and not particular. Dkt. 112, p. 37-48, citing *inter alia*, *United States v. Galpin*, 720 F .3d 436, 445 (2d Cir. 2013); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *United States v. Wey*, 256 F.Supp.3d 355, 385 (S.D.N.Y. 2017).

Just like the overbroad searches of Mr. Ray's premises and on-line accounts, the overbroad search of the computer here uncovered both privileged and irrelevant information, dating back to the 1990s. This included phone calls and letters between Mr. Ray and his attorneys dating back to at least 2005; lists of Mr. Ray's doctors, his medical records, and copies of prescriptions; excerpts from congressional testimony from the 1990s and other government records; and many unrelated books, including an "Encyclopedia of Aquarium and Pond Fish."

Nothing in the warrant application suggested that this far-reaching search of everything on the computer was necessary. On the contrary, the warrant application explained that the information for which there was probable cause was well organized on the computer in "separate files" for different people—specifically, the alleged victims—with "corresponding folders," and that Mr. Ray had given ▓▓▓▓ "instruction" "on best practices for digital folder structuring." Ex. B at 7. In July 2021, the government was also deep into their investigation of Mr. Ray and knew the specific names of the people the government believed were victims and co-conspirators. The government was, therefore, in a very different position with respect to this warrant application than the earlier applications. In July 2021, the government easily could have listed the names of people connected to the case, detailed the specific types of documents and files that were relevant to the probable cause, and narrowed the warrant to a search for information relating to those individuals and types of files. Especially in this context, there was no reason for an overbroad warrant allowing a search of everything in the computer, rather than a more limited search of the well-organized files and folders identified by ▓▓▓▓

For the same reasons explained in the previous motion to suppress, the Court should suppress the evidence or order an evidentiary hearing. Dkt. 112, citing, *inter alia*, *United States v. Ganias*, 824 F.3d 199, 207-08 (2d Cir. 2016) (en banc); *Wey*, 256 F.Supp.3d 355.

\*   \*   \*

Additionally, the defense argued in our earlier suppression motion that the misrepresentation of ▓▓▓▓ statements bolstered the need for a *Franks* hearing. *See* Dkts. 112, p. 51-52 & Dkt. 137, p. 31-32. Specifically, the government misrepresented ▓▓▓▓ statements in the application for the warrant to search Mr. Ray's home, including by calling her a victim, which contradicted an FBI report that she told agents she was Mr. Ray's common law wife and that he was "never abusive and always helpful." *Id*. The July 2021 warrants, however, do not note these contradictions and, instead, the computer warrant application states that ▓▓▓▓ had "proven [to be] reliable." Ex. B at 8. That the July 2021 warrants fail to correct the past misrepresentations only adds to the evidence that a *Franks* hearing is warranted. Moreover, the

Hon. Lewis J. Liman

language in the July 2021 warrants relating to ▋▋▋▋ conversation provides a further reason to doubt the agent's report:[4] ▋▋▋▋ May 21, 2021 conversation is described using exactly the same language in both applications, except that the computer warrant application adds a significant detail that the premises warrant application omits: that ▋▋▋▋ had seen that Mr. Ray "kept" the computer inside a "white rubber case." Ex. B at 7, *compare with* Ex. A at 7. That detail was important as it would have undercut the probable cause in the premises warrant by seeming to conflict with ▋▋▋▋ statement that the computer was in a black computer bag, while it bolstered the probable cause in the computer warrant because the seized computer was in fact in a white rubber case.

Finally, both July 2021 warrant applications also rely in part on information that the defense argued should have been suppressed, including information seized from Mr. Ray's premises as well as his iCloud and email accounts. Ex. B at 6 & 8; *see* Dkt. 112. Therefore, in the event that further appellate review overturns this Court's ruling and finds that the previous warrants are unconstitutional, the information uncovered in the new warrants should also be suppressed as fruits of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Young v. Conway*, 698 F.3d 69, 77 (2d Cir. 2012).

Thank you for your consideration of this matter.

Respectfully submitted,

/s/ Marne L. Lenox

Marne L. Lenox, Esq.
Peggy Cross-Goldenberg, Esq.
Allegra Glashausser, Esq.

*Counsel for Lawrence Ray*

cc:  AUSA Danielle R. Sassoon, Esq.
     AUSA Mollie Bracewell, Esq.
     AUSA Lindsey Keenan, Esq.

---

[4] The government has not provided the defense any FBI report of the May 21, 2021 interview with ▋▋▋▋ on which they rely in the new warrants.