UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                       :

UNITED STATES OF AMERICA,             :

                                         :

                                       :          20-cr-110 (LJL)

          -v-                         :

                                       :        OPINION & ORDER

LAWRENCE RAY,                       :

                                       :

                          Defendant.      :

                                       :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2021

LEWIS J. LIMAN, United States District Judge:

       On September 13, 2021, the Court issued an Order directing Ray to provide notice to the

government by November 15, 2021, of an intent to offer expert evidence of a mental condition

pursuant to Federal Rule of Criminal Procedure 12.2(b) as well as notice of an intent to rely on

the defense of advice of counsel. Dkt. No. 211. That same Order directed the parties to meet

and confer regarding a schedule for the disclosure of expert witnesses pursuant to Federal Rule

of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C). *Id.* On September 27, 2021, the defense

submitted a letter on behalf of itself and the government containing a proposed schedule for a

number of other events in the case, including that government expert disclosures would be made

by November 15, 2021, defense expert disclosures would be made by December 6, 2021, and

government responses would be made two weeks later, on December 20, 2021. Dkt. No. 219.

The Court adopted that schedule by order of September 28, 2021. Dkt. No. 222.

       The defense made a notice on November 15, 2021. The notice was addressed to counsel

for the government and stated:

          We are writing pursuant to the Court's order of September 13, 2021, to provide
          notice with respect to two matters. First, please take notice that, pursuant to Rule

1

12.2(b) of the Federal Rules of Criminal Procedure, the defendant Lawrence Ray, by his attorneys Marne Lenox, Peggy Cross-Goldenberg, Allegra Glashausser, and Neil Kelly of the Federal Defenders of New York, intend to introduce expert testimony relating to mental disease or defect or any other mental condition of Lawrence Ray bearing on the issue of guilt, at the trial under docket number 20 Cr. 110.

Second, please take notice of our intent to rely on a defense of advice of counsel at the trial of this action.

Dkt. No. 247.

By letter motion, the government complains that this notice is inconsistent with the Federal Rules of Criminal Procedure and asks the Court to issue an order precluding the defense from offering either defense unless it supplements its notice with additional information by November 22, 2021.  Dkt. No. 250.  The defense responds that its notice of both defenses is sufficient, but it also provides supplemental notice that the defense "anticipates introducing expert evidence from a doctor certified by the American Board of Psychiatry and Neurology, who the defense anticipates will reach a diagnosis subsequent to a neuropsychiatric evaluation (including, potentially, an evaluation of delusional thinking) and a review of Mr. Ray's past medical and psychosocial evaluations," Dkt. No. 254 at 3, and that the attorney who provided "the legal advice at issue was Glenn Ripa," *id.* at 8.  The defense also argues that the government's motion is procedurally barred by the Local Criminal Rules for the Southern and Eastern Districts of New York.  *Id.* at 1.[1]

---

[1] The defense cites Local Criminal Rule 16.1, which requires counsel for the moving party to submit "an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement" in advance of filing a "motion addressed to a bill of particulars or any discovery matter."  The court declines to procedurally bar the government's motion under Rule 16.1.  The facts proffered by the defense demonstrate that the government did make a good faith effort to resolve the matter with defense counsel, and only sought "clarification from the Court" when the defense did not provide the additional notice

A.  Rule 12.2(b) Notice

The language of Rule 12.2(b) is terse.  It states: "If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defense must . . . notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk."  Fed. R. Cr. P. 12.2(b).  The Advisory Committee notes reflect that the objective of the rule is "to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony" and that "[t]he purpose [of the rule] is to prevent the need for a continuance when such evidence is offered without prior notice."  Fed. R. Cr. P. 12.2(b), advisory committee's note.

Rule 12.2(b) itself does not prescribe the information that must be contained within the notice.  The rulemakers' intent, however, may be gleaned from reviewing the language of Rule 12.2(b) in context and within the framework of the Rule as a whole.  Rule 12.2(c)(1)(B) provides, in relevant part, "[i]f the defendant provides notice under Rule 12.2(b), the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  Rule 12.2(d) provides, in pertinent part, that if the defendant does not give notice under Rule 12.2(b), "[t]he court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt."[2]  It thus follows that the defense's notice must specify the general nature

_____

requested.  Dkt. No. 255.  In such circumstances, the Court opts to excuse any violation of the Local Rules.  *See Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("[T]he district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked.").

