# Exhibit A

**TO: Clerk's Office**
    **UNITED STATES DISTRICT COURT**
    **EASTERN DISTRICT OF NEW YORK**

_____

    **APPLICATION FOR LEAVE**
    **TO FILE DOCUMENT UNDER SEAL**

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

_____

*********************************

800 Manor Road, Apartment 2D, Staten Island,
New York 10314, and a Silver 17 Inch
Macbook Pro Used by Lawrence Ray

_____
Docket Number

*********************************

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✔
Name: Margaret Schierberl
Firm Name:USAO, EDNY
Address:   271-A Cadman Plaza East, Brooklyn, NY 11201

_____
Phone Number: 718-254-6187
E-Mail Address:Margaret.Schierberl@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES _____ NO ✔
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**B) If a new application,** the statute, regulation, or other legal basis that
authorizes filing under seal

integrity of ongoing investigation, avoidance of destruction of evidence
and flight

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,**
**AND MAY NOT BE UNSEALED UNLESS ORDERED BY**
**THE COURT.**

DATED: Brooklyn                    , NEW YORK

July 21, 2021

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
                                                        DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by
the following other statute or regulation:_____; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

        July 21, 2021                    _____
            DATE                                    SIGNATURE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>███████████████ and a Silver 17 Inch<br>Macbook Pro Used by Lawrence Ray | **APPLICATION FOR A SEARCH**<br>**WARRANT FOR A PREMISES AND**<br>**ELECTRONIC DEVICES**<br>**FOUND THEREIN**<br><br>No. _____ |

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, KELLY MAGUIRE, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a warrant to search the premises known as ███████████████

███████████████ hereinafter the "SUBJECT PREMISES," further described

in Attachment A, and search and seize a silver 17-inch Macbook Pro used by Lawrence Ray,

hereinafter the "SUBJECT DEVICE," further described in Attachment B, for the things described

in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("Investigating

Agency"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule

of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal

laws and duly authorized by the Attorney General to request a search warrant. I have been an FBI

Special Agent for approximately three years. I am currently assigned to the Child Exploitation and

Human Trafficking Task Force. I previously served in Special Operations for the Joint Terrorism

Task Force. Prior to joining the FBI, I was a Detective/Police Officer at the Charleston Police Department in Charleston South Carolina for approximately 9 Years. I was a detective in the Special Investigations Unit which encompassed narcotics, vice and violent crimes against children investigations. I have experience executing search warrants involving electronic evidence, including computers, electronic devices, email accounts, and cloud storage accounts.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.     On or about January 26, 2021, a grand jury sitting in the Southern District of New York issued a superseding indictment charging Lawrence Ray and Isabella Pollok with violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses"). The Indictment is attached hereto as Exhibit A and incorporated by reference herein.

5.     As described in the Indictment, Lawrence Ray, with the assistance of Isabella Pollok, and others, subjected victims of the Subject Offenses to sexual and psychological manipulation and physical abuse in order, among other things, to extract false confessions from the victims that they had caused harm and damage to Ray, Pollok, and others.  (Indictment ¶ 5).

6.     As described in the Indictment, Ray, Pollok, and others, leveraged the victims' false confessions to extort money from the victims, to force some of the victims to perform unpaid manual labor, and to cause one of the female victims ("Female Victim-1") to engage in commercial sex acts for the financial benefit of Ray, Pollok, and others.  (Indictment ¶ 5).

7.     As described in the Indictment, Ray, Pollok, and others documented and retained the victims' false confessions, as well as other sensitive, humiliating, and incriminating material related to the victims.  (Indictment ¶ 7).

## Probable Cause Justifying Search of ESI

8.     Based on my participation in this investigation, I am aware that Ray and Pollok, among others, retained at least some of the false confessions, and other sensitive, humiliating, and incriminating material described in Paragraph 7 above in digital and/or electronic form.

9.     For example, pursuant to a search warrant issued by the Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York, I have reviewed data from Pollok's iCloud account.  Based on my review, I am aware that Pollok's iCloud contains a series of "confession" videos.  In one such video, Ray accuses a female victim ("Female Victim-2") of being "criminally destructive," "out of control," and "violent."  In the video, Female Victim-2 begs for help and states that she wants to "stop" her behavior.  In another series of videos, Female Victim-2 says, in substance and in part, that she is "upset about what happened with the poisoning, and wants to do something about it."  In subsequent videos, Pollok accuses Female Victim-2 of "assaulting" Pollok, being "violent," and "out of control," and "behaving like a criminal."  Female

Victim-2 sobs and begs forgiveness. Another video from Pollok's iCloud account, dated October 2, 2017, shows a man ("Individual-1") kneeling down, while Ray holds a drill to the back of Individual-1's head. Pollok can be heard in the video saying, "I like it!

10.    Based on my review of Pollok's iCloud account, I aware that it also includes dozens of photographs of handwritten ledgers detailing household expenses.  Each entry in the ledger includes the date, type of expense, and the initials of the individual who incurred the expense, either "LR," for Lawrence Ray or the initials of Pollok or Female Victim-2.  The ledgers also include entries labeled "pickup," and an associated amount, and the next line item is typically for a "deposit," with a notation reflecting either Pollok or Female Victim-2's bank account.

11.    I have compared these ledger photographs to other data on Pollok's iCloud, which included text messages from Female Victim-1's cellphone, and I have learned that the dates and amounts of the "pickup" entries are closely aligned with text messages from Female Victim-1 to Pollok, in which Female Victim-1 provided Pollok a location and an amount.[1]  For example, on April 1, 2017, Female Victim-1 sent Pollok a text message stating that she was in Room 614, and had $4,380.  The next day, April 2, 2017, the ledger reflects a "pickup" of $4,100.  On May 21, 2017, Female Victim-1 sent Pollok a text message that she was at the Central Hotel in room 1405,

_____

[1] An earlier warrant in this investigation referenced these messages as being from "Female Victim-1's cellphone." The messages are from the call number assigned to Female Victim-1's cellphone, however the text message exchange message was recovered from Pollok's iCloud.

with approximately $12,430. The next day, May 22, 2017, the ledger reflects a "pickup" of $13,420.

12.     I have also compared these ledger photographs to bank records for accounts held by Pollok and Female Victim-2, and I have learned that the dates and amounts reflected in the "deposit" entries correspond to cash deposits to Pollok and Female Victim-2's bank accounts.

13.     Based on my participation in this investigation and my conversations with Female Victim-1, I believe that the "pickups" described in Paragraphs 11 and 12 above were dates on which Pollok and others collected the cash proceeds of the sex trafficking conspiracy charged in the Subject Offenses.

14.     Similarly, pursuant to a search warrant issued by the Honorable Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York, I have reviewed data from Ray's email accounts. Based on my review, I know that Ray, Pollok, and others routinely exchanged emails attaching and/or forwarding the false confessions, and other sensitive, humiliating, and incriminating material described in Paragraph 7 above. For example, on or about April 11, 2019, Pollok sent Ray an email attaching a zip file of journal entries written by Female Victim-1, in which Female Victim-1 confessed to poisoning Ray, Pollok, and others. Likewise, on or about June 21, 2019, Ray sent Pollok an audio recording of a phone call with Female Victim-1, in which Female Victim-1 stated, in substance and in part, that she feared exposing her parents' so-called involvement in poisoning Ray because she would then be "totally alone."

15.     In addition, based on my review of such electronic evidence, I believe the filenames of certain attachments and recordings reflect that the material originated and/or was maintained on an electronic device.  For example, a file saved under the name "Isabella's iPhone-Mar 9, 2014, 11_25pm" is an audio recording of Ray berating and humiliating Female Victim-2, and a male victim ("Male Victim-1"), while Pollok is present.  During the recording, Ray threatens to put Female Victim-1 in jail, hits Male Victim-1, demands that Male Victim-1 crawl on the floor like a dog, encourages Male Victim-1 to commit suicide by jumping out of the window, and then tells Female Victim-2 to join him. Ray then threatens to "take [Male Victim-1] out" in a brutal way, apparently referring to killing Male Victim-1.  Finally, Ray instructs Pollok to find an audio or video recording in which Male Victim-1 said "he wanted to suck cock" so that Ray could post it on Male Victim-1's Facebook account.

16.     On the date of Ray's February 11, 2020, arrest, I and other law enforcement officers executed a search warrant at Ray's residence ("Ray's Residence"), issued by the Honorable Cathy L. Waldor, United States Magistrate Judge for the District of New Jersey, which authorized the seizure of electronic devices.  Based upon my review of data on those devices, I know that Ray maintained electronic evidence of the Subject Offenses, including communications with victims of the Subject Offenses, videos of interrogations of the victims of the Subject Offenses, humiliating photographs and videos of the victims of the Subject Offenses, and copies of handwritten and video-taped "confessions" made by the victims of the Subject Offenses, among other things.

17.     Based on my participation in Ray's February 11, 2020, arrest, I know that Female Victim-2 was with Ray at Ray's Residence the time of his arrest and also resided at that residence.

18.     On or about May 21, 2021, I spoke with Female Victim-2.  Female Victim-2 stated the following, in substance and in part:

a. Ray used the Subject Device all the time within Ray's Residence, and, based on Female Victim-2's observations, brought the Subject Device with him to his bedroom within Ray's Residence before going to sleep at night.

b. Female Victim-2 observed Ray use the Subject Device within Ray's Residence to search the web, conduct email correspondence, perform business related to domain name registrations, record "confessions" from the victims of the Subject Offenses, and maintain files and material related to various individuals.

c. Female Victim-2 believes Ray maintained separate files for the victims of the Subject Offenses on the Subject Device, including a file for herself, Female Victim-1, and Male Victim-1.  Female Victim-2 saw Ray work on these files and their corresponding folders, and, had received instruction from Ray on best practices for digital folder structuring.

d. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████

e. On the date of Ray's arrest, Female Victim-2 was present was law enforcement officers searched Ray's Residence. The Subject Device was not discovered or

seized by law enforcement officers during the execution of the search warrant, even though it was within Ray's Residence. Pollok told Female Victim-2 that she found the Subject Device wedged between Ray's bed and bedside table within Ray's Residence after law enforcement officers left the premises. Female Victim-2 saw Pollok take the Subject Device, and, bring it to her bedroom within Ray's Residence. A few days after Ray's arrest, Pollok and Female Victim-2 went to the Subject Premises, where Ray's close relative (the "Relative") resides. Pollok left the Subject Device at the Subject Premises with the Relative.

f. Female Victim-2 was last at the Subject Premises on December 21, 2020. While there, she saw the Subject Device in a black laptop bag in the living room of the Subject Premises.

