# Kramer Levin

Darren LaVerne  
Partner  
**T** 212.715.9190  
**F** 212.715.8190  
dlaverne@kramerlevin.com

1177 Avenue of the Americas  
New York, NY 10036  
T 212.715.9100  
F 212.715.8000

January 18, 2022

**Via ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>United States v. Lawrence Ray, et al.</u>, 1:20-CR-110 (LJL)

Dear Judge Liman:

On behalf of non-party Jane Doe 1, we respectfully submit this letter in response to the defendant's January 10, 2022 letter concerning the redacted records and privilege log produced on January 7, 2022.

I. <u>Background</u>

In early December 2021, we received from New York Presbyterian Hospital - Westchester Division a set of records relating to Jane Doe 1.[1] The records, which amount to more than 1,700 pages, relate to the 8-month period during which Ms. Doe was an in-patient in the psychiatric ward at the hospital. As one would expect given the extraordinarily broad Rule 17 subpoena served by the defense (which called for "all records associated with any medical and psychiatric services"), the records contain a substantial amount of detailed information about Ms. Doe's daily contacts with dozens of hospital staff, including psychiatrists, therapists, social workers, nurses, medical students, and others.

We conducted a detailed review of these records, endeavoring to identify and catalog the authors of each document, the circumstances under which the documents were created, and any portions of the records reflecting the substance of privileged communications by Ms. Doe during the course of her treatment. After applying

---

[1] On December 21 and 23, respectively, we received records from Harlem Bay and Mt. Sinai St. Luke's Hospital. On January 13, 2022, we produced the Mt. Sinai records (which concerned Ms. Doe's hospital admission to treat an overdose) to the parties without redaction. We are working expeditiously to review the Harlem Bay records and produce them in the coming days. As communicated to the defense by email on December 10, 2021, we have not received records from the Postgraduate Center for Mental Health, or heard from any other providers.


redactions, we created a log that organizes the relevant information in a manner that allows the defense to discern which portions of the documents were redacted, the authors of those documents, and the roles of those individuals in Ms. Doe's treatment. The Appendix attached to the log refers the defense to the specific documents, by Bates number, in each category of redactions. The only material redacted from the referenced documents themselves are privileged communications or statements tending to disclose the substance of privileged communications; accordingly, each of the records contains detailed, unredacted information regarding its title, content, and context. No redactions were made to 451 of the total 1,231 documents. None of the records have been withheld in their entirety.[2]

      II.      <u>The Redactions are Appropriate</u>

      A.  <u>Category 1</u>

As indicated in Jane Doe 1's privilege log, material redacted from the records referenced in Category 1 reflects "the substance of confidential communications between (i) licensed mental health providers (i.e., those persons holding medical degrees and PhDs, and licensed clinical social workers) and (ii) Jane Doe 1 in the course of mental health treatment and/or diagnosis." The defendant raises two issues with regard to this category.

The first issue relates to redactions to eight documents, which are specifically identified in the log (by Bates number) as including information obtained from an insurance case manager in the course of Jane Doe 1's mental health treatment. While we did not redact the entirety of the information from the insurance company (*e.g.*, we did not redact medications or information from persons other than Jane Doe 1), we did redact information that appears to have been obtained by the insurance company from one or more of Jane Doe 1's prior mental health providers and to reflect the substance of confidential communications by Jane Doe 1 during the course of that treatment. The issue presented by these redactions is whether disclosure of otherwise privileged communications to an insurance company involved in a patient's treatment waives the psychotherapist-patient privilege.

