UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

LAWRENCE RAY,

                    Defendant.

No. 20 Cr. 110 (LJL)


**MEMORANDUM OF LAW IN SUPPORT OF LAWRENCE RAY'S
MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT**


David E. Patton, Esq.
Federal Defenders of New York, Inc.
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

*Counsel for Lawrence Ray*

**MARNE L. LENOX, ESQ.**
**PEGGY CROSS-GOLDENBERG, ESQ.**
**ALLEGRA GLASHAUSSER, ESQ.**
**NEIL P. KELLY, ESQ.**
*Of counsel*


To: **DAMIAN WILLIAMS, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

     Attn: **DANIELLE R. SASSOON, ESQ.**
            Assistant United States Attorney
            Southern District of New York

## TABLE OF CONTENTS

Page

I.   Background ............................................................................................................ 1

II.  The Court should dismiss the second superseding indictment because of
     undue delay in prosecution under Federal Rule of Criminal Procedure 48. ......................... 4

     A.   On balance, the length of delay, cause of delay, and Mr. Ray's assertion
          of his speedy trial rights counsel in favor of dismissing the superseding indictment
          filed on January 13, 2022. ................................................................................ 5

     B.   Mr. Ray will be prejudiced if he proceeds to trial on March 8, 2022 on the second
          superseding indictment. ................................................................................. 10

III. Conclusion .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barker v. Wingo*,
407 U.S. 514 (1972)..................................................................................................... passim

*Doggett v. United States*,
505 U.S. 647 (1992)........................................................................................................ 6, 8

*Federal Defenders of New York, Inc. v. Bureau of Prisons*,
Docket No. 19-1778 (2d Cir. Mar. 20, 2020) ......................................................... 12

*Mann v. United States*,
304 F.2d 394 (D.C. Cir. 1962) ...................................................................................... 4

*United States v. Aberson*,
419 F.2d 820 (2d Cir. 1970)........................................................................................... 4

*United States v. Alfonso*,
143 F.3d 772 (2d Cir. 1998)......................................................................................... 16

*United States v. Ashburn*,
No. 11-CR-0303 NGG, 2015 WL 588704 (E.D.N.Y. Feb. 11, 2015) ..................... 16

*United States v. Black*,
918 F.3d 243 (2d Cir. 2019)........................................................................................... 5

*United States v. Blaustein*,
325 F. Supp. 233 (S.D.N.Y. 1971) .............................................................................. 4

*United States v. Chu*,
No. 19-CR-0678-WJM, 2021 WL 5997985 (D.N.J. Dec. 20, 2021)........................ 7

*United States v. Dallago*,
311 F. Supp. 227 (E.D.N.Y 1970) ........................................................................... 4, 5

*United States v. Gates*,
No. 117CR00092JLSMJR, 2020 WL 6218707 (W.D.N.Y. Sept. 30, 2020).......... 5, 6

*United States v. Infanti*,
474 F.2d 522 (2d Cir. 1973)........................................................................................... 5

*United States v. Jones*,
    566 F.3d 353 (3d Cir. 2009) ........................................................................ 16

*United States v. Lane*,
    561 F.2d 1075 (2d Cir. 1977) ...................................................................... 4

*United States v. Marion*,
    404 U.S. 307 (1971) ...................................................................................... 4

*United States v. Ortiz*,
    19 Cr. 198 (KPF) (Sept. 22, 2020) ............................................................. 11

*United States v. Rodriguez*,
    No. 2:03-CR-00271-AB-1, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) ................. 10

*United States v. Rucker*,
    586 F.2d 899 (2d Cir. 1978) ........................................................................ 5

*United States v. Tiffany Days*,
    19 Cr. 619 (CM) (Apr. 29, 2021) ............................................................... 11

*United States v. Tufino*,
    No. 20-CR-81S, 2021 WL 1788521 (W.D.N.Y. May 5, 2021) ................... 8

*United States v. Van Brandy*,
    563 F. Supp. 438 (S.D. Cal. 1983) ................................................. 8, 13, 17

*United States v. Witcher*,
    No. 20-CR-116 (KMW), 2021 WL 5868172 (S.D.N.Y. Dec. 10, 2021) .............. 10

