UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

LAWRENCE RAY,

       Defendant.

No. 20 Cr. 110 (LJL)

**LAWRENCE RAY'S MOTION *IN LIMINE* NO. 1**

David E. Patton, Esq.
Federal Defenders of New York, Inc.
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

*Counsel for Lawrence Ray*

**ALLEGRA GLASHAUSSER, ESQ.**
**MARNE L. LENOX, ESQ.**
**PEGGY CROSS-GOLDENBERG, ESQ.**
**NEIL P. KELLY, ESQ.**
*Of counsel*

To:  **DAMIAN WILLIAMS, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

     Attn:  **DANIELLE R. SASSOON, ESQ.**
           Assistant United States Attorney
           Southern District of New York

**TABLE OF CONTENTS**

                                                             **Page**

ARGUMENT .......................................................................................................................... 1

I.     This Court should preclude evidence that ▌▌▌▌▌▌ had sex with "strangers," which is not relevant to the charge of "forced labor," and is instead irrelevant and unduly prejudicial. ................................................................................................. 1

II.    This Court should preclude evidence that Isabella Pollok had sex with strangers and other "grooming" evidence related to Pollok's sexual activities. ............................... 4

III.   The Court should not permit the government's toxicologist to testify that Mr. Ray was not poisoned. ............................................................................................... 7

IV.   The Court should exclude the misleading maps from the government's cell site expert. ... 8

V.    The Court should permit limited attorney-led voir dire. ....................................... 8

CONCLUSION ....................................................................................................................... 9

Lawrence Ray respectfully submits this motion *in limine* in advance of trial scheduled for March 8, 2022. Mr. Ray moves the Court for an order (1) excluding evidence that ▇▇▇ had sex with strangers; (2) excluding evidence that Isabella Pollok had sex with strangers and other "grooming" evidence related to Isabella Pollok; (3) precluding the government's toxicologist from opining that Mr. Ray was not intentionally poisoned; (4) excluding the misleading maps from the government's cell site expert; and, (5) permitting limited attorney-led voir dire.

## ARGUMENT

I.  **This Court should preclude evidence that ▇▇▇ had sex with "strangers," which is not relevant to the charge of "forced labor," and is instead irrelevant and unduly prejudicial.**

Mr. Ray is charged with violating the prohibition against forced labor between May and December 2013 in North Carolina. This is a discrete count that is alleged to have occurred at a different location than the other charged conduct and during a shorter, isolated time period. In the second superseding indictment, however, the government added an allegation that Mr. Ray and Ms. Pollok "forc[ed] some of the Victims to perform unpaid manual labor and provide sexual services, including to strangers," to the "means and methods of the enterprise." Dkt. 292 at 5-6. In the enterprise letter, the government states that "sexual grooming was carried out in service of some of the Enterprise's objectives, including forcing ▇▇▇ [ ] to perform sexual services for strangers." Ltr. at 3. Any evidence that ▇▇▇ had sex with "strangers" is not admissible as evidence of the forced labor predicate of the alleged racketeering conspiracy. Instead, this evidence is irrelevant under Rule 401 and unduly prejudicial under Rule 403. It should be precluded.

As relevant here, forced labor penalizes "whoever knowingly provides or obtains the labor or services of a person" "by means of force, threats of force, physical restraint, or threats of

1

physical restraint to that person or another person." 18 U.S.C. § 1589 (1). The government seems to suggest that "sex with strangers" is a "sexual service," that falls under the definition of "services" in the forced labor statute. This is wrong. Sex with strangers does not fall under the purview of "forced labor," as it does not confer anyone a benefit.

While it is an open question whether "services" in the forced labor statute requires an <u>economic</u> benefit, it still requires that the defendant benefit in some way. In *United States v. Marcus*, 628 F.3d 36, 44 (2d Cir. 2010), the Circuit explained that because the "term 'labor or services,' [ ] is not defined by the statute, [it] is viewed in accord with its ordinary meaning." The Circuit cited the dictionary definition of "service" as "the performance of work commanded or paid for by another." *Id.* at n. 10, citing Merriam–Webster's Third New International Dictionary Unabridged (2002) available at http://www.mwu.eb.com/mwu. The district court and the Circuit considered whether "labor or services" needed to be work in the traditional, economic sense, but ultimately did not answer this question, as some of the labor in the case met that traditional definition. *Id*. at 44–45. ("The parties do not dispute that the ordinary meaning of the phrase 'labor or services' encompasses [the victim's] various contributions to the [ ] website from which only [the defendant] derived pecuniary gain[.]"); *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007) ("[T]he tasks [the victim] performed at the defendant's behest are not household chores but rather labor or services that would, in fact, ordinarily have been compensated," including "setting up and maintaining websites.").

