UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

LAWRENCE RAY,

        Defendant.

No. 20 Cr. 110 (LJL)

## REPLY TO THE GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO LAWRENCE RAY'S
## MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT

    David E. Patton, Esq.
    Federal Defenders of New York, Inc.
    52 Duane Street - 10th Floor
    New York, New York 10007
    Tel.: (212) 417-8700

    *Counsel for Lawrence Ray*

**MARNE L. LENOX, ESQ.**
**PEGGY CROSS-GOLDENBERG, ESQ.**
**ALLEGRA GLASHAUSSER, ESQ.**
**NEIL P. KELLY, ESQ.**
*Of counsel*

To:  **DAMIAN WILLIAMS, ESQ.**
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007

    Attn:  **DANIELLE R. SASSOON, ESQ.**
        Assistant United States Attorney
        Southern District of New York

# TABLE OF CONTENTS

          Page

I.   Mr. Ray was not on notice of the changes in the second superseding indictment. ................. 1

II.   Mr. Ray should not bear the burden of the government's delay. ............................................ 4

III.   Conclusion ................................................................................................................................ 6

Lawrence Ray submits this reply brief in further support of his motion to dismiss the January 13, 2022 indictment pursuant to Federal Rule of Criminal Procedure 48(b) for unnecessary delay in prosecution. Notwithstanding the government's arguments to the contrary, the Court should strike the new language and VICAR count in the second superseding indictment with prejudice.

## ARGUMENT

**I.     Mr. Ray was not on notice of the changes in the second superseding indictment.**

The government contends that the defense has been on notice of the alleged VICAR assault since February 2020 and that "[t]he newly-added language merely clarifies that the forced labor predicate pertains to *both* the forced manual labor… as well as to the forced sexual labor of [a complainant]…." Dkt. 320 at 3, 9. Thus, the government concludes, the defense has not been prejudiced by the new superseding indictment. This is not so.

With respect to the standalone assault charge, the language of the original indictment, which did not include the date nor location of the alleged assault, was insufficient to put the defense on notice that it would have to defend against the specific VICAR count charged in the second superseding indictment. And the 2021 superseding indictment—the charging instrument upon which the defense has been preparing for trial for the past year—does not even reference the alleged assault. Nor does the August 2021 bill of particulars the Court ordered the government to serve for the first superseding indictment reference the alleged offense,[1] which

---

[1] The government's bill of particulars states, in relevant part: "The conduct relevant to the sex trafficking charge began in 2011, when Ray began the grooming process that led to the extortion and sex trafficking of Female Victim-1. Female Victim-1 began meeting with prostitution clients in or around 2014. The records produced in discovery—including hotel records, financial records, emails, and text messages—provide information regarding some of the specific dates of prostitution."

1

the government now asserts is "direct proof of the racketeering conspiracy, the extortion, and the sex trafficking." Dkt. 320 at 8. *Cf. U.S. v. Gardell* No. S400CR.632 (WHP), 2001 WL 1135948, at *3 (S.D.N.Y. Sept. 25, 2001) (denying defense request to dismiss the superseding indictment, noting "the bill of particulars is a third source by which defendants were apprised of the conduct now alleged in the securities fraud object"). At no point over the past two years did the government make clear that "this particular assault would feature into the Government's presentation of its case." Dkt. 320 at 7. Certainly, the defense had no notice that the Government intended to indict Mr. Ray for this offense.

     The government asserts that the alleged assault does not prejudice the defense because it has been "highlighted" for the defense in its discovery productions. Dkt. 320 at 3. This is patently false. The volume of the government's discovery productions has been thoroughly litigated. In total, the government has produced more than 22 terabytes of discovery, identifying roughly one terabyte of data recovered from electronic devices, emails and iCloud accounts as "responsive" to the search warrants. This terabyte of responsive material does not include non-electronic data relevant to the case, such as documents recovered pursuant to search warrants and extensive subpoena returns disclosed in more than 30 separate discovery productions to date. Beyond the "responsive" materials and draft transcripts, notwithstanding the Court's "strong encouragement" that the government identify for the defense "the information that it views as most salient to the case," *see, e.g.*, Dkt. 201 at 17, the only materials within its discovery production that the government has steered the defense to is *Brady*.

     While the government produced discovery related to the alleged assault before the second superseding indictment, it did not "highlight" for the defense any particular piece of discovery until January 14, 2022. Indeed, the original audio and corresponding transcript, labeled "New

Recording 40_enhanced," identified by the government as evidence of the alleged assault, was provided to the defense in a production alongside seven other recordings and corresponding transcripts. Neither the name of the file nor the substance of the recording (which does not track the language alleged in the original indictment) would remotely lead the defense to know it was related to the alleged assault. Further, since disclosing the relevant draft transcript, the government has continuously provided numerous audio calls with corresponding draft transcripts, never with any emphasis on any particular file. The same can be said for the pertinent hotel records and cell site maps, which were produced among a sea of documents without direction to any relevant materials in particular. And while the government rests its late filing on new information from a previously known witness, notably, its response does not reveal when the government learned of the information that led them to seek another superseding indictment, nor does the government reveal the identity of the witness, further hampering the defense's investigation.

