```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
        -v-                                                      :
                                                                 :         20-cr-110 (LJL)
LAWRENCE RAY,                                                    :
                                                                 :         OPINION AND ORDER
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendant Lawrence Ray ("Ray") moves to dismiss portions of the second superseding indictment returned against him. Dkt. Nos. 311, 317. For the reasons discussed below, the motion to dismiss is denied.

Familiarity with the procedural history recited in the Court's prior opinions is assumed. Ray was first indicted on February 6, 2020. Dkt. No. 2 (the "Indictment"). The Indictment charged Ray in nine counts with: extortion conspiracy in violation of 18 U.S.C. § 1951 (Count One), extortion in violation of 18 U.S.C. §§ 1951 and 2 (Count Two), sex trafficking in violation of 18 U.S.C. §§ 1591 and 2 (Count Three), forced labor in violation of 18 U.S.C. §§ 1589 and 2 (Count Four), forced labor trafficking in violation of 18 U.S.C. §§ 1590 and 2 (Count Five), forced labor conspiracy in violation of 18 U.S.C. § 1594 (Count Six), two counts of use of interstate commerce to promote unlawful activity in violation of 18 U.S.C. §§ 1952(a)(3) and 2 (Counts Seven and Eight), and money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Count Nine). Dkt. No. 2 at 10–19.

On January 29, 2021, a Grand Jury returned a sixteen-count first superseding indictment against Ray and co-defendant Isabella Pollok ("Pollok"). Dkt. No. 127 (the "First Superseding

1

Indictment"). The First Superseding Indictment adds charges for racketeering and tax evasion. It charges Ray with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One), extortion conspiracy in violation of 18 U.S.C. § 1951 (Count Two), extortion in violation of 18 U.S.C. §§ 1951 and 2 (Count Three), sex trafficking in violation of 18 U.S.C. §§ 1591 and 2 (Count Four), conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594 (Count Five), forced labor in violation of 18 U.S.C. §§ 1589 and 2 (Count Six), forced labor trafficking in violation of 18 U.S.C. §§ 1590 and 2 (Count Seven), forced labor conspiracy in violation of 18 U.S.C. § 1594 (Count Eight), two counts of use of interstate commerce to promote unlawful activity in violation of 18 U.S.C. §§ 1952(a)(3)(B) and 2 (Counts Nine and Ten), money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (ii), and 2 (Count Eleven), and tax evasion for each of the years 2015 to 2019 in violation of 26 U.S.C. § 7201 (Counts Twelve to Sixteen). Dkt. No. 127 at 8–23.

The Indictment and Superseding Indictment are based on similar allegations. In broad brush, they allege that Ray targeted a group of college students and others for indoctrination and criminal exploitation, including extortion, forced labor, and prostitution. He is accused of extracting from victims false confessions that they had caused harm to Ray and to his family members and associates. It is further alleged that he then leveraged the victims' false confessions to extort money from them, to force some of the victims to perform unpaid manual labor, and to cause one of the female victims to engage in commercial sex acts for Ray's financial benefit. The indictments include examples of Ray's alleged physical threats to certain victims, his use of the false confessions to force the victims to pay him hundreds of thousands of dollars, his use of verbal and physical threats to force the victims to perform physical labor on a property in North Carolina, and his inducement of one victim to act as a prostitute.

Ray has been detained in federal custody since his arrest on February 11, 2020, notwithstanding numerous motions for bail, all of which have been denied. *See* Dkt. Nos. 9, 17, 17-1, 20, 36, 62, 63, 111, 166. Trial in this case is scheduled for March 8, 2022. Dkt. No. 264.

On January 13, 2022, a Grand Jury returned a second superseding indictment against Ray and Pollok. Dkt No. 292 (the "Second Superseding Indictment"). The Second Superseding Indictment contains seventeen counts. It adds a Count Seventeen, which charges Ray with committing a violent crime in aid of racketeering ("VICAR") in violation of 18 U.S.C. § 1959(a)(3). *Id.* at 24–26. It also makes revisions, including to the section of the indictment describing the "means and methods of the enterprise": to substitute the phrase "purported confessions" for "false confessions"; to allege that Ray forced at least one alleged victim to "provide sexual services, including to strangers" as evidence of the forced-labor predicate of the alleged racketeering conspiracy; and to allege Ray "[p]hysically and psychologically isolate[ed] the victims, including from their families and friends" and "exploit[ed] the Victims' mental health vulnerabilities and self-doubts to the advantage of the Enterprise." Dkt No. 311 at 3 (describing changes in the indictment).

