**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

February 16, 2022

**VIA ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

MEMO ENDORSEMENT.
The Government is directed to respond to this letter by 1:00 p.m. on February 18, 2022.

2/16/2022   SO ORDERED.

LEWIS J. LIMAN
United States District Judge

Re:  **United States v. Lawrence Ray**
     **20 Cr. 110 (LJL)**

Dear Judge Liman:

    We write to respectfully request that the Court reopen or reconsider Mr. Ray's motion for a *Franks* hearing in light of new information gleaned from the government's 3500 production. *See United States v. Fernandes*, 50 F. Supp. 3d 398, 404 (W.D.N.Y. 2014) (denying *Franks* hearing but noting that if new information becomes available "the Court may reconsider Defendant's motion for a *Franks* hearing at that time").

    In December 2020, Mr. Ray filed pretrial motions to suppress evidence recovered pursuant to a variety of search warrants executed in this matter. Dkt. 112. In particular, Mr. Ray requested suppression of materials seized pursuant to the July 26, 2019 historical cell site location information warrant, the September 23, 2019 email accounts warrant, and the October 7, 2019 iCloud accounts warrant, or in the alternative, Mr. Ray requested that the Court order a suppression hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). ▮▮▮▮ was the sole source of the information in the underlying affidavit for each of these warrants. As the defense argued, Ms. ▮▮▮ is not reliable; to the extent that she served as the sole informant for the warrant applications, the warrants were issued in reckless disregard of the truth. *See* Dkt. 112 at 34–45. The Court denied the request for a *Franks* hearing.

    There is now additional evidence not only that Ms. ▮▮▮ is unreliable, but also that the government knew this at the time of its search warrant applications, yet neglected to include any reference to Ms. ▮▮▮ credibility issues in its warrant affidavits. Dkt. 112 at 37–45. On February 11, 2022, the defense received materials from the government pursuant to its obligations under Section 3500 of Title 18 of the United States Code. These materials include information new to the defense that bears on the government's knowledge of Ms. ▮▮▮ credibility issues *before* relying upon her as the sole source of information in search warrant applications. The Court should reconsider the defense's motion in light of this new information. *See United States v. Leaver*, 358

Hon. Lewis J. Liman

F. Supp. 2d 273, 279 (S.D.N.Y. 2005) ("[I]t has long been the law in this Circuit that, in order to reopen a suppression hearing on the basis of new evidence, the moving party, whether it is the Government or the defendant, must show that the evidence was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing.") (internal citation and quotation marks omitted); *United States v. Almonte*, No. 14 CR. 86 KPF, 2014 WL 3702598, at *3 (S.D.N.Y. July 24, 2014) ("A court has discretion to reopen a suppression hearing based on new evidence.").

To begin, the government's notes from an interview of ▬▬▬▬ on September 24, 2019, state,

> The summer after freshman year, ▬▬ and ▬▬▬ had plans to fly to California and subsequently drive from Pasadena up the west coast. ▬▬▬ recalled that ▬▬▬ had recounted numerous stories of how many times she had failed her driver's test to obtain her driver's license. During the trip, ▬▬▬ was picked up at the airport by ▬▬▬▬ friend ▬▬▬. ▬▬▬ subsequently told ▬▬▬ that ▬▬▬ had never taken her driver's test. On the trip ▬▬▬ *also met several of* ▬▬▬ *high school friends, who told* ▬▬▬ *that* ▬▬▬ *embellished things at times and described her as "pathological."* Later on during sophomore year, ▬▬▬ remembered that ▬▬▬ made a comment one night that she saw something glowing on a walking path near the dorm. ▬▬▬ *thought that she could have been embellishing then because there was no way that it could be true.*



▬▬ 3525-004 (emphasis added). Critically, the government knew this information *before* relying on Ms. ▬▬▬ account to swear out an affidavit in support of a search of several iCloud accounts on October 7, 2019. US_000156. Indeed, it was the very agent who took Mr. ▬▬▬ September 24, 2019 statement and wrote out the government's official report memorializing the statement who swore out the October 7, 2019 affidavit in support of the iCloud search warrant. ▬▬ 3525-03; 3525-004. On December 4, 2020, ▬▬▬ remarked, "She always told fascinating stories." *Id.* at 007.[1]

In addition, the 3500 materials include government notes of interviews with ▬▬▬▬ herself that support the conclusion that Ms. ▬▬▬ is unreliable. On July 17, 2019, Ms. ▬▬▬ reportedly told the government,

