**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

February 23, 2022

<u>Via ECF</u>

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States v. Lawrence Ray</u>
         20 Cr. 110 (LJL)

Dear Judge Liman,

  We write to bring to the Court's attention the Second Circuit's opinion issued earlier today in the matter *United States v. Zhong*, No. 19-4110 (2d Cir. Feb. 23, 2022) ("Op.," Ex. A). The Second Circuit's opinion bears directly on issues pending before the Court in the defense's motions *in limine*.

  In Mr. Ray's *Daubert* motion and motions *in limine*, the defense noted that, unless limited by the Court, Dr. Hughes will testify about irrelevant and unduly prejudicial conduct and cases that have no factual connection to this case, including child sexual abuse, child molestation, and infamous cases involving such conduct, and may testify about the evolution of the research into "coercive control" and similar concepts from studies involving torture victims, prisoners of war, Holocaust survivors, or victims of other notorious systematic abuse wholly unrelated to the allegations at issue here. (Dkt. No. 326; Dkt No. 263 at 43–48; Dkt No. 275 at 29–32.) The defense argued that, absent any such allegations or factual connection to the issues in this case, such testimony would be of limited probative value, would be highly and unfairly prejudicial, and would improperly motivate the jury to find Mr. Ray guilty on an improper basis. The government claims that "[t]here is no undue prejudice from describing relevant topics with relevant examples," because such testimony forms the background of Dr. Hughes's opinions. (Dkt. No. 367 at 16.)

  In *Zhong*, a case involving alleged forced labor, the government called as an expert witness a former prosecutor and diplomat to testify about "the complex nature of forced labor and human trafficking operations and particular aspects of human trafficking and forced labor that are prevalent in, or unique to, the People's Republic of China." (Op. 12.) The expert offered testimony about, *inter alia*, "topics including forced labor, document servitude, alien smuggling, and debt bondage"; "testified about why organizations engage in forced labor, the emotional pleasure that perpetrators of forced-labor operations derive from their activities, the typical

methods used to perpetrate forced labor, and reasons why workers may remain in servitude"; discussed "red flags" about the employment contracts in evidence; "discussed the history of slavery and sharecropping in the United States"; and "testified about the prevalence of forced labor in China, including 'reeducation through labor camps' for Uighur Muslims and forced labor for the mentally and physically disabled." (Op. 12.) The Second Circuit held that the district court committed reversible error by not limiting the scope of this testimony. (Op. 27.)

Specifically, the Second Circuit held that portions of the government's expert's testimony "severely prejudiced Zhong" and "bore, at best, tangential relevance to his case" because the expert "did not limit his testimony to explaining the details of forced-labor operations in general and the facts of Zhong's case." (Op. 29.) Rather, he provided wide-ranging testimony on topics including "the motivations for such organizations," and that "people employ forced labor due to a combination of profit maximization [objectives] on the one hand, and almost a pleasure that is taken in being able to have this type of control over other people." (Op. 29.)[1] The government's expert also testified about "the history of slavery and sharecropping in the United States as providing background for his opinions." (Op. 29.)

The Second Circuit held that, in addition to being prejudicial, much of this evidence was not relevant to Mr. Zhong's case. As an example, the Second Circuit noted that the government's expert's testimony about "mentally and physically challenged people" and members of religious minorities being subjected to forced labor and human trafficking was irrelevant to Mr. Zhong's case because "there was no evidence that [the alleged victim's in Zhong's case] were mentally or physically challenged or that they were members of religious minority groups in China." (Op. 30.) In addition, the Second Circuit found that this testimony was improper under Rule 403 because it "improperly risked prejudicing the jury against Zhong" on the basis of his ethnicity and "guilt by association" with unrelated forced labor in China. (Op. 30.)

As described in Mr. Ray's motion *in limine* and *Daubert* motions, Dr. Hughes's testimony will similarly involve, in large part, testimony about highly prejudicial and inflammatory concepts, conduct, and cases that are irrelevant and have no connection to Mr. Ray or the allegations in this case. Such testimony should be precluded for the reasons stated in Mr. Ray's motions and the Second Circuit's opinion in *Zhong*. As the Second Circuit made clear in *Zhong*, the government may not elicit such improper testimony on the grounds that it forms the "background" to its expert's opinions in this case.[2]

---

[1] The defense maintains its objection to Dr. Hughes's anticipated testimony about the mental states, motivations, and subjective mental processes of persons accused of interpersonal violence, which the Court has permitted. *See* Dkt. No. 287 at 22.

[2] The Second Circuit also held that the district court committed error by permitting the government's expert to come "dangerously close to usurping the jury's function" when the government asked him to "interpret" and "vouch for" other evidence it has offered. (Op. 29.) As explained in Mr. Ray's *Daubert* motion, Dr. Hughes in this case will similarly (if not as explicitly) be asked to "interpret" and "vouch for" the testimony of the alleged victims in this case by responding to thinly-veiled questions from the government about why alleged

        Respectfully submitted,

        /s/

        Allegra Glashausser, Esq.
        Marne L. Lenox, Esq.
        Peggy Cross-Goldenberg, Esq.
        Neil P. Kelly, Esq.

cc: Counsel of record

Enclosure

---

victims of "coercive control" act or do not act in certain ways in certain situations. The Court must scrupulously police the testimony the government elicits from Dr. Hughes and ensure that she is not permitted to improperly opine on or vouch for the testimony or evidence of the alleged victims in this case.