# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

February 28, 2022

**VIA ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Lawrence Ray, 20 Cr. 110 (LJL)**

Dear Judge Liman:

We write as defense counsel for Lawrence Ray in response to the government's request to admit the testimony of Valerie ▮▮▮▮. There is no proper basis for introducing her testimony, it is not relevant, and the prejudice it would cause would deny Mr. Ray a fair trial. It should be excluded pursuant to Federal Rules of Evidence 404(b) and 403.

Other act evidence the government seeks to introduce pursuant to Rule 404(b) must be meaningfully probative of an issue that will be before the jury. *See United States v. Garcia*, 291 F.3d 127, 137-38 (2d Cir. 2002). The government must "identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009); *see also, e.g., United States v. Gonzalez*, No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *2 (S.D.N.Y. June 24, 2009). It cannot do so here.

The relationship between Mr. Ray and ▮▮▮▮ took place many years before the creation of the enterprise or start of the conspiracy alleged in the indictment. There is no allegation that Mr. Ray targeted her due to any mental health vulnerability or her age or that she was targeted for "indoctrination and criminal exploitation," as alleged in the Indictment, at all. Indeed, she was married with children. There is no suggestion that Mr. Ray recorded her confessing wrongdoing, or demanded payments as repairs for wronging him. Rather, she would testify that Mr. Ray and her father negotiated the terms of a loan to assist Mr. Ray in purchasing a liquor license and Mr. Ray later gave reasons he would not comply with those terms. There is nothing to suggest that Mr. Ray's interactions with ▮▮▮▮ were part of a conspiracy or in furtherance of any ideology, let alone the ideology the government alleges the enterprise served in this case. Her testimony would shed no light on the formation of an enterprise or conspiracy or on whether participants agreed to commit any of the alleged racketeering acts. The government also indicated that she would testify that on one occasion Mr. Ray used a choke-hold on her and then covered her face with a pillow.[1]

---

[1] The circumstances of this allegation are described differently in the government's enterprise letter, Gov. Ltr. 1-18-22, which states that it was in reaction to ▮▮▮▮ ending the relationship, and the government's more recent letter,

Hon. Lewis J. Liman                                                                                                February 28, 2022
Re:     **United States v. Lawrence Ray**, 20 Cr. 110 (LJL)                                             Page 2

        The government argues that her testimony would go to Mr. Ray's intent, knowledge, or *modus operandi*. But it would not. If the government cannot identify a sufficient similarity or connection between the prior and current acts, the prior act is not relevant to show a defendant's knowledge or intent. *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002); *United States v. Tubol*, 191 F.3d 88, 95-96 (2d. Cir. 1999). Evidence that is not sufficiently idiosyncratic so as to be considered a "signature" should be precluded. *United States v. Walia*, 14-CR-213 MKB, 2014 WL 3734522 (E.D.N.Y. July 25, 2014); *United States v. Anglin*, No. 98–CR–147, 1998 WL 252078, at *2 (S.D.N.Y. May 19, 1998) (precluding evidence where despite "a number of similarities between the [prior and current] robberies, the method of each robbery was not sufficiently idiosyncratic to mark it as [the defendant's] modus operandi or to distinguish it from the method used in thousands of other robberies committed each year"). In *Garcia*, the court made clear that the length of time between the events as well as substantial differences in fact in material facts, such as a large increase in drug amount, "detract from any probative value" of the prior act. 291 F.3d at 138.

        Mr. Ray's identity is not at issue in this case, nor is the fact that many of the events involving the complainants in this case were recorded. There is no need for *modus operandi* evidence to show, for example, that Mr. Ray is the person wearing a particular disguise or using a particular recording device. Nor would ▮▮▮▮'s allegations reflect any idiosyncrasy or unusual characteristic that could help the jury identify Mr. Ray as the person who committed certain acts. The alleged use of a choke-hold or a pillow is not sufficiently identifiable or unusual so as to rise to the level of *modus operandi*, especially given the other differences in circumstances. Mr. Ray's knowledge is not at issue in any way in which ▮▮▮▮'s testimony properly could aid the jury. It would not reveal that Mr. Ray understood code words involved in a crime or that something he claimed to possess innocently actually was contraband.

