

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2022

**BY ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    ***United States v. Lawrence Ray***,
             S2 20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government writes in response to defense counsel's motion to be apprised of witness order approximately one week in advance, and in response to defense counsel's motion to exclude the summary chart or alternately to sharply narrow its contents.

    **A. Witness Order**

      In requesting the order of the Government's witnesses a week before the start of trial, the defense relied in part on certain representations about the Government's exhibit list that were simply inaccurate. For example, the Government has not "artificially" narrowed its list by "consolidating nearly 100 email exhibits into one single exhibit." This claim was based on a misunderstanding of changes to the Government's exhibits. Specifically, the Government combined approximately 85 email attachments (each of which had been numbered as a separate exhibit) with its associated parent email (combining it under the parent exhibit number). This change was not made to "artificially" narrow the Government's exhibit list, but to facilitate the presentation of email evidence at trial. The Government is not "padding" its list, but including evidence that the Government intends to present to the jury, sometimes in summary form. As defense counsel has long been aware, the defendant created and kept voluminous writings, records, and recordings over the nearly ten years of crime with which he is charged. The Government has endeavored to distill and streamline its presentation of proof, and the present volume of exhibits already reflects those efforts. The volume of exhibits is a reflection of the strength of the proof and the means by which the defendant committed his crimes.

      As to witness order, the Government proposes to inform the defense of its first several witnesses on Friday, March 4. After that, the Government proposes to notify the defense about its expected upcoming witnesses the night before the trial day or on Friday for the following Monday. These proposals account for the uncertainties that are present in any trial and the fact that the

Government is not legally required to roadmap its entire case for the defense as they are requesting. Trials are not performances that have been perfectly choreographed and scripted in advance; they are fluid and require adaptation and modification as they unfold. Given uncertainty about how testimony will come in, how cross-examination will unfold, travel logistics, and the burdens of the COVID-19 pandemic, it is unrealistic to expect the Government to have solidified an order of witnesses so far in advance. Strategic and logistical decisions about which witnesses will testify each day are often made only the prior evening and in light of the prior day's progress.

Judge Furman's handling of a similar request in an arguably more complex case is instructive. *United States v. Luis Blondet and Julio Marquez-Alejandro* is a RICO case that is expected to last approximately four to six weeks and involves allegations of multiple murders. On the question of providing notice of witness order, Judge Furman reserved decision until the final pre-trial conference but indicated that he was inclined to require the Government to provide two to three days notice of any witness it intended to call rather than the seven-day notice sought by the defense. Judge Furman cited the particular complexity and breadth of the case and the number of anticipated witnesses as a basis to require two to three days' advance notice, but not seven. *See United States v. Luis Blondet and Julio Marquez-Alejandro*, 16. Cr. 387 (JMF), Dkt. 640 at 9. As Judge Furman recognized, two to three days' notice is adequate to facilitate defense preparation without prejudicing the Government's presentation of its case.

  **B. Summary Chart**

    1. Admissibility of Videos

Federal Rule of Evidence 901(a) states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of ways to establish the authenticity of an exhibit, including testimony from a witness with knowledge, Fed. R. Evid. 901(b)(1); and the distinctive characteristics of the evidence, Fed. R. Evid. 901(b)(4). The Second Circuit has described the authenticity requirements of Rule 901(a) as "not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). "The proponent need not rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the evidence is what it purports to be." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (internal quotation marks omitted). Rule 901 is satisfied where "sufficient proof has been introduced so that a reasonable jury could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotation marks omitted). Of course, authentication "merely renders evidence admissible, leaving the issue of its ultimate reliability to the jury." *Vayner*, 769 F.3d at 131 (quoting *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001)). The opposing party remains free to "challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, with all such challenges going to the weight of the evidence rather than its initial admissibility." *United States v. Oreckinto*, 234 F. Supp. 3d 360, 365 (D. Conn. 2017) (quoting *Vayner*, 769 F.3d at 130).

Applying these principles to photographs and videos, courts have repeatedly found that the Rule 901 authentication requirements can be satisfied by witnesses who accessed and retrieved the images or videos, *see, e.g.*, *Oreckinto*, 234 F. Supp. 3d at 366; *United States v. Edington*, 526 F. App'x 584, 591 (6th Cir. 2013) ("This can be done by offering testimony from an investigator who

was present when the video was retrieved and can describe the process used to retrieve it."); or by witnesses who testified that the images and videos fairly and accurately depicted events they personally observed, *see, e.g.*, *Louis Vuitton, S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973-74 (2d Cir. 1985); *King v. Wang*, 2021 WL 5232454, at *10 (S.D.N.Y. Nov. 9, 2021). Any arguments about the chain of custody of videos or the susceptibility of videos to editing or tampering goes to the weight, not to the admissibility of the evidence. *See United States v. Ida*, 1997 WL 122753, *3 (S.D.N.Y. Mar. 18, 1997) ("The tapes are not inadmissible merely because one can conjure up hypothetical possibilities that tampering occurred." (quoting *United States v. Haldeman*, 559 F.2d 31, 109 (D.C. Cir. 1976)); *see also United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992) (explaining that a break in the chain of custody "will not necessary lead to the exclusion of evidence" because the "ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with"); *United States v. Bout*, 651 F. App'x 62, 64 (2d Cir. 2016) (explaining that a chain of custody "need not be free of defects" and alleged breaks in the chain of custody "typically do not bear upon the admissibility of evidence, only the weight of the evidence" (quoting *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003))).

