

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 7, 2022

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: ***United States v. Lawrence Ray***,
     S2 20 Cr. 110 (LJL)

Dear Judge Liman:

  The Government writes in response to the defense letter, filed last evening, seeking an extreme evidentiary sanction for an alleged *Brady* violation based on what it concedes was an inadvertent production error and concerning evidence that has been available for inspection since May 2020.

  The Government apologizes for the error. The Government disputes, however, that the material in question is material exculpatory information. Moreover, any conceivable prejudice from the error has been addressed by the Government's agreement not to offer the evidence in its case-in-chief and the defense's ability to use the material to the extent permitted by the rules of evidence. The defense's effort to turn an inadvertent production error regarding two victim diaries into a last-ditch attempt to exclude an entire category of powerful evidence of the defendant's guilt should be rejected.

  I. **Background**

  In the course of searching the defendant's residence and storage unit in February 2020, law enforcement officers seized, among other paper records, 84 notebooks kept by the defendant but written by his victims. As those victims will testify, the defendant encouraged his victims to write down their innermost thoughts and confessions, and then seized that material to use against them as collateral. The victim notebooks in the defendant's possession range from the mundane (pages of math homework and lecture notes) to the intimate (pages about sexual encounters), to the incriminating (pages about poisoning the defendant and causing him other harm). As alleged in the Indictment, these notebooks are proof of the means and methods of the defendant's enterprise; the defendant documented and retained victims' confessions, including through journals kept by the victims at the defendant's direction, *see* S2 20 Cr. 110 (LJL), ¶ 7(g), and he collected sensitive, humiliating, and incriminating material against his victims to further the purposes of his enterprise,

including coercing the continued obedience of the victims through the knowledge of, and threat of exposing, their secrets, *see id.* ¶ 7(i).

In preparing discovery in this case and in part for the convenience of the defense, the FBI scanned all seized paper records for ease of production and review. The FBI provided those scans on a disc to the Government. In producing the scanned versions on May 21, 2020, it appears that the Government made a copying error from the FBI disc. Instead of producing scanned copies of all 84 notebooks, the production included a pdf file for each notebook, but instead of 84 unique files, two of those scans were duplicates of other notebooks in the production. The discovery letter described this material as "scanned documents seized in premises search," and the file structure for the production included subfolders with names like "1B021_YALITZA ROSARIO NOTEBOOK," which characterized the content of the scanned item and named each notebook with a unique identifier. Unfortunately, the Government did not notice at the time of the production that two of the scanned notebooks were omitted from the scanned production, and duplicates of other notebooks were produced instead.[1] It is apparent that the defense did not notice the unfortunate duplication, either; although the production occurred in May 2020 – over 20 months ago – the defense only Friday afternoon brought the error to the Government's attention. Once the materials were scanned and produced, as the defense surely knows, the defense at any point could have requested to inspect the underlying paper records. *See* Fed. R. Crim. P. 16(E) (requiring the Government to make records available for inspection and to allow the defense to copy such records). Until last week, at no point during the discovery and pretrial phase of this case did the defense request to see the physical notebooks (or any other seized records or devices).

On its February 15, 2022 exhibit list, the Government included 84 notebooks seized from the defendant's residence/storage unit that were written by his victims (these notebooks were part of the 1500 exhibit series, and listed each exhibit by the FBI evidence number and pdf file name used in the original discovery).[2] On February 17, 2022, the Government produced stamped copies of its electronic exhibits on a hard drive to the defense and produced a draft summary chart listing the number of notebooks written by each victim found in the defendant's possession. The Government did not notice at the time that the electronic version of the notebook exhibits repeated the original discovery error and contained two duplicates. The Government, however, subsequently marked each of the physical notebooks with corresponding exhibit stickers, and the physical version of the exhibits included the two notebooks that had been omitted from the scanned production. Far from trying to conceal evidence, or viewing these notebooks as exculpatory, the Government intended to introduce them as proof of the defendant's guilt in its case-in-chief.

On February 23, 2022, the defense asked for the first time to inspect the physical evidence. The Government promptly made the material available, and the defense viewed the material on two separate occasions: March 1, 2022 and March 4, 2022. On Friday, March 4, 2022, at 2:17 pm, the defense emailed the Government, flagging that two physical journals, those marked GX 1550 and GX 1563, did not match the electronic version of these exhibits and asked where those journals

---

[1] Specifically, "1B014 Black Notebook 001" and "1B014 Black Notebook 002," were reproduced as "1B024 Black Notebook 001" and "1B024 Black Notebook 002," and the correct 1B024 notebook scans that corresponded to these 1B024 file names were omitted.

[2] The Exhibit List identified each scanned notebook by a separate exhibit number, reflecting the fact that at the time, the Government was still not aware of the error.

could be found in the original discovery. The Government located the correct scans in the original disc of scanned material provided by the FBI, but determined that the correct scans of GX 1550 and 1563 had inadvertently been omitted from discovery, and duplicates of two other notebooks produced instead. The Government emailed the correct scans to the defense at 5:52pm on March 4, 2022. The Government had intended to offer these two notebooks into evidence at trial, but recognizing the error informed the defense by email:

> Although the physical items have been available for inspection since they were seized in this case, a scanned version of these notebooks was inadvertently never produced because duplicates of the scans you sent me were produced instead. Given the inadvertent mislabeling and omission in the scanned discovery, we are going to remove these from our exhibits (and from the notebook summary chart).

*See* Def. Ex. A (email exchange). The defense filed its present demand on Sunday, March 6, 2022, at approximately 9:00pm.

