**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

March 17, 2022

**Via ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:   United States v. Lawrence Ray**
         **20 Cr. 110 (LJL)**

Dear Judge Liman:

  We write briefly to reply to the arguments raised by counsel for Felicia Rosario that Ms. Rosario's intentional, voluntary recording of her conversations with her therapist and attorneys, and her intentional, voluntary transmission of these recordings to a documentary filmmaker she knew was making a film about the events at issue in this case was an "inadvertent disclosure" that does not give rise to a waiver of the psychotherapist-patient or attorney-client privilege. This argument fails for several reasons.

  As an initial matter, the central premise of Ms. Rosario's argument that her creation of recordings and transmission of these recordings to a member of the media is protected by Federal Rule of Evidence 502 and the "inadvertent disclosure" doctrine is erroneous. Rule 502, by its very terms, applies to "inadvertent" disclosures "made in a federal proceeding[;] to a federal office or agency"; or "in a state proceeding." Fed. R. Evid. 502. But Ms. Rosario's transmission of her recordings to a member of the media did not occur in a federal proceeding, to a federal officer or agency, or in a state proceeding. Ms. Rosario created and shared these recordings with Mr. Heinzerling in their capacities as private citizens—not as litigants or as respondents to subpoenas producing files subject to a confidentiality order. Ms. Rosario intentionally created and shared these recordings with Mr. Heinzerling entirely outside the context of an ongoing litigation and, therefore, entirely beyond the protections of Rule 502. *Cf.* S. Rep. No. 110-264, at 3 (Feb. 25, 2008) ("The bill provides a new Federal Rule of Evidence 502 to limit the consequences of inadvertent disclosure, thereby relieving *litigants* of the burden that a single mistake during the discovery process can cost them the protection of a privilege."); Fed R. Evid. 502, Advisory Comm. Note 2007(noting that Rule 502 was motivated by a desire for "*[p]arties to litigation* [. . .] to know, for example, that if they exchange privileged information pursuant to a confidentiality order, the court's order will be enforceable" (emphasis added)).

Similarly misguided is counsel's attempt to excuse Ms. Rosario's knowing creation and sharing of recordings with a member of the media by referring to her as "not a lawyer," as having "no legal training," and as a "lay person." (Doc. 457 at 4, 5.) The implicit argument that only counsel can waive the privilege is categorically incorrect. "It is long-established in the Second Circuit that subsequent disclosure of materials *by a client* to a third party waives any privilege that may once have been attributable to the materials. Accordingly, any such attorney-client privilege protection does not continue when *the client voluntarily discloses* the documents to a third party." *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16 Civ. 6392 (JPO), 2019 WL 2121690, at *2 (S.D.N.Y. May 15, 2019) (quotations omitted) (emphasis added). Courts in the Second Circuit have long held that a client may waive privilege by sharing the substance or contents of privileged communications with a third party. *See, e.g.*, *Church of Scientology of CA v. Cooper*, 90 F.R.D. 442, 443 (S.D.N.Y. 1981) (holding that "by disclosing to third parties the contents of her communications with [her attorney] concerning the training sessions he conducted with her, [client] waived any privilege which may have protected those communications").

Even if the "inadvertent disclosure" doctrine did apply here, Ms. Rosario's knowing and intentional production of these recording to a member of the media mandate a finding of waiver. "To determine whether an inadvertent disclosure waived the privilege, courts in this Circuit balance four factors: [1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure [and 4] overreaching issues of fairness." *In re Nat. Gas Comm. Litig.*, 229 F.R.D. 82, 86 (S.D.N.Y. 2005). All of these factors weigh in favor of a finding of waiver here.

*First*, Ms. Rosario not only failed to take any precautions to prevent the disclosure of her recordings, she herself intentionally created these recordings and shared them with a documentary filmmaker who is making a movie about the events in this case. This is not an instance of a few privileged files in a massive discovery production inadvertently slipping through the cracks of a multi-level review, as in the cases counsel for Ms. Rosario cites. While counsel attempts to excuse Ms. Rosario's conduct by asserting that Mr. Ray introduced her to Mr. Heinzerling and referring to her purported mental state when the first recordings were made in July 2020 (Doc. No. 457 at 1–2), Ms. Rosario turned these recordings over to Mr. Heinzerling a year later, *in June 2021*. This was well after Ms. Rosario and Mr. Heinzerling developed their own personal relationship, which (the limited materials counsel has been able to review to date reveal) included celebrating birthdays together, traveling together, sharing meals together, and the exchange of gifts and presents. Indeed, this relationship continues to this day. Ms. Rosario communicated with Mr. Heinzerling until March 7, 2022 (3508-067), and facilitated his interviews with other members of the Rosario family only last month (3508-068). Ms. Rosario's decision to knowingly create and share these materials with Mr. Heinzerling thus cannot be excused by her purported "mental and physical exhaustion." (Doc. 457 at 2.) Ms. Rosario clearly formed a close relationship with Mr. Heinzerling and provided him these materials, as reflected in the 3500 material the government shared, because she "she wants her story to come out through this documentary." (3508-069.) Indeed, according to the government's 3500 material, Ms. Rosario signed a release expressly permitting Mr. Heinzerling to use material and information he received from her. (3508-068.)

*Second*, based on counsel's representations, they have still not "rectif[ied] the error" of the sharing of these materials with a third party because Hulu is still in possession of and has not

agreed to return or refrain from listening to the recordings at issue. Nor does Hulu have any obligation to do so; whatever informal agreement Ms. Rosario had with Mr. Heinzerling to not review certain materials she provided him is apparently not legally binding (or it would have been invoked by counsel).

*Third*, counsel's arguments about the "scope of disclosure" are inapposite for the reasons stated above—Ms. Rosario did not make an "inadvertent production of a relatively low proportion of documents in a large production" in connection with an ongoing litigation governed by a protective order with specific provisions "to anticipate and deal with the inadvertent production of privileged material," as in the case counsel cites. (Doc. No. 457 at 5 (citing *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *1, 7 (S.D.N.Y. May 21, 2013)). She voluntarily and intentionally created and shared with a member of the media recordings over which her counsel retroactively asserts a privilege. As the case counsel cites makes clear, the inadvertent disclosure doctrine arises out of the recognition that the accidental disclosure of privileged material is "inevitable in complex litigation involving the production of tens of thousands of documents." *BNP Paribas*, 2013 WL 2322678, at *8. There was nothing "inevitable" about the circumstances giving rise to Ms. Rosario's creation and sharing of the recordings at issue here.

*Fourth*, the issue of fairness weighs heavily in favor of finding waiver here. Ms. Rosario apparently misrepresented or, at best, failed to disclose to the government for more than a year that she had been sharing with a member of the media hundreds of files, including hours of audio and video recordings, directly related to the events in this case and the subjects of her upcoming testimony. The defense is only now receiving this information and is attempting to triage and review these materials mid-trial. Further delay in the production of highly relevant materials would be significantly prejudicial to the defense, especially if such recordings are denied to the defense in this action and subsequently relied upon or used in the public documentary film that is being made about this case.

Accordingly, we respectfully request that that Court compel the production of any materials that Ms. Rosario shared with Mr. Heinzerling, which have been withheld from the defense on the basis of a purported privilege.

                                Respectfully submitted,

                                */s/*

                                Marne L. Lenox
                                Peggy Cross-Goldenberg
                                Allegra Glashausser
                                Neil P. Kelly

                                *Counsel for Lawrence Ray*

cc:    Counsel of record
        Parvin Moyne, Esq.; Kate Powers, Esq. (counsel for Felicia Rosario)