

**PARVIN DAPHNE MOYNE**
+1 212.872.1076/fax: +1 212.872.1002
pmoyne@akingump.com

March 17, 2022

VIA ELECTRONIC COURT FILING

MEMO ENDORSEMENT.
The Court will hear argument from parties regarding the motion to compel at 1:00PM tomorrow, March 18, 2022 in Courtroom 24B.

3/17/2022 SO ORDERED.
LEWIS J. LIMAN
United States District Judge

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Lawrence Ray*, 20 Cr. 110 (LJL)

Dear Judge Liman:

We write on behalf of Felicia Rosario to oppose Defendant's request to compel the production of audio recordings of communications between Ms. Rosario and her attorneys, and between Ms. Rosario and her therapist. (Dkt. 450). Ms. Rosario's inadvertent production of these communications did not waive the attorney-client or psychotherapist-patient privileges that apply to the recordings.

## I. Background

### *a. Audio Recordings of Attorney-Client & Psychotherapist-Patient Communications*

Lawrence Ray was arrested on February 11, 2020. At the time, Ms. Rosario resided with Mr. Ray and believed she and he were in a romantic relationship. Shortly after Mr. Ray's arrest, Akin Gump Strauss Hauer and Feld LLP ("Akin Gump") was engaged to represent Ms. Rosario. Between July 2020 and January 2021, Ms. Rosario recorded six conversations with counsel on a recorder device. Counsel was unaware that Ms. Rosario was recording their conversations.

While these privileged conversations were recorded, Ms. Rosario was recovering from the influence of Mr. Ray, and had difficulty building trust with people outside of Mr. Ray's circle. For example, when the first recordings were made in July 2020, Ms. Rosario referred to Mr. Ray as her "husband"—though they were never legally married, she was living with Isabella Pollok, and she was in contact with, and referred to Mr. Ray's family members as "family"—though they are not biologically related. Additionally, as a result of Mr. Ray's influence, Ms. Rosario was in the practice of recording herself and conversations with others.[1] Notwithstanding her feelings of

[1] To the extent the Court has further questions regarding why Ms. Rosario recorded particular communications, Akin Gump is prepared to provide further details *ex parte*.






distrust and her practice of recording herself, when she made the recordings, Ms. Rosario did not intend to share them with anyone (and did not do so). The six audio recordings with Akin Gump are reflected in the accompanying privilege log. *See* Exhibit A.[2]

During this same period, Ms. Rosario was seeing a mental health therapist. Ms. Rosario often recorded personal voice journals where she privately discussed her mental health. On May 9, 2021, Ms. Rosario recorded a voice journal detailing a conversation with her therapist. On June 3, 2021, Ms. Rosario recorded a private therapy session. We understand the therapist was not aware that the session was recorded. As with the recordings of counsel, at the time of these recordings, Ms. Rosario did not intend to share them. The two recordings involving Ms. Rosario's therapist are reflected in the accompanying privilege log. *See* Exhibit A.[3]

*b. Ms. Rosario's Contact with Filmmaker*

Prior to Mr. Ray's arrest, Mr. Ray introduced Ms. Rosario to Zachary Heinzerling, a documentary filmmaker associated with Hulu. After Mr. Ray's arrest, Ms. Rosario maintained contact with Mr. Heinzerling. Although Ms. Rosario understood that Mr. Heinzerling was working on a film related to Mr. Ray, Ms. Rosario felt comfortable sharing details about her life with Mr. Heinzerling, who represented that he would keep the information she provided him confidential consistent with the reporter's privilege.

