

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 23, 2022

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    ***United States v. Lawrence Ray***,
              S2 20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government writes in response to the defendant's motion to strike the testimony of FBI Forensic Examiner Matt Frost. (Dkt. No. 461.) This is the defendant's third effort to exclude Mr. Frost's testimony about the authenticity of data retrieved from Backpage servers and it should be denied for all the reasons that the Court has already set out.

      During the conference on March 7, 2022, this Court denied the defendant's motion to exclude Mr. Frost's testimony on the basis that it was undisclosed expert testimony. *See* Ex. A, Final Pre-Trial Conference on March 7, 2022, Tr. at 32:24-25. By order dated March 16, 2022, the Court denied the defendant's March 15, 2022 motion for reconsideration regarding Mr. Frost's testimony. (Dkt. No. 442 (Def. Ltr.); Dkt. No. 454 (Order).) As the Court noted in ruling that Mr. Frost's testimony was admissible as non-expert testimony, the Second Circuit already has ruled similar testimony is not non-expert testimony. *See United States v. Marsh*, 568 F. App'x 15, 16–17 (2d Cir. 2014) (summary order) (holding that agent testimony on use of Cellebrite technology to retrieve text messages and other data from a cellular telephone was not expert testimony). During Mr. Frost's testimony, defense counsel moved to strike the testimony of Mr. Frost as expert testimony and then submitted a letter brief in support on March 21, 2022. Nothing about Mr. Frost's testimony casts doubt on the Court's prior rulings.

      Mr. Frost has testified approximately 12 times as a lay witness to authenticate data retreived from the Backpage servers. Mr. Frost previously extracted Backpage data in a different format – namely, with the data from advertisements in a densely formatted excel spreadsheet with dozens of columns and dozens, if not hundreds, of rows depending upon the number of advertisements corresponding to whatever identifiers were queried. On some occasions, including in this District, Mr. Frost has testified as a lay witness about the authenticity of data contained in such charts. *See United States v. Rivera*, 19 Cr. 131 (PAE). On some occasions, including in this District, Mr. Frost has testified as a lay witness about advertisements that were manually reconstructed from the underlying data in the excel spreadsheets, and admitted as summary charts under Federal Rule of

Evidence 1006. *See United States v. Benjamin*, 18 Cr. 847 (JSR). In addition, Mr. Frost has testified to authenticate subpoena returns that were produced by Backpage prior to its shutdown by the FBI. *See United States v. Rodney Kent,* 18 Cr. 417 CMR (E.D.Pa). As he indicated during his testimony, Mr. Frost has responded to thousands of law enforcement requests for data from the Backpage servers seized by the FBI. In order to facilitate his ability to respond to law enforcement requests, he has created a program with the assistance of a computer scientist to retrieve data related to a particular advertisement – for example, the title, the body of the advertisement, the posting time, and the associated administrative data – in a PDF format that is more readable than the chart format in which Mr. Frost previously retrieved data. In February 2022, Mr. Frost testified as a lay witness about reconstructions created with this tool in *United States v. Cory Hereford,* 19 Cr. 87 WMC (W.D.Wi).

Defense counsel in *United States v. Rodney Kent*, in the Eastern District of Pennsylvania, moved to exclude Mr. Frost's testimony on the basis that it was expert testimony. 18 Cr. 417 CMR (E.D.Pa). There, it appears that Mr. Frost was authenticating subpoena returns produced by Backpage prior to its shutdown by the FBI. As the Government there explained, Mr. Frost "will not offer any opinion testimony, make predictions, or answer hypothetical questions," thus he will not be providing expert testimony. *United States v. Rodney Kent*, 18 Cr. 417 CMR (E.D.Pa), Dkt. No. 196 (citing *United States v. Kale*, Criminal No. 09-264-3, 2010 WL 1718291, at * 7 (E.D.Pa. Apr. 26, 2010) ("somewhat technical" explanation of records by witness was based on "the knowledge he acquired while serving as custodian of records, not on specialized knowledge within the scope of Rule 702."); *United States v. Ransfer*, 749 F.3d 914, (11th Cir. 2014) ("Since the witness did not offer any opinions, the District Court could not have erred in admitting the testimony under Rule 701."); *United States v. Cooper*, 375 F.3d 1041, 1045-47 (10th Cir. 2004) (custodian of records could explain computer records without being designated as expert witness)). The Court allowed Mr. Frost to provide lay testimony.

Similarly, in this case, Mr. Frost simply confirmed that various data was retrieved from the Backpage servers and configured to correspond to each advertisement. He did not offer opinions, make predictions, or answer hypothetical questions. His testimony in this case falls squarely within the realm of permissible lay witness testimony. Prior Second Circuit rulings distinguish between data retrieval and expert testimony. Mr. Frost testified about the retrieved data and the fact that this data originated from Backpage servers with which he has worked extensively. *Marsh*, 568 F. App'x at 16–17 ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise" (quoting *United States v. Rigas,* 490 F.3d 208, 224 (2d Cir. 2007)); *see also United States v. Cuti,* 720 F.3d 453, 457–58 (2d Cir. 2013) ("The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, *see* Fed. R. Evid. 602, while opinion testimony can be presented by either a lay or expert witness, see Fed. R. Evid. 701 & 702." (internal quotation marks, punctuation, and citation omitted)). Mr. Frost has personal knowledge about the fact that this data originated from the Backpage servers and that its configuration replicates Backpage's prior subpoena returns.

Defense counsel's characterization on cross examination of the reconstructed advertisements as Mr. Frost's "opinion," about the original appearance of the advertisements, *see* Tr. 628:25 – 683:2 (Q. "So the reconstructed ad is essentially your opinion as a forensic analyst

about what the ad originally looked like?" A. "Yes, I guess you could say it like that."), does not alter the fact that Mr. Frost has personal knowledge about the source of the data (the Backpage servers), and the particular exhibits. Mr. Frost testified that he confirmed that the particular data contained within the offered exhibits each came from a particular Backpage advertisement. As Claudia Drury subsequently testified, the reconstructed advertisements contain the photographs and text that appeared in her original ads. *See* Tr. 906:23-907:3 ("it says reconstructed ad, but it's the language I used and a picture of me"; "Q: When you say reconstructed ad, does this generally look like the ads you posted on Backpage? A: Yeah, the formatting is different, but the words and everything, yeah."; Tr. 908:8-11 ("The Court: I have one question. Can you put it back up? Is the written language your content? Witness: Yes.").

The Government relied on the Court's prior rulings deeming Mr. Frost's testimony permissible lay witness testimony. Based on those rulings, the Government called Mr. Frost early in its witness order, and did not provide expert notice related to Mr. Frost's testimony or attempt to offer Mr. Frost as an expert. If the Court had ruled otherwise on March 7 or March 16, the Government could have cured defense counsel's objection by calling Mr. Frost later in the witness order, providing expert notice weeks in advance of his testimony, and then offering Mr. Frost as an expert at trial. *See, e.g.*, *United States v. Lopez*, 2019 WL 1570818, at *5–6 (S.D.N.Y. Apr. 11, 2019) (ordering supplemental expert disclosure two days before expert testimony). The Government would be substantially prejudiced if the Court were to reconsider its ruling now, after Mr. Frost's testimony has been offered, especially in view of the fact that Mr. Frost's testimony about the backpage servers and advertisement reconstructions did not deviate in any material way from what the Government anticipated and previously proffered to the Court.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/__Mollie Bracewell___
Mollie Bracewell
Danielle R. Sassoon
Lindsey Keenan
Assistant United States Attorneys
Southern District of New York
(212) 637-2218

cc:   Defense Counsel (by ECF)