

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 25, 2022

**BY ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Lawrence Ray*,
             S2 20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government writes in advance of Felicia Rosario's testimony to provide a proffer of the anticipated relevance of a threat made by the defendant's father, identified in briefing as CC-2. *See* Dkt. 323 at 11-12. The Government is attaching a recording that has been marked as Government Exhibit 1685, and which was obtained from materials recorded by Ms. Rosario and provided to the Hulu documentary team. The recording captures a threat made by CC-2 that Ms. Rosario had otherwise been expected to describe, between approximately 6:30-7:20 of the recording's timestamps. *See* Ex. A (GX 1685).

      The Government expects that Ms. Rosario will testify, in sum and in substance, that after his arrest, the defendant conveyed instructions and message through CC-2 to Ms. Rosario and Isabella Pollok. These messages establish that CC-2 conspired with the defendant to ensure the loyalty of Ms. Rosario and to identify and collect the blackmail materials on his victims that the defendant had generated over a period of years. As Ms. Rosario is expected to testify, among other instructions, CC-2 conveyed to Ms. Rosario and Pollok that they should collect information against his victims, which Ms. Rosario understood to be videos and recordings involving the individuals whom the defendant had accused of poisoning. He also conveyed messages about Ms. Rosario's expected continued loyalty.

      The jail calls corroborate CC-2's role in transmitting messages for the defendant to Ms. Rosario and Pollok and passing messages back to the defendant. In a recorded jail call from May 24, 2020, produced in discovery under Bates number US_080301, the defendant states: " "Let Izzy know, by the way, she signed on forever. You understand? Tell her and tell Fela the same thing." (5:02 – 5:23). Ms. Rosario is expected to testify that she was told by CC-2 that she signed on forever. Ms. Rosario also indicated that she provided CC-2 with portions of song lyrics to convey her ongoing loyalty to the defendant, which is corroborated by recorded jail calls. For example, on GX 701-T, CC-2 informs the defendant that ""And you will have my love forever as

we have forever loved each other," and then later says, "That – I was told you give you that from uh, Fela."

Recorded jail calls otherwise make clear that CC-2 was receiving instructions from the defendant about amassing evidence against the victims. For example, in a recorded jail call from June 7, 2020, which has been marked as Government Exhibit 701, the defendant tells CC-2 that: "We need to get it- to do it with all of the audio. We need to categorize the evidence like um, there's certain things, like specifically [UI] to Claudia where she was talking about setting me up. Then there's ones that are confessions about the poisoning. Then there's ones that were threats. You follow what I'm saying?" In the same recording, the defendant goes on to say: "[A]nything negative about Dan we want to make sure we index, categorize, we know where it is and make sure we have copies of it available[.]" Later, the defendant again makes explicit the type of materials that he is asking CC-2 to marshal: "And then, there're also emails or letters where Claudia had said she wanted to stab certain people like 50 times and, you know, get ahold of the things that are the more violent ones from Claudia." In the recorded jail call from June 19, 2020, which has been marked as Government Exhibit 702, the defendant tells CC-2 that: "[W]e need to find and locate audio, video, and/or emails or diaries of Santos, Yali, Claudia when they were saying they poisoned me and/or drugged me during the DiTomasso trial."

The recorded jail calls corroborate what Ms. Rosario will otherwise describe: that the defendant and CC-2 were working together to marshal incriminating materials to discredit individuals that might otherwise provide testimony that was harmful to the defendant, including Ms. Rosario. This evidence is important corroboration for the allegations in the Indictment, including that the defendant created and collected humiliating and incriminating material against the Victims to further the Enterprise, including the continued obedience of the Victims and the evasion of detection by law enforcement. The fact that the defendant asked CC-2 and Ms. Rosario to gather this material in connection with his criminal case confirms that he kept these documents and recordings in reserve in order to obstruct justice and discredit the credibility of the very people with knowledge of his crimes.

By approximately October of 2020, Ms. Rosario was living independently and had limited contact with the defendant's father. Ms. Rosario understood that the defendant's father was concerned that she was being disloyal to the defendant. CC-2 conveyed to Ms. Rosario in GX 1685 that there would be consequences if she turned against the defendant. The jail calls confirm that in making this threat, CC-2 was acting to further the defendant's objectives—the threat is consistent with the defendant's earlier messages to CC-2 that she "signed on forever." *See United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989) (holding that a "plot to silence witnesses further[ed] the goals" of a narcotics conspiracy); *United States v. Young*, 561 F. App'x 85, 88 (2d Cir. 2014) (unpublished) (holding that statements "furthered the charged narcotics conspiracy insofar as they referenced a plot to retaliate against [a co-defendant] for providing a statement to law enforcement"); *United States v. Arline*, 660 F. App'x 35, 40 (2d Cir. 2016); *United States v. Johnson*, 469 F. Supp. 3d 193, 213–14 (S.D.N.Y. 2019) (admitting statements "intended to 'make sure [Cooperating Witness No. 2 does] not ... turn[ ] against the conspiracy," and about "'a plot to silence [a] witness'" as co-conspirator statements).

         Respectfully submitted,

         DAMIAN WILLIAMS
         United States Attorney

By: __/s/__ Mollie Bracewell___
   Mollie Bracewell
   Danielle R. Sassoon
   Lindsey Keenan
   Assistant United States Attorneys
   Southern District of New York
   (212) 637-2218

cc: Defense Counsel (by ECF)