UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
UNITED STATES OF AMERICA, :
:
:
       -v- :
: 20-cr-110 (LJL)
LAWRENCE RAY, :
: ORDER
                                    Defendant. :
:
------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2022

LEWIS J. LIMAN, United States District Judge:

     The defense moves to strike the testimony of FBI Forensic Analyst Matthew Frost, including Government exhibits 600 through 644, on the basis that Mr. Frost's testimony was unnoticed expert testimony and that the exhibits constitute opinion based on specialized knowledge. Dkt. No. 461. Mr. Frost testified to information that was recovered from Backpage servers relating to Claudia Drury's advertisements on that website. The defense previously moved to preclude Mr. Frost from testifying to his reconstruction of Backpage advertisements from databases extracted from the Backpage servers on the grounds that his testimony would constitute expert opinion. Dkt. Nos. 424, 442. The Court denied the defense's motion twice—once on the record at the Final Pretrial Conference on March 7, 2022, Mar. 7, 2022 Tr. at 32:24-25, and the second by Order of March 16, 2022, Dkt. No. 454. The defense relies upon the identical case law, but this time supplements its motion with the testimony that the defense elicited on cross-examination of Mr. Frost.

     At trial on March 18, 2022, Mr. Frost authenticated Drury's advertisements from Backpage.com, a now-defunct classified-advertisement website used to host advertisements for prostitution. Mar. 18, 2022 Tr. at 666. On cross-examination, Mr. Frost testified that he had never seen the original Backpage ads when they were posted or the original advertisements in this case and that he mimicked what the advertisements would have looked like from his review of "thousands and thousands of advertisements either produced by Backpage through subpoena returns or from screen shots." *Id.* at 682. In response to the defense question whether "the reconstructed ad is essentially your opinion as a forensic analyst about what the ad originally looked like," he responded: "Yes, I guess you could say it like that." *Id.* at 682–83. The defense argues that, because Mr. Frost had never seen Drury's Backpage advertisements when the site was live, his testimony that the exhibits constituted Backpage ads extracted from the Backpage servers was based on "scientific, technical, or other specialized knowledge within the scope of Rule 702," Dkt. No. 461 at 2 (citing Fed. R. Evid. 701), and thus constitutes expert testimony under Rule 702. The Government responds that Mr. Frost's testimony should not be considered to be expert because it was limited to "the retrieved data and the fact that the data originated

1

from Backpage servers with which he has worked extensively." Dkt. No. 463 at 2. It emphasizes that Mr. Frost's testimony was based on personal knowledge and that even specialized knowledge can form the basis for lay opinion.

The Court adheres to its prior ruling. The thrust of Mr. Frost's testimony was with respect to the data he retrieved and that it originated with the Backpage servers. Its significance lay in its content—the pictures of Drury, the text accompanying those pictures, and the accompanying administrative data—and not in its layout. Indeed, while testifying, Mr. Frost made clear that he had never reviewed any advertisement on Backpage when Backpage was up and running, Mar. 18, 2022 Tr. at 671, and, on direct examination, explained that the exhibits constituted only reconstructions, *id.* at 673. He did not purport to say that the advertisements mimicked precisely the advertisements as they would have appeared to a viewer at the time, although the content and the photographs and text were drawn from Backpage. The Government did not ask a single question about the layout. In context, it is clear that the relevance of Mr. Frost's testimony was in the content that was shown in the advertisements and not where precisely in the advertisement each piece was displayed (*e.g.*, whether the picture was on the right side or the left side).

Mr. Frost's testimony thus was not materially distinguishable from that which the Court held to be permissible lay testimony in *United States v. Marsh*, 568 F. App'x 15, 15–17 (2d Cir. 2014) (summary order). There, a law enforcement witness was permitted to testify to offer lay testimony regarding his recovery of the contents of cellular telephones, including text messages and other data, by using the Cellebrite Universal Forensic Extraction Device. Just as the text messages in *Marsh* would have had to be "reconstructed" from an analogue format in *Marsh* to be meaningful to the jury, so too the raw data here had to be "reconstructed" to be meaningful to the jury. Indeed, that would be the case with most digital data—whether authenticated by a law enforcement witness or a document custodian—in that it has to be reconstructed to be viewed. The sequence of 1s and 0s, or any digital data, themselves mean nothing without such reconstruction—whether it is offered by a lay custodian of records or a law enforcement witness familiar and experienced with the database. The fact that the data is reconstructed to make it meaningful to the jury does not make it expert testimony, particularly when, as here, the witness had extensive familiarity with the appearance of Backpage ads generally and where the format was not the point of his testimony. *See United States v. Kidd*, 385 F. Supp. 3d 250, 254–55 (S.D.N.Y. 2019) (allowing the government to introduce summary charts that reconstruct how advertisements appeared on Backpage and rejecting defendant's objection "that if the Government cannot produce a witness who saw the actual [Backpage.com] advertisements when originally posted, the Government should be required to produce an expert witness to testify about the reconstruction" where defendant did not object to the format of the presentation of information and defendant was provided advance review of relevant exhibits).

In any event, the Court would not resort to the remedy of exclusion even if the testimony could be considered to be expert. *See United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016) (explaining that district courts have "broad discretion in fashioning a remedy" to violations of disclosure obligations and that the "decision not to exclude evidence that was the subject of a

Rule 16(a) violation is not grounds for reversal unless the violation caused the defendant substantial prejudice, meaning it "adversely affected some aspect of [the defendant's] trial strategy." (internal quotation marks and citations omitted)). The defense has long known to what Mr. Frost had been testifying. It had weeks to prepare for his testimony, whether or not it was labeled "expert." It has not identified any respect in which it was prejudiced by the failure to label Mr. Frost an expert. Nor did it ask for a continuance to prepare its cross-examination on the notion that it needed more time because it believed that the testimony was expert. Furthermore, Drury has now testified that multiple of the reconstructed advertisements generally looked like the ones she posted on Backpage and that while "the formatting is different," it contained "the language [she] used and a picture of [her]," Mar. 22, 2022 Tr. at 906–07; *see also id.* at 907–08, and the limitations of Mr. Frost's testimony would have been clear to the jury. By contrast, the Government would suffer immense prejudice by the remedy of exclusion.

SO ORDERED.

Dated: March 27, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge