**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

March 30, 2022

**Via ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   **United States v. Lawrence Ray**
           **20 Cr. 110 (LJL)**

Dear Judge Liman:

We write in response to the Court's request to provide additional detail on the advice of counsel and good faith defenses and the jury instructions Mr. Ray has requested in this case. *See* Dkt. 389 at 25, 27.

As previously noted, the "thrust of [the advice-of-counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989). Evidence that a defendant relied on the advice of a lawyer may negate the element of *mens rea*. *See United States v. Scully*, 877 F.3d 464, 478 n.6 (2d Cir. 2017) ("Reliance on the advice of counsel, in cases where fraudulent intent is a required element for guilt, is a defense that tends to refute the government's proof of such intent.").

The Second Circuit has "repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory. . . for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United States v. Evangelista*, 122 F.3d 112, 116 (2d Cir. 1997) (quotations omitted). The Circuit has specifically held that an advice of counsel instruction maybe be granted if there are "sufficient facts in the record to support the defense." *Scully*, 877 F.3d at 476. Once a defendant satisfies this limited burden of production, he bears no burden of proof (including with respect to his mental state), which rests entirely with the Government. *See Patterson v. New York*, 432 U.S. 197, 204–05 (1977); *Scully*, 877 F.3d at 476–77 ("Once the evidence meets that threshold, it is for the government to carry its burden of proving fraudulent intent beyond a reasonable doubt and for the jury to decide whether that burden was met.").

A defendant is entitled to an advice of counsel defense if there is evidence from which "a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly

followed counsel's advice.'" *Scully*, 877 F.3d at 476 (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)). The signed statement Mr. Ripa provided defense counsel (and Mr. Ripa's anticipated trial testimony) more than satisfy the low thresholds set by the Circuit in *Scully*, *Evangelista*, and similar cases.

- First, as Mr. Ripa will testify, Mr. Ray sought his advice regarding the legality of accepting money from Ms. Drury as "compensation" for Ms. Drury's poisoning of him.

- Second, as Mr. Ripa will testify, Mr. Ray (and Ms. Drury) disclosed that Ms. Drury was working as a prostitute and Mr. Ripa knew that was how she made her money.

- Third, as Mr. Ripa will testify, he advised Mr. Ray that it was permissible to accept money from Ms. Drury as compensation or damages for the tort that she had committed against Mr. Ray, and that this need not be reduced to a formal legal requirement. Mr. Ripa will also testify that he advised Mr. Ray that the money Mr. Ray received from Ms. Drury for this purpose was not taxable.

- Fourth, there has already been evidence elicited at trial that Mr. Ray accepted money from Ms. Drury as damages, repairs, or compensation for the poisoning she had purportedly committed, after receiving this advice.

This evidence is exculpatory and relevant to the government's claim that Mr. Ray acted with the required mental state as to Counts Two, Three, Ten, Eleven, Thirteen, Fourteen, Fifteen, and Sixteen.

With respect to the tax evasion counts, the government must establish that Mr. Ray acted knowingly and willfully. The government must prove beyond a reasonable doubt that Mr. Ray knew that he owed substantially more federal income tax for the calendar year of each charge than he declared for that year. The government must also prove that Mr. Ray possessed the specific intent to defeat or evade the payment of taxes that Mr. Ray knew it was his duty to pay. A defendant does not act willfully if he believes in good faith that his actions comply with the law. For this reason, the standard jury instruction on the willfulness element of tax evasion generally encompasses a good faith defense. *United States v. McGinn*, 787 F.3d 116, 126 (2d Cir. 2015) (citing *United States v. Evangelista*, 122 F.3d 112, 118 n.5 (2d Cir. 1997)). Therefore, if the jury finds that Mr. Ray believed that what he was doing was in accord with the tax law, he cannot be said to have had the criminal intent to willfully evade taxes. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 201–02 (1991) ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty. . . . But carrying this burden requires negating a defendant's claim . . . that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws. This is so because one cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist.").

