```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/01/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                         :
:
                    -v-                                          :
:                   20-cr-110 (LJL)
LAWRENCE RAY,                                                    :
:                   MEMORANDUM AND
                                   Defendant.                    :         ORDER
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

The defense has requested that the Court include an advice of counsel defense in the jury charge with respect to Counts Two, Three, Eleven, Thirteen, Fourteen, Fifteen, and Sixteen. The Government opposes the inclusion of this instruction. Two questions are presented: (1) whether the advice of counsel or good faith negates the relevant *mens rea* for any of the charged offenses and whether the testimony and record establishes sufficient facts in the record to support an advice of counsel charge or defense (and thus the admissibility of Mr. Ripa's advice as being relevant to the defendant's good faith); and (2) whether, even if advice of counsel or good faith is not a defense, some or all of Mr. Ripa's testimony would be admissible on some other basis and survives a Rule 403 balancing. The Court addresses the issues in turn. The Court held a hearing outside the presence of the jury today in which it heard from the defendant's proposed witness to the advice of counsel, Glenn Ripa, Esq. The Court also invited the defendant to present any other evidence it contended would support an advice of counsel defense. The defense declined to present any other evidence.[1] Based on the record developed at the hearing, the Court

---

[1] To ensure that the Court have a complete record, it specifically permitted the defendant to testify without any waiver of the Fifth Amendment privilege. The defense declined that opportunity.

concludes that advice of counsel is not a defense to any of the charges in the Indictment. However, it will permit limited testimony from Mr. Ripa as outlined below.

The advice of counsel defense is a more specific form of the defense of good faith. *See* 1A Fed. Jury Prac. & Instr. § 19:08 (6th ed.). "The thrust of [an advice of counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989). In other words, the advice of counsel defense is viable in circumstances where a defendant's reliance on the advice of counsel may negate the element of *mens rea*. For example, in *United States v. Scully*, the Second Circuit stated that "[r]eliance on the advice of counsel, in cases where fraudulent intent is a required element for guilt, is a defense that tends to refute the government's proof of such intent." 877 F.3d 464, 478 n.6 (2d Cir. 2017); *see* L. Sand et al., Modern Federal Jury Instructions 8.01 ("When fraudulent intent is an element of the crime, the prosecution has the burden of proving such intent beyond a reasonable doubt. It follows that, in such cases, the defendant's 'good faith' constitutes an absolute defense to such crime"). By contrast, where there is no requirement that the defendant intended to violate the statute criminalizing an offense, the advice of counsel instruction is not warranted. *See United States v. Remini*, 967 F.2d 754, 757 (2d Cir. 1992). It is presumed that "every citizen knows the law," *Bryan v. United States*, 524 U.S. 184, 193 (1988); a lawyer cannot waive a magic wand and by his or her say-so relieve a defendant from criminal liability. *See United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004). !

As an initial matter, the advice of counsel is not a defense to the charges contained in Counts Two, Three, and Eleven because advice of counsel would not negate the *mens rea* of these counts.

Counts Two and Three charge conspiracy to commit extortion and extortion, respectively. The Hobbs Act prohibits obstructing, delaying, or affecting commerce "by robbery or extortion," and defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951. Though the language of the statute does not include an explicit *mens rea* element, "[w]hat is required is evidence that the defendant knowingly and willfully created or instilled fear, or used or exploited existing fear with the specific purpose of inducing another to part with property." *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012). The statute does not require a specific unlawful intent in committing extortion. Thus, advice of counsel that extortion is not unlawful, even if the advice was obtained and followed in good faith, would not negate the *mens rea*. Further, "advice of counsel cannot be a defense to a willful and knowing violation of law." *United States v. Poludniak*, 657 F.2d 948, 959 (8th Cir. 1981). "No man can willfully and knowingly violate the law, and excuse himself from the consequences thereof by pleading that he followed the advice of counsel." *Williamson v. United States*, 207 U.S. 425, 453 (1908).

