M38VRAY1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          20 Cr. 110 (LJL)

LAWRENCE RAY,

              Defendant.              Trial

------------------------------x

                              New York, N.Y.
                              March 8, 2022
                              9:45 a.m.

Before:

                   HON. LEWIS J. LIMAN,

                              District Judge
                              and a jury

                      APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
DANIELLE R. SASSOON
MOLLIE BRACEWELL
LINDSEY KEENAN
    Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK, INC.
    Attorneys for Defendant
MARNE L. LENOX
ALLEGRA GLASHAUSSER
NEIL P. KELLY
PEGGY CROSS-GOLDENBERG

Also Present:  Kelly Maguire, FBI
              Claudia Hernandez, Paralegal-USAO
              Larissa Archondo, Paralegal-FDNY

M38VRAY1

```
 1                  (Case called)
 2                  THE DEPUTY CLERK:  Starting with counsel for the
 3       government, please state your appearance for the record.
 4                  MS. SASSOON:  Good morning, your Honor.
 5                  Danielle Sassoon, Mollie Bracewell, Lindsey Keenan,
 6       for the United States; joined by Claudia Hernandez, paralegal
 7       in our office, and Special Agent Maguire of the FBI.
 8                  THE COURT:  Good morning.
 9                  MS. LENOX:  Good morning, your Honor.
10                  Federal Defenders, by Marne Lenox for Lawrence Ray.
11       I'm joined at counsel table by Allegra Glashausser and Neil
12       Kelly and our paralegal, Larissa Archondo.
13                  THE COURT:  Good morning.  And good morning, Mr. Ray.
14                  So I understand the parties have several things to
15       raise with me.  Before I ask what those are, a couple of things
16       that I need for my benefit.  I'm going to direct myself to you,
17       Ms. Sassoon.
18                  First, if you could give me the list of witnesses that
19       you expect for this week.  And then second, I did not receive
20       any exhibits from you last night either by email or by physical
21       copies.  My clerk sent an email, I think, to the government
22       asking for the exhibits.  We still didn't get them.  And if you
23       want me to give you rulings about exhibits, I need to see them.
24                  MS. SASSOON:  Your Honor, my understanding from
25       Ms. Hernandez is that there were exhibits uploaded last night
```

1    to the deputy.  But if those didn't -- were not received --

2                MS. KEENAN:  They were loaded to USAfx, your Honor.

3    Because of the size of the files, they could not be emailed.

4                So, Mr. Fishman, you might need to check your junk or

5    spam email for a file from the sender.  It usually has the word

6    "box" in the sender, like Dropbox.

7                THE COURT:  We'll check during a break.  But I was

8    also promised physical copies of the exhibits, one for up here

9    in 24, and the other in chambers.  I don't have those either.

10               MS. KEENAN:  We can bring those up now, your Honor, if

11   you'd like, or after we go through jury selection.

12               THE COURT:  I don't know how many of you are going to

13   be in jury selection, but there will be people in chambers who

14   will be able to receive the exhibits, and it would be helpful

15   to have the exhibits so that there's no unnecessary break while

16   I'm waiting for them.

17               MS. KEENAN:  No problem.

18               MS. SASSOON:  And I apologize, your Honor, we're also

19   going to be delivering a drive that has the electronic -- the

20   full set of electronic exhibits to the Court today.  It's being

21   burned today by IT.

22               THE COURT:  Okay.  I ask first because I need them

23   generally; second, because there's a pending request with

24   respect to sealing that I'm not going to rule on until I see

25   what's going to be sealed; and third, because you submitted a

M38VRAY1

1    letter to me yesterday listing a number of exhibits and --

2            MS. SASSOON:  Yes, your Honor.

3            THE COURT:  And me being able to look at them.

4            MS. SASSOON:  Understood.

5            We attempted to upload that specific set of exhibits

6    last night, and we'll figure out what went wrong and get them

7    to the Court.

8            THE COURT:  Okay.

9            So, Ms. Sassoon, the order of witnesses.

10           MS. SASSOON:  Yes, your Honor.

11           The first witness is FBI Special Agent Rachel Graves.

12           THE COURT:  And what will she be testifying to?

13           MS. SASSOON:  She was the search team leader at 40

14   Holly Lane, where the defendant was residing.

15           THE COURT:  I take it she'll be testifying, among

16   other things, to the devices retrieved during that search; is

17   that correct?

