Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

**FILED UNDER SEAL**

March 17, 2022

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Lawrence Ray**
**20 Cr. 110 (LJL)**

Dear Judge Liman:

Mr. Ray was taken from court by ambulance on March 15, 2022. Records provided to the defense by the government today indicate he was [REDACTED] Although the government witnessed Mr. Ray suffer a medical crisis on March 15, knows that [REDACTED], and has no evidence that this medical crisis was made-up, the government nonetheless wrote a letter to the Court asserting that Mr. Ray has a "history of using purported medical ailments to delay judicial proceedings." We are writing in response to the government's letter.

Mr. Ray had a medical episode in open Court on March 15, 2022

[REDACTED] Court resumed. After the jury had broken for lunch, and the lawyers were engaged in a dry legal argument, Mr. Ray [REDACTED] The Court observed [REDACTED], as did others in the courtroom. When the courthouse nurse did not arrive after many minutes, the U.S. Marshals called 911. The Court, the Court's staff, and the U.S. Marshals all acted with appropriate urgency and compassion during this medical emergency.

When the courthouse nurse and 911 emergency technicians arrived, they assessed Mr. Ray's condition and made a medical determination to take Mr. Ray to the hospital. [REDACTED]

<u>Mr. Ray is currently in the "critical care" unit at the hospital.</u>

Mr. Ray's counsel have been unable to speak to Mr. Ray or Mr. Ray's medical team and have no updates on his health status. The government, however, received Mr. Ray's medical records from New York Presbyterian and provided them to counsel this morning. They indicate that Mr. Ray was [redacted]

[redacted]



<u>Mr. Ray's BOP medical records document a [redacted] that is unconnected to court appearances</u>

Mr. Ray's medical records indicate a [redacted] Below are just a few examples of this history as reported in the BOP records:

- [redacted]: Mr. Ray had [redacted] Court was not scheduled that day.
- [redacted]: Mr. Ray's "unit team reported" that he was [redacted] BOP Records at 3. Court was not scheduled that day.
- [redacted]: Records note a [redacted] and that Mr. Ray was [redacted] Court was not scheduled that day or any day that week.
- [redacted]: Mr. Ray had [redacted] Court was not scheduled that day or any day that week.
- [redacted][1]

As far as counsel is aware, there has been only one other example in the over two years of court appearances when Mr. Ray had a medical episode that coincided with a court date. [redacted]

Mr. Ray also has numerous other [redacted] Although the government states that Mr. Ray was not taking [redacted] as prescribed, the medication list provided by the BOP does not include [redacted] as an active prescription. BOP Records at 211-216. It appears as though the [redacted] prescription was new, and that there had been trouble entering it into the BOP system. *See* BOP Records at 6 (note that [redacted]); *id.* (note that a new [redacted] prescription was supposed to have been entered on Feb. 8, but that the duty pharmacist reported the prescription was "not active on their end [and] is showing expired").

As the Court also knows, people incarcerated at MDC miss medication doses for a host of reasons. For example, Mr. Ray's records note days when [redacted] was not provided "due to

---

[1] Counsel has, thus far, only reviewed the past year of BOP medical records as the records are quite lengthy. This November 2020 incident, however, was referenced in the 2021 medical records.

multiple emergencies in facility and provider being alone to render care. Officers refused to open doors," BOP Records, at 141-42, and days where [redacted] was not provided because "No physical script present." *Id.* at 138. It would be ill-advised to draw any conclusions based solely on the fact that the BOP records state that Mr. Ray did not take his [redacted]. Gov. Ex. A. This is especially true as the relevant record appears to have been created on March 16, the day after Mr. Ray [redacted]. This same record includes notations that are clearly not accurate, such as that, on March 16, a BOP provider provided Mr. Ray [redacted] Gov. Ex. A at 3. Mr. Ray did not receive any "counseling" by the BOP providers on March 16 as he was [redacted]. In any event, the government has no information relating to any connection between Mr. Ray not receiving a Kepra dose and his current hospitalization.

The government's superficial review of decades-old adjournment requests is irrelevant to Mr. Ray's [redacted] and case.

The government's letter relays vague information from unrelated old court appearances of Mr. Ray, to conclude, that in these old cases, Mr. Ray "relied on claims of physical illness to obtain repeated delays." Gov. Ltr. at 2. None of these cases have anything to do with Mr. Ray's current illness or prognosis.

First, the government points to a magazine article related to Mr. Ray's sentencing on docket number 00-cr-196. According to the docket, that sentencing took place on April 9, 2003, almost 20 years ago. This has no relevance to Mr. Ray's current medical status.

Next, the government points to a court appearance in 2012, 10 years ago, in which defense counsel, the prosecutor, and the judge all agreed that Mr. Ray looked sick. Gov. Ex. F, Tr. at 4-5 (the prosecutor: "looks like it's affecting his ability [to] testify. Maybe we should take a break"… "looks like he's sweating bullets"; defense counsel: "When I went with the video he was already sweating"; the Court: "These things don't get – they get worse before they get better."). The next day, the court told the jury that Mr. Ray was "still ill." Gov. Ex. F, at 9. Later in the week, the prosecutor reported that Mr. Ray was still sick and sounded "horrible on the phone," adding that he could "put" the judge on the phone if you wanted to "judge for yourself," adding that he "sounds sick." Gov. Ex. F at 16. The parties discussed that Mr. Ray had the flu and a sinus infection.

The government asserts that while Mr. Ray had the flu in 2014, he "receiv[ed] a 'damages list' from Santos" and paid to "renew a subscription to a GoDaddy service." Gov. Ltr. at 2. It is unclear what these allegations have to do with whether Mr. Ray had the flu and a sinus infection. Even if true, there is nothing incompatible with receiving a document and "renewing a subscription" and being too sick to travel to court and testify.

Next the government discusses [redacted], in which a person with Mr. Ray asked for a note excusing Mr. Ray from an unknown court appearance. The government is "unaware what particular proceeding the defendant intended to absent himself from at that time," Gov. Ltr. at 2, and there is no indication whether or not Mr. Ray did or did not appear in court. This too is irrelevant to the current matter.

Finally, the government attaches a 2019 email chain apparently between Mr. Ray's civil lawyer and an opposing civil lawyer, in which his lawyer states that he is unavailable for a disposition because he is sick. This situation is nothing like the current one.

[REDACTED] is not a "voluntarily" absence.

The government closes its letter by stating that the Court could in the "future" "consider whether [Mr. Ray] has voluntarily absented himself from the proceedings, which could continue without him." Gov. Ltr. 4. There is no cause for the government's suggestion that Mr. Ray is waiving his right to be present at his own trial. Mr. Ray has been an active participant in his case for the past two years, including by making frequent requests for greater access to his discovery. During the first five and ½ days of his trial, he has been engaged, taking copious notes. Mr. Ray's current prognosis is still unknown and, hopefully, he will make a full recovery soon and be ready to proceed. But right now, Mr. Ray is [REDACTED]. This Court should roundly reject the government's insinuation that this illness is in any way a ploy to delay.

Respectfully submitted,
*/s/*

Marne L. Lenox
Peggy Cross-Goldenberg
Allegra Glashausser
Neil P. Kelly

*Counsel for Lawrence Ray*