*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2022

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Lawrence Ray*,
            20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government writes in opposition to the defendant's perfunctory motion to dismiss all counts due to insufficient evidence. (Tr. 2505-06, 2768-69; Dkt. 565). As detailed in the Government's summation, and as the jury found, the evidence adduced at trial proved the defendant's guilt beyond a reasonable doubt on all counts.

      The defense raised two insufficiency arguments with greater specificity, and each is meritless.

      **A. Applicable Law**

      A defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008)). A conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (internal quotation marks and citation omitted; emphasis in original). The Court cannot disturb a jury's verdict unless "the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (internal quotation marks omitted).

      In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed "in the light most favorable to the Government." *United States v. George,* 779 F.3d 113, 115 (2d Cir. 2015). The Court must analyze the pieces of evidence "in conjunction, not in isolation," *Persico*, 645 F.3d at 104 (quoting *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *Cuti*, 720 F.3d at 462 (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). The Court must also "credit[] every inference that

the jury might have drawn in favor of the government," because "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." *Cuti*, 720 F.3d at 461-62 (internal quotation marks and citations omitted).

### B. Discussion

#### 1. Sufficient Evidence Proved the Defendant's Guilt of Count Fifteen

Among other crimes, the jury convicted the defendant of Count Fifteen of the Trial indictment, which charged him with a violent crime in aid of racketeering (VICAR) based on the October 16, 2018, assault with a dangerous weapon of Female Victim-1, and cited as notice provisions two sections of the New York Penal Law, Section 120.05 (second degree assault), and Section 120.14 (second degree menacing).

The Violent Crimes in Aid of Racketeering Statute (VICAR), 18 U.S.C. § 1959, requires proof of five elements: (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence (here, assault with a dangerous weapon), and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise. *See United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). The defense asserted that the Government failed to prove the fourth element of the crime. Specifically, the defense argued that there was insufficient evidence of the defendant's guilt on Count Fifteen because the "government [had] not introduced sufficient evidence to support that there was a second degree assault . . . . there was insufficient testimony establishing physical injury or impairment of physical condition" of Female Victim-1, and because the predicate crime of menacing "is not a crime of violence." (Tr. 2505). Both contentions are incorrect. The jury's special verdict form indicates that the defendant was convicted of Count Fifteen under both the second-degree assault and menacing theories. Each is independently sufficient to support the verdict.

*First*, the evidence overwhelmingly proved that the defendant committed second-degree assault. As the Court instructed the jury, under New York Penal Law § 120.05, a person is guilty of second-degree assault if the defendant: (1) caused physical injury to another person by means of a dangerous instrument; and (2) he did so with the intent to cause serious physical injury. Physical injury means "impairment of a person's physical condition or substantial pain," N.Y.P.L. § 9, serious physical injury includes "physical injury which creates a substantial risk of death," and "dangerous instrument" is "any instrument . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury," N.Y.P.L. § 10.00(13). The defense does not appear to contest—nor can it—that a plastic bag and leash and collar, when used to suffocate, are dangerous instruments. *United States v. Matthews*, 106 F.3d 1092, 1095 (2d Cir. 1997) ("Because 'it is the use or threatened use of the object which makes [an] assault aggravated,' . . . virtually any object— including, without doubt, the multi-purpose implement employed here—can qualify as a dangerous weapon depending on how it is wielded in the circumstances.") (collecting cases); *United States v. Mumuni Saleh*, 946 F.3d 97, 108 (2d Cir. 2019) (regarding eight inch kitchen knife, "the question of whether an object constitutes a dangerous weapon hinges, in part, on 'the

