U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 10, 2022

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *United States v. Lawrence Ray*,
              20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government writes in response to the Court's November 1, 2022 order and the defendant's November 8, 2022 letter. The Court should reject the defendant's motion that insufficient evidence supported the defendant's conviction on Count Fifteen.

1. **The Defendant is Incorrect that the Court is Required to Apply the Categorical Approach to 18 U.S.C. § 1959**

      Contrary to the defendant's contention, the Second Circuit has not held that the categorical approach applies to determine whether a state law offense constitutes assault with a dangerous weapon under 18 U.S.C. § 1959. In particular, the defendant is incorrect that *United States v. Pastore*, 36 F.4th 423, 429 (2d Cir. 2022), disagreed with the holding in *United States v. Keene*, 955 F.3d 391, 393 (4th Cir. 2020). The Second Circuit in *Pastore* addressed a different question: whether RICO and VICAR offenses are divisible (and thus subject to the modified categorical approach, rather than the categorical approach) for purposes of whether they qualify as "crimes of violence" that can serve as Section 924(c) predicates. *Pastore* did not address whether VICAR offenses (or RICO offenses) themselves must be analyzed under the categorical approach. With respect to that question, the Second Circuit has not spoken, and the Fourth Circuit's reasoning is persuasive. As *Keene* explained, the VICAR statute does not share the features that typically render a statute subject to the categorical approach. Specifically, unlike other statutes subject to the categorical approach, "nothing in the statutory language at issue suggests that Congress intended an element-by-element comparison of the enumerated federal offense with the specified state offense[,] [n]or do the underlying policy rationales for the categorical approach apply to the relevant text in the VICAR statute," *id.* at 393, which does not present the practical and constitutional concerns that typically counsel for application of the categorical approach, *id.* at 396-99.

1

### 2. The Jury Properly Found the Defendant Guilty of Count Fifteen on Two Independently Sufficient Theories

The special verdict form establishes that the jury found the defendant guilty of Count Fifteen on two independent bases that each supports the jury's verdict. Both menacing and second-degree assault constitute "assault with a dangerous weapon," and there was sufficient evidence that the defendant is guilty of both.

#### a. New York Menacing is Not Broader than Assault with a Dangerous Weapon under 18 U.S.C. § 1959

When evaluating the defendant's conduct proved at trial, *see Keene*, 955 F.3d at 393, the defendant's actions plainly amounted to assault with a dangerous weapon. Regardless, when analyzed under the modified categorical approach (as urged by the defendant), New York menacing, as instructed to the jury, is no broader than generic federal assault with a dangerous weapon for the reasons already stated in the Government's opposition to the defendant's Rule 29 motion. *See* Dkt. 575.

The defendant's arguments about subsections two and three of NYPL § 120.14, as well as about objects that "appear to be dangerous," are a red herring. Here, the jury was instructed *only* with respect to subsection one of NYPL § 120.14, and even then, only with respect to the defendant's use of a dangerous instrument (and *not* an object that appears to be dangerous). (*See* Tr. 3050). Likewise, the defendant's assertion that menacing is not an assault with a dangerous weapon because it does not require "use" of a weapon is nonsensical. For one, the VICAR statute does not refer to "assault *using* a dangerous weapon," but to assault "with" a dangerous weapon. Regardless, while not every use of a weapon will involve displaying it, surely displaying a weapon is one way in which to use it. The defense's efforts to suggest otherwise cannot be squared with plain English, and the cases the defense cites do not show otherwise. *United States v. Speed*, 636 F. App'x 9 (2d Cir. 2015), for example, actually reinforces the common-sense proposition that displaying a weapon is one of many ways to use it. There, the relevant Guidelines provision specifies alternative sentencing enhancements depending on whether a weapon is discharged, brandished, or *otherwise* used—the plain implication being that brandishing and discharging a weapon are two enumerated ways to use a weapon, not (as the defendant suggests) that when you brandish a gun you are somehow not using it. The menacing statute also requires that the dangerous instrument be used to commit the assault by requiring that the victim be placed in reasonable fear of physical injury "*by* displaying a . . . dangerous instrument." NYPL § 120.14 (emphasis added).

The defendant asserts that menacing is broader than generic federal assault with a dangerous weapon because it does not require intent to do bodily harm. This argument is premised on an improperly cribbed understanding of the generic federal offense. Common law assault included not only attempt to commit battery, but also "tortious assault, which is an act that puts another in reasonable apprehension of immediate bodily harm." *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982). Likewise, 18 U.S.C. § 113 is not limited to acting with intent to injure, but includes "any intentional . . . threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is

made in fear of immediate bodily harm." *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir. 1997). Menacing similarly requires intent to place another in reasonable fear of physical injury and the display of the dangerous weapon inherently conveys a present ability to inflict that injury.

### b. There was Sufficient Evidence that the Defendant Committed Second-Degree Assault and that Female Victim-1 Suffered Physical Injury

The defense has not disputed that second-degree assault in violation of New York Penal Law § 120.05 constitutes assault with a dangerous weapon under the VICAR statute. *See Singh v. Barr*, 939 F.3d 457, 462 (2d Cir. 2019) (second-degree assault is crime of violence because the "deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force"). Instead, they claim that the Government did not prove that Female Victim-1 suffered "physical injury" or experience "substantial pain." Especially taken in the light most favorable to the Government, the evidence amply proved both.