[2] The Court has not quoted those portions of the rule that address evidence of a mental disease or defect in the penalty phase of a capital case because those provisions are not relevant to the issue before the Court.

of the mental disease or defect or mental condition as to which the defense intends to offer

evidence.  Were it otherwise, the objectives of Rule 12.2(b)(1)(B) and 12.2(d) would be

frustrated.  The government could not decide whether to make a motion for an examination and

the Court would not know what kind of examination to order.  *See United States v. Johnson*, 362

F. Supp. 2d 1043, 1079 (N.D. Iowa 2005) (holding that notice of intent must be "meaningful"

and reflect the kinds of mental professionals the defense has selected in light of the Rule's

purpose to permit a mental examination to be conducted without unnecessary delay); *see also*

*United States v. Sampson*, 335 F. Supp. 2d 166,  242–43 (D. Mass. 2004) (noting that the

Advisory Committee cited favorably to caselaw grounding the need for pretrial notice "in the

government's right to develop rebuttal evidence fairly and efficiently" and in the opportunity to

conduct the kind of investigation needed to acquire rebuttal evidence).  Were the defense not to

give notice or to give only a partial notice, the Court would not know what expert evidence to

exclude.

Using the same mode of analysis, it is equally clear that the notice required by Rule

12.2(b) need not contain all of the detail and the opinions that would be in an expert report.  That

is for two reasons.  First, Rule 12.2(c)(3) requires the defense to disclose to the government "the

results and reports of any examination on mental condition conducted by the defendant's expert

about which the defendant intends to introduce expert evidence" "*[a]fter* disclosure under Rule

12.2(c)(2)" of the government's examination.  Although that provision is directed to capital

cases, the rule to which it refers back (Rule 12.2(c)(1)) does not distinguish between reports of

mental disease and disability with respect to guilt in all cases and such reports with respect to

penalties in capital cases; it includes any examination ordered by a court after a Rule 12.2(b)

notice.  It follows that the Rule 12.2(b) notice need not itself contain the results of mental

examinations, the reports setting out those results, or what courts have determined to be its equivalent.  *See Sampson,* 335 F. Supp. 2d at 243 (explaining that, under revised Rule 12.2, requiring the defendant to provide information on the nature of a defendant's mental condition "is no longer permissible because 'the nature of the proffered mental condition(s)' is essentially the same as the 'results and reports' for which early disclosure is barred.") (quoting Fed. R. Crim. P. 12.2(c)(2)); *see also United States v. Johnson*, 362 F. Supp. 2d 1043, 1080–82 (N.D. Iowa 2005) (finding "no clear fallacy" in the logic that "reading Rule 12.2(b) in conjunction with Rule 12.2(c)(3), the current version of the Rule does, indeed, make it impermissible to require the defendant to provide [information regarding the nature of the defendant's mental condition] in its notice").  Second, a separate Federal Rule of Criminal Procedure addresses expert reports. Rule 16(b)(1)(C) requires the defense, at the government's request, to provide the government "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 706 of the Federal Rules of Evidence as evident at trial if . . . (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition." It goes on to say that "[t]his summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Cr. P. 16(b)(1).  It too follows that if the expert's opinions are to be provided in the report submitted pursuant to Rule 16(b)(1)(C), then they need not be provided in the notice.  A contrary reading would render portions of Rule 16(b)(1)(C) superfluous.

Courts considering the content for a Rule 12.2(b) notice thus require it to be meaningful and, in particular, to indicate "the kinds of mental health experts the defense presently intends to call, and the specific tests those experts have performed,"  *United States v. Brandon Michael Council*, 2018 WL 7821136, at *1 (D.S.C. Oct. 31, 2018), or put otherwise, "the kinds of mental

health professionals who have evaluated the defendant and the specific nature of any testing that

the defense experts would perform or have performed," *United States v. Lujan*, 530 F. Supp. 2d

1224, 1238 (D. N.M. 2008); *see also United States. v. Wilson*, 493 F. Supp. 2d 348, 353