19. In connection with my participation in this investigation, I have also reviewed audio recordings of calls made by Ray from the Metropolitan Correction Center, where he is detained. Based on my review of Ray's calls, I know the following:

a. On or about June 7, 2020, Ray called the Relative and stated, in substance and in part, "we need to index the evidence… Isabella did that a lot with some of the audio." Ray further stated, "We need to categorize the evidence, like, there's certain things, like specifically to [Female Victim-1] where she was talking about setting me up. Then there's ones that are confessions about the poisoning. Then there's ones that were the threats. You follow what I'm saying?"

b. In a subsequent call with the Relative, on or about June 19, 2020, Ray stated, in substance and in part that "Izzy and Fela" were "more familiar probably" with the digital evidence than Ray was, and instructed the Relative to ask "Izzy and Fela" about the digital evidence. Ray further instructed "you guys gotta . . . find and locate audio, video, and/or emails or diaries of [unintelligible] [Female Victim-1] when they were saying they poisoned me and/or drugged me…"[2]

20. Based on my participation in this investigation, I know "Izzy" to be a nickname for Isabella Pollok. Based on my participation in this investigation, and my review of electronic devices seized on the date of Ray's arrest, I believe that Ray has a repository of the sensitive, humiliating, and incriminating material described in Paragraphs 7, and 9 through 15 above, and that in the June 7 and June 19 phone calls described in Paragraph 19 above, Ray was directing the Relative to work with Pollok to organize the material.

21. Based on my review of information maintained in public records, and CLEAR, a law enforcement database, I am aware that the Subject Premises is the Relative's listed address.

22. On or about July 19, 2021, I traveled to the multi-unit apartment building (the "Building") in which the Subject Premises is located. I entered the Building's publicly accessible

---

[2] A prior warrant in this investigation quoted Ray instructing the relative to ask "Izzy and Bella," rather than "Izzy and Fela," about the digital evidence. This typographical error was inadvertent.

foyer, and, reviewed the posted tenant list which identified the Relative's last name and first initial as the tenant of the Subject Premises.

23.     While I was at the Building, I spoke with the Building manager, who advised that the tenant list posted in the publicly accessible foyer was current.

24.     Based on my participation in this investigation, including my May 21, 2021, conversation with Female Victim-2 described in Paragraph 18 above, I believe the Subject Device contains evidence of the Subject Offenses, and is maintained at the Subject Premises (where the Relative resides).

25.     Based upon my review of the recorded calls dated June 7 and June 19, 2020, as described in Paragraph 19 above, and information provided by Female Victim-2 on May 21, 2021, I believe the Relative maintains dominion over the Subject Device and has not destroyed it or transferred control over it to someone else.

26.     Based on training and experience, individuals involved in criminal activity tend to maintain sensitive or incriminating records within their own homes or the homes of a trusted associate, as appears to be the case here with Ray first storing the Subject Device in a hidden spot in his bedroom, and then the Relative keeping the Subject Device in the Subject Premises.  There is further reason to believe that the Subject Device has not been destroyed because—as discussed *supra*—one of Ray's criminal methods involved Ray deliberately creating and storing files related to his victims to use against them at a later time, and appears to be operating under a continued

belief that such records will be useful to his defense and damaging to the credibility of his victims, *see supra* ¶¶ 19-20.

27. Based on the foregoing, I respectfully submit there is probable cause to believe that Ray engaged in the Subject Offenses, and that evidence of this criminal activity is likely to be found on the Subject Device, at the Subject Premises.

## Procedures for Searching ESI

### A. Execution of Warrant for ESI

28. Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review." Consistent with Rule 41, this application requests authorization to seize the Subject Device and transport it to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on electronic media is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because electronic data is particularly vulnerable to inadvertent or intentional modification or destruction, electronic devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of electronic media in use today that it can be impossible to bring to the search site all of the necessary personnel and equipment potentially required to safely access the underlying data.

- Fourth, many factors can complicate and prolong recovery of data from an electronic device, including the increasingly common use of passwords, encryption, or other

features or configurations designed to protect or conceal data on the device, which often take considerable time and resources for forensic personnel to detect and resolve.

29.    A law enforcement officer who is trained to perform digital extraction (the "DEXT Agent") will assist the FBI in the execution of the search warrant.   To the extent there are multiple silver 17 inch Macbook pro laptop computers at the Subject Premises, the DEXT Agent will conduct initial imaging onsite to determine which device is the Subject Device.

### B.   Review of ESI

30.    Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrant.

31.    In conducting this review, law enforcement personnel may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.   Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data or deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of data potentially related to the subject matter of the investigation[3]; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone was used.

32.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.   Depending on the circumstances, however, law enforcement personnel may need to conduct a complete review of all the ESI from seized devices or storage media to evaluate its contents and to locate all data responsive to the warrant.

### C.  Return of ESI

33.     If the Government determines that the Subject Device is no longer necessary to retrieve and preserve the data, and the device itself is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return these items.   If the device is encrypted or unreadable it will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

---

[3] Keyword searches alone are typically inadequate to detect all relevant data. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.

## CONCLUSION

34.     I submit that this affidavit supports probable cause for a warrant to search the SUBJECT PREMISES described in Attachment A and seize the items described in Attachment B.

35.     I respectfully request that the search warrant permit law enforcement agents to execute the search in the very early morning hours or very late evening hours (prior to 6 a.m. or after 10 p.m.) because the timing of the search will depend on surveillance.

## REQUEST FOR SEALING

36.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Although the existence of this criminal investigation became public when the Indictment was unsealed, the FBI's investigation of the full scope of the conspiracies charged in the Subject Offenses continues. Because the scope of the investigation is not publicly known, and because disclosure of this affidavit or the requested search warrant could alert potential criminal targets that they are under continuing investigation, causing them to destroy electronic evidence, flee from prosecution, or otherwise seriously jeopardize the investigation, I respectfully request that the warrant and all supporting papers be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide

copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Respectfully submitted,

Kelly Maguire
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 21st Day of July, 2021

THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

15

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :   SEALED
                                :   SUPERSEDING
        - v. -                  :   INDICTMENT
                                :
LAWRENCE RAY,                   :   S1 20 Cr. 110
    a/k/a "Lawrence Grecco," and :
ISABELLA POLLOK,                :
                                :
        Defendants.             :
                                :
- - - - - - - - - - - - - - - x

COUNT ONE
(Racketeering Conspiracy)

The Grand Jury charges:

The Enterprise

1.   At all times relevant to this Indictment,
LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the
defendants, and others known and unknown, were members and
associates of a criminal organization (the "Enterprise") whose
members engaged in, among other things, extortion, sex
trafficking, forced labor, money laundering, and obstruction of
justice.

2.   The Enterprise, including its leadership,
membership, and associates, constituted an "enterprise," as
defined by Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact, although not a
legal entity.  The Enterprise constituted an ongoing

organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. At all times relevant to this Indictment, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Enterprise operated in the Southern District of New York and elsewhere.

3.    LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, participated in the operation of the Enterprise, and participated in unlawful and other activities in furtherance of the conduct of the Enterprise's affairs.

4.    LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, was the founder and leader of the Enterprise. During the time period relevant to this Indictment, RAY led the Enterprise and targeted a group of college students and others (the "Victims") for indoctrination and criminal exploitation by the Enterprise.  RAY recruited ISABELLA POLLOK, the defendant, and others, known and unknown, to join the criminal scheme and to work on behalf of the Enterprise.

5.    During the time period relevant to this Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, lived with some of the Victims, first in on-campus housing at a college in Westchester County, New York,

and thereafter at locations in Manhattan, New York; Pinehurst,
North Carolina; Piscataway, New Jersey; and elsewhere.  Over the
course of approximately a decade, between in or about 2010 and
in or about 2020, RAY, POLLOK, and others known and unknown,
attempted to gain the trust of the Victims before
psychologically manipulating and controlling them for the
success and furtherance of the Enterprise's ideology and the
financial gain of its members.  RAY, POLLOK, and others known
and unknown, exploited the Victims for the Enterprise's
financial gain.  RAY, with the assistance of POLLOK and others,
subjected the Victims to sexual and psychological manipulation
and physical abuse in order, among other things, to extract
false confessions from the Victims that they had caused harm and
damage to members and associates of the Enterprise, including by
poisoning RAY, POLLOK, and others.  RAY and POLLOK, and others
known and unknown, leveraged the Victims' false confessions to
extort money from the Victims, to force some of the Victims to
perform unpaid manual labor, and to cause one of the female
Victims ("Female Victim-1") to engage in commercial sex acts for
the Enterprise's financial benefit.

### Purposes of the Enterprise

6.    The purposes of the Enterprise included the
following:

a. Enriching the members and associates of the Enterprise through, among other things, (1) extortion, (2) sex trafficking, and (3) forced labor;

b. Preserving and protecting the power of the Enterprise, including the power of its leader, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, through violence, threats of violence, and verbal, physical, and mental abuse.

c. Promoting and enhancing the Enterprise and the activities of its members and associates;

d. Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence and with threats of retaliation against individuals who witnessed the crimes committed by members and associates of the Enterprise.