Contrary to the defendant's assertion, it is not true that disclosure to any third party outside of licensed psychiatrists, therapists, or social workers vitiates the privilege. In applying *Jaffee v. Redmond*, 518 U.S. 1 (1996), courts have found that unlicensed personnel, and even those without mental health expertise, can be within circle of privilege as long as they are necessary to mental health treatment. For example,

---

[2] In the cover letter accompanying our production, we expressed our willingness to meet and confer regarding the redactions (as is typical following the production of such a log) and to answer any questions that either party might have. While the defense has not chosen to avail itself of that opportunity, the offer remains open.



in *Oleszko v. State Compensation Ins. Fund*, 243 F.3d 1154, 1156–57 (9th Cir. 2001), the court found that the privilege extended to unlicensed "employee assistance program" counselors. In *United States v. Robinson*, 5 F. Supp. 3d 933, 939–40 (S.D. Ohio 2014), the court found that the defendant's statements to a medical nurse when he was seeking admission to a hospital for psychiatric treatment were within the privilege. The same principle applies here. Indeed, a finding that disclosure to an insurance company of privileged psychotherapeutic communications waives privilege would, as a practical matter, render the privilege meaningless and undermine *Jaffee*, given that most patients today would not be able to afford mental health treatment without the involvement of an insurance company. Indeed, *Jaffee* itself recognized that the privilege should accommodate the economic realities of mental health treatment, by extending the privilege to social workers. *See Jaffee*, 518 U.S. at 16 (noting that the clients of social workers "often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist").

Even prior to *Jaffee*, courts were reluctant to hold that disclosure of otherwise privileged psychotherapist-patient communications to an insurance company could waive privilege. In *In re Pebsworth*, the Seventh Circuit found waiver over certain "administrative records" disclosed to an insurance company (and subsequently sought by grand jury subpoena), noting that it "might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions."[3] 705 F.2d 261, 263 (7th Cir. 1983). The redactions we have made involved substantive communications, not administrative information. Accordingly, the Court should not find waiver.

The second issue raised by the defendant regarding Category 1 concerns the types of records that have been redacted. Specifically, the defendant objects to the "breadth of general categories of notes and records that comprise Category 1." The relevant question, however, is not the type of records in this category, but whether the records reflect confidential communications between Ms. Doe and her psychotherapists.

---

[3] As Judge Gray wrote in his concurring opinion:

> It seems to me that the traditional waiver doctrines are inappropriate in the context of present-day medical insurance. Such insurance plans have gained national prevalence and exist to encourage the creation of doctor-patient relationships where necessary to protect a person's physical and mental well-being. Moreover, they are designed to lessen the considerable financial burdens that, in the absence of insurance, would force many people to gamble with their health. Since the doctor-patient privilege exists to encourage such relationships and protect them when they are made, policies behind health insurance and the privilege go hand in hand.

*Id*. at 264.

January 18, 2022



Courts have held that all kinds of records, including those containing diagnoses, are privileged if they tend to reflect information that was communicated in confidence in the course of mental health treatment. *See, e.g., Stark v. Hartt Transp. Systems, Inc.*, 937 F. Supp. 2d 88, 91 (D. Me. 2013) ("A person's mental health diagnoses and the nature of his or her treatment inherently reveal something of the private, sensitive concerns that led him or her to seek treatment and necessarily reflect, at least in part, his or her confidential communications to the psychotherapist.").[4] As these records do reflect such information, they are privileged.

### B. Categories 2 and 3

Categories 2 and 3 include records reflecting the substance of confidential communications in the course of mental health treatment and/or diagnosis between Jane Doe 1 and, respectively, (i) nurses and (ii) hospital staff who are necessary for delivering mental health treatment.

The defendant complains that these records should not be redacted because they do not involve conversations with licensed psychotherapists during psychotherapy. But, again, the defendant's view of the privilege is unduly narrow, and inconsistent with the case law interpreting *Jaffee*. The privilege extends not simply to psychotherapists, but to nurses, students, and other staff members working under the direction of the psychotherapists. *See, e.g.*, *United States v. Robinson*, No. 3:13–cr–037, 2014 WL 587850, at *2 (S.D. Ohio Feb. 15, 2014) ("Thus, in *Jaffee*, the Supreme Court recognized that the privilege extends *to the entire team necessary for delivering mental health treatment* to a person voluntarily seeking that treatment.") (emphasis added). Even the authorities cited by the defendant himself make this point. He cites Proposed Rule 504, which provides that the privilege applies to confidential communications "made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, *or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist*, including members of the patient's family." (emphasis added).[5]