**Rules**

Fed. R. Crim. P. 16 ............................................................................................. 14

Fed. R. Crim. P. 48 ............................................................................................. 4

**Other Authorities**

COVID Data Tracker, (last visited Jan. 24, 2022) at https://covid.cdc.gov/covid-data-
    tracker/#datatracker-home ...................................................................... 11

Lawrence Ray submits this Memorandum of Law in support of his motion to dismiss the January 13, 2022 indictment—which meaningfully alters the language in Count One of the charging instrument and adds a standalone count alleging a Violent Crime in Aid of Racketeering—pursuant to Federal Rule of Criminal Procedure 48(b) for unnecessary delay in prosecution. Mr. Ray, whose trial is scheduled for March 8, 2022, has been incarcerated since his arrest on the original indictment nearly two full years ago. For the reasons set forth below, the new language and count in the second superseding indictment should be dismissed with prejudice.

## I.   Background

On February 11, 2020, Lawrence Ray was arrested on a nine-count federal indictment filed on February 6, 2020, charging him with conduct alleged to have occurred over the span of a decade. Dkt. 6. He was presented in court that day and reserved his bail application without prejudice to make a motion for release at a later date. The next day, Mr. Ray was arraigned on the indictment. Since then, Mr. Ray has made five unsuccessful bail applications. In March 2020, following a contested bail hearing in Magistrate Court, Mr. Ray was ordered detained. Dkt. 9. In April 2020, Mr. Ray renewed his request for release in District Court, in substantial part due to the conditions of confinement and lack of access to counsel stemming from Covid-19; his motion was denied. Dkts. 17, 20. In August 2020, Mr. Ray again requested release, noting the extraordinary volume of discovery in this case and the impossibility of conducting a meaningful review of the discovery—the majority of which is electronic—from jail. Dkt. 36. The Court denied his release. On December 7, 2020, Mr. Ray renewed his application for release pursuant to Section 3142 of Title 18 of the United States Code. Dkt. 111. Again, his application was denied. In March 2021, the Court again denied Mr. Ray's request for release. Dkt. 166.

On January 29, 2021, Mr. Ray was charged, this time alongside a co-defendant, Isabella Pollok, in a 16-count superseding indictment alleging a racketeering conspiracy and additional standalone counts of tax evasion, substantially expanding his criminal liability and the scope of trial. Dkt. 127. In June 2021, based on the understanding Ms. Pollok intended to be tried jointly with Mr. Ray and would be prepared to proceed to trial in February 2022, Mr. Ray consented to Ms. Pollok's request for adjournment. Dkt. 192. Trial was adjourned to February 7, 2022. On December 7, 2021, the matter was administratively adjourned for trial on March 8, 2021. Dkt. 264.

On January 5, 2022, the parties conferred about a joint proposed motions in limine schedule. At no time during the parties' discussions—or at any other time previously—did the government indicate its intent to file a superseding indictment. The next day, following oral argument on the parties' expert motions, the government stated, as a matter of "housekeeping," that it was "considering" filing a superseding indictment "within the next couple of weeks." Tr. 70:12–14 (Jan. 6, 2022). The government further noted its intent to file an "enterprise letter" on January 18, concerning the racketeering proof they intend to introduce at trial. *Id.* at 7:6–13.

After the proceeding, defense counsel inquired about the possible second superseding indictment, asking for details about anticipated changes to the charging instrument and any additional charges the government expected to bring. The government stated that it was "contemplating modest revisions to paragraphs 5–7 of Count One, and a standalone charge pertaining to the October 16, 2018 assault of Female Victim-1." The government also noted that it had grand jury time reserved for January 18, 2022. When asked follow up questions, the government demurred, stating that it was "not prepared to discuss further specifics prior to

2

supervisory approval, which hasn't happened yet." The government then stated they would be willing to provide additional information *after* the indictment was filed.