The 10th Circuit has rejected the argument that "labor or services" has to be "work in an economic sense" in *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008). But nothing in *Kaufman* suggests that "sex with strangers" on its own could be considered a labor or service. On the contrary, *Kaufman* included evidence of manual labor: the defendants ran an "unlicensed

residential home for the chronically mentally ill" and evidence showed that the residents were forced to do manual labor in the nude and to make pornographic videos. *Id* (noting also that the "sole source" of the defendants' income was proceeds of this business). *Kaufman* too does not support that ▮▮▮ sexual activities, which are unrelated to any manual labor and divorced from any benefit to Mr. Ray or Ms. Pollok, are evidence of forced labor.

The other Second Circuit cases considering the forced labor statute all describe forced tasks that confer a benefit on the defendants. *See, e.g., United States v. Rivera*, 799 F.3d 180, 183 (2d Cir. 2015) (waitresses forced to work as prostitutes in bars that "functioned as illegal brothels"); *United States v. Sabhnani*, 599 F.3d 215, 225 (2d Cir. 2010) (person forced to work as a "domestic servant," including "cooking, cleaning, laundry, and other chores at the [ ] large three-story residence"); *United States v. Garcia*, 164 F. App'x 176, 177 (2d Cir. 2006) ("scheme to recruit migrant farm workers near the Mexico-Arizona border and bring them to western New York State to work on farms").

The defense is aware of no case in which "sex with strangers" on its own would constitute "labor or services." Thus, whether ▮▮▮ did or did not consent to have sex with an unspecified number of "strangers" is not evidence relevant to the forced labor predicate of the racketeering charge. Uncompensated sexual activity is also irrelevant for the sex trafficking allegations; there are no alleged commercial sex acts related to ▮▮▮ Instead, there is no connection between her sexual activities and any of the charged crimes and this evidence should be excluded under Rule 401.

The allegations that Mr. Ray forced ▮▮▮ to have sex with others is also confusing and unduly prejudicial and should be excluded under Rule 403. Without any connection to a count, the evidence serves merely to try to portray Mr. Ray as a generally bad guy. Our "whole tradition

3

is that a man can be punished by criminal sanctions only for specific acts," "not for general misconduct." *Michelson v. United States*, 335 U.S. 469, 489 (1948). *See also Old Chief v. United States*, 519 U.S. 172, 180-82 (1997) (evidence of prior bad acts "weigh[s] too much with the jury and [risks] overpersuad[ing] them as to prejudge one with a bad general record and deny [the defendant] a fair opportunity to defend against a particular charge"). Evidence of general bad character or prior bad acts "weigh[s] too much with the jury and [risks] overpersuad[ing] them as to prejudge one with a bad general record and deny [the defendant] a fair opportunity to defend against a particular charge." *Id.* at 180-82. *See also Dowling v. United States*, 493 U.S. 342, 352 (1990) (due process test asks whether introduction of the type of evidence is "so extremely unfair that its admission violates 'fundamental conceptions of justice'"); *Spencer v. Tex.*, 385 U.S. 554, 574 (1967) (Warren, C.J. concurring in part and dissenting in part) (noting that case law "suggest[s] that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause").

It also risks creating a trial within a trial as the government tries to put on evidence about who ▇ had sex with "strangers" (who appear to have no other connection to this case), when, and why. *See, e.g., United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding district court's exclusion of evidence due to risk of "trial within a trial").

This evidence should be excluded.