That the government previously provided discovery relevant to the alleged assault within a series of massive discovery productions is far from "highlighting" this information for the defense and does little to alleviate the prejudice resulting from charging Mr. Ray with a violent crime two years after his original indictment and arrest, less than two months before trial. It is unreasonable to expect the defense to cull volumes of discovery for evidence of an alleged assault that has never been emphasized by the government over the past two years and is not even referenced in the charging instrument upon which the defense was preparing for trial.

The government further contends that the addition of "sexual services" in the racketeering conspiracy count "merely clarifies" that the forced labor predicate encompasses an individual's sexual acts with strangers. Dkt. 320 at 9. In truth, this language constitutes a

3

complete reimagining of the scope of the forced labor predicate as charged. While the government argues that Count One has always included allegations of "sexual manipulation," "sexual manipulation" does not equate to "sexual services" and certainly does not amount to proof of forced labor.[2] The context of the "sexual manipulation" as originally alleged is critical. As charged in the first superseding indictment, the alleged co-conspirators "subjected the Victims to sexual and psychological manipulation… in order, among other things, *to extract false confessions* from the Victims that they had caused harm and damage to members and associates of the Enterprise, including by poisoning Ray, Pollok, and others." Dkt. 127 (emphasis added). As this context makes clear, the government did not originally contemplate—and the defense was not on notice of—inflammatory evidence of an individual having sex with strangers as proof of forced labor let alone as an object of the conspiracy or evidence at trial.

Because the second superseding indictment "unfairly put[s] [Mr. Ray] in a worse position than had the first indictment," the Court should strike the additional language and count in the January 2022 indictment. *See United States v. Grossman*, 843 F.2d 78, 83 (2d Cir. 1988).

## II.   Mr. Ray should not bear the burden of the government's delay.

The government posits that the appropriate remedy for the defense in light of the government's two-year delay in filing a second superseding indictment would have been to seek an adjournment of trial. *See United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019) (holding "the relevant interval for Defendants-Appellees' Sixth Amendment speedy trial claim is from the *first* indictment or arrest to trial") (emphasis in original). This is absurd. The courts and the government have an "affirmative obligation" "to bring criminal defendants to trial promptly." *Id.*

---

[2] The defense's motions *in limine* separately includes a motion to exclude sexual services evidence as proof of the forced labor predicate on separate legal grounds. *See* Dkt. 325.

4

at 266 ("The right to a speedy trial has been deemed 'fundamental' to our system of justice since its inception."). Mr. Ray should not have to endure more time in custody because the government waited until the eve of trial to file a new charging instrument based on information it has known for years.[3] In any event, in a footnote at the tail end of its submission, the government conveys its opposition to an adjournment on these grounds.

      Mr. Ray has already been incarcerated on this matter for two years, enduring oppressive conditions of confinement, including a series of facility-wide lockdowns and months-long suspensions of legal and social visits.[4] The government's response lays bare its lack of appreciation for the extraordinary conditions of Mr. Ray's pretrial detention. This period of incarceration is not irrelevant, as the government blithely asserts. Rather, it is a fundamental element of the Court's prejudice analysis when contemplating the government's unnecessary post-indictment delay. *Id.* at 264 ("While prejudice to the defense is 'the most serious' of [the *Barker* prejudice factors], we also consider the 'dead time' defendants spend in pre-trial detention, the effect of detention on a defendant's ability to 'prepare his defense,' and the detrimental effect of 'living under a cloud of anxiety, suspicion, and often hostility.'") (internal citations omitted).

---

[3] Given the timing of the government's second superseding indictment and its lack of notice to the defense while discussing a joint proposed motions *in limine* schedule on January 5, 2022, the government's request that defense counsel communicate "in good faith" with the government concerning an anticipated adjournment request rings hollow. *See* Dkt. 320 at 4. Rather, it seems the government repeatedly invited the defense to request an adjournment of trial in the period leading up to the filing of the second superseding indictment without ever disclosing its intent to supersede.

[4] On January 31, 2022, the Metropolitan Detention Center, where Mr. Ray is housed, reopened for legal visits following a month-long suspension due to Covid-19 beginning on December 27, 2021. The next day, the facility once again indefinitely suspended legal visits and legal calls, this time because of an incident that occurred in a Bureau of Prisons facility in another region.

5

Mr. Ray has long been faced with the untenable choice between his right to a speedy trial and his right to a fair trial litigated with the effective assistance of counsel. To that end, he sought an adjournment of trial after the government filed the first superseding indictment in January 2021, a year after the filing of the original indictment and his arrest in February 2020, with a trial date then set for July 2021. But two years after the government filed its original indictment, during which time Mr. Ray has remained incarcerated, and with less than two months before trial, the onus should not lie with Mr. Ray. Instead, the Court should strike the portions of the second superseding indictment that differ from the first superseding indictment, including the new VICAR charge.

### III.   Conclusion

For the reasons set forth above and those set forth in the defense's motion to dismiss, the Court should strike the new language and VICAR count in the second superseding indictment with prejudice.

Dated:      February 2, 2022
            New York, New York

                                        Respectfully submitted,

                                        /s/ Marne L. Lenox
                                        Marne L. Lenox, Esq.
                                        Peggy Cross-Goldenberg, Esq.
                                        Allegra Glashausser, Esq.
                                        Neil P. Kelly, Esq.

                                        FEDERAL DEFENDERS OF NEW YORK, INC.
                                        52 Duane Street – 10th Floor
                                        New York, New York 10007
                                        Tel.: (212) 417-8700

                                        *Counsel for Lawrence Ray*