Ray argues that the Court should dismiss the Second Superseding Indictment for unnecessary delay. Dkt No. 311 at 4. He argues that the Government's delay in filing the Second Superseding Indictment "is a bald-faced attempt to gain a strategic advantage at trial," *id.* at 6, and that there is "no legitimate reason for the government's delay filing the second superseding indictment two years after the original indictment and one year after the first superseding indictment," *id.* at 8. Although Ray states that the return of the Second Superseding Indictment forces him "to choose between his right to a speedy trial and his right to a fair trial with the effective assistance of counsel," *id.* at 17, he does not request a continuance. In fact, he

3

states he does not intend to request an adjournment. *Id.* at 9.

The motion is denied. The Government is permitted to seek and obtain a superseding indictment shortly before trial, at least so long as the indictment does not substantially change the government's case and there is no prejudice to the defendant or bad faith or dilatory motive on the part of the Government. *See, e.g.*, *United States v. Lin*, 505 F. App'x 10, at 12 (2d Cir. 2012) (summary order) (holding that a superseding indictment that added an additional predicate act in support of substantive racketeering charge returned twenty-seven days prior to scheduled start of trial was not unfairly prejudicial); *United States v. Mulder*, 273 F.3d 91, 99–100 (2d Cir. 2001) (district court did not err by allowing government to file a superseding indictment three weeks before trial that expanded the time span of the conspiracy and added surplusage to indictment); *United States v. Skinner*, 946 F.2d 176, 178 (2d Cir. 1991) (affirming denial of motion to dismiss superseding indictment returned nineteen days before trial); *United States v. Grossman*, 843 F.2d 78, 83–84 (2d Cir. 1988) (affirming denial of motion to dismiss superseding indictment which added fourteen counts, including ten counts involving new transactions, and was returned two business days before trial).

Ray identifies no evidence of bad faith or dilatory motive on the part of the Government. He asserts that the changes made to paragraph 7, which incorporates language consistent with the testimony of defense expert Dr. Hughes and which that the Government represented were implemented to make the Second Superseding Indictment "conform more precisely to [its] proof at trial," Dkt. No. 311 at 3, 7 (quoting Dkt. No. 312 at 176:8–11), reflects "proof that the government has been aware of for months, if not years." *Id.* at 7. However, the Government was only obligated to disclose Dr. Hughes as an expert witness on November 15, 2021. Dkt. Nos. 219; 222; 263-1. Assuming the accuracy of Ray's accusation, the Court cannot ascribe any bad

faith or dilatory motive if a Grand Jury returned a superseding indictment less than two months after the disclosure of expert testimony on which the changes in that superseding indictment were purportedly based.  Ray also questions the Government's explanation for the addition of Count Seventeen—that it only recently learned that a witness heard of the incident directly from Ray.  *Id.* at 7.  But Ray offers no evidence that the Government knew of the witness at the time of the original indictment or the superseding indictment, or that it delayed adding the count to achieve some impermissible trial advantage.  As discussed below, there is no plausible argument that the Government did achieve an impermissible trial advantage.  The incident that is the subject of Count Seventeen has long been included in the charges against Ray and is one of the more memorable features of the Government's case.  It was included in the original indictment in February 2020.  Dkt. No. 2 ¶ 14(c).  Evidence of it is also included in the search warrant applications.  Dkt No. 184 at 6.  Although the defense disputes the Government's assertion that the Government "highlighted" the incident in its discovery productions, *see* Dkt No. 330 at 2, it admits that an original audio and corresponding transcript of the incident were included in a Government production of eight recordings and corresponding transcripts, *id.* at 2–3, and does not dispute that the production was made in September 2020.  Dkt. No. 320.[1]

The original and superseding indictments may not have "put the defense on notice that it would have to defend against the specific VICAR count charged in the second superseding indictment," Dkt No. 330, at 1, but it should have put the defense on notice that—in connection with the other charges and, in particular, that of sex trafficking—Mr. Ray would have to defend

---

[1] Ray points out that the First Superseding Indictment does not refer to the charged assault.  Dkt. No. 330 at 1.  But it is alluded to in that indictment.  *See* Dkt. No. 127 ¶ 7(i) (means and methods of conspiracy included "[p]ressuring Female Victim-1, through force . . . to engage in frequent prostitution and collecting nearly all the proceeds of that prostitution").