> In the fall of 2015, while ▬▬▬ was escorting, ▬▬▬ also worked at ▬▬▬▬▬▬▬▬. The company was owned by ▬▬▬▬▬▬



---

[1] ▬▬▬▬ has since published a book entitled, "Slonim Woods 9." In it, he details ▬▬▬ struggle with the truth: "The large implications of this strange lie were then confirmed for me by ▬▬▬ other friends from back home: She had a problem with telling stories as if they were real, which had been well known among her old high school friends, but which her college friends hadn't picked up on yet…. After a day on the road, we stopped talking about the lying thing—it seemed to make her squirmy and uncomfortable—and eventually I decided to pretend it didn't exist." ▬▬▬▬▬▬▬▬ SLONIM WOODS 9 (2021) at 22.

Hon. Lewis J. Liman

▮▮▮▮▮▮ worked on various projects for the company and completed write-ups. Over time to account for money that ▮▮▮ was making from legitimate jobs, ▮▮▮ told RAY that ▮▮▮ was a prostitution client. ▮▮▮ did not tell RAY that she had a job outside of escorting. However, RAY was not happy by ▮▮▮ contact with ▮▮▮▮ believed that RAY was threatened by ▮▮▮ due to him being successful. Subsequently ▮▮▮ also learned that RAY had put various derogatory posts on the ▮▮▮▮.com website up about ▮▮▮.

▮▮▮ 3507-026.

But the government's disclosures strongly suggest that they did not believe Ms. ▮▮▮ claims that her relationship with Mr. ▮▮▮ was not sexual before the first affidavit relying on Ms. ▮▮▮ was sworn. In May 2019, the government met with Mr. ▮▮▮ he did not disclose that he was one of Ms. ▮▮▮ clients. ▮▮▮ NT-29_004.



Indeed, over time, Ms. ▮▮▮ confessed about a relationship with ▮▮▮▮ In October 2021, Ms. ▮▮▮ reported that Mr. ▮▮▮ was a prostitution client:

> ▮▮▮▮ expressed that she first met ▮▮▮▮▮ (▮▮▮▮ because he was a client of hers. He had called her phone number, which had been posted on various websites for prostitution services. She went on to say that she believed that he had contacted her through Backpage, because she believed that he had referenced some of the terminology that she had used in her Backpage ad, when they met in person for a session. ▮▮▮▮ stated that at no time was she an employee of his.

▮▮▮ 3507-038.

In sum, the government's 3500 production yields new information previously unknown to the defense that severely undermines Ms. ▮▮▮ credibility. These new facts warrant the Court's

3

Hon. Lewis J. Liman

reconsideration. *United States v. Catino*, No. 3:12-CR-00117-WWE, 2015 WL 6566004, at *1 (D. Conn. Oct. 30, 2015), *aff'd sub nom. United States v. Papadakos*, 729 F. App'x 41 (2d Cir. 2018) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) ("As such affidavit, depending on its contents, might reasonably be expected to alter the conclusion reached by the Court, defendants' motion for reconsideration will be granted."). *Cf. United States v. Oliver*, 626 F.2d 254, 260 (2d Cir. 1980) (upholding refusal to reopen suppression hearing where "[n]o new evidence of material significance was offered in support of the motion to reopen").

Because the Court did not have this information when ruling on Mr. Ray's original suppression motion in December 2020, the defense respectfully requests that the Court reconsider Mr. Ray's motion for a *Franks* hearing to determine whether the search warrants at issue were based on a reckless disregard for the truth. *See United States v. Bravo*, 808 F. Supp. 311, 326 (S.D.N.Y. 1992) (granting defendant's request to reopen *Franks* hearing and reconsider his motion where the confidential information admitted lying about information relied on in the search warrant affidavit); *United States v. Bayless*, 201 F.3d 116, 132 (2d Cir. 2000) (upholding district court's decision to reopen suppression hearing for introduction of new testimony).

Thank you for your consideration of this request.

Respectfully submitted,

/s/

Marne L. Lenox, Esq.
Peggy Cross-Goldenberg, Esq.
Allegra Glashausser, Esq.
Neil P. Kelly, Esq.

*Counsel for Lawrence Ray*

cc:   Counsel of record

# EXHIBIT A

REDACTED

# EXHIBIT B

# REDACTED