        Even if the jury could determine, after a trial within a trial regarding the relationship between Mr. Ray and ▮▮▮▮ between 2004 or 2006, and that events took place as ▮▮▮▮ described them, that determination would not aid the jury in deciding whether different events involving different people and different purposes took place a decade or more later. Consideration of her testimony would require additional mental gymnastics in which the jury would be asked to consider the evidence for one purposes but not for the purpose it actually serves – propensity.

        At bottom, the government argues that because Mr. Ray allegedly previously abused a romantic partner, the jury should find that he abused the complainants—more than a decade later. As Judge Kaplan succinctly summarized in the context of a tax evasion prosecution, the government's Rule 404(b) knowledge and intent argument boils down to "an impermissible character inference—that someone who evaded taxes [before] is likely to evade taxes again." *United States v. Stein*, 521 F. Supp. 2d 266, 274 (S.D.N.Y. 2007); *see also United States v. O'Sullivan*, No. 20 Cr. 272 (PKC), 2021 WL 1979074, at *11 (E.D.N.Y. May 18, 2021)

---

which states that it was in reaction to an argument over Mr. Ray repaying her father, Gov. Ltr. 2-23-22. That the government's own account of this allegation has changed from January 18, 2022, to February 23, 2022, only highlights the likelihood that ▮▮▮▮'s testimony will require a trial with a trial and create juror confusion.

Hon. Lewis J. Liman February 28, 2022
Re:     **United States v. Lawrence Ray**, 20 Cr. 110 (LJL) Page 3

(excluding proffered prior act evidence because argument that a defendant had used a certain business arrangement to commit fraud in the past and "therefore committed similar fraud here, though couched in terms of showing intent, is precisely the type of propensity evidence forbidden by Rule 404(b)"). This is the government's argument here: Mr. Ray has a certain criminal propensity—if he behaved one way with ▇▇▇▇ in the past, then it is more likely he did so again. As the defense argued in its initial opposition to ▇▇▇▇'s testimony, *see* Dkt. 371 at 37-40, this is "propensity evidence in sheep's clothing." *McCallum*, 584 F.3d at 477.

The cases on which the government relies do not compel a different result. In *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011), evidence of other, contemporaneous fraudulent inflation of figures on tax returns directly disputed the defendant's theory that he had made mistakes or relied on information he thought was accurate on other tax returns. Nothing in the proffered testimony regarding Mr. Ray and ▇▇▇▇'s relationship years before the conduct alleged in this case sheds similar light on the charged conduct. And although the government is correct that the comparatively sensational nature of the prior conduct is a factor for the Court to consider in analyzing prejudice, it is by no means the only consideration. As explained in Mr. Ray's initial opposition to the government's request, the government cannot meet its burden of establishing that the proffered evidence is substantially more probative than prejudicial where the evidence would lead to a "trial within a trial before the jury." *See United States v. Al Kassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008). The confusion and distraction such a detour would cause would interfere with Mr. Ray's right to a fair trial. *See United States v. Johnson*, 816 Fed. Appx. 604, 610 (2d Cir. 2020) (unpublished); *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984).

Even if there were a proper purpose for which to admit ▇▇▇▇'s testimony, the Court should exclude it pursuant to Rule 403. Her testimony will lead to a trial within an already lengthy and complex trial. Mr. Ray disputes her version of the events of their relationship. Indeed, although she now tells the government that Mr. Ray asked her and her father for money in 2005, back in 2006 she told the Somerset County Prosecutor's office that Mr. Ray had never asked her for financial assistance. Placing her testimony in the context of their failed relationship will take the jury on an unwarranted and prejudicial detour.

Because her testimony is not admissible for any proper purpose, is not relevant, and would prejudice Mr. Ray's right to a fair trial, ▇▇▇▇'s testimony should be precluded.

Respectfully submitted,
/s/
Marne L. Lenox, Esq.
Peggy Cross-Goldenberg, Esq.
Allegra Glashausser, Esq.
Neil Kelly, Esq.
*Counsel for Lawrence Ray*

cc:     AUSA Danielle R. Sassoon, Esq.
        AUSA Lindsey Keenan, Esq.
        AUSA Mollie Bracewell, Esq.