Here, the videos about Felicia providing sexual services will be sufficiently authenticated for purposes of Rule 901. Felicia will testify that the defendant instructed her to make sex videos and that he then retained them. Agent Flatley will establish that each video was extracted from devices that were recovered from the defendant's residence. Special Agent Maguire, based on her familiarity with Felicia, Pollok, and the defendant, will be able to authenticate her descriptions of the videos in the chart, including her identifications of Felicia, Pollok, and the defendant's voice. Based on this testimony, the jury will have a sufficient basis to believe that the videos are genuine and authentic recordings maintained by the defendant, and there will also be an adequate basis for Agent Maguire's descriptions of the evidence. Nothing more is required for admitting the videos into evidence. *See Boykin v. W. Express*, 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016) ("Though the Second Circuit does not have a rigid formula for evaluating the authenticity of video tapes, the requisite indicia of authenticity can be created by witnesses who recall the events depicted, testimony as to the chain of custody, testimony of the person recording the events, or any other evidence tending to show the accuracy of the depictions."). Authenticating exhibits is not so rigid as defense counsel suggests – such that only one single witness, the video participant – could authenticate these videos and must remember each specific video. Even if the Government could authenticate the videos this way (and it may do so during Felicia's testimony with respect to stills from one or more of the videos), that is not what the law requires. Defense counsel can, of course, cross-examine Agents Maguire and Flatley on the limits of their knowledge with respect to what edits may have been made to the videos prior to seizure of the relevant devices. Defense counsel may also cross examine Felicia about the videos, and the limits of her recollections about specific sexual encounters or recordings. The jury is free to consider such testimony alongside Felicia's expected testimony regarding the defendant's activities and instructions regarding recordings, but this is not a basis for excluding the evidence under Rule 901.

The defense also raises a hearsay objection to the videos. But these videos were extracted from devices in the defendant's possession, and the file names were the means by which these videos were stored on the defendant's devices. Therefore, statements on the videos and all file names under which they were stored are probative of the defendant's intent, knowledge, and state of mind. *See United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006).

There is also no basis to artificially limit the number of entries on the chart, where each file is probative of the means and methods of the defendant's enterprise, including the sexual humiliation of his victims, and the collection of sensitive and humiliating material against his victims. The Government informed defense counsel that it is amenable to consolidating certain descriptions of several videos from the same date into a single description to eliminate any possibility that the jury would mistakenly infer that each video represents an entirely distinct sexual encounter with different people (and it has done so in its proposed revised chart). To further reduce the possibility of confusion, the chart is color coded to group videos from the same date, making clear to the jury that certain videos are of the same overall encounter. But the Government should not be artificially restricted from presenting direct proof of the defendant's crimes. The number of relevant videos is not needlessly cumulative—any cumulative nature of the videos is a reflection of the defendant's relentless, repetitive, and persistent methods, and his retention of significant quantities of sensitive material against his victims. It is not only the fact of the sexual encounters that is probative, but also the fact that they were recorded and kept at the defendant's direction. The Government should not be artificially restricted in putting that proof before the jury. The defense would remain free to cross examine Agent Maguire about the inclusion on the chart of videos from the same date/incident.

2. Defense Objections to the Summary Chart

With respect to the contents of the chart, the Government also disagrees with the defendant's specific objections.

- Video 1: There is no geographic limitation on the defendant's forced labor or racketeering conduct. When the defendant first met Felicia, she lived in California. This video is probative of the defendant's sexual grooming of Felicia, and the effort to desensitive her to sex with strangers—a tactic the defendant employed beginning while Felicia was living in California. In its revised chart, the Government has removed reference to Felicia being in California at the time it was filmed.

- Video 2: The Government is no longer intending to include in its description of the video that Felicia is on the phone with the defendant (though Felicia is expected to testify that she was on the phone with the defendant in Video-2). But it is appropriate to describe what she is saying on the phone. This is not inadmissible hearsay for the reasons outlined above. That the defendant had in his possession a video showing Felicia describing that she looking for someone with whom to have sex, and providing updates over the telephone, is relevant to the defendant's intent, knowledge, and state of mind. Felicia's statements, describing what she is doing and what has just occurred, are otherwise admissible as present sense impressions. *See* Fed. R. Evid. 803(1) (allowing admission of statement that "describe[s] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter"); *United States v. Gonzalez*, 764 F.3d 159, 169 (2d Cir. 2014) (describing that hearsay exception for present sense impressions are "derived from the belief that contemporaneous statements about observed events leave less time to forget or fabricate and, therefore, tend to be reliable"); *United States v. Steele*, 216 F. Supp. 3d 317, 321-22 (S.D.N.Y. 2016) ("[P]recise contemporaneity is not required." (quotation omitted)).

- Video 40: The defense objects to Video 40 on the basis that the chart should only include content of Felicia "providing sexual services to strangers." Dkt. No. 384 at 3. (This video is now entry 3 on the Government's revised chart based on a corrected timestamp). But the title of the chart is "Recordings Related to Felicia Engaged in Sexual Activity from GX 1800A and GX 2100A." This video, showing Felicia engaged in sexual activities with Pollok, falls within that category and is probative evidence of the charged offenses. Pollok's participation in the defendant's sexual grooming of Felicia, and their ongoing efforts to desensitive her to sex with strangers once she was in New York, is relevant to the charged conduct and similar to the methods and tactics that the defendant employed with several victims of the racketeering conspiracy.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/_____
    Mollie Bracewell
    Danielle R. Sassoon
    Lindsey Keenan
    Assistant United States Attorneys
    Southern District of New York
    (212) 637-2218/1115/1565

cc:    Defense Counsel (by ECF)