One of the notebooks in question was written by victim-witness "Felicia" in 2008, when she was around 26 years old and about three years before she met the defendant. Some pages in the notebook describe a "lovely night w/ JG," where she describes being made to feel ▇▇▇▇▇ and lists numerous adjectives, including: ▇▇▇▇▇ In another entry in the notebook, Felicia describes a romance with a man on vacation who is "such a good person," so "sweet, thoughtful, smart, funny" and "handsome." She describes ▇▇▇▇▇

The other notebook was written by victim-witness "Yalitza" in 2010—likewise before she met the defendant—and includes drafts for readmission to Columbia following a medical leave.

## II.     Applicable Law

The Government has an obligation under the Due Process Clause to make a timely disclosure of any exculpatory or impeaching evidence that is material and in its possession. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). A violation of this obligation deprives the defendant of a fair trial only when he "show[s] that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001).

## III.    Discussion

These two notebooks—which were unintentionally omitted from discovery and which the Government intended to introduce into evidence at trial—are not exculpatory.

With respect to Felicia, the fact that she ▬▬▬▬▬▬▬▬▬▬ with two men she liked before meeting the defendant is irrelevant to whether he later forced her to engage in sexual services with complete strangers on video and in public places. Indeed, the Federal Rules of Evidence recognize that evidence "to prove that a victim engaged in other sexual behavior" or to "prove a victim's sexual predisposition" is prohibited. Fed. R. Evid. 412. What the defense describes as *Brady* is nothing more than the "sexual stereotyping" that Rule 412 was designed to preclude as irrelevant and prejudicial. *See* Fed. R. Evid. 412, Notes of Advisory Committee on Rules. There is no other proper purpose for such evidence here. Diary entries of a woman having positive romantic experiences have no bearing on the proof contained in the video summary chart: that the defendant forced Felicia to have sex with strangers on film and then threatened to humiliate her with those videos. It should go without saying that the fact that Felicia ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ does not excuse the defendant's conduct.

With respect to Yalitza's notebook, the Government has been transparent from the outset that the defendant's victims suffered mental health problems that predated meeting the defendant and that is likewise disclosed in the witnesses' 3500 material. It is also not a revelation that the defendant took some notebooks that the victims wrote before knowing him. Indeed, four other marked exhibits are journals of Felicia's dated from before she met the defendant (*See, e.g.*, GX 1551, 1552, 1553, 1554), and these were produced in the original discovery. What is relevant about these journals is the fact that the defendant sought these and then kept them, as doing so was central to his efforts to identify vulnerabilities about his victims and then to collect sensitive material about his victims so that he could later use that information to extort and otherwise victimize them. That the defendant also urged his victims to document their innermost thoughts and their confessions while he knew them is not contradicted by the fact that some of them also may have kept journals prior to meeting him. If anything, it shows that he exploited that practice to the benefit of the enterprise.

Regardless, even if the Court were to find exculpatory value in these notebooks, the defense has suffered no prejudice.[3] The Government unilaterally and without prompting has removed these two notebooks from its exhibit list, even though they were available for inspection in May 2020. *See* Fed. R. Crim. P. 16(E) (requiring the Government to make records available for inspection and to allow the defense to copy such records). The defense has been aware of the information contained in the two notebooks since Friday, and has had and will have ample opportunity to make use of the material, as permitted by the rules of evidence. The defense claims in a few sentences that the notebooks are exculpatory and offers to explain its theory *in camera*, undermining its premise that the exculpatory value could have been discerned by the Government. Notably, the defense does not even feign that it will seek to introduce the notebooks into evidence. Moreover, the defense has not identified any need for further investigation of the notebooks, or

---

[3] The defense insists that had the Court ordered the Government to timely identify all *Brady* material, "the March 4 Notebooks would have been discovered at that time." But such an order would not have preempted the inadvertent error here—the Government was operating under the good faith misunderstanding that all of the relevant paper items seized from the premises searches had already been scanned and produced. With respect to witness interviews, the notes of which were not produced in Rule 16 discovery, the Government made more than ten letter disclosures, and notably the defense has not identified any purported *Brady* material in the 3500 production that had not previously been disclosed.

that they have prompted a need for other avenues of investigation. In this regard, both Felicia and Yalitza are expected to testify, but neither is scheduled to testify during the first week of trial, giving the defense ample time to prepare to use the notebooks.

***

Even though the Government made the notebooks available and does not concede that they are *Brady*, it has stated that it will not offer the notebooks in its case in chief (despite their obvious relevance) and put the decision to use them (consistent with the rules) in the hands of the defense. Yet, the defense proposes a drastic remedy to exclude swaths of the Government's proof and argument at trial that bears no relation to any asserted prejudice. The defense now has written materials showing that Felicia had romantic desires before she met the defendant, and it is free to try to figure out a way to argue that this somehow impeaches the Government's case. Similarly, it now has additional evidence that one victim had mental health concerns before she met Ray, and can likewise try to use this evidence in its defense. The asserted defense value of one of the notebooks is squarely prohibited by Federal Rule of Evidence 412, while any value of the other appears duplicative of other material long ago produced. In short, the inadvertent production error regarding two of the 84 notebooks does not justify the severe remedy of precluding the Government from offering evidence of the defendant's sexual victimization of Felicia or evidence that he psychologically manipulated *all* his victims, as requested. Indeed, the defense cites no precedent for such an excessive remedy for an inadvertent production error, where any prejudice was minimal and has been cured.

The Government sincerely apologizes for the error and respectfully requests that the defense motion be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/__Danielle Sassoon___
Mollie Bracewell
Danielle R. Sassoon
Lindsey Keenan
Assistant United States Attorneys
Southern District of New York
(212) 637-1115

cc:   Defense Counsel (by ECF)