In or around June 2021, Ms. Rosario gave Mr. Heinzerling a recorder containing 70 audio files. At this time, Ms. Rosario was mentally and physically exhausted, and did not recall the exact contents on the recorder. Ms. Rosario informed Mr. Heinzerling that the recorder included sensitive materials that she was not ready for him to review, including voice journals documenting her healing process after the trauma she suffered from Mr. Ray. Mr. Heinzerling requested to download the files, and Ms. Rosario permitted him to do so—only after he agreed that he would not review the materials on the recorder until, and unless, he received express permission to do so. After Mr. Heinzerling returned the recorder, Ms. Rosario reviewed its contents and realized that it

---

[2] On July 22, 2020, when Ms. Rosario was visiting the Defendant's father, Lawrence V. Grecco, she recorded a conversation between Mr. Ray, Mr. Grecco, and Peggy Cross-Goldenberg of the Federal Defenders of New York. Akin Gump did not review this recording, and instructed the government not to review it. Ms. Rosario does not claim privilege over this recording.

[3] In its March 15, 2022 letter, the defense states that Ms. Rosario "potentially" provided to the documentary filmmaker: "*certain medical records over which Ms. Rosario has asserted a privilege in connection with the Rule 17 Subpoena litigation*." (Docket No. 443 at 2.) (emphasis added). (Docket No. 443). This is incorrect. The recordings of privileged communications among Ms. Rosario and her therapist in 2021 that she inadvertently provided to the filmmaker are unrelated to the medical records provided in response to the Defendant's Rule 17 Subpoena.





included privileged conversations with her attorneys and her therapist. Ms. Rosario immediately asked Mr. Heinzerling not to review the privileged content. Mr. Heinzerling agreed not to review the files, and to Ms. Rosario's understanding, he never did.

On Thursday evening, March 10, 2022, Akin Gump learned of Ms. Rosario's inadvertent disclosure and began gathering information about what was disclosed. On Monday morning, March 14, 2022, Akin Gump contacted counsel for Hulu to claw back the privileged material inadvertently shared with Hulu. Counsel for Hulu represented that they could not respond to the request because Hulu is responding to a defense subpoena in this case. Akin Gump continues to assert Ms. Rosario's privilege and has repeatedly requested the return or destruction of the files.

## II. Argument

There has been no waiver of privilege here. Ms. Rosario did not intentionally provide Mr. Heinzerling with privileged materials, and she immediately instructed him not to listen to the privileged material when she learned of the disclosure.

### *a. Recordings with Ms. Rosario's Attorneys and Therapist Are Privileged*

The recordings among Ms. Rosario and her attorneys at Akin Gump are protected by the attorney-client privilege. "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *See e.g. In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). Ms. Rosario's conversations with her attorneys were intended to be kept confidential and were for the purpose of obtaining or providing legal assistance concerning this criminal matter. Therefore, the recordings of Ms. Rosario's conversations with Akin Gump are clearly privileged.

The psychotherapist-patient privilege protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996). As this Court has already stated, to invoke the psychotherapist-patient privilege, there must be "(1) confidential communications … (2) between a licensed psychotherapist and patient … (3) in the course of diagnosis or treatment." *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 374367, at *3 (S.D.N.Y. Feb. 8, 2022) (citations omitted). The recordings made during and regarding Ms. Rosario's therapy sessions with a licensed therapist fall squarely within the psychotherapist-patient privilege.

### *b. Ms. Rosario Did Not Waive Privilege*





Inadvertent disclosure does not operate as a waiver where "the holder of the privilege or protection took reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(d). In evaluating a waiver, courts look at a number of factors, including: the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of the discovery, the extent of the disclosure and an over-reaching issue of fairness. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 104 F.R.D. 103, 105 (S.D.N.Y. 1985); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A*., 2013 WL 2322678, at *10 (S.D.N.Y. Mar. 7, 2013) (no waiver of privilege after inadvertent disclosure where the privilege-holder "took reasonable precautions to protect the documents and actively attempted to rectify the error once the Documents were identified."). "[A]s the waiver inquiry depends heavily on the factual context in which the privilege was allegedly waived, courts must look carefully at the particular circumstances of each case to determine whether, and to what extent, waiver occurred." *Orbit One Commc'ns, Inc. v. Numerex Corp*., 255 F.R.D. 98, 107 (S.D.N.Y. 2008).