It is also a defense to the tax evasion charges because the failure to pay taxes on income a person does not know is taxable is not willful. This is the case whether or not Mr. Ray's understanding was "objectively reasonable." *Id.* at 202–03. As the Supreme Court has held, "forbidding the jury to consider evidence that might negate willfulness would raise a serious

question under the Sixth Amendment's jury trial provision." *Id.* at 203. The fact that Mr. Ray received advice that the money he received as compensation for injuries or sickness from poisoning was not taxable income is powerful exculpatory evidence that he did not act knowingly and willfully.[1]

Similarly, it is a defense to the charges of extortion, extortion conspiracy, and the use of interstate commerce to promote state law extortion—where those charges do not involve the use or threats of force or violence—if Mr. Ray obtained money under a claim of right made in good faith. Counts Two and Three allege that, *inter alia*, Mr. Ray agreed to and did extort money from the alleged victims to repay supposed wrongdoing against Mr. Ray and others. Second Super. Indict. ¶¶ 11, 12. But the Second Circuit has held that "not all threats to reputation are within the scope of ['extort' under] § 875(d), that the objective of the party employing fear of economic loss or damage to reputation will have a bearing on the lawfulness of its use, and that it is material whether the defendant had a claim of right to the money demanded." *United States v. Jackson*, 180 F.3d 55, 69 –70 (2d Cir. 1999). Count Ten alleges that Mr. Ray used facilities in interstate commerce to promote grand larceny in the fourth degree (i.e., "by extortion") under New York law. It is a defense to the charge of larceny in the fourth degree if property was taken, withheld, or obtained under a claim of right made in good faith. Count One similarly alleges predicate racketeering acts including extortion under federal and state law, to which Mr. Ray's good faith would be a defense.. Mr. Ray's good faith belief that he was entitled to compensation as a result of poisoning he suffered is thus directly relevant to the charged offenses, and evidence that he sought legal advice on the propriety of accepting proceeds of prostitution as compensation is highly probative of his good faith belief.

Such a good faith belief would also be a defense to money laundering because Mr. Ray did not act with a specific intent to conceal criminal activity or avoid a tax reporting requirement. Here, evidence that Mr. Ray sought legal advice regarding the acceptance of proceeds from prostitution as compensation for a physical injury he suffered is relevant evidence that he acted in good faith and not with the specific intent to conceal proceeds of criminal activity or to avoid a tax reporting requirement.

Finally, we note that Mr. Ripa can also authenticate and testify about the circumstances leading to his letters to the United States Attorney's Office demanding an investigation into Mr. Ray's alleged poisoning. This evidence—which will demonstrate that at the time of the alleged criminal conduct, Mr. Ray was seeking to have law enforcement investigate the poisoning and the actions of the alleged victims in this case—is highly probative of Mr. Ray's state of mind at the time of the alleged offenses charged in this case. *See* Dkt. 382 at 54 (noting that "the interaction with law enforcement occurred during the commission of the alleged crimes and is being offered not to show some prior state of mind but to show the defendant's state of mind contemporaneously with the commission of the alleged crimes" and holding "Defendant is

---

[1] To the extent the Court limits this evidence, the defense proposes the following limiting instruction: "Members of the jury, the testimony you have just heard [about Mr. Ripa's advice to Mr. Ray concerning Mr. Ray's acceptance of money as compensation for Mr. Ray's alleged physical injuries or sickness] should be considered by you only as evidence of Mr. Ray's intent and state of mind regarding the alleged tax evasion in this case. I will explain to you in more detail in my final jury charge what the elements of the tax evasion charges are and how you may consider this evidence in relation to these charges."

entitled to prove that he collected the confessions not to threaten the Victims and not to evade detection by law enforcement but to use the confessions with law enforcement and to invite an investigation of what he believed to be a crime against himself").

                Respectfully submitted,

                     /s/

                Marne L. Lenox
                Peggy Cross-Goldenberg
                Allegra Glashausser
                Neil P. Kelly

                *Counsel for Lawrence Ray*

cc:    Counsel of record