There also is no advice of counsel defense to Count Eleven, which charges money laundering. Under the federal money-laundering statute, it is a crime to conduct a "financial transaction" knowing that the property involved in the transaction represents the "proceeds" of some form of unlawful activity when the transaction in fact involves the proceeds of specified unlawful activity. 18 U.S.C. § 1956(a); *see also United States v. Quinones*, 635 F.3d 590 (2d Cir. 2011). The Government is proceeding under the "concealment" prong of the statute. The Government must prove both that the defendant knew that the financial transaction involved the proceeds of some form of unlawful activity and knew that the transaction was designed in whole

or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity. There is no specific intent element. As long as the defendant knew that the transaction involved the proceeds of some form of unlawful activity and knew that it was intended to conceal the proceeds of unlawful activity, the knowledge elements are satisfied regardless whether the defendant is told by a lawyer (erroneously but in good faith) that his conduct in concealing the proceeds of known unlawful activity is not itself illegal. The lawyer cannot blanket the defendant with immunity. Because the *mens rea* for this count is knowledge, advice of counsel cannot negate this *mens rea*.

The advice of counsel is a defense to a charge of tax evasion. Counts Thirteen through Sixteen charge tax evasion for the calendar years 2016, 2017, 2018, and 2019, in violation of 26 U.S.C. § 7201. That statute makes it a crime to "willfully attempt[] in any manner to evade or defeat" federal income taxes. In *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court made clear that "willfulness," in the context of tax cases, the government must prove that the law "imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Thus, if evidence were presented and a jury were to find that a defendant had a good-faith belief that he was not violating any provisions of the tax laws, even if that belief is irrational or unreasonable, the defendant would not have acted willfully, and would not be guilty of tax evasion. *See United States v. Weber*, 843 F. App'x 364, 367–68 (2d Cir. 2021) (summary order).

Where the advice of counsel is a defense, a defendant is entitled to an advice of counsel instruction only if "there are sufficient facts in the record to support [an advice of counsel] defense." *Scully*, 877 F.3d at 476 (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). "There must be evidence such that a reasonable juror could find that the defendant

4

[1] 'honestly and in good faith sought the advice of counsel,' [2] 'fully and honestly laid all the facts before his counsel,' and [3] 'in good faith and honestly followed counsel's advice.'" *Id.* (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).  There also must be a factual predicate to support that the defendant sought the advice of counsel before taking action. *See United States v. King*, 560 F.2d 122, 132 (2d Cir. 1977); *Scully*, 877 F.3d at 478; *Beach-Nut Nutrition*, 871 F.2d at 1195.  There must be evidence to support all of these elements for the defense to be entitled to an advice of counsel instruction.  "Once the evidence meets that threshold, it is for the government to carry its burden of proving" the *mens rea* element "beyond a reasonable doubt and for the jury to decide whether that burden was met." *Scully*, 877 F.3d at 476-77.  However, "the issue is not for the jury's consideration *at all* absent some evidence of the required facts." *Id.* at 477 n.5.  "Whether that burden is met is thus, in the first instance, for the court to decide." *Id.*  Moreover, no defendant is entitled to present evidence of the advice of counsel unless the elements of the advice of counsel defense can be established.  "If, after the [pretrial] hearing, the court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge or to allow the defendant to present the evidence to the jury." *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997).

Based on the record at the hearing today, the defendant is not entitled to an advice of counsel instruction, and Mr. Ripa's testimony thus will not be received in support of such a defense.  The record is deficient with respect to all three elements; no reasonable jury could find in favor of the defendant on any of them.  The first element is that the defendant "honestly and in good faith sought the advice of counsel."  The testimony at the hearing established that the defendant did not seek out Mr. Ripa to provide tax advice and that Mr. Ripa did not himself

5

consider that he had provided tax advice; there is also a substantial question whether he could be deemed to have acted honestly and in good faith. Construing the evidence favorably to the defendant, the most a jury could find is that at some point the defendant asked Mr. Ripa whether he could accept payment from Claudia Drury as compensation for poisoning and that Mr. Ripa, knowing that Ms. Drury was working as a prostitute, stated that it was permissible for the defendant to accept money as valid compensation for the poisoning that he believed Ms. Drury had committed, stating also that such proceeds would not be taxable. The defendant did not retain Mr. Ripa to provide tax advice, Mr. Ripa does not provide advice with respect to tax reporting as a practice (only offering it in connection with criminal and civil defense), and Mr. Ripa did not believe that he was providing advice to the defendant with respect to his tax returns. There is no evidence that the defendant even asked Mr. Ripa the question whether such income would be taxable; Mr. Ripa merely mentioned it.