18           MS. SASSOON:  Yes.  I expect that we will introduce

19   some photographs into the search.  She did not take them, but

20   she is familiar with the contents of the photographs as a

21   search team leader, and then she will describe the items seized

22   from certain rooms.  We expect that she -- that we will ask for

23   her to read from her evidence log as a past recollection

24   recorded; because given the amount of evidence seized, even

25   looking at the document, her memory is not refreshed with

M38VRAY1

1    respect to every single item and where it was located in the

2    room.

3              THE COURT:  I take it you'll establish the foundations

4    for past recollection recorded.

5              MS. SASSOON:  Yes.  And then she'll testify -- she'll

6    read some of the items that were seized, we'll look at

7    photographs.  But at that time I don't expect we're going to be

8    offering any of those items into evidence at that point.

9              THE COURT:  I take it you're not going to be giving it

10   to them for identification purposes?

11             MS. SASSOON:  We're still sorting that out.  There are

12   a couple devices that we may want to show her, and we're going

13   to sort that out today.

14             THE COURT:  Okay.  Who's next?

15             MS. SASSOON:  Santos Rosario.

16             THE COURT:  And he's the first of your alleged

17   victims; is that correct?

18             MS. SASSOON:  Yes.  And we sent the defense last night

19   a list of the exhibits that we intend to introduce during his

20   testimony, in the hopes that objections can be resolved in

21   advance of his testimony.

22             THE COURT:  Okay.  And then after Santos Rosario?

23             MS. SASSOON:  The paralegal witness, Sunny Drescher.

24             THE COURT:  And with respect to the paralegal witness,

25   is it a he or a she?

M38VRAY1

1          MS. SASSOON:  She.

2          THE COURT:  What is she going to be testifying to?

3          MS. SASSOON:  Our plan is to have her read some email

4    exhibits into evidence, principally emails sent or received by

5    the defendant or Talia Ray.  We also intend to publish a few

6    exhibits with her on the stand without her giving commentary on

7    those exhibits, some photographs and a few videos.  And then

8    the last piece is there are some iCloud exhibits that are text

9    message exchanges.  And our intention is for her to read

10   specific parts of those text message exchanges.

11         THE COURT:  And I take it prior to her testifying,

12   you're going to introduce the iCloud stipulation; is that

13   right?

14         MS. SASSOON:  Yes, we'll read from the iCloud

15   stipulation.

16         THE COURT:  Okay.  I want to go back to the paralegal

17   in a moment.  Who's after the paralegal?

18         MS. SASSOON:  It depends a little bit on timing, given

19   the schedules of our witnesses, but either Dawn Hughes, the

20   expert --

21         THE COURT:  Or?

22         MS. SASSOON:  Or Matt Frost, the Backpage summary

23   witness.  And I think that will take us through the week.

24         THE COURT:  Okay.  You may be seated.

25         I'm going to get back to the paralegal in a moment and

M38VRAY1

1    ask you for other questions, but let me just ask the defense,

2    any issues with respect to the witness list or anything that

3    the government has raised?

4              MS. LENOX:  So one thing I would like to note, and

5    then my colleague Neil Kelly will address the second point.

6              I would object to having a paralegal testify only in

7    order to read exhibits that will be introduced into evidence.

8    I don't think it's necessary or proper, certainly in a trial

9    like this, where all of the complaining witnesses are expected

10   to testify.

11             There are over 30 witnesses on the government's

12   witness list.  The government has made representations about

13   trying to streamline its proof.  I think to the extent that

14   those are offered into evidence, there's no need for anyone to

15   sit there and read the contents of emails.  They will be in

16   evidence, the jury will be able to reference them, and the

17   government can use them in their closing arguments.

18             THE COURT:  Is there a specific nature of objection

19   that you're making to that testimony from the paralegal?  It's

20   not uncommon for there to be paralegals who testify with

21   respect to exhibits that are in evidence.  But I want to

22   understand exactly the nature of the objection you're just

23   lodging.