manner in which the object is used,' as 'many objects, even those seemingly innocuous, may constitute dangerous weapons.'" (quoting *United States v. Matthews*, 106 F.3d 1092)). And this Court should swiftly reject the assertion that there was insufficient testimony that Female Victim-1 suffered impairment of her physical condition or substantial pain. Female Victim-1 testified that the defendant tied her naked to a chair and repeatedly suffocated her with a plastic bag, pillow, and collar and leash, which substantially impaired her ability to breath and choked her to the point of passing out. (Tr. 1033-34, 1036-38). Female Victim-1 described being "terrified" and "trembling" while she was "suffocating" and unable to breath, and that the defendant told her "I am going to kill you," while placing the plastic bag over her head. (Tr. 1037). Female Victim-1 testified that after the assault she was "scared for my life." (Tr. 1052). Her testimony about the night of the assault was corroborated by other witness testimony, an audio recording, and various documentary evidence. (Tr. 1041-50, 1684-87, Tr. 2326-30; GX 1709, GX 502, GX 1650 p. 32, GX 1646 p. 22, GX 4061 p.1). For example, Felicia Rosario testified that after the assault, the defendant returned home and gleefully described putting a "plastic bag over [Female Victim-1's] head and would close it and hold it shut multiple times until she couldn't breath anymore, but then he would let it go and do it all over again." (Tr. 1685). Making every inference in the Government's favor—as this Court must—there was ample evidence for the jury to conclude that the defendant caused Female Victim-1 substantial pain and impaired her physical condition, and that—based on his actions and his words, including choking Female Victim-1 to the point of passing out and telling her that he would kill her—he did so with intent to inflict injury that created a substantial risk of death.

*Second*, the defense is incorrect that menacing is not a predicate VICAR offense. Section 1959(a) enumerates a series of predicate crimes—murder, kidnapping, maiming, assault with a dangerous weapon, and assault resulting in serious bodily injury—and covers "a crime of violence against any individual in violation of the laws of any State or the United States." To determine whether a particular offense qualifies as a predicate incorporated into § 1959, courts must consider whether it falls within the "generic" federal definition of an enumerated offense in effect at the time Congress passed § 1959. *See, e.g.*, *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003); *see also United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994) ("[O]nly a 'generic definition' of an underlying state crime is required in a RICO indictment, as distinguished from 'the elements of the penal codes of the various states where acts of racketeering occurred.'" (quoting *United States v. Bagaric*, 706 F.2d 42, 62 (2d Cir.), *cert. denied*, 464 U.S. 840, 917 (1983))); *Cousins v. United States*, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016) ("Section 1959 reaches the generic conduct described therein, without concern for the labels a state may use in criminalizing the conduct that qualifies as a VICAR predicate."); *United States v. Le*, 316 F. Supp. 2d 355, 361 & n.13 (E.D. Va. 2004) (same); 129 Cong. Rec. 22, 906 (98th Cong. 1st Sess. Aug 4, 1983) ("While Section [1959] proscribes murder, kidnapping, maiming, assault with a dangerous weapon, and assault resulting in serious bodily injury in violation of federal or State law, it is intended to apply to these crimes in a generic sense, whether or not a particular State has chosen those precise terms for such crimes.").

Here, the predicate offense of assault with a dangerous weapon was premised on two distinct New York state offenses: second-degree assault and menacing. The defense has not disputed that second-degree assault in violation of New York Penal Law § 120.05 constitutes assault with a dangerous weapon under the VICAR statute. *See Singh v. Barr*, 939 F.3d 457, 462

(2d Cir. 2019) (second-degree assault is crime of violence because the "deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force"). The evidence of second-degree assault alone was therefore sufficient to support the jury's verdict. But contrary to the defendant's assertion, menacing likewise satisfies the elements of the generic federal crime of assault with a dangerous weapon. "At common law, 'assault' had two meanings, one being criminal assault, which is an attempt to commit battery, and the other being tortious assault, which is an act that puts another in reasonable apprehension of immediate bodily harm." *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982). "Furthermore, where the assault is of the first type, *i.e.*, an attempted battery, the victim need not have experienced reasonable apprehension of immediate bodily harm, and the fact that the battery is actually committed does not result in a merger therein of the assault; proof of a battery supports a conviction for assault." *Id.* In 1984, when § 1959 was enacted, the principal analogous federal assault offense was found in 18 U.S.C. § 113. *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir. 1997). An "assault" within the meaning of § 113 "is any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm," *LeCompte*, 108 F.3d at 952, as well as any attempt to intentionally use unlawful force against another person, regardless of whether the victim "experienced reasonable apprehension of immediate bodily harm." *Guilbert*, 692 F.2d at 1343.2 *See also Cousins*, 198 F. Supp. 3d at 626 (common law definition of assault with a dangerous weapon "requires a physical act, utilizing a dangerous weapon, that signifies to the victim that the aggressor has the present ability to cause the threatened harm with the weapon, and that the weapon may be put to harmful use immediately.").