Suffocating Female Victim-1 to the point where she was gagging for air, passing out, and on the cusp of choking to death, amounts to an impairment of her physical condition and caused Female Victim-1 substantial pain. That conclusion was supported by Female Victim-1's testimony about the assault and the recording in which she can be heard speaking in a labored and raspy voice, choking, and gasping for air. The evidence did not merely establish, as the defense claims, that Female Victim-1 was afraid—her fear was a by-product of the extreme pain and impairment caused by the defendant suffocating her with a plastic bag. Beyond the direct testimony about the assault, that conclusion also inexorably followed from the context in which the assault arose. By that time, Female Victim-1 had been desensitized to threats and pain, after years of the defendant's verbal, psychological, and physical abuse, and his sexual grooming of Female Victim-1 that involved brutally painful BDSM. (*See, e.g.*, Tr. 895-97, 910-11, 1014-15; *see also* Tr. 1032 ("I had stopped being motivated or responding to threats regarding me, exposing me, putting me in jail, hurting me, but I still found threats to other people . . . galvanizing")). Yet the defendant's assault in the Gregory Hotel took even that years'-long abuse to another level—as Female Victim-1 testified: "he had hit me before, and he had been physical before, but he had never done anything like that to me before." (Tr. 1036). Female Victim-1's fear was rekindled only because of the extreme physical impairment and pain caused by the suffocation that outdid the defendant's previous abuse. This is a far cry from "petty slaps [or] shoves . . . delivered out of meanness" that falls short of physical injury, but rather within the heartland of a "concerted physical attack" that amounts to physical injury. *People v. Henderson*, 92 N.Y.2d 677, 680 (1999).

Whether "the 'substantial pain' necessary to establish an assault charge has been proved is generally a question for the trier of fact," *People v. Rojas*, 61 N.Y.2d 726, 727 (1984), and under these circumstances, it demeans the proof taken in any light to assert that the jury had no basis to find that Female Victim-1's pain was more than trivial. It is simply incorrect to suggest that the proof was insufficient absent Female Victim-1 explicitly quantifying the pain level experienced during the assault. While that sometimes suffices to establish substantial pain, it is not necessary. Cases cited by the defendant recognize that a jury may infer from the facts of an assault that a victim felt substantial pain. *Henderson*, 92 N.Y.2d at 680 ("a jury could certainly infer that the victim felt substantial pain" based on the defendant kicking him in the legs and causing him to suffer contusions and swelling).

The other cases cited by the defense are not analogous to the facts here. Although the defendant in *People v. Franklin*, 540 N.Y.S.2d 288, 288 (1989), briefly lost consciousness, it was not from sustained suffocation, but a single hit to the head about which the opinion provides little detail. Likewise in *People v. Prosser*, 516 N.Y.S.2d 559, 559 (1987), the victim testified that he suffered "slight pain" that was "not much . . . to worry about," a far cry from Female Victim-1's description of the defendant's assault. The defense argues that the Court should consider Female Victim-1's resumption of "normal activities" as undermining any evidence of physical impairment. That should be given little weight in view of Female Victim-1's testimony that the assault was designed to force her to work more. (Tr. 1039). Further, failure to seek medical treatment is not dispositive. *See People v. Pope*, 174 A.D.2d 319, 321 (1991) ("We find that the fact that the victim's injury was not treated by a physician does not mean that he did not suffer 'impairment of physical condition or substantial pain'"). That is particularly true here where Female Victim-1's failure to seek treatment and her return to work is explained by circumstances other than a supposed lack of impairment. Female Victim-1 was engaged in an unlawful profession and was wary of angering the defendant by drawing attention to his misconduct. Likewise, Female Victim-1's return to working shortly after the assault is not particularly revealing about her physical state given the relentless pressure to keep working—she went back to seeing clients because she was in fear for her life if she did not (Tr. 1040), and the evidence showed that she was often made to work while physical impaired or under circumstances where a person would typically take a day off. (*See* Tr. 1006, 1020).

The defense relies on *United States v. Adetutu*, No. 01 Cr. 128 (DLC), 2004 WL 25241 (S.D.N.Y. 2004), where Judge Cote found the evidence insufficient to establish substantial pain. But that case involved a VOSR hearing at which the victim did not testify at all, let alone about what degree of pain she experienced from her injuries. By contrast, Female Victim-1's testimony amply addressed the "nature of the pain, where the pain was felt, the intensity of the pain, [and] its duration." *Id.* at *3. The defendant's night of terror lasted for hours, with the repeated use of the plastic bag (among other things) to torture Female Victim-1. Female Victim-1 described the horrific sensation of suffocating and the visceral fear she had of the defendant doing it again—on that record, the jury had ample basis to conclude that Female Victim-1's fear, and her efforts to appease the defendant to avoid additional suffocation, were a consequence of the intense pain he

had been inflicting throughout the night.[1]

                    Respectfully submitted,

                    DAMIAN WILLIAMS
                    United States Attorney

By:   s/ Danielle R. Sassoon_____
       Mollie Bracewell
       Lindsey Keenan
       Danielle Sassoon
       Assistant United States Attorneys
       (212) 637-2218/1565/1115

cc:    Peggy Cross-Goldenberg, Esq. (by ECF)
       Allegra Glashausser, Esq.
       Neil Kelly, Esq.
       Marne Lenox, Esq.

---

[1] While the duration of the pain is certainly a factor for a Court to consider, the defendant cites no authority for the proposition that the pain must endure in the aftermath of an assault, even if that may be probative of the nature of a victim's pain.