(E.D.N.Y. 2006) ("Disclosure of the kinds of mental health experts the Defendant will call and

the nature of the tests these experts will be performing is sufficient to provide meaningful notice

in compliance with Rule 12.2.  It is unreasonable to require more."); *Johnson*, 362 F. Supp. 2d at

1080 (meaningful notice includes the kinds of mental-health professionals the defendant has

selected to evaluate him and the nature of the tests that the defendant's experts have performed

or will perform); *Sampson,* 335 F. Supp. 2d  at 242–43 (adopting the parties' view that Rule

12.2(b) requires disclosure of the kinds of mental-health professional who evaluated the

defendant and the specific nature of any testing the experts performed and holding that disclosure

of the types of mental health experts and tests conducted is "the type of information that [is]

necessary to enable the government to hire the right type of rebuttal experts and conduct the

proper tests.").  This type of information is "sufficient to allow the government to find mental

health experts from the same field" and "to enable the government to choose the type of expert it

needs." *Lujan*, 530 F. Supp. 2d at 1239.

Ray's initial notice merely stated that the defense "intend(s) to introduce expert testimony

relating to mental disease or defect or any other mental condition of Lawrence Ray bearing on

the issue of guilt," without providing any indication of the type of professional(s) the defense has

retained to provide such testimony or the tests that they have performed or would perform.  This

notice falls short of what was required to satisfy Rule 12.2(b).  It does not provide sufficient

notice to allow the government to choose a rebuttal expert.  It also does not provide sufficient

notice for the government to decide what tests it might need to have administered to Ray to

prepare a rebuttal report.  If permitted to stand uncorrected, it would have interfered with the

schedule for trial in this long-outstanding case.  If the kinds of professionals Ray retained and the

type of tests taken or planned were not revealed to the government until the service of defense

expert reports on December 6, the Court could not possibly require the government to serve its

rebuttal expert reports two weeks later.  Fundamental fairness and the design of the Federal

Rules of Criminal Procedure would permit the government first to make a motion for an

examination of the defendant and then would permit that examination to go forward before the

government expert would have to render a rebuttal report.  As a practical matter, the Court would

have to set the date for the government rebuttal report for the eve of trial—if that.  The notice

was thus deficient and failed to satisfy Rule 12.2(b).

Defendant's letter somewhat ameliorates the gaps in his initial notice.  His letter states

that the defense intends to call a doctor certified in psychiatry and neurology who will perform a

"neuropsychiatric evaluation (including, potentially, an evaluation of delusional thinking) and a

review of Mr. Ray's past medical and psychosocial evaluations."  Dkt. No. 254 at 3.  This notice

appears to sufficiently identify the type of medical expert.  However, it does not identify the

testing that the defense has carried out or intends to carry out, nor does it adequately identify the

"specific nature of [the] testing" to guide a rebuttal expert's evaluation of the defendant.  *Lujan*,

530 F. Supp. 2d at 1238.

Accordingly, the Court will order the defense to amend its notice to reflect the specific

tests the identified expert has administered or intends to administer to Ray.  Such amended

notice shall be served on the government and filed with the clerk of court by 5:00 p.m. on

November 26, 2022, on pain that if it is not timely amended and served, the defense will be precluded from offering evidence of mental disease or defect at trial. [3]

    B.  Advice of Counsel Defense

The government asks the Court to order the defense to provide (i) written notice of his advice-of-counsel defense, including its bases, scope, and to which specific counts he believes it applies; and (ii) any discovery materials in support of this defense, to the extent that they are not already in the government's possession.  Dkt. No. 250 at 5.  It asks that any grace period for the production of this information be short.  It states if the defense provides additional notice, including the names of attorneys, the government will need time to subpoena and interview the relevant attorneys and to review otherwise privileged materials that have been segregated from the other evidence the government seized pursuant to warrant.  *Id.*