## Means and Methods of the Enterprise

7. Among the means and methods by which LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, conducted and participated in the conduct of the affairs of the Enterprise were the following:

a. Nurturing the Victims' loyalty to the members and associates of the Enterprise and alienating them from their families;

b.    Subjecting the Victims to sexual and psychological manipulation;

c.    Physically abusing the Victims, including through acts of violence, threats of violence, food deprivation, and sleep deprivation;

d.    Extracting false confessions from the Victims that they had caused harm and damage to members and associates of the Enterprise, such as RAY and POLLOK, including by false confessions that the Victims had poisoned RAY, POLLOK, and others;

e.    Documenting and retaining Victims' false confessions, including through video and journals kept by Victims at RAY's direction;

f.    Leveraging the Victims' false confessions to extort money from the Victims, to force some of the Victims to perform unpaid manual labor, and to cause one of the female Victims ("Female Victim-1") to engage in commercial sex acts for the Enterprise's financial benefit in New York City and elsewhere;

g.    Collecting sensitive, humiliating, and incriminating material against the Victims to further the purposes of the Enterprise, including the continued obedience of the Victims, the enrichment of the Enterprise, and evasion of

5

detection by law enforcement;

     h.   Threatening to turn the Victims in to law enforcement in light of their false confessions, which threats were made to further the purposes of the Enterprise, including the continued obedience of the Victims, the enrichment of the Enterprise, and evasion of detection by law enforcement;

     i.   Pressuring Female Victim-1, through force, threats of force, fraud, and coercion, to engage in frequent prostitution and collecting nearly all the proceeds of that prostitution, amounting to millions of dollars in profits for the Enterprise; and

     j.   Laundering the proceeds of the Enterprise's criminal activity through various bank accounts and RAY's online domain business.

## The Racketeering Conspiracy

    8.   From at least in or around 2010, up to and including in or around 2020, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Seven of this Indictment, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the

United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple acts:

a. indictable under Title 18, United States Code, Sections 1951 and 2 (relating to extortion);

b. involving extortion, chargeable under the following provisions of state law, namely, New York Penal Law Sections 155.05(2)(e), 155.40(2) (grand larceny in the second degree by extortion); 155.30(6) (grand larceny in the fourth degree by extortion); 105.10 (conspiracy in the fourth degree); 110.00 (attempt to commit a crime); and 20.00 (accessory liability);

c. indictable under Title 18, United States Code, Sections 1591 and 2 (sex trafficking by force, fraud, or coercion);

d. indictable under Title 18, United States Code, Sections 1589 and 2 (forced labor);

e. indictable under Title 18, United States Code, Sections 1590 and 2 (forced labor trafficking);

f.   indictable under Title 18, United States Code, Sections 1952 and 2 (use of interstate commerce to promote unlawful activity);

g.   indictable under Title 18, United States Code, Sections 1956 and 2 (relating to the laundering of monetary instruments);

h.   indictable under Title 18, United States Code, Sections 1512 and 2 (relating to tampering with a witness, victim, or an informant); and

i.   indictable under Title 18, United States Code, Sections 1503 and 2 (relating to obstruction of justice).

9.   It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

### NOTICE OF SPECIAL SENTENCING FACTOR

10.   As part of their agreement to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, agreed that multiple acts indictable under Title 18, United States Code, Section 1591(a) and (b)(1) would be committed, to wit, a conspirator would, in or affecting

8

interstate commerce, recruit, entice, harbor, transport,
provide, obtain, advertise, maintain, patronize, and solicit, by
any means, persons, and would benefit, financially and by
receiving anything of value, from participation in a venture
which has engaged in any such act, knowing and in reckless
disregard of the fact that means of force, threats of force,
fraud, and coercion, and any combination of such means, would be
used to cause the persons to engage in commercial sex acts, in
violation of Title 18, United States Code, Sections 1591(a) and
(b)(1).

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
(Extortion Conspiracy)

The Grand Jury further charges:

11.  From in or about 2011, up to and including at
least in or about 2019, in the Southern District of New York and
elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA
POLLOK, the defendants, and others known and unknown, knowingly
did combine, conspire, confederate, and agree together and with
each other to commit extortion, as that term is defined in Title
18, United States Code, Section 1951(b)(2), by obtaining money
and property from and with the consent of another person, which
consent would have been and was induced by the wrongful use of
actual and threatened force, violence, and fear, and would and

did thereby obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term
is defined in Title 18, United States Code, Section 1951(b)(3),
to wit, RAY and POLLOK agreed to extort money from the Victims
to repay supposed wrongdoing against RAY and others.

(Title 18, United States Code, Section 1951.)

## COUNT THREE
(Extortion)

The Grand Jury further charges:

12. From in or about 2011, up to and including at
least in or about 2019, in the Southern District of New York and
elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant,
knowingly did commit extortion, as that term is defined in Title
18, United States Code, Section 1951(b)(2), by obtaining money
and property from and with the consent of another person, which
consent would have been and was induced by the wrongful use of
actual and threatened force, violence, and fear, and would and
did thereby obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term
is defined in Title 18, United States Code, Section 1951(b)(3),
and aided and abetted the same, to wit, RAY extorted money from
Female Victim-1 to repay supposed wrongdoing against RAY and

others.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FOUR
### (Sex Trafficking)

The Grand Jury further charges:

13. From in or about 2011, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which had engaged in such acts, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and aided and abetted the same, to wit, RAY engaged in the sex trafficking of Female Victim-1.

(Title 18, United States Code, Sections 1591 and 2.)

## COUNT FIVE
### (Conspiracy to Commit Sex Trafficking)

The Grand Jury further charges:

14. From in or about 2011, up to and including at

11

least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, knowingly, in and affecting interstate and foreign commerce, did combine, conspire, confederate and agree to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, a person, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a) and (b)(1), to wit, RAY and POLLOK, agreed to engage in the sex trafficking of Female Victim-1.

(Title 18, United States Code, Section 1594.)

## COUNT SIX
(Forced Labor)

The Grand Jury further charges:

15. From at least in or about May 2013, up to and including at least in or about December 2013, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly did obtain the labor and services of a person by means of (a) force, threats of

force, physical restraint and threats of physical restraint to her and one or more other persons, (b) serious harm and threats of serious harm to her and one or more other persons, (c) the abuse and threatened abuse of law and legal process, and (d) one or more schemes, plans and patterns intended to cause her to believe that, if she did not perform such labor and services, she and one or more other persons would suffer serious harm and physical restraint, and a combination of such means, and aided and abetted the same, to wit, RAY caused several female Victims to perform physical labor on a property in Pinehurst, North Carolina by among other things, physically harming, threatening, and intimidating the Victims, threatening legal action against them, and convincing those Victims that if they did not perform the labor, those Victims and others would suffer serious harm.

(Title 18, United States Code, Sections 1589 and 2.)

## COUNT SEVEN
(Forced Labor Trafficking)

The Grand Jury further charges:

16. From at least in or about May 2013, up to and including at least in or about December 2013, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly did recruit, harbor, transport, provide, and obtain by any means, persons for labor and services in violation of Title 18, United States Code,

13

Section 1589(a), and aided and abetted the same, to wit, RAY convinced and caused several female Victims to travel from Manhattan, New York to Pinehurst, North Carolina in order to obtain their physical labor in violation of Title 18, United States Code, Section 1589(a).

(Title 18, United States Code, Sections 1590 and 2.)

COUNT EIGHT
(Forced Labor Conspiracy)

The Grand Jury further charges:

17. From at least in or about May 2013, up to and including at least in or about December 2013, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to provide and obtain the labor and services of one and more persons, by means of (a) force, threats of force, physical restraint and threats of physical restraint to her and one or more other persons, (b) serious harm and threats of serious harm to her and one or more other persons, (c) the abuse and threatened abuse of law and legal process, and (d) one or more schemes, plans and patterns intended to cause her to believe that, if she did not perform such labor and services, she and one or more other persons would suffer serious harm and physical restraint, and a combination of such means, in

14

violation of Title 18, United States Code, Section 1589(a), to wit, RAY agreed with others to obtain the physical labor of several female Victims on a property in Pinehurst, North Carolina, as described in Count Six of this Indictment and in violation of Title 18, United States Code, Section 1589(a).

(Title 18, United States Code, Section 1594.)

COUNT NINE
(Use of Interstate Commerce To Promote Unlawful Activity)

The Grand Jury further charges:

18. From at least in or about 2014, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, did use and cause to be used facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely a business enterprise involving prostitution, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of that unlawful activity, and aided and abetted the same, to wit, RAY used a cellular phone and the Internet, and traveled in interstate commerce, to promote, manage, and carry on a criminal business engaged in sex trafficking and prostitution, and

15

promoting prostitution, in violation of New York Penal Law Sections 230.00, 230.20, 230.25, 230.30, and 230.32.

(Title 18, United States Code, Sections 1952(a)(3)(B) and 2.)

COUNT TEN
(Use of Interstate Commerce To Promote Unlawful Activity)

The Grand Jury further charges:

19.   From at least in or about 2011, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, did use and cause to be used facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely a business enterprise involving extortion, and thereafter performed and attempted to perform an act to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of that unlawful activity, and aided and abetted the same, to wit, RAY used a cellular phone and the Internet, and traveled in interstate commerce, to promote, manage, and carry on extortion, in violation of New York Penal Law Sections 155.30(6) and 20.00.

(Title 18, United States Code, Sections 1952(a)(3)(B) and 2.)

(Money Laundering)

The Grand Jury further charges:

20.     From at least in or about 2011, up to and
including at least in or about 2019, in the Southern District of
New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco,"
and ISABELLA POLLOK, the defendants, knowing that the property
involved in certain financial transactions represented the
proceeds of some form of unlawful activity, conducted and
attempted to conduct such financial transactions, which in fact
involved the proceeds of specified unlawful activity, to wit,
(i) extortion, in violation of Title 18, United States Code,
Section 1951; and (ii) sex trafficking, in violation of Title
18, United States Code, Section 1591, knowing that the
transactions were designed in whole and in part to conceal and
disguise the nature, the location, the source, the ownership,
and the control of the proceeds of specified unlawful activity,
and to avoid a transaction reporting requirement under State and
Federal law.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), (ii),

and 2.)