---

[4] *See also Tesser v. Bd. of Educ.*, 154 F. Supp. 2d 388, 396 (E.D.N.Y. 2001) (holding that plaintiff's treatment information and diagnoses may be redacted); *Jakubaitis v. Padilla (In re Jakubaitis)*, 604 B.R. 562, 572 (B.A.P. 9th Cir. 2019) (prohibiting deposition questioning regarding diagnoses and noting "[w]e do not understand how Jakubaitis could answer questions meaningfully about his diagnoses . . . without divulging his communications with this psychotherapist. Indeed, such questions would go to the heart of the psychotherapist-patient relationship, inasmuch as they directly seek information regarding advice the mental health care professional made during the 'course of *diagnosis* [and] *treatment*.'").

[5] Relatedly, the Proposed Rule recognizes that a communication remains "confidential" for purposes of the privilege if is disclosed to "persons reasonably necessary for the



*United States v. Ghane*, also cited by the defendant, makes the same point, while finding that the statements during intake at emergency room to a physician's assistant were not privileged because the assistant had no role in the subsequent psychiatric treatment of the defendant. 673 F.3d 771, 781–84 (8th Cir. 2012). In *E.E.O.C. v. Nichols Gas & Oil, Inc.*, the statements at issue were made to a physician who merely referred the individual at issue to counseling. 256 F.R.D. 114, 117 (W.D.N.Y. 2009).

The records at issue in this case were created at the time and in the course of Ms. Doe's treatment as an in-patient at the psychiatric unit of New York Presbyterian, under the care of a psychiatrist. This is reflected on the header of each page, which describes the service provided as "Psychiatry," and provides the name of the primary psychiatrist overseeing her treatment. The records reflect that, as part of that treatment, Ms. Doe spoke on a daily basis to hospital staff working under the direction of the psychiatrists, including nurses and student interns, among other staff, who collected information regarding her condition for purposes of mental health treatment. Those communications are privileged just the same as if they had been made directly to the psychiatrist.

In any event, should the Court determine that particular redactions are not sufficiently related to Ms. Doe's mental health treatment so as to be privileged (if it finds, for example, that they are more closely related to treatment of her physical health), they should nonetheless remain redacted, on the basis of relevance. The defendant's proffered basis for his Rule 17 subpoena was that information regarding Ms. Doe's psychiatric condition and treatment is relevant to his defense. While the Court has heretofore, over our objection, held this to be a sufficient basis under *Nixon* to require production of the records, there is no basis for the defendant to be permitted to rummage through these records for information unrelated to Ms. Doe's mental health.

\* \* \*

Based on the foregoing, the redactions we have applied to Jane Doe 1's records are justified and appropriate, and there is no need for the Court to conduct an *in camera* review. Should the Court nonetheless decide such a review is warranted, we are

---

transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist including members of the patient's family." Proposed Fed. R. of Evid. 504(a)(3), 56 F.R.D. 183, 241 (1972). A parallel principle applies in the context of the attorney-client privilege, where a client's communications with paralegals, secretaries, student interns, experts, and other professionals may be privileged if they are made for the purpose of obtaining legal advice from an attorney. *See, e.g., United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) ("the privilege must include all the persons who act as the attorney's agents," including secretaries, file clerks, clerks not yet admitted to the bar, and "aides of other sorts").



of course available at its convenience to address the basis for particular redactions, or address any other questions that it may have.[6]

We thank the Court for its consideration.

Respectfully submitted,

/s/ Darren A. LaVerne
Darren A. LaVerne

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212.715.9190

cc: Counsel of Record (via ECF)

---

[6] Pursuant to the Court's January 13, 2022 order (ECF No. 288), we are providing it today by secure file transfer with an unredacted, Bates-stamped version of the records.