On January 13, 2022, 23 months after Mr. Ray's arrest on the original indictment, more than a year after the government substantially completed its Rule 16 discovery production, and less than two months before Mr. Ray's trial, the government filed a second, 17-count, superseding indictment. The January 13, 2022 indictment modified the description of the means and methods of the alleged enterprise in order to "conform more precisely to [the government's] proof at trial." Tr. 176:8–11 (Jan. 19, 2022). Specific changes to the indictment include, in relevant part:

- The addition of Count 17, a new standalone assault offense, charged as a Violent Crime in Aid of Racketeering (VICAR), in violation of 18 U.S.C. § 1959(a)(3), Dkt. 292 at 24–26;

- Changes to Count One, Racketeering Conspiracy: replacing the phrase "false confessions" with "purported confessions," and new allegations that Mr. Ray forced a complainant to "provide sexual services, including to strangers" as evidence of the forced labor predicate of the alleged racketeering conspiracy, *id.* 292 at 3, 5, 6; and,

- The addition of subparagraph 7(b) accusing Mr. Ray of "[p]hysically and psychologically isolating the victims, including from their families and friends," and subparagraph 7(d) alleging that Mr. Ray "[e]xploited the Victims' mental health vulnerabilities and self-doubts to the advantage of the Enterprise," *id.* at 5.

At defense counsel's request, after the second superseding indictment was filed, the government walked counsel through the changes, disclosing their rationale for some of the changes and pointing to specific discovery pertaining to the new count, Count 17.

**II.    The Court should dismiss the second superseding indictment because of undue delay in prosecution under Federal Rule of Criminal Procedure 48.**

Federal Rule of Criminal Procedure 48(b) empowers the Court to dismiss an indictment if "unnecessary delay" occurs in presenting a charge to the grand jury or bringing a defendant to trial. This rule implements the Sixth Amendment right to a speedy trial, but the rule is not circumscribed by the Sixth Amendment. *United States v. Blaustein*, 325 F. Supp. 233, 236 (S.D.N.Y. 1971) (citing *Mann v. United States*, 304 F.2d 394, 398 (D.C. Cir. 1962)); *see also United States v. Marion*, 404 U.S. 307, 319 (1971). Instead, the rule is more broadly a restatement of the inherent power of the Court to dismiss a case for "want of prosecution." *Blaustein*, 325 F. Supp. at 236; *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir. 1977) ("the district court retains an 'inherent power . . . to dismiss a case for want of prosecution,' . . . a power that is not circumscribed by the Constitution, the statute, or the rules"). Thus, this Court may dismiss an indictment whenever there has been unnecessary delay in prosecution, even if there is no Sixth Amendment violation. *See, e.g.*, *United States v. Dallago*, 311 F. Supp. 227, 233 (E.D.N.Y. 1970) ("[A]s one perceptive court has noted, in commenting on Rule 48(b), in relation to the sixth amendment, 'If it required no more than that, there would be no need for it.' In other words, 48(b) would be superfluous if it comprised no more than the sixth amendment right.") (citation omitted). Dismissal under Rule 48(b) rests in the sound discretion of the District Court and is reviewed for abuse of discretion. *Id.*; *see also United States v. Aberson*, 419 F.2d 820, 821 (2d Cir. 1970).

While Rule 48 is not limited by the Sixth Amendment, courts balance Sixth Amendment speedy trial factors when deciding whether to dismiss a case pursuant to the rule, including: (i) the length of the delay in presenting the case to the grand jury and proceeding to trial; (ii) the

4

reason for the delay; (iii) the defendant's assertion of his right to a speedy trial; and (iv) prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir. 1973) (noting that Sixth Amendment speedy trial claims "are substantially coterminous" with claims pursuant to Rule 48(b)); *United States v. Rucker*, 586 F.2d 899, 907 (2d Cir. 1978) (same); *Dallago*, 311 F. Supp. at 231–33.

As the Supreme Court noted, "because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Barker*, 407 U.S. at 533.

### A. On balance, the length of delay, cause of delay, and Mr. Ray's assertion of his speedy trial rights counsel in favor of dismissing the superseding indictment filed on January 13, 2022.