**II.     This Court should preclude evidence that Isabella Pollok had sex with strangers and other "grooming" evidence related to Pollok's sexual activities.**

In disclosure letters, the government has stated that it believes it has evidence "consistent with [Mr.] Ray sexually grooming Pollok," and has detailed allegations relating to Ms. Pollok

4

having sex with numerous different people. Gov. Disclosure Ltr, Apr. 5, 2021.[1] The government has also stated that Ms. Pollok and an alleged victim would "engage" in "sexual acts with other people," and that Ms. Pollok would "teach" the alleged victim how to give a "blowjob."[2] Ms. Pollok's sexual activities are irrelevant, unduly prejudicial, and confusing, and should be excluded.

Unlike ▮▮▮▮ Ms. Pollok is not an alleged victim. She is charged as a co-defendant and co-conspirator with Mr. Ray. The government's enterprise letter refers to her as Mr. Ray's "lieutenant" in the alleged "enterprise." Neither Mr. Ray nor Ms. Pollok are charged with any sexual misconduct relating to Ms. Pollok and evidence of Mr. Ray's alleged sexually "grooming" of Ms. Pollok or of Ms. Pollok's other sexual activities are not directly relevant to the charged crimes. Evidence of her sexual activities is also not admissible as a criminal act of a co-conspirator or an uncharged crime relating to the conspiracy because her sexual activities were not criminal acts. *Cf. United States v. Coppola*, 671 F.3d 220, 245 (2d Cir. 2012) (allowing evidence of "<u>uncharged criminal acts</u> by members of a racketeering enterprise") (emphasis added).

---

[1] "The Government has identified certain evidence that is consistent with Ray sexually grooming Pollok. For example, the Government has identified videos in which Ray instructs Pollok to engage in sexual relationships with other individuals and records Pollok's activities. (See, e.g., 1B38, IMG_2667.mov – IMG_2677.mov). In other videos, Pollok indicates that she is recording a sexual interaction at Ray's direction. (See, e.g., 1B38, IMG_2678). Certain witness accounts also describe this sexual grooming, including information by Female Victim-1, Male Victim-1, and Individual-1 described herein." Gov. Disclosure Ltr, Apr. 5, 2021.

[2] "Ray would have Pollok teach Female Victim-2 how to properly give Ray 'a blowjob.' Female Victim-2 would watch Pollok perform oral sex on Ray and then subsequently be told to mimic what Pollok did. The Government also notes that there are videos produced in discovery that show Female Victim-2 and Pollok engaged in sexual acts with other people and recording those acts for Ray." Gov. Disclosure Ltr, Aug. 16, 2021.

5

Instead, this evidence would only be relevant to portray Ms. Pollok as another alleged victim of Mr. Ray's conduct and allow the government to argue that the relationship between Mr. Ray and Ms. Pollok shows Mr. Ray's propensity to sexually "groom" people.[3] That purpose would be impermissible, *see supra*, quoting, *inter alia*, *Old Chief*, 519 U.S. at 180-82, and allowing this evidence would be unduly prejudicial. Because the government has defined the relationship between Mr. Ray and Ms. Pollok as one of co-conspirators, it will likely be able to circumvent ordinary hearsay and other evidentiary rules, and be permitted to admit statements and acts by Ms. Pollok that would otherwise be inadmissible without her testimony. *See* Fed. R. Evid. 801 (d)(2)(E) (noting that statements made by a coconspirator during and in furtherance of the conspiracy are not hearsay); *Coppola*, 671 F.3d 220. It would be unfair to allow the government to take advantage of these evidentiary rules and then suggest that Ms. Pollok was not just a coconspirator but a victim too. This is particularly true as Mr. Ray will have no opportunity to call Ms. Pollok as a witness in his defense.

Additionally, as with the evidence of ▬▬▬▬ sexual activities, admitting this type of evidence for Ms. Pollok would also create the risk of having a trial within a trial, requiring the defense to have to address the circumstances of each instance of Ms. Pollok's sexual activities.

Ms. Pollok's sexual activities are simply not relevant and should be excluded.

---

[3] By the same token, the government should not be permitted to elicit evidence that Ms. Pollok and Mr. Ray slept in the same bed or bedroom. The sleeping arrangements of consenting adults is not relevant to any of the criminal charges and raises the same risk of improperly suggesting that Mr. Ray was sexually "grooming" Ms. Pollok.