against the allegations that form the basis for the VICAR count. The new count "arise[s] out of the facts alleged in the original indictment." *United States v. Hanna*, 198 F. Supp. 2d 236, 246 (2d Cir. 2002). Contrary to the defense's argument, Dkt No. 311 at 8, the Government need not bring all charges that are available to it as long as it has a victim and some corroborating records; it can wait until it has a witness who will testify to the defendant's admission and until it is certain it will be able to prove the charges against the defendant. In short, the second superseding indictment does "not alter substantially the government's case against" Ray. *Grossman*, 843 F.2d at 84.

Ray also offers no evidence of prejudice. He argues that the addition to Count One of the Second Superseding Indictment alleging that Ray forced another individual to perform "sexual services" for strangers "lays the groundwork for the admissibility of highly prejudicial evidence of a person (who is not alleged to have been engaged in commercial sex acts) having sex with strangers," Dkt. No. 311 at 15, and that the addition of the standalone VICAR count "implicates the admissibility of prejudicial bad acts involving violence," *id.* at 16. However, as Ray recognizes, the conduct underlying the VICAR charge was referenced "in the original indictment two years ago" and "*may* have been admissible of evidence of the racketeering conspiracy." *Id.* at 16. Thus, this evidence would have been relevant under the earlier indictments. *See Grossman*, 843 F.2d at 83. Even if the incident was not referenced in the bill of particulars directed to the sex trafficking charge of the superseding indictment, Dkt No. 330 at 1 & n.1, that document should not necessarily have given Ray comfort that the Government—after it developed further evidence—would not use the conduct to obtain an additional charge in the Second Superseding Indictment.

Ray argues that the Second Superseding Indictment should be dismissed because the

original indictment did not provide "specifics," *id.* at 16, and did not fairly inform him of the charge against which he would have had to defend, *id.* (citing *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)).  This argument is incomprehensible.  Ray did not move to dismiss the original indictment, perhaps because an indictment ordinarily "need do little more than to tack the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) (quoting *Alfonso*, 143 F.3d at 776).  There can be no complaint about the Second Superseding Indictment, which makes plain the conduct the Grand Jury believed to be unlawful.[2]

Ray also identifies no prejudice from the remaining modifications.  The replacement of "false confessions" with "purported confessions" does not change the nature of the Government's case or the facts it will have to establish in order to prove the grand jury's charges.  The confessions always have been a centerpiece of the Government's case.  The descriptive language that the confessions were "false" as opposed to "purported" was always unnecessary.  Although the Indictment and the First Superseding Indictment did not contain an allegation that Ray forced a second alleged victim to "provide sexual services, including to strangers," they did allege that he subjected the victims to sexual manipulation, *see e.g.*, Dkt. No. 127 ¶ 7(b), and the Government's discovery included numerous recordings of that alleged victim engaged in sexual

---

[2] The thrust of Ray's motion appears to be based on the fact that the standalone VICAR count enhances his sentencing exposure. Dkt. No. 311 at 17. Ray argues that he did not have notice that he would be charged with a VICAR violation. Dkt. No. 330 at 1. But under the sixteen-counts in the First Superseding Indictment Ray faces sentencing exposure that would give the Court the power to keep him in prison for the rest of his life. Further, while Ray states that the charges "demands . . . further investigation," *id.* at 17, he does not identify any investigation that he would need to do with respect to Count Seventeen that he has not already had two years to do with respect to the other sixteen counts, or that he could not do or has not done in the nearly two months from the date the Second Superseding Indictment was returned to the date of trial.