i. <u>Reasonableness</u>

Courts look at the evidence as a whole when analyzing reasonableness of a waiver. *See e.g., BNP Paribas Mortg. Corp.*, 2013 WL 2322678, at *7. Ms. Rosario acted reasonably here. She directed Mr. Heinzerling not to review the recorder until she did so first. When she realized that the recorder included privileged materials, Ms. Rosario—who is not a lawyer—did what she thought was proper in order to informally "claw back" the recordings. Inapposite are cases where a third party is given free rein to review privileged material. *In re Horowitz* 482 F.2d 72, 82 (2d Cir. 1973) (Third-party "had the authority to look at any legal communications."). Ms. Rosario took "affirmative action to preserve confidentiality" of the privileged materials and "directed [the third party] not to look at them." *Id*. Mr. Heinzerling agreed.

ii. <u>Time</u>

"[C]ourts generally allow a reasonable amount of time to claw back inadvertently disclosed documents, measured in days from the time that the disclosure is discovered." *United States v. Nunez*, 2013 WL 4407069, at *3 (S.D.N.Y. Aug. 16, 2013). Here, upon realizing her error, Ms. Rosario immediately provided instructions limiting the scope of Mr. Heinzerling's review. *See Apionishev v. Columbia Univ. in the City of New York,* 2012 WL 208998, at *11 (S.D.N.Y. Jan. 23, 2012) (the "immediate assertion of privilege weighs heavily against a finding of waiver" where the party acted within minutes of learning of the mistaken disclosure). When she initially produced the recorder, Ms. Rosario simultaneously instructed Mr. Heinzerling <u>not</u> to review any files until she gave explicit permission to do so. When she reviewed the files, she immediately asked Mr. Heinzerling not to review the privileged communications and received his agreement. Further





still, upon discovering Ms. Rosario's inadvertent production of privileged communications, within a matter of days, Akin Gump formally requested to claw back any privileged material through Hulu's counsel.

iii. Scope of Disclosure

The limited scope of the disclosure weighs in favor of protecting privilege. The "[i]nadvertent production of a relatively low proportion of documents in a large production under a short timetable due to mistake should be and usually is excused." *BNP Paribas Mortg. Corp.*, 2013 WL 2322678, at *6 (internal quotations omitted). Ms. Rosario shared over 11,000 files with Mr. Heinzerling, which we understand were produced to defense counsel this week. (Dkt. 450, Exhibits A-B). Akin Gump requested that just eight files be withheld from the production.

iv. Fairness

Finally, fairness weighs heavily in favor of protecting privilege here. Neither party will be prejudiced by maintaining privilege—as neither party has reviewed the privileged communications or relied on them in any way. *See e.g., Nunez*, 2013 WL 4407069, at *3 (no waiver where it was unclear how the party would be prejudiced by the suppression of the privileged materials "beyond the deprivation of information to which it was not originally entitled"). Ms. Rosario is still healing from intense trauma brought on by a decade of abuse. At the time of her inadvertent disclosure, her mental health was poor and she struggled to reintegrate into society. She has no legal training on the issue of privilege, and Ms. Rosario promptly tried to rectify the situation in the manner she believed was sufficient.

## III. Conclusion

Ms. Rosario's actions do not constitute a waiver of privilege because her actions as a lay person were reasonable given her circumstances, her actions to rectify the situation were prompt, the scope of the disclosure was minimal, and waiver of Ms. Rosario's privilege would be unfair. We respectfully request the Court hold that privilege has not been waived as to the recordings identified on Exhibit A.

Respectfully submitted,

/s/ *Parvin Daphne Moyne*
Parvin Daphne Moyne
Katherine L. Powers






Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel: 212-872-1000

*Counsel for Felicia Rosario*

cc: *Counsel of record*