Second, and critically, no reasonable or rational jury could find that the defendant "fully and honestly laid all the facts before his counsel." *Colasuonno*, 697 F.3d at 181 (alteration adopted) (quoting *Williamson*, 207 U.S. at 453). The most a jury could find is that Mr. Rpia was aware of the allegation that Ms. Drury had poisoned the defendant and that the defendant was receiving money from Ms. Drury's prostitution proceeds as restitution for the defendant's alleged injuries. Although Mr. Ripa testified that he was not retained to provide tax advice and that his tax practice does not involve preparing tax returns and instead focuses on representing individuals when they are under investigation or responding to tax court petitions, he made clear in his testimony that in order to render tax advice he would need to know at least how much money the defendant was receiving for the alleged poisoning, what the damages were that the defendant had suffered, including estimates of expenses, documentation from insurance or

6

doctors, and estimates of the value of continuing harm, and of any arrangement that the defendant had made with Ms. Drury. The defendant provided none of that information to Mr. Ripa. The defendant did not tell Mr. Ripa how much money the defendant was receiving and not reporting, what injury the defendant had suffered (besides the reports from the defendant himself that he had been poisoned and the "confession" of Ms. Drury), what expenses or damages the defendant suffered in connection with that alleged injury, that the funds were not fixed but an ever-increasing and continuing amount of money. And he did not know anything of the relationship between Ms. Drury and the defendant including the circumstances under which Ms. Drury came to make the alleged confession. Indeed, Mr. Ripa made clear that he is not competent to value a tort claim, that the defendant did not engage him in connection with a personal injury action and Mr. Ripa never mentioned the word "tort" to the defendant, and that he did not know what if any damage Mr. Ray had suffered. In short, the defendant did not give Mr. Ripa the facts that Mr. Ripa testified he would need to provide advice. The information Mr. Ripa had was only at the most abstract (and incomplete) level.

Finally, the evidence that the defendant followed the advice of Mr. Ripa is tenuous if that. Mr. Ripa testified that he mentioned that payment for a personal injury is not taxable at some point between 2015 and 2017. He was not more specific than that. But the alleged conduct that constitutes tax evasion began before 2017. Thus, even assuming that Mr. Ray sought out tax advice and even if he had fully and honestly disclosed the facts before his counsel, it is doubtful on this record that a jury could find that he followed the advice of counsel—at least for certain of the tax years at issue.

As to the extortion, extortion conspiracy, and money laundering counts, even if an advice of counsel defense were available, Mr. Ripa's testimony would not provide a factual predicate to

support the elements of the defense. Mr. Ripa's testimony does not show that Mr. Ray honestly and in good faith sought Mr. Ripa's advice with respect to extortion and money laundering; that Mr. Ray fully and honestly set forth all the facts related to these activities to Mr. Ripa; and that Mr. Ray then in good faith and honestly followed any advice provided by Mr. Ripa related to these charges. Mr. Ripa did not provide any advice whatsoever with respect to extortion, extortion conspiracy, or any of the conduct alleged in the Indictment to be the specified unlawful activity that is part of the money laundering charge.

The Court next turns to whether, even if the evidence would not support an advice of counsel charge on the tax evasion counts and thus is not admissible on that basis, it is admissible on some other basis and whether its probative value is substantially outweighed by the danger of unfair prejudice or jury confusion. These are significant concerns. The Court will permit limited testimony from Mr. Ripa.

First, in an excess of caution, the Court will allow the limited testimony from Mr. Ripa that, at some point between 2015 and 2017, he told the defendant that reparation payments for alleged poisoning would not be taxable. That testimony is relevant to the specific intent element of Counts Thirteen through Sixteen with respect to tax evasion. *See, e.g.*, *United States v. Okun*, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009) ("If [the defendant] is not able to furnish sufficient evidence to warrant an instruction on the good faith reliance on counsel defense, any evidence of attorney advice presented might be relevant to the issue of specific intent."). It is not for the Court to consider whether "to doubt the credibility and reliability" of Mr. Ripa's testimony. *Scully*, 877 F.3d at 474. Instead, that is a question for the jury to decide when considering the defendant's specific intent with respect to the tax evasion counts.[2] Assuming

---

[2] If Mr. Ripa is cross-examined at trial based on his responses to questions by the Court at

8

that the testimony is so limited and that a limiting instruction be given so that the jury understands that the testimony is relevant, if at all, only to the tax evasion charges and not to any other charges, the testimony survives the Rule 403 test.

Second, also in an excess of caution, the Court also will allow Mr. Ripa to testify that the defendant retained him to contact a prosecutor at the U.S. Attorney's Office to request that office to investigate what the defendant claimed was poisoning. That evidence arguably presents a counternarrative for the reason that the defendant created the "confessions" at issue in the case and is relevant to defendant's claim of right. The element of wrongfulness for a threat of economic harm "may be supplied by (1) the lack of a plausible claim of entitlement to the property demanded, *or* (2) the lack of a good faith belief of entitlement, *or* (3) the lack of a nexus between the threat and the claim of right," or "by inherently wrongful conduct." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 579 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016). If the defendant engaged Mr. Ripa to cause the law enforcement and prosecutors to investigate poisoning, that act constitutes relevant evidence tending to support a belief by the defendant that he was poisoned.

The Court will not admit on direct examination the other testimony of Mr. Ripa regarding what he was told by Mr. Ray as to being poisoned, what Mr. Ripa learned from other sources regarding the allegation of poisoning, what Ms. Drury and others said about poisoning (except, as indicated below, the fact—but not any details—that Ms. Drury said that she had poisoned the defendant), and what records he might have seen or not seen. Such evidence is entirely irrelevant and any probative value it has would be substantially outweighed by the risk of jury confusion and unfair prejudice with respect to the tax evasion charges. It constitutes hearsay

---

today's hearing, counsel should not reference that the questions were asked by the Court.

with respect to the extortion charge and predicate racketeering activity and any probative value is substantially outweighed by the risk of unfair prejudice. For example, Mr. Ripa's testimony that Mr. Ray told him that he believed he was poisoned and that Mr. Ripa told a prosecutor what Mr. Ray had said is hearsay. It is an out-of-court statement that the defense would have taken for its truth—that Mr. Ray actually believed he was poisoned. *See Shepard v. United States*, 290 U.S. 96 (1933). It thus presents all of the dangers of hearsay—the jury would hear that Mr. Ray said he believed he was poisoned without the Government having the chance to cross-examine Mr. Ray on whether he believed he was poisoned. That Mr. Ripa told the defendant that he could accept compensation for poisoning and that he would not have to pay taxes on it is not independently probative of whether the defendant believed that he was poisoned or whether that belief was reasonable. Mr. Ripa has no percipient knowledge of whether Mr. Ray was poisoned. He is not a doctor; he did not treat Mr. Ray; he did not witness Mr. Ray showing any symptoms of what he was competent to testify would be poisoning. And the testimony that, if he was poisoned, he was entitled to compensation, would show only what every person would know and does not add any probative weight—if you are poisoned, the person who poisons you may be liable. In essence, the defense would offer Mr. Ripa for the impermissible purpose of vouching that he thought or assumed that Mr. Ray's claim of poisoning was reasonable—but Mr. Ripa's views are not relevant to any issue in the case. Moreover, even if Mr. Ripa's views were relevant on some attenuated basis, the risk of unfair prejudice and confusion of the jury substantially outweighs the probative value. The jury would take Mr. Ray's statements for the truth that he actually believed he was poisoned; that evidence would go before the jury without any opportunity for it to be challenged through cross-examination; no curative instructions could cure the prejudice. The same reasoning applies to Mr. Ripa's testimony on what he heard from

Ms. Drury, Ms. Yalitza Rosario, and others regarding Mr. Ray's claimed poisoning. Except for what the Court expects (and will permit) to be a single question eliciting a short answer for background that Mr. Ripa heard that Ms. Drury confessed to poisoning in connection with the housing court testimony, their main, if only, relevance, would be for the truth. No curative instruction would cure the prejudice and risk of unfair prejudice.

Likewise, the Court will not admit Mr. Ripa's letters to law enforcement repeating what Mr. Ray or others told him. What is relevant, if at all, is that the defendant asked Mr. Ripa to reach out to law enforcement to report the alleged poisoning. It is not disputed that Mr. Ripa did so. Introduction of the letters in which he states what he heard from the defendant and others would cause the same risk of jury confusion and unfair prejudice as Mr. Ripa's testimony on the stand regarding what he heard from the defendant and others. It could only be taken for its truth. In short, the defendant may testify—if he chooses to do so—that he believed that he was poisoned. In that event, the Government will have the opportunity to cross examine him regarding the absence of evidence that he was the victim of poisoning. The Court will not permit the defense to avoid that cross-examination by offering the defendant's out-of-court statements through the vehicle of Mr. Ripa.

Finally, the defense suggests that the evidence could be relevant to the question posed by the money laundering predicate and count whether Mr. Ray acted with a specific intent to conceal criminal activity. It is not. The theory on which such evidence would be relevant is that the defendant was told that the proceeds he was concealing were not proceeds of unlawful activity. Evidence that would support that the defendant did not know that the proceeds were of unlawful activity would be relevant. But, here, Mr. Ripa did not testify that the proceeds at issue were not of unlawful activity or that any of the conduct alleged to make the proceeds unlawful—

11

extortion, forced labor, or sex trafficking, was not unlawful. Mr. Ripa did not advise the defendant that the proceeds from Ms. Drury's prostitution were proceeds from lawful activity and did not offer advice on the financial transactions conducted that are alleged to constitute money laundering. It is not admissible on that basis.

Thus, Mr. Ripa's testimony will be limited as follows. Mr. Ripa will be permitted to testify: (1) that he represented the defendant in connection with the housing court matter and that, as context and background (and not for the truth), in connection with that matter, he heard the testimony of Ms. Drury that she allegedly poisoned the defendant (but not any of the details with respect to what Ms. Drury said on the stand or in preparation or what any other housing court witness said); (2) that at some point between 2015 and 2017, he heard that Ms. Drury was engaged in prostitution (without elaboration unless the Government opens the door); (3) at some point thereafter, he told the defendant that reparation payments for alleged poisoning would not be taxable (but he will not be allowed to testify receiving prostitution proceeds was lawful); (4) that the defendant retained him to contact a prosecutor at the U.S. Attorney's Office to request that office investigate what the defendant claimed was poisoning (but not what the defendant said to him or what he said to the prosecutor); and (5) to his credentials. He will not be allowed to testify on direct examination as to how he heard of the alleged prostitution or to the poisoning (beyond the simple statement that he heard Ms. Drury state in housing court testimony that she had been poisoned), what the defendant or others said to him about those topics other than that the defendant asked him to contact the United States Attorney's Office, any investigation or inquiry he did or anything he was told from any source about those topics, or what he said to the Government. The Court expects the defense to prepare Mr. Ripa accordingly. If Mr. Ripa steps

beyond these limitations, the Court reserves its authority not only to strike the testimony but also to direct that he step down from the witness stand and his testimony be terminated.

Finally, the Court requests that the parties provide it with a limiting instruction to make clear the limited issues as to which Mr. Ripa's testimony will be relevant and the unavailability of any claim of advice of counsel.

SO ORDERED.

Dated: April 1, 2022
      New York, New York

                                      LEWIS J. LIMAN
                               United States District Judge