24             MS. LENOX:  Certainly that's true, your Honor.  It's

25   not that there is anything within the rules that prohibit such

M38VRAY1

1    testimony; but the Court, in its discretion, could certainly

2    choose not to allow the government to have a witness testify in

3    this regard.  I know that other courts in this district have

4    specifically indicated that such witness testimony from a

5    paralegal simply to read from exhibits that are already in

6    evidence is unnecessary.

7         THE COURT:  Ms. Lenox, you may be seated.  I'm going

8    to turn to Mr. Kelly, and then I'll turn to you with respect

9    to -- you'll have an opportunity to speak.

10        MR. KELLY:  Thank you, your Honor.

11        May I use the podium?

12        THE COURT:  You may.

13        MR. KELLY:  Thank you.  Thank you, your Honor.

14        As the Court knows, yesterday afternoon the government

15   disclosed that certain of the government witnesses who had

16   previously moved to maintain their anonymity at trial and

17   maintain their privacy, had given interviews to a

18   documentary --

19        THE COURT:  Let me interrupt you for a second,

20   Mr. Kelly.  Does this have to do with the paralegal?

21        MR. KELLY:  No, no, this is the witness issue, I'm

22   sorry, on the government's witnesses for this week.

23        THE COURT:  Okay.  Let me let Ms. Sassoon respond with

24   respect to the paralegal, and then I'll turn to you.

25        MR. KELLY:  Sure.

M38VRAY1

1          MS. SASSOON:  Yes, your Honor.

2          It's my understanding that some judges don't permit

3     the government to read exhibits with no one on the stand.  But

4     we're putting a witness there.  This is a fairly standard

5     practice.  And the exhibits we selected are ones that, by and

6     large, are not readily displayed to the other witnesses on our

7     witness list.  For example, text messages between Talia Ray and

8     Isabella Pollok, neither of those women is expected to testify

9     at the trial.  Our witnesses don't have firsthand knowledge of

10    those text messages.  Emails between the defendant and his

11    daughter, similar category.  A lot of these documents are

12    co-conspirator statements exchanged between co-conspirators and

13    not victims.

14          To the extent that there are some emails involving the

15    victims, there are reasons not to display it with those

16    witnesses that have been decisions made by the government.  For

17    example, an email from one victim that the defendant then

18    forwards.  The witness is not -- doesn't have knowledge that

19    the email was forwarded.  The content of that particular email

20    is extremely sensitive; it talks about wanting to kill himself.

21    There are certain exhibits we've decided in our discussion that

22    we don't want to subject our witnesses to testifying about on

23    direct examination.  Obviously the defense could choose to use

24    these exhibits in their cross-examinations, but in designing

25    how we want to present the proof to the jury, there are reasons

M38VRAY1

1   that we are presenting them through this paralegal rather than

2   through a different witness.

3              THE COURT:  How long do you expect the testimony of

4   the paralegal to last?

5              MS. SASSOON:  About an hour.

6              THE COURT:  Okay.  All right.

7              I will permit the testimony of the paralegal.  With

8   respect to specific exhibits, objections can be made as to

9   specific exhibits.  I'm not necessarily either accepting or

10  rejecting Ms. Sassoon's proffer with respect to specific

11  exhibits.

12             All right.  Mr. Kelly.

13             MR. KELLY:  Thank you, your Honor.

14             So just to remind the Court, to take a step back, with

15  respect to the complaining witnesses, there's sort of a

16  separation between Dan Levin, who wrote a book, has

17  participated in a documentary about the alleged conduct here,

18  and the other complaining witnesses who we've gone through a

19  lot of litigation over the years about maintaining their

20  anonymity, protecting their privacy, everything from their

21  testimony to their medical records.

22             THE COURT:  Let me interrupt you for a second.

23             With respect to their anonymity, I don't think we've

24  gone through a lot of litigation.  I think the issues have just

25  recently been raised and initially were raised by me.  I

M38VRAY1

1    appreciate the issues with respect to the other privacy

2    questions.

3            MR. KELLY:  Sure.  We've been maintaining their --

4    we've been referring to them by Jane and John Doe up until very

5    recently.

6            THE COURT:  Right.  And I think both sides have agreed

7    to that, different issues presented when we go to trial.

8            MR. KELLY:  Sure.

9            And the reason I was drawing that distinction, your

10   Honor, is because in the 3500 material, the government produced

11   transcripts from Mr. Levin's interviews with a documentary

12   filmmaker, again, consistent with our understanding that he was

13   open and freely sharing information about his experiences, but

14   the other witnesses were not.

15           Yesterday the government informed us that, in fact, it

16   sounds like the Rosario siblings have been giving multiple

17   interviews to a documentary filmmaker.  It's our understanding

18   that there would be similar transcripts of those interviews,

19   just as there were with Mr. Levin, in the possession of either

20   the witnesses themselves or Mr. Levin or a production company.

21   They might be in numerous places.

22           Why we're raising that now is Mr. Rosario is expected

23   to be the first substantive witness this week.  We think that

24   the material in that -- in those transcripts is obviously

25   material and relevant to the case.  The government appears to

M38VRAY1

1     agree with respect to Mr. Levin's transcripts.  It relates to

2     the same subject matter.  It will potentially yield

3     exculpatory, if not at least impeachment material.  So I raise

4     two issues with respect to that, and specific to Mr. Rosario.

5          The first is we intend to request a so-ordered

6     subpoena from the Court to help expedite the production of any

7     such transcripts.  We've already conferred with the government.

8     They've represented they don't have any of these materials in

9     their possession.  So we intend to seek that material as

10    quickly as possible.

11         And two, with respect to Mr. Rosario's testimony, if

12    he's going to take the stand tomorrow, we're not going to get

13    that material before he testifies.  So we intend -- and I want

14    to make a record now -- that we would like to leave his

15    testimony open, to the extent that it needs to continue, once

16    we do receive that material.

17         THE COURT:  Okay.

18         Any objection to leaving it open?

19         Actually, let me ask you a follow-up question,

20    Mr. Kelly, just to make sure I understand the request.

21         As I understand the request, you would begin your

22    cross-examination of Mr. Rosario, but you would leave it open

23    to continue the cross-examination after you receive the

24    transcripts, if there's something in the transcripts that

25    merits the cross-examination.

M38VRAY1

1          MR. KELLY:  Correct, your Honor.

2          THE COURT:  And I, presumably, would not tell the jury

3     necessarily that the testimony is being left open, because I

4     wouldn't necessarily want to leave with the jury the impression

5     that there's something to come from Mr. Rosario if you opt not

6     to continue the cross-examination.

7          MR. KELLY:  That's correct, your Honor.

8          And I should be clear that to the extent another

9     substantive witness takes the stand early next week and we

10    haven't received their transcripts of their interviews, we

11    would ask for the same ruling.

12         THE COURT:  Let me also mention something to the

13    parties.  Mr. Kelly, you can sit down, while the government is

14    conferring.

15         If there are evidentiary issues, legal issues of any

16    kind that you're bringing to my attention, my expectation is

17    that the parties will have met and conferred beforehand to try

18    to reach agreement with them and then presents the disagreement

19    to me.  That's a going-forward rule.  And going forward, my

20    first question will be did you meet and confer about this; and

21    if you haven't met and conferred, I will defer ruling until you

22    have met and conferred.

23         Let me turn to the government.

24         MS. KEENAN:  So, your Honor, to the extent it's

25    possible to respond to this request after we've had an

M38VRAY1

1    opportunity to confer about it, that would be great.  The only

2    transcripts that the government is in possession of is the

3    transcripts that we already provided for interviews that Daniel

4    Levin gave in connection with the documentary.  He's

5    differently situated than the other victims in that he is an

6    executive producer on the documentary.  It's our understanding

7    that that is why he had transcripts of his interview.  And it's

8    our understanding that he does not have transcripts of other

9    interviews, and we don't know whether victims have transcripts

10   of other interviews.

11        We provided information related to this issue as we

12   learned about it, which, with respect to Mr. Rosario, was

13   yesterday.  We promptly conferred with his counsel and learned

14   about the dates on which he spoke with the documentary

15   filmmaker, which were in 2020.  It's our view that these

16   transcripts are not relevant to his testimony here; that he's

17   had numerous interviews with the government and there is plenty

18   of impeachment material in the interviews that he has already

19   given the government.

20        We did, when we learned about the transcripts that

21   Mr. Levin had, confer with counsel for the documentary

22   filmmaker.  And they took the position that, as a news

23   organization, they would not be properly subject to a subpoena.

24        THE COURT:  The role of Mr. Levin makes this an

25   interesting issue that I may have to resolve.

M38VRAY1

1          Have you asked either Mr. Levin or the alleged victims

2     if they have copies of the transcripts and, if they don't, if

3     they would request them?

4          MS. KEENAN:  So initially when I spoke with Mr. Levin

5     about this, I inquired who he knew had given interviews in

6     connection with the documentary.  And he was not aware that

7     these other victims gave interviews for the documentary.  So I

8     didn't ask him whether transcripts existed.  I have now posed

9     that question to his counsel; and, of course, when we have an

10    answer, if it's possible to get transcripts from Mr. Levin, we

11    will try.

12         THE COURT:  Why don't you tell them that I want an

13    answer by the end of the day today.

14         MS. KEENAN:  Sure.

15         THE COURT:  What about asking the Rosarios if they

16    have copies of the transcripts and, if not, if they can ask the

17    producer to give them copies of the transcripts if they don't

18    have them?

19         MS. KEENAN:  We're happy to do that, your Honor.

20         We have asked the Rosarios if they have transcripts.

21    Mr. Rosario specifically was not aware that any interview he

22    gave was recorded.  So I have a sense of what his answer will

23    be, but I don't want to represent anything until I've confirmed

24    it.

25         THE COURT:  All right.  Why don't you meet and confer

M38VRAY1

1   with the defense with respect to the specific request of

2   keeping the cross-examination open.  And at the lunch break

3   during jury selection you'll let me know whether there's a

4   legal issue and an objection to keeping the cross-examination

5   open pending either the receipt of transcripts or a definitive

6   answer that there are no transcripts.

7          MS. KEENAN:  Sure, your Honor.

8          And I'll just note that the transcript to Mr. Levin

9   was a personal -- or the subpoena to Mr. Levin was a personal

10   subpoena, not to Mr. Levin as a producer on the documentary.  I

11   think that Hulu would take the position that Mr. Levin, as a

12   producer on the documentary, also is a member of the news

13   media.

14          THE COURT:  That, I would think, is not your issue,

15   but their issue.

16          All right.  What's next from the government?

17          MS. SASSOON:  I wanted to mention that it's our plan

18   for Special Agent Maguire, as the case agent, to be present for

19   the trial.  She is expected to testify later in the trial.

20          THE COURT:  So I take it you're asking for relief from

21   the rule regarding sequestration; is that right?

22          MS. SASSOON:  Yes, your Honor.  Thank you.

23          THE COURT:  Is there any objection to that?

24          MS. GLASHAUSSER:  Yes, your Honor.  We do object to

25   that.

M38VRAY1

1          We do understand that Agent Maguire is planning to

2     testify likely in a fairly extensive manner.  Her 3500 is the

3     most voluminous of any of the witnesses we have received by

4     large volume.  So we would object to her sitting here.

5          The rule against -- or the rule requiring witnesses

6     not to sit in court during the testimony is there for a reason,

7     so that witnesses provide their own testimony, rather than

8     hearing all of the other testimony and incorporating that into

9     their testimony.

10          We would object.

11          THE COURT:  The rule is generally based upon concerns

12     that witnesses may tailor their testimony based upon what

13     they've heard.  There's a fair amount of law for the

14     proposition that a case agent who's assisting the government in

15     terms of the presentation of a case can attend.

16          But let me hear from the government both why it's

17     necessary for the case agent to attend, which is one of the

18     requirements under the rule; and second, what you expect the

19     agent to testify to, which raises concerns about whether

20     testimony could be tailored or overlaps with fact witnesses.

21          MS. SASSOON:  Yes, your Honor.

22          THE COURT:  Or other law enforcement witnesses.

23          MS. SASSOON:  We can also put in a letter later today

24     with the relevant law that we think supports her presence.

25          THE COURT:  The law would be fine.  But actually the

answers to the two questions, which you can either give me

later today or you can give me right now.

MS. SASSOON:  Yes.  So Agent Maguire is assisting us

in overseeing the evidence, helping bring witnesses to the

courtroom, handling the physical exhibits.  So there's a

function for her throughout the trial.  She has been in most of

the witness preparation for this trial and has, in sum and

substance, heard most of the testimony that's going to be

elicited at this trial.

Her testimony is going to be, in part, as a summary

witness.  There are numerous summary charts that she's going to

testify about that summarize documentary evidence and other

exhibits, timeline slides.  And as a summary witness, she

also -- it's appropriate for her to hear some of the testimony.

The summary charts are principally summaries of voluminous

documentary evidence; but it's my understanding that it's also

appropriate for a summary witness -- for those charts to

sometimes include summary related to testimony at the trial.

In terms of her role in the courtroom, she, more than

anyone on this team, has a command of the facts, the exhibits.

She's conducted the responsive review of all the evidence

that's going to be introduced at this trial; she's identified

relevant materials, both in terms of discovery and now for

putting in the proof at trial.  And so I think that also

addresses any -- the fact that there's a lack of prejudice

M38VRAY1

1    here, because she knows everything that's coming in at this

2    trial.

3              THE COURT:  Ms. Sassoon, you made a motion *in limine*

4    that the agent be permitted to make certain identifications,

5    including identifications of Mr. Ray.  Is it still your

6    intention for Agent Maguire to make identifications and of

7    which people?

8              MS. SASSOON:  Yes.  And we intend to lay the proper

9    foundation there that her familiarity is based on the

10   wide-ranging investigation, preparation for trial.

11             THE COURT:  Which individuals?

12             MS. SASSOON:  The defendant, Isabella Pollok, Talia

13   Ray, the victim witnesses who will be testifying, Lawrence

14   Grecco, that's the defendant's father.  She's seen him in

15   person.  That's all I can think of right now.

16             THE COURT:  Okay.  All right.  I'll take this under

17   advisement.  If you want to send a letter, you can, but I'm not

18   sure I need it.

19             Anything else from the government?

20             MS. KEENAN:  We spoke with Mr. Pecorino this morning,

21   your Honor, about publishing sensitive exhibits to the jury.

22   And we just wanted to make sure that the Court is alerted to

23   the fact that Mr. Pecorino said that he could have someone in

24   the courtroom or someone who is sort of deputized to turn off

25   the public monitor when sensitive exhibits are displayed.

M38VRAY1

1      THE COURT:  Thank you for bringing that to my

2   attention.  That will just be with respect to the exhibits that

3   you've made an application for sealing; is that right?

4      MS. KEENAN:  That's right, your Honor.

5      THE COURT:  Okay.  And with respect to the audio,

6   we've made arrangements with the court personnel for headsets.

7   It took a little bit of work to make sure that there would be

8   headsets available, but I believe that that should be in place.

9      MS. KEENAN:  We confirmed this morning that they have

10   20 headsets available, so there should be not only enough

11   headsets for the jury and your Honor and the witness, if

12   necessary, but also additional headsets, and one for the

13   defendant.

14      THE COURT:  Okay.  Anything else from the government?

15      MS. SASSOON:  No.  Thank you, your Honor.

16      THE COURT:  From the defense, any issues?

17      MS. LENOX:  I want to just flag we'll also need

18   headsets.

19      THE COURT:  I think the number 20, which is what I

20   came up with, was intended to make sure that there would be at

21   least one lawyer for the defense, one lawyer for the

22   government, Mr. Ray, myself, and the jurors.  That's where the

23   number 20 comes from.

24      MS. LENOX:  Great.  Thank you, your Honor.

25      And just one final note from the defense, which I

M38VRAY1

```
 1   think is an obvious point, but I just want to put it on the
 2   record and ask that your Honor make an order that the
 3   government, to the extent that we are taking breaks between
 4   witnesses or witness testimony is continuing overnight, that
 5   your Honor order the government not to speak with its witnesses
 6   about the subject of their testimony while their testimony is
 7   ongoing during these breaks.
 8             THE COURT:  Let me ask you the question.  I understand
 9   that request.  While the witness -- after the witness has
10   finished their direct and while they are on cross-examination.
11   But while they are still on direct, is there -- are you asking
12   for the government to be prohibited from talking to the witness
13   while they are still on direct during a break?
14             MS. LENOX:  Yes, your Honor.
15             THE COURT:  Is there authority for that?
16             MS. LENOX:  I'm happy to provide authority.  I don't
17   have it in front of me right now at this moment, but I do
18   believe there is authority for that proposition.
19             THE COURT:  That would be helpful.
20             MS. LENOX:  Certainly.
21             THE COURT:  Ms. Sassoon, you can address it now or you
22   can address it after I've got the authority.
23             MS. SASSOON:  We oppose the motion, everything except
24   for witnesses on cross-examination.  We'll respond to the
25   letter.
```

M38VRAY1

1        THE COURT:  Okay.  Let me ask one more question --

2   actually, is there anything else, Ms. Lenox?

3        MS. LENOX:  No.  Thank you, your Honor.

4        THE COURT:  With respect to the letter that I received

5   from the government regarding the exhibits that the paralegal

6   is going to be testifying to, I understand that the first set

7   of exhibits, which begin GX-1840 to GX-2144, there will be

8   authentication testimony from Agent Flatley that those exhibits

9   were retrieved from devices that the chain of custody will

10  establish were obtained during a search; is that right?

11       MS. SASSOON:  Yes.

12       THE COURT:  But you're not going to have Agent Flatley

13  testify before the paralegal testifies?

14       MS. SASSOON:  Correct.  So that would be part of

15  offering it subject to connection, the Agent Flatley

16  connection.  And then any other connection your Honor still

17  thinks is necessary beyond that.

18       THE COURT:  Okay.  Is there any objection to doing it

19  in that order from the defense?

20       MS. LENOX:  If the government is able to provide an

21  offer of proof sufficient to maintain that it will be subject

22  to connection, then there is no objection.  But if that

23  connection is not later made, then certainly the defense

24  reserves the right to object.

25       THE COURT:  Okay.

1          And, Ms. Lenox, are there objections to the specific

2     exhibits that are in the letter?

3          MS. LENOX:  Yes, there are, your Honor.

4     Unfortunately, I am prepared to address them, but I don't have

5     the physical exhibits with me which would enable me to more

6     properly address them with the Court.  But I am in a position

7     to do that before the witness testifies.

8          THE COURT:  Are they to every single exhibit or just

9     to specific ones?

10         MS. LENOX:  No, specific ones.

11         THE COURT:  So you'll identify for the defense what

12    those -- what the exhibits are.  And how quickly can you let

13    both the government know and me know what the exhibits are that

14    are at issue?  End of the day today?

15         MS. LENOX:  Yes.

16         THE COURT:  Okay.  All right.

17         I think we're still just waiting for the jurors.

18         Let me confer with my deputy.

19         MS. SASSOON:  May I ask, Mr. Fishman, if you found

20    the --

21         THE DEPUTY CLERK:  I didn't.

22         MS. SASSOON:  Okay.

23         THE COURT:  So we're waiting for the jury.

24         Why don't I ask everybody to stay in the courtroom,

25    unless you need a bathroom break.  And when we get word that

M38VRAY1

1    the jury is ready, then -- we actually did just get word.

2             Ms. Lenox?

3             MS. LENOX:  With respect to your Honor's note

4    yesterday that we could have a paralegal sit in the satellite

5    room with jurors, we are going to ask that one of our

6    colleagues sit in that room.  Her name is Alyssa Perry.

7             THE COURT:  Okay.  Matt, do we need to do anything

8    with respect to that?

9             Just they can head up and let them know that their

10   paralegal -- is the government going to have anybody there?

11            MS. SASSOON:  No, your Honor.

12            THE COURT:  Okay.  All right.

13            So we've gotten word that the jurors are ready.  Let

14   me just confer with respect to the mechanics of it.

15            Hold on for a second.

16            And we also have the juror questionnaires that my

17   clerk will pass out to you.

18            Okay.  So the lawyers should all head down to the

19   ground floor.  Meet us right outside of the jury assembly room

20   near where the elevators are.  Mr. Ray will come down

21   separately, and then we'll all meet in the vestibule with me

22   and then the lawyers.  And Mr. Ray will enter the jury assembly

23   room once you are set.  I will enter separately, and

24   Mr. Fishman will call the case.

25            Anything more before we break?

M38VRAY1

1          MS. SASSOON:  Thank you.  No, your Honor.

2          MS. LENOX:  Nothing.  Thank you.

3          THE COURT:  Okay.

4          (Jury selection commenced)

5          (Adjourned to March 9, 2022 at 9:30 a.m.)