The VICAR predicate offense of menacing in violation of New York Penal Law § 120.14, as charged in Count Fifteen, comports with this generic definition. Section 120.14, provides in relevant part:

> A person is guilty of menacing in the second degree when: He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

N.Y.P.L. § 120.14(1).

Section 120.14(1) incorporates the threat aspect of an assault and contemplates the use of a deadly weapon or dangerous instrument. As noted above, New York Penal law further defines a dangerous instrument as "any instrument, article or substance, ... which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." N.Y.P.L. § 10.00(13); *see also Barr*, 939 F.3d at 462. Accordingly, menacing as defined by New York Penal Law comports with the generic federal definition of assault with a dangerous weapon, and constitutes an offense sufficient to satisfy the fourth element of a VICAR charge. *See, e.g., United States v. Jose Caban*, 19 Cr. 166 (VEC) (S.D.N.Y 2021) 10/19/21 Trial Tr. at 382 (charging the jury that "the government charged that the defendant committed assault with a dangerous weapon by committing menacing," and reciting the elements of NYPL § 120.14). Thus, either predicate offense was sufficient to satisfy the

Government's burden of proof on Count Fifteen, and the jury properly found the defendant guilty of both.

### 2. Sufficient Evidence Proved the Defendant's Guilt of Tax Evasion

Among other crimes, the jury convicted the defendant of Counts Eleven through Fourteen, which charged the defendant with tax evasion. During trial, the defense claimed that the Government failed to prove that the "income was taxable," rather than payments as "restitution for damages for physical injury." (Tr. 2768). The Court reserved on this motion, while noting: "I don't think it's a very serious motion." (Tr. 2769). Since then, the defense has offered no additional explanation for why this motion should be seriously entertained. The Government more than met its burden to prove that the defendant evaded his taxes for tax years 2016 through 2019.

The undisputed evidence showed that the defendant did not file tax returns for tax years 2016 through 2019, despite receiving substantial sums of money from Female Victim-1 during those years. (Tr. 2389-2402, 2426-2431). The defense argued that the defendant had a good faith belief that the money he took from Female Victim-1 was repayment for damages and called attorney Glenn Ripa as a witness in an effort to prove the same. This Court also instructed the jury on the theory of the defense. (Tr. 3047-48). The jury plainly rejected this argument and had more than enough reason to do so. Taken in the light most favorable to the Government, the defendant's conversation with his attorney Glenn Ripa about Female Victim-1 was patently designed to shield his criminal conduct from prosecution, and was not a good faith conversation about his liabilities. The jury could, and did, readily conclude that the defendant's actions—including, among other things, his efforts to conceal the sex trafficking income by laundering it through GoDaddy and Pollok's bank accounts, his use of violence to obtain the money, the exorbitant sums of money he took from Female Victim-1, and his selective sharing of information with Mr. Ripa—were indicative of criminal intent and his knowledge that the money he took from Female Victim-1 was not, in fact, restitution.

Moreover, the Court properly instructed the jury on the circumstances under which a damages settlement would not constitute income. (Tr. 3046-47). The Government demonstrated that the facts here in no way resembled a situation involving nontaxable restitution, even if the defendant firmly believed that he was owed the money for damages (which, in any event, the evidence showed he did not). The defendant never pursued a legal claim against Female Victim-1 and the purported "damages" she paid were not paid pursuant to a written binding settlement agreement, court decree, or mediation award. (Tr. 3046). The evidence likewise did not show that the exorbitant amounts extorted by the defendant from Female Victim-1 corresponded in any meaningful way to damages he actually incurred. (Tr. 3047). The jury was free to reject the farfetched suggestion that the defendant had a plausible or honest belief that he was entitled to the money (Tr. 3047), and to find him guilty of tax evasion.

For these reasons, and based on the trial record, the defendant's motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   s/ Danielle R. Sassoon_____
Mollie Bracewell
Lindsey Keenan
Danielle Sassoon
Assistant United States Attorneys
(212) 637-2218/1565/1115

cc:   Peggy Cross-Goldenberg, Esq. (by ECF)
Allegra Glashausser, Esq.
Neil Kelly, Esq.
Marne Lenox, Esq.