The Federal Rules of Criminal Procedure do not explicitly require the defense to provide notice of an advice-of-counsel defense.  Rule 12, which addresses certain notices that must be made by the defense prior to trial, requires the defense to provide notice of an alibi defense, Fed. R. Cr. P. 12.1, an insanity defense or reliance on evidence of mental disease or defect, Fed. R. Cr. P. 12.2, and a public-authority defense, Fed. R. Cr. P. 12.3.  It does not by its terms require notice of an advice-of-counsel defense or any other defense.  *See United States v. Wilkerson*, 388 F. Supp. 3d 969, 974 (E. D. Tenn. 2019) (noting that where the Federal Rules of Criminal Procedure required the defense to give advance notice of a defense, they did so with respect to

---

[3] The government asks the Court to require the defense to disclose the alleged mental disease/defect, whether the defense would be relying on an expert opinion or report, and the name of any expert and the nature of his/her opinion.  Dkt. No. 250 at 1.  For reasons stated in this Opinion and in the very cases upon which the government relies, it is not entitled to this level of detail.  *See, e.g., Sampson*, 335 F. Supp. 2d at 242–43 (rejecting government request that the defense notice include the nature of the proffered mental condition and the identity and qualifications of the expert who would testify or whose opinions would be relied upon).

"certain, carefully enumerated defenses").  Accordingly, there is no consensus among federal courts regarding the existence and extent of any authority for a court to require pretrial disclosure by the defense of information regarding its advice-of-counsel defense.  *Compare United States v. Dallmann*, 433 F. Supp. 3d 804, 812-13 (E.D. Va. 2020) (holding that court has inherent authority to impose requirement of pretrial notice of advice-of-counsel defense and requiring notice ten days prior to trial in light of complexity of advice-of-counsel defense and potential for discovery of otherwise-privileged documents) *and United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D. D.C. 2019) ("Although the Federal Rules of Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, courts have broad discretion to impose disclosure and notice requirements outside the rules.") *with Wilkerson*, 388 F. Supp. 3d at 974–75 ("[C]ourts should not *ad hoc* invent new ways to coerce criminal defendants to assist the government in their prosecution—absent compelling reason to do so") *and United States v. Espy*, 1996 WL 560354 (E.D. La. Oct. 2, 1996) (holding that the court has no authority to require pretrial notice of advice-of-counsel defense); *see also United States v. Meredith*, 2014 WL 897373, at *1 (E.D. Ky. Mar. 6, 2014) (stating that "[a]defendant need not provide the United States with any information pretrial beyond that which is required to be disclosed under Fed. R. Crim. P. 16(b) or unless otherwise ordered by the court" and rejecting government request for information regarding the charges to which the defendant intends to offer a defense of reliance on advice of counsel, the identities of any attorney-witnesses he intends to call at trial, and disclosure of documents relating to the defense beyond those required by Rule 16(b)); *United States v.  Mubayyid*, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007) (stating that the court "may, at least under some circumstances, order that the defendant give notice of an intent to rely on an advice-of-counsel defense" but also noting that the fact "that the rules

9

enumerate certain notice requirements, but not others, gives the Court some pause" and deferring a ruling on the government's request for notice of an advice of counsel defense because "[t]he fact that the Court appears to have the power to order such notice does not . . . necessarily require that it be exercised to the fullest extent, particularly given the potential burden on the exercise of the attorney-client privilege."); *United States v. Afremov*, 2007 WL 2475972 at * 4 (D. Minn. Aug. 27, 2007) ("[T]he prosecution [does not] have a right to notice from the defense that it intends to assert an advice of counsel defense at trial."); *United States v. Atias*, 2017 WL 563978 at * 4 (E.D.N.Y. Feb. 10, 2017) (concluding that "the government has not established that is has a 'right' to pretrial notice as to the defense [of advice of counsel]" and ordering that the defense proffer evidence of advice-of-counsel defense at least 24 hours prior to calling a witness to the stand to support such a defense); *United States v. Lacour*, 2008 WL 5191596 at * 1 n.1 (M.D. Fla. Dec. 10, 2008) ("Defendants are not obligated to put on *any* defense, and, except for certain [enumerated] defenses which must be disclosed prior to trial, Defendants are free to make that decision at trial.").

The government argues that the defense should be required to provide it the nature of its advice-of-counsel defense, the subject to which it pertains and its scope, the identities of the counsel providing advice, and the counts to which it pertains for certain practical substantive reasons. It notes that the assertion of an advice-of-counsel defense will effect a waiver of the attorney-client privilege with respect to all communications within the scope of the defense (whether supportive of it or not) and that it already has otherwise privileged materials in its possession that have been segregated and not reviewed by the prosecution team. It asserts that were the privilege to be waived, it would need time to review the documents. It also expresses skepticism that the defense should have an advice-of-counsel defense to the charges of extortion

and sex trafficking contained in the indictment and raises the point that the introduction of evidence regarding the advice-of counsel defense could risk confusing the issues or misleading the jury—and thus subject to exclusion under Federal Rule of Evidence 403—should it turn out that the defense never had enough evidence to satisfy each of the elements of an advice-of-counsel defense.  The government argues, "[n]o lawyer, acting properly, would advise a client to violently extort or sex traffic his victims in order to seek repayment for supposed wrongdoing." Dkt. No. 250 at 5.  It points out that, under Federal Rule of Evidence 104, preliminary questions concerning the admissibility of evidence, including whether evidence is relevant or if a privilege exists, are to be determined by the Court, Fed. R. Evid. 104(a), and the Court can hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law.  *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997); *United States v. Scali*, 2018 WL 461441, at *8 n.4 (S.D.N.Y. Jan. 18, 2018) ("Guided by efficiency and judicial economy, it behooves the Court to address [an advice-of -counsel defense] before trial.").   Finally, it argues that it needs the information in order to be able to subpoena and interview the attorneys on whose advice Ray supposedly relied.

The authority to require notice of an advice-of-counsel defense derives from the court's inherent authority to manage the trial before it, *Dallmann*, 433 F. Supp. 3d at 812-13; *Crowder*, 325 F. Supp. 3d at 138, as well as from Rule 16 of the Federal Rules of Criminal Procedure, including the reciprocal obligation on the defense to produce discovery under Rule 16(b) and the power of the court to regulate discovery under Rule 16(d).  Under those principles, the government is not entitled to either the names of the attorneys whom Ray intends to call as witness or upon whose advice he intends to rely, and the government is not entitled at the pretrial stage to be informed of the charges to which Ray intends to assert an advice-of-counsel defense.

The request for the names of the attorneys is tantamount to a request for a witness list.  Pretrial, the government argued vigorously that Ray is not entitled to the names of the witnesses the government intends to present to support its case-in-chief and to meet the elements of the offenses charged in the indictment.  *See* Dkt. No. 117 at 15, 19-20 (citing *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990) (Federal Rule of Criminal Procedure 16 "does not require the government to furnish the names and addresses of its witnesses."); *United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) ("[T]he prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him.")).  The Court accepted that argument. Dkt. No. 166 at 41–43.  The government has lesser entitlement to require the defense to disclose the witnesses it would call to negate the government's proof.  *Meredith*, 2014 WL 897373, at *1. Nor is the government entitled pretrial to information regarding the specific charges to which the defendant intends to assert an advice-of-counsel defense.  "Such disclosure would require the defendant to reveal his trial strategy pretrial."  *Id.*

The government's request that Ray produce the documents upon which he intends to rely at trial for his advice-of-counsel defense presents a closer question.  The government is entitled to production by the defense of the *non-privileged* documents that relate to the asserted advice-of-counsel defense, whether the documents support that defense or not.  The defense may satisfy that obligation either by producing the documents in the first instance or by certifying that all such documents are already in the possession of the government and providing the government with sufficient information so the government may locate the relevant documents without intruding into Ray's privilege.  Although the defense identified the attorney who it asserts provided the advice at issue, doing so without further identifying any non-privileged documents concerning the defense does not satisfy this requirement.  The purposes of Rule 16 are "to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a

broad, reciprocal, right to discovery." *Crowder*, 325 F. Supp. 3d at 136.  This discovery

obligation includes documents that may contain the names of counsel but that do not request or

relay legal advice or that are not confidential and were shared outside the attorney-client

relationship.  The defense shall either provide the production or make the identification by

November 29, 2021.[4]

The Court will not require the defense to produce *privileged* documents before the

earlier of either (1) the defense's unequivocal assertion of the advice-of-counsel defense,

including before the jury through opening statements or any cross-examination during the

government's case, or (2) the close of the government's case-in-chief.  A client has impliedly

waived the attorney-client privilege (1) "when a client testifies concerning portions of the

attorney-client communication, … [(2)] when a client places the attorney-client relationship

directly at issue, … and [(3)] when a client asserts reliance on an attorney's advice as an element

of a claim or defense."  *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).  In *United States*

*v. Schulte*, 2020 WL 133620 (S.D.N.Y. Jan. 13, 2020), the court found that the defendant had

impliedly waived the attorney-client privilege and that disclosure to the government of his

otherwise privileged communications was required where "[t]he defendant ha[d] no fewer than

five times relied on advice of counsel in seeking to persuade th[e] Court to grant a variety of

extraordinary measures including a third severance of his trial, the disqualification of the entire

Federal Defenders of New York, and an adjournment of trial based on an unprecedented claim of

ineffective assistance of counsel."  *Id.* at *4.  The defendant himself thus had inserted attorney-

---

[4] If the defense elects not to produce documents and instead rely upon the documents already in
the government's possession, the government may use a taint team to review potentially
privileged documents to determine whether a privilege attaches.  The Court will resolve any
questions requiring judicial determination *in camera* on notice to the defense but outside the
presence of the prosecution team.

client communications into the case. The court rejected the argument that there had been no waiver because the defendant had not announced a final decision whether to present his lawyer's testimony at trial, *id.* at *1, and because the defendant had made "no formal announcement," *id.* at *5. Defense counsel had submitted evidence to the Court ex parte of the privileged communications and had already sought to use the privilege as a sword and a shield by "seek[ing] to influence the Court to grant extraordinary relief while denying the government the ability to respond." *Id.* Thus, the privilege had already been waived.

Ray has not "yet waived the privileged by 'an assertion of fact to influence the decisionmaker.'" *In re County of Erie*, 546 F.3d at 230. Thus, the government has "not been placed in a disadvantaged position at trial." *Id.* He has not disclosed attorney-client communications, nor has he sought relief from the Court on the basis of an attorney-client communication. He has not made an unequivocal or irreversible election to present an advice-of-counsel defense. The defendant complied with a court order that required him to indicate whether he intended to rely on an advice-of-counsel defense on pain that if he did not the defense would be deemed waived. He therefore has not yet waived the privilege.[5]

---

[5] Some courts have held that the assertion of an advice-of-counsel defense in an answer in a civil case effects a waiver of the privilege and that "'the party who intends to rely at trial on a good faith defense' [must] 'make a full disclosure during discovery' and the 'failure to do so constitutes a waiver of that defense.'" *United States v. Wells Fargo Bank N.A.*, 2015 WL 3999074, at*1 (S.D.N.Y. June 30, 2015) (quoting *Arista Records LLC v. Lime Grp., LLC*, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011)). However, "federal civil and criminal procedure are different, and that 'unlike their civil counterparts, criminal proceedings have no extensive discovery . . . procedures requiring both sides to lay their evidentiary cards on the table before trial.'" *United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018) (quoting *United States v. Pope*, 613 F.3d 1255, 1259-60 (10th Cir. 2010) (Gorsuch, J.)). Moreover, even in the civil context, courts are sensitive not to quickly find a waiver of the privilege from the mere assertion of the defense in an answer. *See Madanes v. Madanes*, 199 F.R.D. 135, 152 (S.D.N.Y. 2001) (finding that, since "parties commonly modify their legal claims during the course of litigation," there was no waiver of attorney-client privilege by the assertion of a broad advice-of-counsel

In the Court's view, to require Ray to now, months before trial, choose between (1) waiving the privilege and disclosing all of his communications with counsel and (2) being barred from later relying on an advice-of-counsel defense to negate the government's proof, would impermissibly burden the attorney-client privilege. No jury has been impaneled and the government has not opened, much less offered evidence that would support a jury verdict in its favor and require the defense to answer its allegations. The disclosure of confidential communications with counsel is a consequential event. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."). Once the privilege is waived, that confidentiality is lost forever. The privilege can never again be asserted—either in this case or in any other case. *See SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) ("Voluntary disclosure to a party outside the attorney-client relationship destroys the attorney-client privilege because it destroys the confidentiality of the communication.").

The Court need not now decide whether it has the authority to require the defense to make an unequivocal assertion of privilege prior to the end of the government's case and to produce privileged documents on pain that if it fails to do so it will be precluded from relying on an advice-of-counsel defense. Here, the government's case is expected to be lengthy, last several weeks, and consist of witnesses who would not have been involved in any attorney-client

---

defense in defendant's answer where defendant partially withdrew advice-of-counsel defense prior to trial).

privileged communications and as to whom there is, at most, a de minimis risk of the government's expressed concern that the defense will elicit evidence of attorney advice that ultimately would not go to the jury.  The indictment contains lurid charges of extortion and sex trafficking; it is unlikely in the extreme that the occasional question on cross-examination about attorney advice (were there to be such a question) would prejudice the jury and, even if there were such a question and there were a risk of prejudice, the Court could address that in its jury charge.  Notably, the government does not argue that there is a risk that the defense would ask questions of any of the witnesses it intends to call regarding advice of counsel.  To the contrary, it asserts that it "is unaware of any factual basis to find that, prior to engaging in the charged conduct, the defense spoke to any attorney for the 'purpose of securing advice on the lawfulness of [the defendant's] possible future conduct.'" Dkt. No. 250 at 5 (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989)).

In these circumstances, the Court is confident that there will be time enough for the Court to test whether there is a viable advice-of-counsel defense to any of the charges and, if there is, for the defense to produce documents that relate to the advice of counsel, even if it waits until the end of the government's case.

For the same reasons, the Court is not persuaded that prior to the start of trial it should hold a hearing to determine whether the defense has evidence to satisfy each of the elements of the advice-of-counsel defense.  The Court has discretion over whether and when to hold a hearing regarding the admissibility of evidence under Federal Rule of Evidence 104.[6]  In the

---

[6] The government relies on language from *United States v. Paul*, 110 F.3d at 871, that "it is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law," but *Paul* and the cases it relied upon involved defenses of duress and necessity.  *See also United States v. Bailey*, 444 U.S. 394, 415-16 (1980); *United States v.*

Court's judgment, the better exercise of discretion is to wait to hold such a hearing until after the earlier of the unequivocal assertion of the privilege by defense or the close of the government's case. At that point, the Court will hear an application from the government for a hearing as to whether the defense can put on evidence of advice of counsel and will be prepared to proceed directly to a hearing.

Thus, the defense shall inform the Court and the government no later than the close of the government's case-in-chief whether it intends to assert an advice-of-counsel defense. In the event that it elects to assert such a defense, it will also at the same time inform the Court and the government of (1) the charges to which it contends such a defense is relevant; (2) the witnesses it intends to present in support of that defense (including whether the witnesses include the defendant himself); and (3) the evidence it contends will satisfy each element of an advice-of-counsel defense. The Court will be prepared to hold a Federal Rule of Evidence 104 hearing before the start of the defense case to determine whether there is sufficient evidence for the defense to present such a defense. In addition, the Court will hear an application by the government pretrial whether it should enter an order that, at the moment that the defense elects to assert the advice-of-counsel defense, the defense shall produce all documents relating to the defense (whether supportive or not) in its possession, custody, or control (regardless whether the

---

*Bifield*, 702 F.2d 342, 346–47 (2d Cir.), *cert. denied*, 461 U.S. 931 (1983) (defense of duress and necessity); *Untied States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). These cases also turn upon the question of whether it is proper for the Court to hold a Federal Rule of Evidence 104 hearing at all to determine whether the evidence would satisfy all of the elements of the defense and not upon the timing of that hearing. *See Bailey*, 444 U.S. at 416 (emphasizing "the importance of trial by jury and the need to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses"); *Bakhtiari*, 913 F.2d at 1057 (finding that hearing "procedure enabled [the court], upon finding that the defense failed as a matter of law, to preclude the evidence and thereby avoid unnecessary jury confusion").

documents were produced to the defense by the government and are already in the government's possession) and shall provide the government sufficient information for the government to be able to conduct its own independent search of the otherwise privileged documents to determine those documents as to which the privilege has been waived.

SO ORDERED.

Dated: November 22, 2021
      New York, New York

                                     LEWIS J. LIMAN
                             United States District Judge