17

## COUNT TWELVE
(Tax Evasion – 2015 Tax Year)

The Grand Jury further charges:

21. During the calendar year 2015, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, received substantial taxable income, upon which there was substantial income tax due and owing to the United States of America, to wit proceeds of the offenses charged in Counts One through Five of this Indictment. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2016, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, RAY from in or about January 2015 through on or about April 15, 2016, in the Southern District of New York and elsewhere, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by RAY to the United States of America for calendar year 2015 by various means, including, among others: (a) causing nominees to deposit a substantial part of RAY's unreported income into bank accounts in the nominees' names, including at bank branches and ATMs in the Southern District of New York, and subsequently to transfer the income to RAY through cash and electronic transfers; and (b) using unreported income deposited into bank accounts in the nominees' names to pay for personal expenses, including to purchase

18

numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

COUNT THIRTEEN
(Tax Evasion – 2016 Tax Year)

The Grand Jury further charges:

22. During the calendar year 2016, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, received substantial taxable income, upon which there was substantial income tax due and owing to the United States of America, to wit proceeds of the offenses charged in Counts One through Five of this Indictment. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2017, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, RAY from in or about January 2016 through on or about April 15, 2017, in the Southern District of New York and elsewhere, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by RAY to the United States of America for calendar year 2016 by various means, including, among others: (a) causing nominees to deposit a substantial part of RAY's unreported income into bank accounts in the nominees' names, including at bank branches and ATMs in the Southern District of New York, and subsequently to transfer the income to RAY through cash and electronic transfers; and (b) using

unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

COUNT FOURTEEN
(Tax Evasion — 2017 Tax Year)

The Grand Jury further charges:

23.     During the calendar year 2017, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment.  Knowing the foregoing facts and failing to make an
income tax return on or before April 15, 2018, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2017 through on or about April 15, 2018, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of
America for calendar year 2017 by various means, including,
among others: (a) causing nominees to deposit a substantial part
of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern

District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using
unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

COUNT FIFTEEN
(Tax Evasion — 2018 Tax Year)

The Grand Jury further charges:

24.   During the calendar year 2018, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment.  Knowing the foregoing facts and failing to make an
income tax return on or before April 15, 2019, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2018 through on or about April 15, 2019, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of
America for calendar year 2018 by various means, including,
among others: (a) causing nominees to deposit a substantial part

of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern
District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using
unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

COUNT SIXTEEN
(Tax Evasion – 2019 Tax Year)

The Grand Jury further charges:

25.   During the calendar year 2019, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment.  Knowing the foregoing facts and failing to make an
income tax return on or before July 15, 2020, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2019 through on or about July 15, 2020, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of

America for calendar year 2019 by various means, including,
among others: (a) causing nominees to deposit a substantial part
of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern
District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using
unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

26. As a result of committing the offense alleged in
Count One of this Indictment, LAWRENCE RAY, a/k/a "Lawrence
Grecco," and ISABELLA POLLOK, the defendants, shall forfeit to
the United States, pursuant to Title 18, United States Code,
Section 1963, any and all interests the defendant acquired or
maintained in violation of Title 18, United States Code, Section
1962; any and all interests in, securities of, claims against,
and property or contractual rights of any kind affording a
source of influence over, the enterprise named and described
herein which the defendants established, operated, controlled,
conducted, and participated in the conduct of, in violation of
Title 18, United States Code, Section 1962; and any and all

property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, the offense alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offense alleged in Count One.

### FORFEITURE ALLEGATION AS TO COUNTS TWO AND THREE

27. As a result of committing the offenses alleged in Counts Two and Three of this Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

28. As a result of committing the offense alleged in Count Two of this Indictment, ISABELLA POLLOK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States

Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

### FORFEITURE ALLEGATION AS TO COUNTS FOUR THROUGH EIGHT

29. As a result of committing the offenses alleged in Counts Four, Five, Six, Seven, and Eight of this Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594: (1) any property, real and personal, that was involved in, used or intended to be used to commit or to facilitate the commission of the offenses, and any property traceable to such property; and (2) any property, real and personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

30. As a result of committing the offense alleged in Count Five of this Indictment, ISABELLA POLLOK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594: (1) any property, real and personal, that was involved in, used or intended to be used to commit or

to facilitate the commission of the offenses, and any property traceable to such property; and (2) any property, real and personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

### FORFEITURE ALLEGATION AS TO COUNT ELEVEN

31. As a result of committing the offense alleged in Count Eleven of this Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the

Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p); Title 18, United States

Code, Section 1963(m); and Title 28 United States Code, Section

2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

    (Title 18, United States Code, Sections 981, 982, and 1963;
Title 21, United States Code, Section 853; and Title 28, United
States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### LAWRENCE RAY,
### a/k/a "Lawrence Grecco," and
### ISABELLA POLLOK,

Defendants.

### SEALED
### SUPERSEDING INDICTMENT

S1 20 Cr. 110

(18 U.S.C. §§ 1962, 1951, 1591, 1589, 1590, 1594, 1952, 1956,
and 2; 26 U.S.C. § 7201.)

AUDREY STRAUSS
United States Attorney

**A TRUE BILL**

_____
Foreperson

## <u>ATTACHMENT A</u>

*Property to be searched*

The property to be searched ████████████████████████████████████

████████████████████ The Subject Premises is inside a multi-story brick apartment

building (the "Building").  The entrance to the Building is a glass door under a black awning,

bearing the numerals ████ ."

## ATTACHMENT B

*Property to be seized*

The Subject Device, which is particularly described as a silver, 17-inch Macbook Pro used by Lawrence Ray.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the Subject Device for the time period January 1, 2010, to February 11, 2021, in order to locate any evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses"), including the following:

1.      Evidence of Lawrence Ray's participation in the Subject Offenses;

2.      Evidence concerning the participation of co-conspirators in the Subject Offenses;

3.      Evidence concerning the use and/or ownership of the Subject Device;

4.      Communications related to the Subject Offenses, including any messages, notes, or mail with or about co-conspirators, clients, and/or victims;

5.      Photographs, videos, audio recordings, and other documents or files indicating the relationship between Lawrence Ray and his co-conspirators and victims and constituting evidence of the Subject Offenses;

6.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information;

7.      Evidence indicating Lawrence Ray's state of mind as it relates to the Subject Offenses, or the state of mind of co-conspirators, including evidence of intent to coerce, intimidate, or threaten potential victims, to extort money, or to persuade potential coconspirators to engage in criminal activity;

8.      Evidence of unlawful agreement to engage in extortion, sex trafficking, money laundering, and/or racketeering; and

9. Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories described above. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

A law enforcement officer who is trained to perform digital extraction (the "DEXT Agent") will assist the FBI in the execution of the search warrant, and to the extent there are multiple devices matching the description of the Subject Device at the Subject Premises, may conduct initial imaging onsite to determine which device is the Subject Device.

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>800 Manor Road, Apartment 2D, Staten Island, New York<br>10314, and a Silver 17 Inch Macbook Pro Used by Lawrence Ray | )<br>)<br>)<br>)<br>)<br>)    Case No. |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     New York
*(identify the person or describe the property to be searched and give its location)*:

██████████████████████████████████ and a Silver 17 Inch Macbook Pro Used by Lawrence Ray

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

     **YOU ARE COMMANDED** to execute this warrant on or before     August 4, 2021     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ ~~at any time in the day or night because good cause has been established.~~

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     the Duty Magistrate Judge     .
                                                         *(United States Magistrate Judge)*

     ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    July 21, 2021   5:27 pm                                               *Judge's signature*

City and state:      Brooklyn, NY                       Hon. Peggy Kuo         U.S.M.J.
                                                                  *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

*Property to be searched*

███████████████████████████████████████████████████

███████████████████  The Subject Premises is inside a multi-story brick apartment building (the "Building").  T████████████████████████████████

████████████████████

# ATTACHMENT B

## *Property to be seized*

The Subject Device, which is particularly described as a silver, 17-inch Macbook Pro used by Lawrence Ray.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the Subject Device for the time period January 1, 2010, to February 11, 2021, in order to locate any evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses"), including the following:

1.    Evidence of Lawrence Ray's participation in the Subject Offenses;

2.    Evidence concerning the participation of co-conspirators in the Subject Offenses;

3.    Evidence concerning the use and/or ownership of the Subject Device;

4.    Communications related to the Subject Offenses, including any messages, notes, or mail with or about co-conspirators, clients, and/or victims;

5.    Photographs, videos, audio recordings, and other documents or files indicating the relationship between Lawrence Ray and his co-conspirators and victims and constituting evidence of the Subject Offenses;

6.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information;

7.    Evidence indicating Lawrence Ray's state of mind as it relates to the Subject Offenses, or the state of mind of co-conspirators, including evidence of intent to coerce, intimidate, or threaten potential victims, to extort money, or to persuade potential coconspirators to engage in criminal activity;

8.    Evidence of unlawful agreement to engage in extortion, sex trafficking, money laundering, and/or racketeering; and

9. Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories described above. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

A law enforcement officer who is trained to perform digital extraction (the "DEXT Agent") will assist the FBI in the execution of the search warrant, and to the extent there are multiple devices matching the description of the Subject Device at the Subject Premises, may conduct initial imaging onsite to determine which device is the Subject Device.

# Exhibit B

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

)
In the Matter of the Search of )
*(Briefly describe the property to be searched* )  Case No. 1 MAG 7303
*or identify the person by name and address)* )
)
a Silver, 17-inch Macbook Pro Laptop Computer )
Bearing Serial Number C02T50CJH03T )
)

## APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**a Silver, 17-inch Macbook Pro Laptop Computer Bearing Serial Number C02T50CJH03T**

located in the _____Southern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attached Affidavit and its Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☐ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section(s)* | *Offense Description(s)* |
|---|---|
| 18 U.S.C. §§ 1961 et seq.; 1589, 1590, 1591, 1594(b), 1952, 1956 (a), 1951, and 26 U.S.C. 7201 | RICO conspiracy, forced labor, trafficking with respect to forced labor, sex trafficking through force, fraud, or coercion, conspiracy to commit forced labor or trafficking with respect to forced labor, Travel Act, money laundering, extortion, and tax evasion |

The application is based on these facts:

See Attached Affidavit and its Attachment A

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Kelly Maguire
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **7-23-2021**

_____
*Judge's signature*

City and state:  New York, NY

Honorable Katharine H. Parker, U.S.M.J.
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of the Application of the United
States Of America for a Search Warrant for the
Electronic Device Described as a Silver, 17-inch
Macbook Pro Laptop Computer Bearing Serial
Number    C02T50CJH03T;    USAO    No.
2019R00518

**Agent Affidavit in Support of
Application for Search Warrant**

---

STATE OF NEW YORK                    )
COUNTY OF NEW YORK          : ss.:
SOUTHERN DISTRICT OF NEW YORK   )

KELLY MAGUIRE, being duly sworn, deposes and says:

## I. Introduction

### A. Affiant

1.      I am a Special Agent with the Federal Bureau of Investigations ("Investigating
Agency"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule
of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal
laws and duly authorized by the Attorney General to request a search warrant. I have been an FBI
Special Agent for approximately three years. I am currently assigned to the Child Exploitation and
Human Trafficking Task Force (CEHTTF). I previously served in Special Operations for the Joint
Terrorism Task Force. Prior to joining the FBI, I was a Detective/Police Officer at the Charleston
Police Department in Charleston South Carolina for approximately 9 Years. I was a detective in
the Special Investigations Unit which encompassed narcotics, vice and violent crimes against
children investigations. I have experience executing search warrants involving electronic
evidence, including computers, electronic devices, email accounts, and cloud storage accounts.

2.      I make this Affidavit in support of an application pursuant to Rule 41 of the Federal
Rules of Criminal Procedure for a warrant to search the electronic device specified below (the

"Subject Device") for the items and information described in Attachment A. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of electronic devices in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## B. The Subject Device

3. The Subject Device is particularly described as a Silver, 17-inch Macbook Pro laptop computer bearing serial number C02T50CJH03T.

4. The Subject Device is currently in the possession of the FBI in the Southern District of New York.

## C. The Subject Offense

5. For the reasons detailed below, there is probable cause to believe that the Subject Device contains evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses").

2

## II. Probable Cause

### A. Probable Cause Regarding Subject's Commission of the Subject Offenses

6. On or about February 6, 2020, a grand jury sitting in the Southern District of New York issued an indictment charging Lawrence Ray with participating in the Subject Offenses, with the exception of the tax evasion and RICO conspiracy charges.

7. On or about January 26, 2021, a grand jury sitting in the Southern District of New York issued a superseding indictment charging Lawrence Ray and Isabella Pollok with participating in the Subject Offenses (the "Superseding Indictment"). The Superseding Indictment is attached hereto as Exhibit A and incorporated by reference herein.

8. As described in the Superseding Indictment, Lawrence Ray, with the assistance of Isabella Pollok, and others, subjected victims of the Subject Offenses to sexual and psychological manipulation and physical abuse in order, among other things, to extract false confessions from the victims that they had caused harm and damage to Ray, Pollok, and others. (Superseding Indictment ¶ 5).

9. As described in the Superseding Indictment, Ray, Pollok, and others, leveraged the victims' false confessions to extort money from the victims, to force some of the victims to perform unpaid manual labor, and to cause one of the female victims ("Female Victim-1") to engage in commercial sex acts for the financial benefit of Ray, Pollok, and others. (Superseding Indictment ¶ 5).

10. As described in the Superseding Indictment, Ray, Pollok, and others documented and retained the victims' false confessions, as well as other sensitive, humiliating, and incriminating material related to the victims. (Superseding Indictment ¶ 7).

3

**B. Probable Cause Justifying Search of the Subject Device**

11.     Based on my participation in this investigation, I am aware that Ray and Pollok, among others, retained at least some of the false confessions, and other sensitive, humiliating, and incriminating material described in Paragraph 10 above in digital and/or electronic form.

12.     For example, pursuant to a search warrant issued by the Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York, I have reviewed data from Pollok's iCloud account. Based on my review, I am aware that Pollok's iCloud contains a series of "confession" videos. In one such video, Ray accuses a female victim ("Female Victim-2") of being "criminally destructive," "out of control," and "violent." In the video, Female Victim-2 begs for help and states that she wants to "stop" her behavior. In another series of videos, Female Victim-2 says, in substance and in part, that she is "upset about what happened with the poisoning, and wants to do something about it." In subsequent videos, Pollok accuses Female Victim-2 of "assaulting" Pollok, being "violent," and "out of control," and "behaving like a criminal." Female Victim-2 sobs and begs forgiveness. Another video from Pollok's iCloud account, dated October 2, 2017, shows a man ("Individual-1") kneeling down, while Ray holds a drill to the back of Individual-1's head. Pollok can be heard in the video saying, "I like it!

13.     Based on my review of Pollok's iCloud account, I aware that it also includes dozens of photographs of handwritten ledgers detailing household expenses. Each entry in the ledger includes the date, type of expense, and the initials of the individual who incurred the expense, either "LR," for Lawrence Ray or the initials of Pollok or Female Victim-2. The ledgers also include entries labeled "pickup," and an associated amount, and the next line item is typically for a "deposit," with a notation reflecting either Pollok or Female Victim-2's bank account.

14.     I have compared these ledger photographs to other data on Pollok's iCloud, which included text messages from Female Victim-1's cellphone, and I have learned that the dates and

4

amounts of the "pickup" entries are closely aligned with text messages from Female Victim-1 to Pollok, in which Female Victim-1 provided Pollok a location and an amount.[1] For example, on April 1, 2017, Female Victim-1 sent Pollok a text message stating that she was in Room 614, and had $4,380. The next day, April 2, 2017, the ledger reflects a "pickup" of $4,100. On May 21, 2017, Female Victim-1 sent Pollok a text message that she was at the Central Hotel in room 1405, with approximately $12,430. The next day, May 22, 2017, the ledger reflects a "pickup" of $13,420.

15. I have also compared these ledger photographs to bank records for accounts held by Pollok and Female Victim-2, and I have learned that the dates and amounts reflected in the "deposit" entries correspond to cash deposits to Pollok and Female Victim-2's bank accounts.

16. Based on my participation in this investigation and my conversations with Female Victim-1, I believe that the "pickups" described in Paragraphs 13 and 14 above were dates on which Pollok and others collected the cash proceeds of the sex trafficking conspiracy charged in the Subject Offenses.

17. Similarly, pursuant to a search warrant issued by the Honorable Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York, I have reviewed data from Ray's email accounts. Based on my review, I know that Ray, Pollok, and others routinely exchanged emails attaching and/or forwarding the false confessions, and other sensitive, humiliating, and incriminating material described in Paragraph 7 above. For example, on or about April 11, 2019, Pollok sent Ray an email attaching a zip file of journal entries written by Female Victim-1, in which Female Victim-1 confessed to poisoning Ray, Pollok, and others.

---

[1] An earlier warrant in this investigation referenced these messages as being from "Female Victim-1's cellphone." The messages are from the call number assigned to Female Victim-1's cellphone, however the text message exchange message was recovered from Pollok's iCloud.

Likewise, on or about June 21, 2019, Ray sent Pollok an audio recording of a phone call with Female Victim-1, in which Female Victim-1 stated, in substance and in part, that she feared exposing her parents' so-called involvement in poisoning Ray because she would then be "totally alone."

18. In addition, based on my review of such electronic evidence, I believe the filenames of certain attachments and recordings reflect that the material originated and/or was maintained on an electronic device. For example, a file saved under the name "Isabella's iPhone-Mar 9, 2014, 11_25pm" is an audio recording of Ray berating and humiliating Female Victim-2, and a male victim ("Male Victim-1"), while Pollok is present. During the recording, Ray threatens to put Female Victim-1 in jail, hits Male Victim-1, demands that Male Victim-1 crawl on the floor like a dog, encourages Male Victim-1 to commit suicide by jumping out of the window, and then tells Female Victim-2 to join him. Ray then threatens to "take [Male Victim-1] out" in a brutal way, apparently referring to killing Male Victim-1. Finally, Ray instructs Pollok to find an audio or video recording in which Male Victim-1 said "he wanted to suck cock" so that Ray could post it on Male Victim-1's Facebook account.

19. I participated in Ray's February 11, 2020, arrest, and on that date I and other law enforcement officers executed a search warrant at Ray's residence ("Ray's Residence"), issued by the Honorable Cathy L. Waldor, United States Magistrate Judge for the District of New Jersey, which authorized the seizure of electronic devices. Based upon my review of data on those devices, I know that Ray maintained electronic evidence of the Subject Offenses, including communications with victims of the Subject Offenses, videos of interrogations of the victims of the Subject Offenses, humiliating photographs and videos of the victims of the Subject Offenses,

6

and copies of handwritten and video-taped "confessions" made by the victims of the Subject Offenses, among other things.

20. Based on my participation in Ray's February 11, 2020, arrest, I also know that Female Victim-2 was with Ray at Ray's Residence the time of his arrest and also resided at that residence.

21. On or about May 21, 2021, I spoke with Female Victim-2. Female Victim-2 stated the following, in substance and in part:

> a. Ray used a silver, 17-inch Macbook Pro laptop, which he kept in a white rubber case (the "Laptop"), all the time within Ray's Residence, and, based on Female Victim-2's observations, brought the Laptop with him to his bedroom within Ray's Residence before going to sleep at night.
>
> b. Female Victim-2 observed Ray use the Laptop within Ray's Residence to search the web, conduct email correspondence, perform business related to domain name registrations, record "confessions" from the victims of the Subject Offenses, and maintain files and material related to various individuals.
>
> c. Female Victim-2 believes Ray maintained separate files for the victims of the Subject Offenses on the Laptop, including a file for herself, Female Victim-1, and Male Victim-1. Female Victim-2 saw Ray work on these files and their corresponding folders, and, had received instruction from Ray on best practices for digital folder structuring.
>
> d. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

e. On the date of Ray's arrest, Female Victim-2 was present was law enforcement officers searched Ray's Residence. The Laptop was not discovered or seized by law enforcement officers during the execution of the search warrant, even though it was within Ray's Residence. Pollok told Female Victim-2 that she found the Laptop wedged between Ray's bed and bedside table within Ray's Residence after law enforcement officers left the premises. Female Victim-2 saw Pollok take the Laptop, and, bring it to her bedroom within Ray's Residence. A few days after Ray's arrest, Pollok and Female Victim-2 visited Ray's close relative (the "Relative") at his apartment in Staten Island (the "Relative's Residence"). Pollok left the Laptop at the Relative's Residence.

f. Female Victim-2 was last at the Relative's Residence on December 21, 2020. While there, she saw the Laptop in a black laptop bag in the living room of the Relative's Residence.

22. Based on my participation in this investigation, I know the information provided by Female Victim-2 has proven reliable, and has been corroborated in part by other evidence in this case, including electronic evidence, and information provided by other victims and witnesses.

23. I have reviewed data maintained on Ray's iCloud account, and I know it includes a short video of what appears to be the Laptop: a laptop computer in a white rubber case. The video is dated February 18, 2017. Because I participated in Ray's February 11, 2020, arrest, which occurred at Ray's Residence, I am familiar with the interior of Ray's Residence. I am confident the video depicts the Laptop in Ray's living room, within Ray's residence.

24.     In connection with my participation in this investigation, I have also reviewed audio recordings of calls made by Ray from the Metropolitan Correction Center, where he is detained. Based on my review of Ray's calls, I know the following:

    a.  On or about June 7, 2020, Ray called the Relative and stated, in substance and in part, "we need to index the evidence... Isabella did that a lot with some of the audio." Ray further stated, "We need to categorize the evidence, like, there's certain things, like specifically to [Female Victim-1] where she was talking about setting me up. Then there's ones that are confessions about the poisoning. Then there's ones that were the threats. You follow what I'm saying?"

    b.  In a subsequent call with the Relative, on or about June 19, 2020, Ray stated, in substance and in part that "Izzy and Fela" were "more familiar probably" with the digital evidence than Ray was, and instructed the Relative to ask "Izzy and Fela" about the digital evidence. Ray further instructed "you guys gotta . . . find and locate audio, video, and/or emails or diaries of [unintelligible] [Female Victim-1] when they were saying they poisoned me and/or drugged me..."[2]

25.     Based on my participation in this investigation, I know "Izzy" to be a nickname for Isabella Pollok. Based on my participation in this investigation, and my review of electronic devices seized on the date of Ray's arrest, I believe that Ray has a repository of the sensitive, humiliating, and incriminating material described in Paragraphs 10, and 12 through 18 above, and that in the June 7 and June 19 phone calls described in Paragraph 24 above, Ray was directing the Relative to work with Pollok to organize the material.

---

[2] A prior warrant in this investigation quoted Ray instructing the relative to ask "Izzy and Bella," rather than "Izzy and Fela," about the digital evidence. This typographical error was inadvertent.

9

26. On or about July 21, 2021, the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, issued a warrant to search the Relative's Residence, and seize a silver, 17-inch Macbook Pro laptop computer used by Lawrence Ray (the "Laptop Warrant").

27. On or about July 22, 2021, I and other law enforcement officers participated in the execution of the Laptop Warrant. During the execution of the Laptop Warrant, I asked the Relative where he kept the laptop computer provided to him by Isabella Pollok. The Relative pointed to a black bag on the floor of the Relative's living room. The black bag contained the Subject Device. The Subject Device was in a white rubber case, which was wrapped in tinfoil. The Relative stated, in substance and in part, that Pollok provided the bag containing the Subject Device, and the Relative did not touch or examine the contents of the bag.

28. Based upon my review of the recorded calls dated June 7 and June 19, 2020, as described in Paragraph 19 above, and information provided by Female Victim-2 on May 21, 2021, I believe the Relative maintains dominion over the Subject Device and has not destroyed it or transferred control over it to someone else.

29. Based on training and experience, I know individuals involved in criminal activity like the Subject Offenses maintain material like the false confessions, and other sensitive, humiliating, and incriminating material described in Paragraph 10 above, for long periods of time. There is further reason to believe that the Subject Device contains such materials because one of Ray's criminal methods involved Ray deliberately creating and storing files related to his victims to use against them at a later time, and he appears to be operating under a continued belief that such records will be useful to his defense and damaging to the credibility of his victims, *see supra* ¶¶ 24-25.

10

30. On or about July 22, 2021, when I returned to the FBI with the Subject Device, I connected the Subject Device to a power source to determine whether the Subject Device functioned, and could hold a charge. When the Subject Device powered on, I observed that it was password protected and locked. However, the home screen of the Subject Device displayed an icon of a lion's head, and the name "Lawrence Ray," above which was a password field.

31. Based on the foregoing, there is probable cause that the Subject Device is the Laptop described by Female Victim-2 and depicted in the February 18, 2017, video described in Paragraph 23 above.

32. I respectfully submit there is probable cause to believe that Ray engaged in the Subject Offenses, and that evidence of this criminal activity is likely to be found on the Subject Device.

## III. Procedures for Searching ESI

### A. Review of ESI

33. Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the Government, attorney support staff, agency personnel assisting the Government in this investigation, and outside technical experts under the Government's control) will review the ESI contained on the Subject Device for information responsive to the warrant.

34. In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses. Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

11

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

35.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant. Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Device to locate all data responsive to the warrant.

## B. Return of the Subject Device

36.     If the Government determines that the Subject Device is no longer necessary to retrieve and preserve the data on the device, and that the Subject Device is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the Subject Device. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

## IV. Conclusion and Ancillary Provisions

37.     **Sealing.** It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Although the existence of this criminal investigation became

12

public when the Indictment was unsealed, the FBI's investigation of the full scope of the conspiracies charged in the Subject Offenses continues. Because the scope of the investigation is not publicly known, and because disclosure of this affidavit or the requested search warrant could alert potential criminal targets that they are under continuing investigation, causing them to destroy electronic evidence, flee from prosecution, or otherwise seriously jeopardize the investigation, I respectfully request that the warrant and all supporting papers be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

38.     Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

Kelly Maguire
Special Agent
Federal Bureau of Investigation

Sworn to before me this
23rd day of July, 2021

HONORABLE KATHARINE PARKER
UNITED STATES MAGISTRATE JUDGE

13

## Attachment A

### I. Device to be Searched

The device to be searched (the "Subject Device") is presently located in the Southern District of New York, and can be particularly described a Silver, 17-inch Macbook Pro laptop computer bearing serial number C02T50CJH03T.

### II. Review of ESI on the Subject Device

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the electronically stored information ("ESI") and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Device for the time period of January 1, 2010, to February 11, 2021, for the following evidence, fruits, and instrumentalities of violations of evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses"), described as follows:

1. Evidence of Lawrence Ray's participation in the Subject Offenses;

2. Evidence concerning the participation of co-conspirators in the Subject Offenses;

3. Evidence concerning the use and/or ownership of the Subject Device;

4. Communications related to the Subject Offenses, including any messages, notes, or mail with or about co-conspirators, clients, and/or victims;

5. Photographs, videos, audio recordings, and other documents or files indicating the relationship between Lawrence Ray and his co-conspirators and victims and constituting evidence of the Subject Offenses;

6. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information;

7. Evidence indicating Lawrence Ray's state of mind as it relates to the Subject Offenses, or the state of mind of co-conspirators, including evidence of intent to coerce, intimidate, or threaten potential victims, to extort money, or to persuade potential coconspirators to engage in criminal activity;

8. Evidence of unlawful agreement to engage in extortion, sex trafficking, money laundering, and/or racketeering; and

9. Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories described above. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

## III. Return of the Subject Device

If the Government determines that the Subject Device is no longer necessary to retrieve and preserve the data on the device, and that the Subject Device is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the Subject Device, upon request and in no event later than 60 days from the date of seizure unless additional time is granted by court order. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offense.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                             :

UNITED STATES OF AMERICA     : <u>SEALED</u>
                                 : <u>SUPERSEDING</u>
      - v. -           : <u>INDICTMENT</u>
                                 :
LAWRENCE RAY,              : S1 20 Cr. 110
   a/k/a "Lawrence Grecco," and :
ISABELLA POLLOK,         :
                                 :
       Defendants.        :
                                 :
- - - - - - - - - - - - - - - x

<u>COUNT ONE</u>
(Racketeering Conspiracy)

The Grand Jury charges:

<u>The Enterprise</u>

1.    At all times relevant to this Indictment,
LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the
defendants, and others known and unknown, were members and
associates of a criminal organization (the "Enterprise") whose
members engaged in, among other things, extortion, sex
trafficking, forced labor, money laundering, and obstruction of
justice.

2.    The Enterprise, including its leadership,
membership, and associates, constituted an "enterprise," as
defined by Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact, although not a
legal entity.  The Enterprise constituted an ongoing

organization whose members functioned as a continuing unit for a
common purpose of achieving the objectives of the Enterprise.
At all times relevant to this Indictment, the Enterprise was
engaged in, and its activities affected, interstate and foreign
commerce.  The Enterprise operated in the Southern District of
New York and elsewhere.

3.    LAWRENCE RAY, a/k/a "Lawrence Grecco," and
ISABELLA POLLOK, the defendants, participated in the operation
of the Enterprise, and participated in unlawful and other
activities in furtherance of the conduct of the Enterprise's
affairs.

4.    LAWRENCE RAY, a/k/a "Lawrence Grecco," the
defendant, was the founder and leader of the Enterprise. During
the time period relevant to this Indictment, RAY led the
Enterprise and targeted a group of college students and others
(the "Victims") for indoctrination and criminal exploitation by
the Enterprise.  RAY recruited ISABELLA POLLOK, the defendant,
and others, known and unknown, to join the criminal scheme and
to work on behalf of the Enterprise.

5.    During the time period relevant to this
Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA
POLLOK, the defendants, lived with some of the Victims, first in
on-campus housing at a college in Westchester County, New York,

2

and thereafter at locations in Manhattan, New York; Pinehurst, North Carolina; Piscataway, New Jersey; and elsewhere. Over the course of approximately a decade, between in or about 2010 and in or about 2020, RAY, POLLOK, and others known and unknown, attempted to gain the trust of the Victims before psychologically manipulating and controlling them for the success and furtherance of the Enterprise's ideology and the financial gain of its members. RAY, POLLOK, and others known and unknown, exploited the Victims for the Enterprise's financial gain. RAY, with the assistance of POLLOK and others, subjected the Victims to sexual and psychological manipulation and physical abuse in order, among other things, to extract false confessions from the Victims that they had caused harm and damage to members and associates of the Enterprise, including by poisoning RAY, POLLOK, and others. RAY and POLLOK, and others known and unknown, leveraged the Victims' false confessions to extort money from the Victims, to force some of the Victims to perform unpaid manual labor, and to cause one of the female Victims ("Female Victim-1") to engage in commercial sex acts for the Enterprise's financial benefit.

## Purposes of the Enterprise

6.    The purposes of the Enterprise included the following:

3

a.   Enriching the members and associates of the Enterprise through, among other things, (1) extortion, (2) sex trafficking, and (3) forced labor;

b.   Preserving and protecting the power of the Enterprise, including the power of its leader, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, through violence, threats of violence, and verbal, physical, and mental abuse.

c.   Promoting and enhancing the Enterprise and the activities of its members and associates;

d.   Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence and with threats of retaliation against individuals who witnessed the crimes committed by members and associates of the Enterprise.

### Means and Methods of the Enterprise

7.   Among the means and methods by which LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.   Nurturing the Victims' loyalty to the members and associates of the Enterprise and alienating them from their families;

4

b. Subjecting the Victims to sexual and psychological manipulation;

c. Physically abusing the Victims, including through acts of violence, threats of violence, food deprivation, and sleep deprivation;

d. Extracting false confessions from the Victims that they had caused harm and damage to members and associates of the Enterprise, such as RAY and POLLOK, including by false confessions that the Victims had poisoned RAY, POLLOK, and others;

e. Documenting and retaining Victims' false confessions, including through video and journals kept by Victims at RAY's direction;

f. Leveraging the Victims' false confessions to extort money from the Victims, to force some of the Victims to perform unpaid manual labor, and to cause one of the female Victims ("Female Victim-1") to engage in commercial sex acts for the Enterprise's financial benefit in New York City and elsewhere;

g. Collecting sensitive, humiliating, and incriminating material against the Victims to further the purposes of the Enterprise, including the continued obedience of the Victims, the enrichment of the Enterprise, and evasion of

5

detection by law enforcement;

h.    Threatening to turn the Victims in to law enforcement in light of their false confessions, which threats were made to further the purposes of the Enterprise, including the continued obedience of the Victims, the enrichment of the Enterprise, and evasion of detection by law enforcement;

i.    Pressuring Female Victim-1, through force, threats of force, fraud, and coercion, to engage in frequent prostitution and collecting nearly all the proceeds of that prostitution, amounting to millions of dollars in profits for the Enterprise; and

j.    Laundering the proceeds of the Enterprise's criminal activity through various bank accounts and RAY's online domain business.

The Racketeering Conspiracy

8.    From at least in or around 2010, up to and including in or around 2020, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Seven of this Indictment, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the

6

United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple acts:

a. indictable under Title 18, United States Code, Sections 1951 and 2 (relating to extortion);

b. involving extortion, chargeable under the following provisions of state law, namely, New York Penal Law Sections 155.05(2)(e), 155.40(2) (grand larceny in the second degree by extortion); 155.30(6) (grand larceny in the fourth degree by extortion); 105.10 (conspiracy in the fourth degree); 110.00 (attempt to commit a crime); and 20.00 (accessory liability);

c. indictable under Title 18, United States Code, Sections 1591 and 2 (sex trafficking by force, fraud, or coercion);

d. indictable under Title 18, United States Code, Sections 1589 and 2 (forced labor);

e. indictable under Title 18, United States Code, Sections 1590 and 2 (forced labor trafficking);

7

f. indictable under Title 18, United States Code, Sections 1952 and 2 (use of interstate commerce to promote unlawful activity);

g. indictable under Title 18, United States Code, Sections 1956 and 2 (relating to the laundering of monetary instruments);

h. indictable under Title 18, United States Code, Sections 1512 and 2 (relating to tampering with a witness, victim, or an informant); and

i. indictable under Title 18, United States Code, Sections 1503 and 2 (relating to obstruction of justice).

9. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

NOTICE OF SPECIAL SENTENCING FACTOR

10. As part of their agreement to conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, agreed that multiple acts indictable under Title 18, United States Code, Section 1591(a) and (b)(1) would be committed, to wit, a conspirator would, in or affecting

8

interstate commerce, recruit, entice, harbor, transport,
provide, obtain, advertise, maintain, patronize, and solicit, by
any means, persons, and would benefit, financially and by
receiving anything of value, from participation in a venture
which has engaged in any such act, knowing and in reckless
disregard of the fact that means of force, threats of force,
fraud, and coercion, and any combination of such means, would be
used to cause the persons to engage in commercial sex acts, in
violation of Title 18, United States Code, Sections 1591(a) and
(b) (1).

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
(Extortion Conspiracy)

The Grand Jury further charges:

11. From in or about 2011, up to and including at
least in or about 2019, in the Southern District of New York and
elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA
POLLOK, the defendants, and others known and unknown, knowingly
did combine, conspire, confederate, and agree together and with
each other to commit extortion, as that term is defined in Title
18, United States Code, Section 1951(b) (2), by obtaining money
and property from and with the consent of another person, which
consent would have been and was induced by the wrongful use of
actual and threatened force, violence, and fear, and would and

9

did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, RAY and POLLOK agreed to extort money from the Victims to repay supposed wrongdoing against RAY and others.

(Title 18, United States Code, Section 1951.)

## COUNT THREE
### (Extortion)

The Grand Jury further charges:

12. From in or about 2011, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, RAY extorted money from Female Victim-1 to repay supposed wrongdoing against RAY and

others.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FOUR
(Sex Trafficking)

The Grand Jury further charges:

13. From in or about 2011, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which had engaged in such acts, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and aided and abetted the same, to wit, RAY engaged in the sex trafficking of Female Victim-1.

(Title 18, United States Code, Sections 1591 and 2.)

## COUNT FIVE
(Conspiracy to Commit Sex Trafficking)

The Grand Jury further charges:

14. From in or about 2011, up to and including at

11

least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, and others known and unknown, knowingly, in and affecting interstate and foreign commerce, did combine, conspire, confederate and agree to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, a person, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a) and (b)(1), to wit, RAY and POLLOK, agreed to engage in the sex trafficking of Female Victim-1.

(Title 18, United States Code, Section 1594.)

## COUNT SIX
(Forced Labor)

The Grand Jury further charges:

15. From at least in or about May 2013, up to and including at least in or about December 2013, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, knowingly did obtain the labor and services of a person by means of (a) force, threats of

12

force, physical restraint and threats of physical restraint to
her and one or more other persons, (b) serious harm and threats
of serious harm to her and one or more other persons, (c) the
abuse and threatened abuse of law and legal process, and (d) one
or more schemes, plans and patterns intended to cause her to
believe that, if she did not perform such labor and services,
she and one or more other persons would suffer serious harm and
physical restraint, and a combination of such means, and aided
and abetted the same, to wit, RAY caused several female Victims
to perform physical labor on a property in Pinehurst, North
Carolina by among other things, physically harming, threatening,
and intimidating the Victims, threatening legal action against
them, and convincing those Victims that if they did not perform
the labor, those Victims and others would suffer serious harm.

(Title 18, United States Code, Sections 1589 and 2.)

COUNT SEVEN
(Forced Labor Trafficking)

The Grand Jury further charges:

16. From at least in or about May 2013, up to and
including at least in or about December 2013, in the Southern
District of New York and elsewhere, LAWRENCE RAY, a/k/a
"Lawrence Grecco," the defendant, knowingly did recruit, harbor,
transport, provide, and obtain by any means, persons for labor
and services in violation of Title 18, United States Code,

13

Section 1589(a), and aided and abetted the same, to wit, RAY convinced and caused several female Victims to travel from Manhattan, New York to Pinehurst, North Carolina in order to obtain their physical labor in violation of Title 18, United States Code, Section 1589(a).

(Title 18, United States Code, Sections 1590 and 2.)

COUNT EIGHT
(Forced Labor Conspiracy)

The Grand Jury further charges:

17. From at least in or about May 2013, up to and including at least in or about December 2013, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to provide and obtain the labor and services of one and more persons, by means of (a) force, threats of force, physical restraint and threats of physical restraint to her and one or more other persons, (b) serious harm and threats of serious harm to her and one or more other persons, (c) the abuse and threatened abuse of law and legal process, and (d) one or more schemes, plans and patterns intended to cause her to believe that, if she did not perform such labor and services, she and one or more other persons would suffer serious harm and physical restraint, and a combination of such means, in

14

violation of Title 18, United States Code, Section 1589(a), to wit, RAY agreed with others to obtain the physical labor of several female Victims on a property in Pinehurst, North Carolina, as described in Count Six of this Indictment and in violation of Title 18, United States Code, Section 1589(a).

(Title 18, United States Code, Section 1594.)

## COUNT NINE
(Use of Interstate Commerce To Promote Unlawful Activity)

The Grand Jury further charges:

18. From at least in or about 2014, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, did use and cause to be used facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely a business enterprise involving prostitution, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of that unlawful activity, and aided and abetted the same, to wit, RAY used a cellular phone and the Internet, and traveled in interstate commerce, to promote, manage, and carry on a criminal business engaged in sex trafficking and prostitution, and

15

promoting prostitution, in violation of New York Penal Law

Sections 230.00, 230.20, 230.25, 230.30, and 230.32.

(Title 18, United States Code, Sections 1952(a)(3)(B) and 2.)

## COUNT TEN
(Use of Interstate Commerce To Promote Unlawful Activity)

The Grand Jury further charges:

19.   From at least in or about 2011, up to and
including at least in or about 2019, in the Southern District of
New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco,"
the defendant, did use and cause to be used facilities in
interstate and foreign commerce, with the intent to promote,
manage, establish, carry on, and facilitate the promotion,
management, establishment, and carrying on of an unlawful
activity, namely a business enterprise involving extortion, and
thereafter performed and attempted to perform an act to promote,
manage, establish, and carry on, and to facilitate the
promotion, management, establishment, and carrying on of that
unlawful activity, and aided and abetted the same, to wit, RAY
used a cellular phone and the Internet, and traveled in
interstate commerce, to promote, manage, and carry on extortion,
in violation of New York Penal Law Sections 155.30(6) and 20.00.

(Title 18, United States Code, Sections 1952(a)(3)(B) and 2.)

## COUNT ELEVEN
(Money Laundering)

The Grand Jury further charges:

20. From at least in or about 2011, up to and including at least in or about 2019, in the Southern District of New York and elsewhere, LAWRENCE RAY, a/k/a "Lawrence Grecco," and ISABELLA POLLOK, the defendants, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, (i) extortion, in violation of Title 18, United States Code, Section 1951; and (ii) sex trafficking, in violation of Title 18, United States Code, Section 1591, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, and to avoid a transaction reporting requirement under State and Federal law.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), (ii), and 2.)

17

(Tax Evasion – 2015 Tax Year)

The Grand Jury further charges:

21. During the calendar year 2015, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, received substantial taxable income, upon which there was substantial income tax due and owing to the United States of America, to wit proceeds of the offenses charged in Counts One through Five of this Indictment. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2016, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, RAY from in or about January 2015 through on or about April 15, 2016, in the Southern District of New York and elsewhere, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by RAY to the United States of America for calendar year 2015 by various means, including, among others: (a) causing nominees to deposit a substantial part of RAY's unreported income into bank accounts in the nominees' names, including at bank branches and ATMs in the Southern District of New York, and subsequently to transfer the income to RAY through cash and electronic transfers; and (b) using unreported income deposited into bank accounts in the nominees' names to pay for personal expenses, including to purchase

18

numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

## COUNT THIRTEEN
(Tax Evasion — 2016 Tax Year)

The Grand Jury further charges:

22.    During the calendar year 2016, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment. Knowing the foregoing facts and failing to make an
income tax return on or before April 15, 2017, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2016 through on or about April 15, 2017, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of
America for calendar year 2016 by various means, including,
among others: (a) causing nominees to deposit a substantial part
of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern
District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using

19

unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

## COUNT FOURTEEN
(Tax Evasion - 2017 Tax Year)

The Grand Jury further charges:

23. During the calendar year 2017, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment. Knowing the foregoing facts and failing to make an
income tax return on or before April 15, 2018, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2017 through on or about April 15, 2018, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of
America for calendar year 2017 by various means, including,
among others: (a) causing nominees to deposit a substantial part
of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern

20

District of New York, and subsequently to transfer the income to RAY through cash and electronic transfers; and (b) using unreported income deposited into bank accounts in the nominees' names to pay for personal expenses, including to purchase numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

## COUNT FIFTEEN
(Tax Evasion – 2018 Tax Year)

The Grand Jury further charges:

24. During the calendar year 2018, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, received substantial taxable income, upon which there was substantial income tax due and owing to the United States of America, to wit proceeds of the offenses charged in Counts One through Five of this Indictment. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2019, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, RAY from in or about January 2018 through on or about April 15, 2019, in the Southern District of New York and elsewhere, willfully and knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by RAY to the United States of America for calendar year 2018 by various means, including, among others: (a) causing nominees to deposit a substantial part

21

of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern
District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using
unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

## COUNT SIXTEEN
(Tax Evasion – 2019 Tax Year)

The Grand Jury further charges:

25. During the calendar year 2019, LAWRENCE RAY,
a/k/a "Lawrence Grecco," the defendant, received substantial
taxable income, upon which there was substantial income tax due
and owing to the United States of America, to wit proceeds of
the offenses charged in Counts One through Five of this
Indictment. Knowing the foregoing facts and failing to make an
income tax return on or before July 15, 2020, as required by
law, to any proper officer of the Internal Revenue Service, and
to pay the income tax to the Internal Revenue Service, RAY from
in or about January 2019 through on or about July 15, 2020, in
the Southern District of New York and elsewhere, willfully and
knowingly did attempt to evade and defeat a substantial part of
the income tax due and owing by RAY to the United States of

22

America for calendar year 2019 by various means, including,
among others: (a) causing nominees to deposit a substantial part
of RAY's unreported income into bank accounts in the nominees'
names, including at bank branches and ATMs in the Southern
District of New York, and subsequently to transfer the income to
RAY through cash and electronic transfers; and (b) using
unreported income deposited into bank accounts in the nominees'
names to pay for personal expenses, including to purchase
numerous domain names for which RAY was the registrant.

(Title 26, United States Code, Section 7201.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

26. As a result of committing the offense alleged in
Count One of this Indictment, LAWRENCE RAY, a/k/a "Lawrence
Grecco," and ISABELLA POLLOK, the defendants, shall forfeit to
the United States, pursuant to Title 18, United States Code,
Section 1963, any and all interests the defendant acquired or
maintained in violation of Title 18, United States Code, Section
1962; any and all interests in, securities of, claims against,
and property or contractual rights of any kind affording a
source of influence over, the enterprise named and described
herein which the defendants established, operated, controlled,
conducted, and participated in the conduct of, in violation of
Title 18, United States Code, Section 1962; and any and all

23

property constituting and derived from proceeds obtained,
directly and indirectly, from racketeering activity in violation
of Title 18, United States Code, Section 1962, the offense
alleged in Count One of this Indictment, including but not
limited to a sum of money in United States currency representing
the amount of proceeds traceable to the commission of the
offense alleged in Count One.

<u>FORFEITURE ALLEGATION AS TO COUNTS TWO AND THREE</u>

27. As a result of committing the offenses alleged in
Counts Two and Three of this Indictment, LAWRENCE RAY, a/k/a
"Lawrence Grecco," the defendant, shall forfeit to the United
States, pursuant to Title 18, United States Code, Section
981(a)(1)(C) and Title 28 United States Code, Section 2461(c),
any and all property, real and personal, that constitutes or is
derived from proceeds traceable to the commission of said
offense, including but not limited to a sum of money in United
States currency representing the amount of proceeds traceable to
the commission of said offense that the defendant personally
obtained.

28. As a result of committing the offense alleged in
Count Two of this Indictment, ISABELLA POLLOK, the defendant,
shall forfeit to the United States, pursuant to Title 18, United
States Code, Section 981(a)(1)(C) and Title 28 United States

24

Code, Section 2461(c), any and all property, real and personal, that constitutes or·is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

FORFEITURE ALLEGATION AS TO COUNTS FOUR THROUGH EIGHT

29.  As a result of committing the offenses alleged in Counts Four, Five, Six, Seven, and Eight of this Indictment, LAWRENCE RAY, a/k/a "Lawrence Grecco," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594: (1) any property, real and personal, that was involved in, used or intended to be used to commit or to facilitate the commission of the offenses, and any property traceable to such property; and (2) any property, real and personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

30.  As a result of committing the offense alleged in Count Five of this Indictment, ISABELLA POLLOK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594: (1) any property, real and personal, that was involved in, used or intended to be used to commit or

25

to facilitate the commission of the offenses, and any property
traceable to such property; and (2) any property, real and
personal, constituting or derived from, any proceeds obtained,
directly or indirectly, as a result of the offenses, or any
property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNT ELEVEN

31. As a result of committing the offense alleged in
Count Eleven of this Indictment, LAWRENCE RAY, a/k/a "Lawrence
Grecco," and ISABELLA POLLOK, the defendants, shall forfeit to
the United States, pursuant to Title 18, United States Code,
Section 982(a)(1), any and all property, real and personal,
involved in said offense, or any property traceable to such
property, including but not limited to a sum of money in United
States currency representing the amount of property involved in
said offense.

## Substitute Assets Provision

32. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

     a. cannot be located upon the exercise of due
       diligence;

     b. has been transferred or sold to, or deposited
       with, a third person;

     c. has been placed beyond the jurisdiction of the

26

Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p); Title 18, United States
Code, Section 1963(m); and Title 28 United States Code, Section
2461(c), to seek forfeiture of any other property of the
defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982, and 1963;
Title 21, United States Code, Section 853; and Title 28, United
States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
United States Attorney

27

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

- v. -

**LAWRENCE RAY,**
a/k/a "Lawrence Grecco," and
**ISABELLA POLLOK,**

Defendants.

**SEALED**
**SUPERSEDING INDICTMENT**

S1 20 Cr. 110

(18 U.S.C. §§ 1962, 1951, 1591, 1589, 1590, 1594, 1952, 1956,
and 2; 26 U.S.C. § 7201.)

AUDREY STRAUSS
United States Attorney

**A TRUE BILL**

_____

_____

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )   Case No.  21 MAG  7303
*or identify the person by name and address)* )
)
a Silver, 17-inch Macbook Pro Laptop Computer Bearing )
Serial Number C02T50CJH03T )

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Southern _____ District of _____ New York _____
*(identify the person or describe the property to be searched and give its location)*:

a Silver, 17-inch Macbook Pro Laptop Computer Bearing Serial Number C02T50CJH03T

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment A

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 6, 2021 _____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Clerk of the Court.
☑ Upon its return, this warrant and inventory should be filed under seal by the Clerk of the Court.  *KHP*
*USMJ Initials*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for  30  days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  7·23·2021
11:45 a.m.                          *Katharine H. Parker*
*Judge's signature*

City and state:   New York, NY                     Honorable Katharine H. Parker, U.S.M.J.
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the Court.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Attachment A**

## I. Device to be Searched

The device to be searched (the "Subject Device") is presently located in the Southern District of New York, and can be particularly described a Silver, 17-inch Macbook Pro laptop computer bearing serial number C02T50CJH03T.

## II. Review of ESI on the Subject Device

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the electronically stored information ("ESI") and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Device for the time period of January 1, 2010, to February 11, 2021, for the following evidence, fruits, and instrumentalities of violations of evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1961 et seq. (RICO conspiracy); 1589 (forced labor), 1590 (trafficking with respect to forced labor), 1591 (sex trafficking through force, fraud, or coercion), 1594(b) (conspiracy to commit forced labor or trafficking with respect to forced labor), 1952 (Travel Act), 1956(a) (money laundering), 1951 (extortion), and 26 U.S.C. § 7201 (tax evasion) (collectively, the "Subject Offenses"), described as follows:

1. Evidence of Lawrence Ray's participation in the Subject Offenses;

2. Evidence concerning the participation of co-conspirators in the Subject Offenses;

3. Evidence concerning the use and/or ownership of the Subject Device;

4. Communications related to the Subject Offenses, including any messages, notes, or mail with or about co-conspirators, clients, and/or victims;

5. Photographs, videos, audio recordings, and other documents or files indicating the relationship between Lawrence Ray and his co-conspirators and victims and constituting evidence of the Subject Offenses;

6. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information;

7. Evidence indicating Lawrence Ray's state of mind as it relates to the Subject Offenses, or the state of mind of co-conspirators, including evidence of intent to coerce, intimidate, or threaten potential victims, to extort money, or to persuade potential coconspirators to engage in criminal activity;

8. Evidence of unlawful agreement to engage in extortion, sex trafficking, money laundering, and/or racketeering; and

9. Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

Following seizure of the Subject Device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the cellphone was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories described above. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

## III. Return of the Subject Device

If the Government determines that the Subject Device is no longer necessary to retrieve and preserve the data on the device, and that the Subject Device is not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the Subject Device, upon request and in no event later than 60 days from the date of seizure unless additional time is granted by court order. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offense.