Applying the *Barker* balancing test, courts consider the factors in light of the unique circumstances of each case and the interests the speedy trial right is designed to protect. *Id.* at 532. The length of the delay and the reasons for the delay are inextricably intertwined: the reason for the delay helps determine whether the delay is tolerable, and the length of delay that courts will permit hinges on the basis for the delay and the nature of the case. *See id.*

The length of delay is a "triggering mechanism" that attaches to an individual's arrest. *See United States v. Gates*, No. 117CR00092JLSMJR, 2020 WL 6218707, at *7 (W.D.N.Y. Sept. 30, 2020) (citing *United States v. Black*, 918 F.3d 243, 258 (2d Cir. 2019)). Accordingly, the relevant interval for the Court's analysis is the period between Mr. Ray's arrest and the time of trial. *Id.* Here, where Mr. Ray was arrested on February 11, 2020 and his trial is scheduled for March 8, 2022, the delay is "presumptively prejudicial and sufficient to trigger an inquiry into the remaining *Barker* factors." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 652, n.1

(1992)). In any event, the length of delay is just one factor among many for the Court to consider under *Barker*. 407 U.S. at 528.

"Closely related to length of delay is the reason the government assigns to justify the delay." *Id.* at 531. "While no *Barker* factor is dispositive, the Second Circuit has held that the reason for the delay 'is often critical' in the analysis of a speedy trial claim." *Gates*, No. 117CR00092JLSMJR, 2020 WL 6218707, at *8. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531.

Here, the government's delay in filing the second superseding indictment is a bald-faced attempt to gain a strategic advantage at trial. The January 13, 2022 indictment alleges both new legal theories and new facts. In a call on January 14, 2022, the government conceded that their last minute modifications were made to better reflect their theory of the case. The changes include replacing the phrase "false confessions" with "purported confessions," Dkt. 292 at 3, 5, 6, and new allegations that Mr. Ray forced a complainant to "provide sexual services, including to strangers" as evidence of the forced labor predicate of the alleged racketeering conspiracy. *Id.* at 3, 6.

The government also informed the defense that it modified language to make it consistent with the anticipated testimony of their coercive control expert, Dawn Hughes. To that end, the government added two subparagraphs to paragraph 7 that did not appear in previous versions of the indictment. Subparagraph (b), now tailored to Dr. Hughes's testimony, accuses Mr. Ray of "[p]hysically and psychologically isolating the victims, including from their families and friends." Dkt. 292. Similarly, subparagraph (d) alleges that Mr. Ray "[e]xploited the Victims' mental health vulnerabilities and self-doubts to the advantage of the Enterprise." *Id.* As the

government has acknowledged, these seemingly innocuous changes were sought in order to make the indictment "conform more precisely to [the government's] proof at trial." Tr. 176:8–11 (Jan. 19, 2022)—proof that the government has been aware of for months, if not years.

The government cannot wait until the eve of trial, after the Court has ruled on the admissibility of expert testimony, to tailor a charging instrument to its expert's proffered testimony. *Cf. United States v. Chu*, No. 19-CR-0678-WJM, 2021 WL 5997985, at *4 (D.N.J. Dec. 20, 2021) ("[S]ubstantial changes and new charges indicate that the Superseding Indictment was the product of evidence uncovered during the Government's continuing investigation into Defendant rather than a misuse of the grand jury to prepare for trial on the existing charges in the original Indictment."). The *Daubert* "fit" requirement demands that the proffered expert's testimony reflects the government's case, not the other way around.

When asked about the cause of delay for the addition of Count 17, the standalone VICAR count—which, as the government informed the Court, was referenced in the original February 2020 indictment—the government stated that they "recently" learned of a witness who purportedly heard about the incident directly from Mr. Ray. This, the government asserted, strengthened their evidence enough to indict. But the government did not indicate *when* they learned of this witness, whose identity they did not disclose, nor does it make sense that the government would have waited two years before indicting Mr. Ray for the offense given the circumstances here. And it certainly does not excuse the government's failure to advise the defense sooner—with trial fast approaching—that it was contemplating a superseding indictment on these grounds. In the January 14, 2022 conversation with defense counsel, the government revealed that outside of this witness, the remainder of the evidence on which it intends to rely to prove the new charge dates back years. This includes: testimonial evidence from "Female

Victim-1;" hotel and cell site records they have had since 2019; and a recording they have possessed since 2020.[1] "[W]hen, as here, information relating to the additional count[ ] is known well in advance of the date of the superseding indictment, the government must come forward with valid reasons as to why it delayed in seeking the additional counts against the defendants." *United States v. Van Brandy*, 563 F. Supp. 438, 440 (S.D. Cal. 1983). The government has not so far done so, and there is no reason to believe it can or will.

The government has been investigating this case since 2019. They filed an indictment against Mr. Ray in February 2020, and a superseding indictment in January 2021. There is no legitimate reason for the government's delay filing the second superseding indictment two years after the original indictment and one year after the first superseding indictment. This is a clear misuse of the grand jury to gain a strategic advantage in preparation for trial. The government's "official bad faith in causing delay [must] be weighed heavily against the government." *Doggett*, 505 U.S. at 656.

In addition to the length and cause of delay, the Court must also balance Mr. Ray's assertion of his speedy trial right. Over the course of the two years this matter has been pending, Mr. Ray has consented to a number of trial adjournments. But in light of the extraordinary circumstances of Mr. Ray's case, the Court should not weigh this factor heavily.

The weight of a defendant's assertion of their speedy trial right is based on the assumption that "[i]f a defendant is seriously being deprived of his right, he is more likely to vigorously assert it…." *United States v. Tufino*, No. 20-CR-81S, 2021 WL 1788521, at *4 (W.D.N.Y. May 5, 2021). This is simply not the case here. Mr. Ray has not previously asserted

---

[1] The government also indicated a second witness supposedly learned of the incident from Female Victim-1, but it is unlikely they would seek testimony from that witness at trial.

his speedy trial right not because he has not been deprived of the right. Rather, as Mr. Ray has continuously argued, *see* Dkts. 21, 28, 36, 52, 62, 111, 138, 145, 166, the unprecedented volume of discovery in this case coupled with the extreme conditions of confinement throughout a global pandemic prevent Mr. Ray from simultaneously exercising both his right to a speedy trial and his right to a fair trial. Indeed, in October 2021, Ms. Pollok—who is not subject to pretrial detention, does not face as many charges as Mr. Ray, and has only half of the discovery to contend with— filed a motion to adjourn trial for seven months or sever from Mr. Ray in order to prepare for trial. Dkt. 221. Ms. Pollok's adjournment request was based on the voluminous discovery production that Mr. Ray has complained of since 2020. *Id.* Given Mr. Ray's circumstances, he originally objected to a trial adjournment and severance, Dkt. 230, but during a status conference expressed his appreciation of Ms. Pollok's need to review the mountainous discovery, acquiescing to an adjournment to enable Ms. Pollok to meaningfully defend against the charges. Dkt. 242. Ultimately, the Court granted severance, adjourning Ms. Pollok's trial to July 18, 2022, and maintaining Mr. Ray's February 7, 2022 trial date. In so doing, the Court reflected, "The case against Mr. Ray has been outstanding for a long time. As of February, it will be two years."

Despite the government's repeated inquiries over the past few months as to whether Mr. Ray would request a trial adjournment—including during a call on December 20, 2021, at which time the government must have been contemplating a superseding indictment—the defense has maintained that absent unforeseen circumstances, Mr. Ray does not intend to request an adjournment. Consistent with that, Mr. Ray has not once sought a trial adjournment since shortly after the government's original superseding indictment was filed on January 29, 2021.

**B.      Mr. Ray will be prejudiced if he proceeds to trial on March 8, 2022 on the second superseding indictment.**

Of the four factors analyzed under *Barker*, the most serious is "prejudice to the defendant because of delay." *United States v. Witcher*, No. 20-CR-116 (KMW), 2021 WL 5868172, at *3 (S.D.N.Y. Dec. 10, 2021) (finding little prejudice in *Barker* analysis under Rule 48 where the defendant "was incarcerated for seventeen days and was released long before the most recent superseding indictment"). The prejudice prong of the *Barker* analysis requires the Court to consider three interests the defendant's speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

Here, the first prong of the prejudice analysis, oppressive pretrial incarceration, is easily established. By March 8, 2022, the date Mr. Ray's trial is scheduled to begin, he will have been incarcerated on this matter for 25 months. From February 2020 through October 2021, when he was transferred to the Metropolitan Detention Center, Mr. Ray was incarcerated at the Metropolitan Correctional Center. Throughout pretrial detention, he has endured unprecedented conditions of confinement.

A month after Mr. Ray was arrested on this matter, we found ourselves "in the midst of an unprecedented pandemic. Covid-19 [ ] paralyzed the entire world. The disease [ ] spread exponentially, shutting down schools, jobs, professional sports seasons, and life as we know it." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020) (granting defendant's compassionate release application). Less than a month into the pandemic, the *Rodriguez* court speculated that Covid "may kill 200,000 Americans and infect millions more." *Id.* To date, there are more than 70 million reported Covid cases in the United

States, and the death toll has risen to over 860,000 Americans. COVID Data Tracker, (last visited Jan. 24, 2022) at https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

The conditions of confinement throughout Covid have been abhorrent. *See* Dkt. 17 (detailing the unprecedented conditions of confinement during Covid at the Metropolitan Correctional Center). At a sentencing hearing in September 2020, Judge Failla expressed to the individual being sentenced, "I hope that you are designated quickly. Because part of the reason for my downward variance was the conditions of confinement, which I think are—through no one at BOP's fault—*substantially harder than they would be if you were serving them at other times in history*. I do think it's very difficult to be confined for 21 to 24 hours. I do think that the conditions in terms of your ability to have proper hygiene, your ability to practice social distancing, have all been compromised, and that has very much weighed into my decision…." *United States v. Ortiz*, 19 Cr. 198 (KPF), Dkt. 52 (Sept. 22, 2020) (emphasis added). Then-Chief Judge McMahon put a finer point on it, observing,

> The single thing in the five years that I was chief judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at the MCC, especially at the MCC and the MDC, two federal correctional facilities located in the City of New York that are run by morons, which wardens cycle repeatedly, never staying for longer than a few months or even a year. So there is no continuity, there is no leadership, there is no ability to get anything done. They lurch from crisis to crisis, from the gun smuggling to Jeffrey Epstein, none of which is the fault of [the defendant] or any of the other inmates I have sentenced or will sentence. *It is the finding of this Court that the conditions to which she was subjected are as disgusting, inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that.*

*United States v. Tiffany Days*, 19 Cr. 619 (CM), Dkt. 35 (Apr. 29, 2021) (emphasis added).

In addition to enduring seemingly unending periods of lockdown during which he had no recreation time, could not work, and had no access to the law library, the Bureau of Prisons restricted in-person social visits in an effort to curb the spread of Covid-19. As a result, Mr. Ray

has received only two social visits throughout the entire length of his incarceration; apart from

that, his contact with loved ones over the past two years has been restricted to recorded jail calls.

Mr. Ray's legal visits have been similarly curtailed. For eight days at the end of February

2020 through the beginning of March, the Metropolitan Correctional Center was on total

lockdown while officials investigated reports that a loaded gun had been smuggled into the

facility. *See* Dkt. 17. On March 13, 2020, because of Covid, legal visits to Bureau of Prisons

facilities were suspended indefinitely. Visits did not resume until September 21, 2020. Dkts. 52,

62. On December 27, 2021, the Bureau of Prisons once again closed the Metropolitan Detention

Center to all visits, including legal visits, indefinitely, because of Covid. To date, the facility

remains closed to all visitors; the Bureau of Prisons has not set a date for its reopening. "The

right to consult with legal counsel about being released on bond, entering a plea, negotiating and

accepting a plea agreement, going to trial, testifying at trial, locating trial witnesses, and other

decisions confronting the detained suspect, whose innocence is presumed, is a right inextricably

linked to the legitimacy of our criminal justice system." *Federal Defenders of New York, Inc. v.*

*Bureau of Prisons*, Docket No. 19-1778 (2d Cir. Mar. 20, 2020). The oppressive conditions of

incarceration over the past two years have undoubtedly interfered with the meaningful exercise

of Mr. Ray's constitutional rights.

Given these conditions, Mr. Ray has sought release five times during the two-year

pendency of this case. As the defense has consistently argued, "if a defendant is locked up, he is

hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."

*Barker v. Wingo*, 407 U.S. 514, 533 (1972). Mr. Ray's motions for release have never been

granted.

In addition to being prejudiced by oppressive conditions of confinement, Mr. Ray's defense will be impaired by proceeding under the January 13, 2022 indictment. This is the most serious consideration in the Court's prejudice analysis "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* at 532. The filing of the new indictment deprives Mr. Ray of time to prepare an adequate defense.

Six months ago, the Court set a firm trial date of February 7, 2022. Dkt. Minute Entry, July 7, 2021. Since then, the defense has been operating on the presumption that this case will be tried in February 2022.[2] The government's superseding indictment on the eve of trial forces Mr. Ray to choose between competing constitutional rights: exercising his right to a speedy trial and demanding his right to a fair trial with the effective assistance of counsel. He should not have to make this choice.

Yet the government waited until less than two months before trial, when Mr. Ray has been incarcerated for nearly two years on an indictment originally filed on February 6, 2020, to alter language in the indictment to give them a strategic advantage at trial and charge Mr. Ray with committing a Violent Crime in Aid of Racketeering. In so doing, the government has not "fairly informed" Mr. Ray of the additional charge. *See United States v. Van Brandy*, 563 F. Supp. 438, 440 (S.D. Cal. 1983).

While the new indictment was filed on January 13, 2022, it is clear that the government had been considering a superseding indictment for at least several weeks—if not longer—prior to its filing. Leading up to the government's January 6, 2022 announcement of its intent to seek a superseding indictment, the parties had been actively litigating pretrial motions, some of which

---

[2] In December 2021, the February trial date was administratively adjourned to March 8, 2022 for reasons related to Covid.

are reflected in the revisions to the indictment. The parties had also discussed, as recently as the day before the government informed the Court and the defense of its plan to supersede, a motions in limine schedule based on the original superseding and tied to the March 8 trial date.[3] At no point during this conversation (or at any time previously) did the government even hint at the possibility of a superseding indictment charging a new crime.

Adding insult to injury, on January 6, 2022, the government argued—before revealing its intent to seek a superseding indictment—that the defense could not "sandbag" the government at trial by introducing evidence from the government's discovery production through the government's witnesses on cross-examination. Tr. 7 (Jan. 6, 2022). The government convinced the Court—notwithstanding the text of the Federal Rules of Criminal Procedure, which requires the defense to disclose materials "the defendant intends to use [ ] *in the defendant's case-in-chief at trial*," Fed. R. Crim. P. 16(b)(1) (emphasis added)—to order the defense to provide the government an exhibit list one week before trial, merely two weeks after receiving the government's exhibit list.[4] It was only after the Court ruled that the defense must give the government insight into its cross-examination of the government's witnesses, that the government mentioned, as a matter of a "housekeeping," its intent to seek a superseding indictment just weeks before the start of trial on a two-year-old case. This flagrant attempt to minimize the import of such a filing cannot be understated nor overlooked. The government's

---

[3] In September 2021, the parties agreed upon a pretrial motions schedule and the Court set deadlines for expert discovery, motion to suppress search warrant evidence, and notice of intent to offer an advice of counsel defense tethered to the February 7, 2022 trial date. Dkt. 222.

[4] The defense renews its objection to the Court's order that it disclose a defense exhibit list one week before trial. Nothing in Rule 16 requires the defense to give the government notice of any evidence from the government's own discovery production that the defense may seek to introduce at trial during the government's case in chief before the government even makes an opening statement. The Court's ruling guts the efficacy of cross examination and violates Mr. Ray's right to a fair trial.

willingness to walk the defense through the new charge and changes to language in the indictment after it was filed does not ameliorate the prejudice inherent to the last minute filing.

Nor does the enterprise letter served on the heels of the indictment extinguish the prejudice. Rather, the letter exposes the manner in which the government intends to exploit the changes in the indictment to gain a strategic advantage at trial. Specifically, as the letter lays bare, the government intends to rely on the modifications to introduce prejudicial evidence against Mr. Ray at trial. In particular, the government's addition of "sexual services" in Count One and the addition of Count 17, alleging a Violent Crime in the Aid of Racketeering, warrant a closer look.

As discussed *supra*, the new indictment added language to Count 1 reflecting "sexual services, including to strangers" allegedly provided by one person as evidence of the forced labor predicate for the racketeering conspiracy.[5] This seemingly innocuous change is in fact explosive. The addition of "sexual services" in Count One of the new indictment permits the government to suddenly allege, after nearly two years, that in addition to allegedly sex trafficking *one* person, now, one of the enterprise's "objectives[ ] includ[es] forcing [another individual] to perform sexual services for strangers." Gov't Ltr. 3. This change lays the groundwork for the admissibility of highly prejudicial evidence of a person (who is not alleged to have been engaged in commercial sex acts) having sex with strangers, purportedly at Mr. Ray's direction. Gov't Ltr. 8–9.

---

[5] As the government explained to defense counsel on January 14, 2022, the government intends to introduce the sexual services evidence as evidence of forced labor as a predicate for the racketeering conspiracy, but not the standalone forced labor charges in the indictment, Counts 6, 7 and 8.

The sudden addition of a standalone VICAR count similarly prejudices Mr. Ray. As the government recognizes, the new charge implicates the admissibility of prejudicial prior bad acts involving violence. *See* Gov't Ltr. 15 ("[T]he nature of the evidence is extremely similar to—and certainly no more prejudicial than—the evidence of the crimes charged in the Indictment, which include extortion, sex trafficking, forced labor, *and a violent assault*.") (emphasis added). The cases cited by the government in its enterprise letter support the proposition that "the traditional test for unfair prejudice under Rule 403 is whether the evidence of uncharged acts involves criminal conduct that is more inflammatory than the crimes charged in the indictment." *United States v. Ashburn*, No. 11-CR-0303 NGG, 2015 WL 588704, at *24 (E.D.N.Y. Feb. 11, 2015); Gov't Ltr. 15. The addition of a VICAR charge when one did not previously exist therefore strongly suggests the government's motivation to file a new charging instrument rested at least in part on an effort to expand the scope of the admissibility of bad acts evidence at trial. *See United States v. Jones*, 566 F.3d 353, 364 (3d Cir. 2009) (explaining how VICAR offenses expand the admissibility of bad acts evidence).

While the conduct underlying the offense was referenced, without specifics, in the original indictment two years ago, Mr. Ray was not at that time "fairly inform[ed]…of the charge against which he must defend," as the conduct was not pled with "sufficient precision." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). Significantly, while the underlying conduct *may* have been admissible as evidence of the racketeering conspiracy, certainly Mr. Ray would have moved to preclude such prejudicial evidence at trial. Further, while the offense was referenced in the February 2020 indictment, no mention of the specific underlying conduct was made in the January 29, 2021 indictment.

The addition of a standalone VICAR count, which enhances Mr. Ray's sentencing exposure, demands a specific defense to the elements of the crime and further investigation. Two years after Mr. Ray's arrest on this matter, the defense now finds itself hamstrung by the addition of a violent charge weeks before trial is scheduled to begin. "Prejudice results to a defendant not necessarily in an abstract situation, but because the proceedings against him or her are prosecuted in a disorderly fashion; it is as if the government can simply continue charging new offenses, of which it was aware all along, as a means of obtaining the result it deems proper." *United States v. Van Brandy*, 563 F. Supp. 438, 441 (S.D. Cal. 1983) (dismissing superseding indictment with prejudice).

\*   \*   \*

By modifying the second superseding indictment to conform with its theory of the case and adding a standalone VICAR count less than two months before trial in a matter that has been pending for two years, the government forces Mr. Ray—who has been incarcerated since his arrest—to choose between his right to a speedy trial and his right to a fair trial with the effective assistance of counsel.

## III.    Conclusion

For the reasons set forth above, the new language and count in the second superseding indictment should be dismissed with prejudice.

Dated:          January 24, 2022
                New York, New York

                              Respectfully submitted,


                              /s/ Marne L. Lenox
                              _____
                              Marne L. Lenox, Esq.
                              Peggy Cross-Goldenberg, Esq.
                              Allegra Glashausser, Esq.
                              Neil P. Kelly, Esq.

                              FEDERAL DEFENDERS OF NEW YORK, INC.
                              52 Duane Street – 10th Floor
                              New York, New York 10007
                              Tel.: (212) 417-8700

                              *Counsel for Lawrence Ray*