6

### III. The Court should not permit the government's toxicologist to testify that Mr. Ray was not poisoned.

The government served notice of its intent to call Dr. Richard Pleus as an expert at trial, who is expected to testify about Mr. Ray's alleged poisoning. The defense moved to exclude Dr. Pleus's proffered testimony on *Daubert* grounds, reserving the right to move *in limine* to preclude the testimony pursuant to the Federal Rules of Evidence. Dkt. 263. The Court ruled that Dr. Pleus's testimony is admissible at trial under *Daubert*. Dkt. 287. The defense now moves to exclude Dr. Pleus's specific testimony, as reflected in his expert report, that Mr. Ray "has not suffered any health impairment from intentional poisoning," Gov. Expert Ltr., Exh. E at 7, on relevance grounds.[4]

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Here, whether Mr. Ray was in fact poisoned is not a fact at issue. As the government remarked during oral argument on the expert motions—when asked by the Court "what is the relevance to the fact that the defendant was not poisoned by mercury?"—"I don't think the defense is advancing the theory that Mr. Ray was in fact poisoned." Tr. 59:20–25, 60:1–4 (Jan. 6, 2022). This is accurate. The government and the defense agree that whether Mr. Ray was in fact poisoned is not at issue in this case. Rather, the relevant issue is whether Mr. Ray *believed* he was poisoned. Because Dr. Pleus's expert opinion that Mr. Ray was not poisoned has no bearing on the disputed issue in this case, it is irrelevant and should be excluded.

---

[4] The defense does not challenge the general relevance of Dr. Pleus's opinion concerning Mr. Ray's elevated mercury levels.

### IV. The Court should exclude the misleading maps from the government's cell site expert.

As the defense explained in its *Daubert* motion reply, the maps submitted by the government's cell site data expert are confusing and misleading.[5] As the court wrote in its decision allowing the expert's testimony: "The Court will hear the parties on whether the maps are misleading at trial if the size of the circles and wedges are intended only to draw the eye to particular locations and have no other significance." Dkt. 287 at 10. The maps with circles and wedges are misleading: they incorrectly suggest that the coverage areas of cell sites are of a specific, circular size and they inaccurately imply that the phones were within the shaded areas. These maps should be excluded. *E.g., United States v. Cantoni*, 18-cr-5672 (ENV) (EDNY April 1, 2019), Dkt. 71 at 2 (noting that "the government was directed to remove the shaded sectors from its exhibits to avoid any confusion").

### V. The Court should permit limited attorney-led voir dire.

Mr. Ray requests that the Court permit each side thirty minutes of attorney-conducted voir dire as a complement and addition to the Court's voir dire during the jury selection process. Federal Rule of Criminal Procedure 24(a)(1) explicitly allows this Court to permit attorney voir dire. Attorney voir dire most effectively advances the goal of obtaining an impartial jury, both through the intelligent, non-discriminatory exercise of peremptory challenges by counsel, and by enabling the Court to make full and informed decisions about any challenges for cause. Jurors are more likely to be truthful and forthcoming when questioned by advocates with in-depth knowledge of the issues in the case than by the Court alone, whom the prospective jurors may be

---

[5] The government produced new maps in discovery received today. The defense reserves the right to make additional objections to these maps once it has the opportunity to review them.

more likely to provide with the "correct" answer due to Your Honor's role in the proceeding. For these reasons, Mr. Ray respectfully requests the Court to permit limited attorney-led voir dire.

## CONCLUSION

For these reasons, the Court should (1) exclude evidence that ▓▓▓▓▓▓▓▓ had sex with strangers; (2) exclude evidence that Isabella Pollok had sex with strangers and other "grooming" evidence related to Isabella Pollok; (3) preclude the government's toxicologist from opining that Mr. Ray was not intentionally poisoned; (4) exclude the misleading maps from the government's cell site expert; and, (5) permit limited attorney-led voir dire.

Dated:      January 31, 2022
            New York, New York

                                    Respectfully submitted,

                                    _____/s/_____
                                    Allegra Glashausser, Esq.
                                    Marne L. Lenox, Esq.
                                    Peggy Cross-Goldenberg, Esq.
                                    Neil P. Kelly, Esq.

                                    FEDERAL DEFENDERS OF NEW YORK, INC.
                                    52 Duane Street – 10th Floor
                                    New York, New York 10007
                                    Tel.: (212) 417-8700

                                    *Counsel for Lawrence Ray*