7

acts with strangers, sometimes in the presence of or at the instruction of co-defendant Pollok.[3] Ray does not claim surprise that the Government would seek to offer evidence of this conduct as part of its case at trial.[4] The Court presumes that these and the other changes were made to tighten the Government's case and to increase its chances of prevailing at trial, but under the case law, that alone does not establish prejudice.

Ray's argument is no more persuasive when it is framed, as he does, in terms of a Rule 48(b) motion for dismissal. That rarely invoked rule permits a court to dismiss an indictment based on "unnecessary delay" in presenting the case to the grand jury. Fed. R. Cr. P. 48(b). The rule, and many of the cases under it, predate the effective date of the Speedy Trial Act, adopted in 1975 and fully effective in 1980. § 804 Dismissal for Unnecessary Delay, 3B Fed. Prac. & Proc. Crim. § 804 (4th ed.). According to a well-known treatise, "[i]n determining whether there has been unnecessary delay the courts employ the same process of balancing the four facts in *Barker v. Wingo* used to pass on a speedy trial claim": (1) the length of the delay, (2) the reasons

---

[3] The defense has moved in limine to exclude this evidence on the separate basis, in part, that "sexual services" as charged in the Second Superseding Indictment does not constitute forced labor. Dkt. No. 325. Nothing in this Opinion and Order should be understood to reflect a prejudgment on that distinct issue.

[4] Ray disputes the Government's argument that the Second Superseding Indictment merely clarifies that "sexual services" was part of the forced labor charged in the earlier indictments. Dkt. No. 330 at 4. He is correct that the First Superseding Indictment's allegation that Ray "subjected the Victims to sexual and psychological manipulation" describes the purpose of that manipulation as to be "among other things, to extract false confessions from the Victims" and does not mention forced labor. Dkt. No. 127 ¶. 5. The other reference is in the "Means and Methods of the Enterprise," which does not specifically reference that sexual manipulation related to forced labor. *Id.* ¶ 7(b). The "to wit" clause of the forced labor count charges only that Ray caused several female Victims to perform physical labor on a property in North Carolina. *Id.* at 15. The original Indictment, too, only mentions the North Carolina labor as the illegal forced labor. Dkt. No. 2 at 11–12. The allegation thus is not a mere clarification but a new claim and a new basis for liability. But Ray tellingly does not dispute that he was aware of the underlying evidence or assert that the return of a superseding indictment containing a new basis for the admission of the evidence two months before trial has impaired his ability to prepare for trial.

for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.*

The Government argues that the rule is improperly invoked here; there is no claim of a violation of the Speedy Trial Act. Dkt. No. 320 at 3 n.2. Even if the Court had discretion to dismiss the Second Superseding Indictment, it would not exercise that discretion. None of the *Barker* factors favor Ray. The "delay" in this case is not inordinate for cases of this type—two years for what until the Second Superseding Indictment was a sixteen-count indictment covering a ten-year time period and alleging physical and financial crimes. There were good reasons for the delay. Even leaving aside the fact that the defendant was detained, the extent of the charges and the amount of the discovery required the defendant to have time to review discovery and to prepare for trial. The defendant has not asked for a speedier trial or asserted rights under the Speedy Trial Act. To the contrary, he consented to each of the trial adjournments as being in the ends of justice. *Id.* at 8. Those adjournments have been granted in order to permit him to review discovery and to prepare for trial. Even today, he does not ask for an adjournment. To be sure, Ray has been detained for a significant amount of time pre-trial. The Court does not discount the impact that such detention has had on Ray personally, even though it does not find convincing that the conditions have impeded his ability to prepare for trial. *See* Dkt. No. 330 at 5. This Court and others have deplored the conditions at the federal jails during the COVID-19 pandemic. But Ray has been detained by operation of law because his own conduct has demonstrated to more than one judge that there exists no condition or combination of conditions that would reasonably assure his appearance as required or the safety of the community, 18 U.S.C. § 3142(e), and the conditions to which he has been subject have been no different than those confronted by other federal detainees. To the contrary, the Court has ensured that the federal facilities have made arrangements for Ray to be able to review discovery not available to

other detainees. Finally, and most significantly, Ray has not demonstrated prejudice from the delay.

## CONCLUSION

The motion to dismiss portions of the Second Superseding Indictment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 317.

SO ORDERED.

Dated: February 3, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge